Anne L. Weismann
D.C. Bar No. 298190
Melanie Sloan
D.C. Bar No. 454584
Citizens for Responsibility
and Ethics in Washington
11 Dupont Circle, N.W.
2nd Floor
Washington, D.C.  20036
202-588-5565

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CITIZENS FOR RESPONSIBILITY AND          :
ETHICS IN WASHINGTON                     :
11 Dupont Circle, N.W.                   :
Washington, D.C.  20036                  :
                                         :
                 Plaintiff,              :
                                         :
         v.                              :  Civil Action No.
                                         :
U.S. DEPARTMENT OF JUSTICE               :
950 Pennsylvania Avenue, N.W.            :
Washington, D.C.  20530                  :
                                         :
                 Defendant.              :
_____:

**COMPLAINT FOR DECLARATORY JUDGMENT**
 **AND INJUNCTIVE RELIEF**

        1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, as

amended, as well as agency FOIA regulations, challenging the failure of the U.S. Department of

Justice ("DOJ") to fulfill the requests of Plaintiff for documents relating to the government's

proposed penalty in United States v. Philip Morris, Inc., et al., Civil Action No. 99-2496 (GK)

("tobacco litigation"), as well as records of all contacts between DOJ officials and the White House concerning the tobacco litigation, and records of all contacts between Associate Attorney General Robert D. McCallum and the law firm Alston & Bird concerning the tobacco litigation.

2.   This case seeks declaratory relief that Defendant is in violation of the FOIA for failing to fulfill Plaintiff's requests for records, in violation of the FOIA and agency regulations for failing to grant Plaintiff's request for a waiver of fees, and injunctive relief that Defendant immediately and fully comply with Plaintiff's requests under the FOIA.

## JURISDICTION AND VENUE

3.   This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §552(a)(4)(B).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331.  Venue lies in this district under 5 U.S.C. §552(a)(4)(B).

4.   Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code.  CREW is committed to the protection of the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials.  CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the governmental decision-making process.  CREW uses a combination of research, litigation, and advocacy to advance its mission.

5.   CREW has invested considerable organizational resources in pushing the U.S. government to take ethics issues seriously.  CREW monitors closely the laws and rules applicable to government agencies.

2

6. CREW is harmed by DOJ's failure to comply with the FOIA, because that failure harms CREW's ability to provide full, accurate, and current information to the public. 5 U.S.C. §552(a)(6)(C).

7. Defendant DOJ is an agency within the meaning of 5 U.S.C. §552(f). DOJ is the federal agency with possession and control of the requested records and is responsible for fulfilling Plaintiff's FOIA requests.

## STATUTORY FRAMEWORK

### The Freedom of Information Act

8. The FOIA, 5 U.S.C. §552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

9. An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination whether or not to fulfill the request, and of the requester's right to appeal the agency's determination to the agency head. 5 U.S.C. §552(a)(6)(A)(i).

10. An agency must respond to a FOIA appeal within 20 working days, notifying the appealing party of the agency's determination to either release the withheld records or uphold the denial. 5 U.S.C. §552(a)(6)(A)(ii).

11. In "unusual circumstances," an agency may delay its response to a FOIA request or appeal, but must provide notice and must also provide "the date on which a determination is expected to be dispatched." 5 U.S.C. §552(a)(6)(B).

12. This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly

withheld from the complainant."  5 U.S.C. §552(a)(4)(B).

13.  The FOIA provides a mechanism for disciplinary action against agency officials who have acted inappropriately in withholding records.  Specifically, when requiring the release of improperly withheld records, if the Court makes a written finding that "the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," a disciplinary investigation is triggered.  5 U.S.C. §552(a)(4)(F).

14.  The FOIA also requires each agency to promulgate regulations specifying a fee schedule for the processing of FOIA requests and establishing procedures and guidelines for the waiver or reduction of fees.  5 U.S.C. §552(a)(4)(A).  Defendant DOJ's fee waiver  regulations are found at 28 CFR 16.11  Both the FOIA and DOJ regulations provide that documents should be produced at no charge to the requester or at a reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. §552(a)(4)(A)(iii); 28 CFR 16.11(k).

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

15.  For nearly six years, the Department of Justice has been litigating a racketeering case on behalf of the United States against the tobacco industry, including Philip Morris, R.J. Reynolds, Brown & Williamson Tobacco Co., and British American Tobacco.  *See*  United States v. Philip Morris, Inc., et al., Civil Action No. 99-2496 (GK).  The government has claimed that the tobacco industry engaged in a 50-year conspiracy to defraud the public through deceptive and dangerous advertising and marketing practices.  Id.

16.  On June 7, 2005, after a nine-month trial, DOJ attorneys requested that as a penalty

4

for the tobacco industry's violations, the Court order the industry to fund a $10 billion smoking cessation program, at a rate of $2 billion per year for five years. *See, e.g.*, Myron Levin and Richard Simon, <u>Lawmakers Demand Investigation in Tobacco Case</u>, *Los Angeles Times*, June 9, 2005 (Exhibit 1). The proposed penalty represented a dramatic and significant reversal of DOJ's position in the case up to that point, in which the government had asserted that the appropriate penalty would be for the industry to fund a comprehensive smoking cessation program at a cost of $130 billion, at a rate of $5.2 billion per year for 25 years. <u>Id</u>.

17. After this eleventh-hour change in position by the government, *The New York Times* obtained a copy of an internal DOJ memorandum dated May 30, 2005, in which the leaders of the government's trial team argued that the decision to seek only $10 billion in penalties was not based on the facts of the case, would appear to be politically motivated, and would undermine the government's position in any possible settlement of the case. Eric Lichtblau, <u>Lawyers Fought U.S. Move to Curb Tobacco Penalty</u>, *The New York Times*, June 16, 2005 (Exhibit 2).

18. On June 20, 2005, *The Washington Post* reported that Max Bazerman, a government expert in the tobacco lawsuit was told that if he did not water down his recommended penalties he would be removed as a government witness in the trial. Carol D. Leonnig, <u>Expert Witness Says Justice Told Him to Water Down Penalty Recommendation</u>, *The Washington Post*, June 20, 2005 (Exhibit 3). According to Mr. Bazerman, a career DOJ trial attorney told him senior DOJ officials wanted him to change his testimony to say appointing a monitor to consider removing senior tobacco management would be legally inappropriate. <u>Id</u>. Mr. Bazerman said the requested change in his testimony had been made by DOJ Attorney Frank Marine and Associate Attorney General Robert D. McCallum. <u>Id</u>.

19. On June 8, 2005, Congressmen Henry A. Waxman, Ranking Minority Member of the Committee on Government Reform, and Martin T. Meehan, Democratic Co-Chairman of the Congressional Task Force on Tobacco and Health, wrote to DOJ's Inspector General, requesting that he investigate whether "improper political interference" led to the government's sudden reversal in the penalty it was seeking from the Court. *See* Exhibit 4. Citing to several newspaper articles linking the change in position to political pressure brought to bear on career prosecutors, Congressmen Waxman and Meehan requested that the Inspector General also "determine the role played by Mr. McCallum and other political appointees, and assess whether the ethics process was handled appropriately." Id.

20. On June 9, 2005, Congressmen Waxman and Meehan again wrote to DOJ's Inspector General, requesting that he expand any investigation to also consider the roles played by Senior Counselor to the Attorney General Raul Yanes and Chief-of-Staff Theodore Ullyot, "or any other Justice Department officials with ties to the tobacco industry." Exhibit 5. The Congressmen also expressed concern over trial testimony offered on June 9 that indicated "that the Department may also be seeking to severely limit eligibility for the program." Id.

21. DOJ's Inspector General Glen A. Fine responded to these requests by letter dated June 13, 2005, in which he advised the Congressmen of his conclusion that the Office of the Inspector General does not have jurisdiction to investigate their concerns. Exhibit 6. The Inspector General stated further that the matter had been assigned to DOJ's Office of Professional Responsibility for investigation, as the matters "relate to the actions of Department attorneys concerning their authority to litigate, investigate, or provide legal advice." Id.

22. On June 15, 2005, 50 Members of Congress wrote to Attorney General Alberto

Gonzales expressing their concern "over the direction of the government's [tobacco] case." Exhibit 7. They also urged the Attorney General not to enter into a settlement of the litigation and to file a petition for *certiorari* regarding the D.C. Circuit's decision prohibiting a penalty that would include disgorgement of illegally gained profits. Id.

23. Five of these Members sent another letter to the Attorney General on June 17, 2005, expressing similar concerns. Exhibit 8. This letter urged the Attorney General to direct that DOJ political appointees recuse themselves from any further involvement in the tobacco litigation and to "immediately restore authority for this litigation in the hands of the senior career attorneys who have shepherded this case since its inception." Id.

24. This was followed up by a letter from Senators Frank Lautenberg, Edward Kennedy and Jack Reed to Attorney General Gonzales on June 20, 2005, asking that the Attorney General "immediately issue a memorandum to all Department of Justice employees detailing their whistleblower protection rights" in light of the questions that had been raised about political interference in the tobacco litigation. Exhibit 9. Four days later these same senators, joined by Senators Richard Durbin and Tom Harkin, requested a meeting with the Attorney General to discuss DOJ's handling of the tobacco litigation and their concerns that "the lives of . . . American people may be compromised by a legal strategy influenced by political pressure." Exhibit 10.

25. A consortium of associations, including the American Cancer Society, the American Lung Association, and the American Heart Association, also wrote to Attorney General Gonzales on June 17, 2005, to express their concerns about the direction of DOJ's case against the tobacco industry. Exhibit 11. They urged the Attorney General to "submit a proposed remedies order . .

. that is consistent with the strong case put on by the trial team . . . and the recommendations made by your own expert witnesses." Id.  They also expressed their concern that the Department's proposed settlement "would fail to hold the tobacco industry accountable for decades of wrong-doing that has resulted in millions of premature deaths, addicted smokers and our nation's children." Id.

26.  Former Secretary of Health and Human Services Joseph A. Califano, Jr., now the chairman of the Citizens' Commission to Protect the Truth, wrote to the Honorable Gladys Kessler, the judge presiding over the tobacco litigation, to express his concerns that "the actions of the Justice Department political appointees and the defendants are undermining the integrity of the judicial process."  Letter of June 13, 2005 (Exhibit 12).  As Mr. Califano elaborated, "[w]hen witnesses are asked to tone down the truth; when attorneys are ordered by their superiors to counter their own expert witnesses; when those superiors are political appointees with close ties to defendants who have contributed millions of dollars to the political party and administration which appointed them, serious questions arise as to whether parties to this case are thwarting the ability of this Court to render justice on the present record." Id.

27.  In addition to the numerous members of Congress who called for an investigation into DOJ's handling of the tobacco litigation, a legion of news reports also suggested that DOJ's proposed penalty in the tobacco litigation was the product of improper political influence brought to bear on the government's trial team of career lawyers and that these influences included improper attempts to have government witnesses alter their trial testimony.  See, e.g., Exhibits 2, 3.

**Plaintiff's FOIA Requests and Follow-Up**

28.  By letter dated June 28, 2005, to DOJ's Office of Information and Privacy ("OIP"), CREW requested that, under the Freedom of Information Act, DOJ produce all records in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General relating in any way to the government's proposed penalty in the tobacco litigation (Exhibit 13) (hereinafter "OIP request").  CREW also requested all records relating in any way to any offer of settlement in the tobacco litigation from any source, including 11 specified tobacco companies and entities.  Id.  In addition, CREW requested records of all contacts between any individuals in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General and the White House concerning the tobacco litigation, as well as records of any contacts between Associate Attorney General Robert McCallum and the law firm Alston & Bird concerning that litigation.  Id.

29.  In its OIP request CREW also sought expedited processing pursuant to 5 U.S.C. §552(a)(6)(E)(i) and DOJ regulations, 28 CFR Part 16.  As CREW explained, CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the FOIA, and seeks the information in the OIP request "for the express purpose of disseminating it to the public."  Id.  CREW also explained the "particular urgency in informing the public about the circumstances surrounding" DOJ's proposed penalty in the tobacco litigation, given news reports suggesting "that the proposed penalty was the product of improper political influence brought to bear on the government's trial team or career lawyers and that these influences included improper attempts to have the government witnesses alter their trial testimony."  Id.

30.  CREW's OIP request also sought a waiver of fees associated with processing the

request, pursuant to 5 U.S.C. §552(a)(4)(A)(iii). As CREW explained, the records it is seeking are likely to contribute to the public's understanding of the individuals and organizations that influence or attempt to influence the litigating position of the United States in a lawsuit of major and far-reaching consequences. Id.

31. By letter dated July 11, 2005, Melanie Ann Pustay, on behalf of OIP, acknowledged receipt of CREW's OIP request (Exhibit 14). OIP claimed to have received CREW's request on July 1, 2005, notwithstanding the fact that CREW successfully faxed it to OIP on June 28, 2005 (*see* Exhibit 12).

32. OIP also denied CREW's request for expedited processing, which OIP interpreted as based on a claim of "'urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information.'" Exhibit 14, *citing* 28 CFR 16.5(d)(1)(ii). According to OIP, it could not "identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally." Id. OIP also found that CREW's "primary activity . . . does not appear to be information dissemination." Id. Finally, OIP advised CREW that it had not yet made a decision on CREW's request for a fee waiver, but would do so "after we determine whether or not fees will be assessed for this request."

33. On July 18, 2005, CREW appealed OIP's determination to the Co-Director of OIP. *See* Exhibit 15. As CREW explained, OIP's initial determination on expedition was wrong as a matter of law and fact. There is a particular urgency in informing the public about the circumstances surrounding DOJ's proposed penalty in the tobacco litigation, given the legion of news reports that the proposed penalty is the product of improper political influence, that there

were improper attempts to have government witnesses alter their trial testimony, given the serious

concerns raised by members of Congress, and the fact that DOJ's own Office of Professional

Responsibility has initiated an investigation into these charges.  Id.  CREW also explained that

CREW is engaged primarily in disseminating information, and stands in a similar position to

other entities that the courts have recognized satisfy DOJ's regulations, 28 CFR 16.5(d)(1)(ii).  Id.

Finally, CREW explained that its request satisfies a separate criteria, not considered by OIP, in

that it involves "[a] matter of widespread and exceptional media interest in which there exist

possible questions about the government's integrity which affect public confidence."  Id.  As

CREW noted, OIP apparently had failed to comply with DOJ regulations, 28 CFR 16.5(d)(2),

requiring any component that receives a request for expedition that must be handled by DOJ's

Office of Public Affairs to forward the request immediately to that office.  Id.

34.  On that same date and out of an abundance of caution, given OIP's past failure to

forward CREW's request for expedition to the Office of Public Affairs, CREW made a specific

request of DOJ's Office of Public Affairs, pursuant to 28 CFR 16.5(d)(1)(iv), that CREW's OIP

request be expedited.  Exhibit 16.  CREW explained that it was entitled to expedition because:

(1) the subject of its FOIA request "is a matter of widespread and exceptional media interest, as

documented in . . . numerous news articles," and (2) "there exist possible questions about the

government's integrity which affect public confidence," given the "serious questions" that have

been raised "about whether the government's proposed penalty in the tobacco litigation is the

result of improper political influence."  Id.

35.  On August 9, 2005, OIP sent a letter to CREW advising CREW that the Director of

the Office of Public Affairs had granted CREW's request for expedited processing.  Exhibit 17.

Thereafter, by letter dated August 12, 2005, OIP Co-Director Richard Huff advised CREW that in light of the decision by DOJ's Office of Public Affairs to afford CREW's OIP request expedited treatment, CREW's appeal was moot. Exhibit 18.

36.  On June 28, 2005, CREW sent a similar FOIA request to DOJ's Civil Division for all records relating in any way to the government's proposed penalty in the tobacco litigation (Exhibit 19) (hereinafter "Civil request").  CREW also requested expedition of its request and a waiver of fees for the same reasons it articulated in its OIP request.  *See* id.

37.  By letter dated July 7, 2005, DOJ's Civil Division acknowledged receipt of CREW's FOIA request and advised CREW that the Civil Division was granting CREW's request for expedited processing pursuant to DOJ regulations, 28 CFR 16.5(d)(1)(ii) (Exhibit 20).  The Civil Division also advised CREW, however, that its request for a fee waiver had been denied because, based on the Civil Division's review of a portion of responsive documents, the Civil Division believed the records CREW is seeking cannot be made public both because they "reflect the deliberative process and work product of agency attorneys" and because "such release would interfere with ongoing law enforcement proceedings."  Id.  Finally, the Civil Division advised CREW that the Division was facing "unusual circumstances" and therefore could not meet the statutory time limits for responding to FOIA requests.  Id.  The Civil Division did not say when it would make a determination on CREW's request, as required by 5 U.S.C. §552(a)(6)(B)(i).  Id.

38.  On July 11, 2005, CREW filed an administrative appeal of the Civil Division's determination to deny CREW's request for a fee waiver with DOJ's Office of Information and Privacy.  Exhibit 21.  CREW explained that it satisfied fully the requirements for a fee waiver.  CREW also explained that the Civil Division's determination was wrong as a matter of law

because, as at least one court has found, DOJ's approach would "'invert the burden of proof and foist upon [the requester] a burden that is not provided under the FOIA.'" Id., *citing* Project on Military Procurement v. Dep't of the Navy, 710 F.Supp. 362, 367 (D.D.C. 1989). CREW requested that OIP reverse the initial decision of the Civil Division to deny CREW's request for a fee waiver.

39. By letter dated July 28, 2005, OIP advised CREW that OIP had received CREW's administrative appeal on July 22, 2005. Exhibit 22. OIP stated further that it would notify CREW "of the decision on your appeal as soon as we can. The necessity of this delay is regretted." Id.

40. To date, CREW has not received any determination from OIP on CREW's appeal of the Civil Division's denial of CREW's request for a waiver of fees.

41. Under the FOIA, both the Office of Information and Privacy and the Civil Division were required to make a determination with respect to CREW's FOIA requests within 20 days (excluding Saturdays, Sundays and legal holidays) after receipt of the requests, which were faxed to each respective office on June 28, 2005. According to Plaintiff's calculations, the 20th day for each office to respond was August 1, 2005 (including three days for mailing).

42. To date, notwithstanding that DOJ granted CREW's request for expedited processing, CREW has received no substantive response to its FOIA request directed to the Office of Information and Privacy.

43. To date, notwithstanding that DOJ granted CREW's request for expedited processing, CREW has received no substantive response to its FOIA request directed to the Civil Division.

44. The statutory time limit for DOJ to respond to Plaintiff's requests has run out and

Plaintiff has constructively exhausted administrative remedies.  5 U.S.C. §552(a)(6)(C); *see also*

Judicial Watch v. Rossotti, 326 F.3d 1309, 1310, 356 U.S.App.D.C. 54, 55 (D.C. Cir. 2003);

Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 62, 287 U.S.App.D.C. 126, 131 (D.C. Cir.

1990).

45.   CREW has also exhausted its administrative remedies with respect to its request for a

waiver of fees associated with the processing of CREW's FOIA request directed to the Civil

Division, in that it has filed an administrative appeal of the Civil Division's initial denial and

received no indication from OIP as to when it will act on CREW's appeal.

### PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE
**(Failure to Expedite)**

46.   Plaintiff realleges and incorporates by reference all preceding paragraphs.

47.   Plaintiff demonstrated that it met the requirements for expediting its FOIA request

directed to the Office of Information and Privacy and its FOIA request directed to the Civil

Division.

48.   To date, Plaintiff has not received a substantive response to these requests from DOJ.

49.   Therefore, Defendant violated FOIA's mandate to expedite the processing of

Plaintiff's FOIA requests and Defendant's own regulations by failing to process Plaintiff's FOIA

requests, notwithstanding Defendant's determination that Plaintiff was entitled to expedition.  5

U.S.C. §552(a)(6)(E)(ii); 28 CFR 16.5(d).

### CLAIM TWO
**(Failure to Produce Records)**

50.   Plaintiff realleges and incorporates by reference all preceding paragraphs.

14

51.  Plaintiff properly asked for records within DOJ's control.

52.  Plaintiff is entitled by law to access to the records requested under the FOIA, unless Defendant makes an explicit and justified statutory exemption claim.

53.  Therefore, Defendant violated FOIA's mandate to release agency records to the public by failing to release the records as Plaintiff specifically requested.  5 U.S.C. §§552(a)(3)(A), 552(a)(4)(B).

### CLAIM THREE
### (Failure to Respond)

54.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

55.  On June 28, 2005, Plaintiff properly filed FOIA requests with DOJ's Civil Division and Office of Information and Privacy.

56.  To date, Plaintiff has not received a substantive response to these requests from DOJ and DOJ has exceeded the 20-working-day statutory time limit for such a response.  5 U.S.C. §552(a)(6)(A)(I).

57.  Therefore, DOJ has violated the FOIA's mandate to respond to Plaintiff's FOIA requests within the statutory time period.

### CLAIM FOUR
### (Improper Denial of Fee Waiver)

58.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

59.  Plaintiff has demonstrated that it is entitled to a waiver of fees associated with processing its FOIA requests, because disclosure of responsive records will likely contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the plaintiff.

60.  Therefore, Defendant violated FOIA's mandate to grant CREW a fee waiver and Defendant's own regulations when it denied CREW's request of the Civil Division for a waiver of fees.  5 U.S.C. §552(a)(4)(A)(iii); 28 CFR 16.11(k).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that DOJ has violated the Freedom of Information Act by failing to lawfully satisfy Plaintiff's FOIA request of June 28, 2005, directed to the Civil Division, and CREW's FOIA request of June 28, 2005, directed to OIP;

(2) Order DOJ to respond to Plaintiff's FOIA requests;

(3) Declare that DOJ violated the Freedom of Information Act and agency regulations when it failed to expedite Plaintiff's FOIA request of June 28, 2005, directed to the Civil Division, and CREW's FOIA request of June 28, 2005, directed to OIP;

(4) Declare that DOJ violated the Freedom of Information Act and agency regulations when it determined that Plaintiff is not entitled to a waiver of all fees associated with the processing of its FOIA request and Declare that Plaintiff is entitled to a fee waiver;

(5) Order DOJ to release immediately all records responsive to Plaintiff's FOIA requests at no cost to Plaintiff;

(6) Award Plaintiff its reasonable attorney fees and litigation costs in this action, pursuant to 5 U.S.C. §552(a)(4)(E); and

(7) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

_____

Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and
  Ethics in Washington
11 Dupont Circle, N.W.
Washington, D.C.  20036
Phone: (202) 588-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

Dated:  October 24, 2005