# EXHIBIT 1

Westlaw.                                                      **News**Room


6/9/05 LAT-BUS (No Page)                                        Page 1



6/9/05 L.A. Times (Bus. Sec.) (Pg. Unavail. Online)
2005 WLNR 9103565

Los Angeles Times
Copyright 2005 Los Angeles Times

**June 9, 2005**

Lawmakers Demand Investigation in Tobacco Case

By Myron Levin and Richard Simon

WASHINGTON -- With the government's giant racketeering case against cigarette
makers nearing a close on Wednesday, rancor spread beyond the courtroom as
lawmakers demanded an investigation of possible political interference in the
government's case.

At least eight Senate and House Democrats -- including Sen. Edward M. Kennedy,
D-Mass., and Rep. Henry A. Waxman, D-Calif. -- asked the Justice Department
inspector general to investigate why senior officials apparently ordered the
department's trial team to cut their most costly demand against the industry by
more than 90 percent.

Without explanation, government **lawyers** late Tuesday asked U.S. District Judge
Gladys Kessler to order an industry-funded 5-year, $10 billion smoking cessation
program -- instead of the 25-year, $130 billion program they had outlined
previously.

In a statement issued Wednesday evening, spokesman Eric Holland stressed that the
$10 billion program was only ``an initial requirement'' that could be extended in
the future if court-appointed monitors decide the industry is committing fraud.
``All decisions relating to this case were appropriately made based upon the legal
merits of the case,'' he said.

Several lawmakers, however, expressed concern that top political appointees were
overruling the trial **lawyers** to shield the industry from an expensive loss.

Citing reports Wednesday in the Los Angeles Times and Washington Post, lawmakers
asked the department's inspector general Glenn A. Fine to determine if
high-ranking officials -- including Associate Attorney General Robert McCallum,
the department's No. 3 leader -- had improperly interfered.

``The administration needs to explain their sudden change in course,'' said Sen.
Tom Harkin, D-Iowa, while Sen. Richard Durban, D-Ill., accused the Justice
Department of ``selling out the American people.''

``I am deeply troubled by the appearance that Bush administration political

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

appointees pressured career Justice Department attorneys to protect tobacco companies,'' said Rep. Marty Meehan, D-Mass., who also signed one of two letters to Fine.

Regarding the call for an investigation, spokesman Holland said the inspector general ``will, no doubt, consider the request.''

The controversy also prompted an unusual exchange in court on Wednesday, when tobacco company **lawyers** gave closing arguments in the 8 1/2-month trial. Ted Wells, an attorney for Philip Morris USA, said the sudden change provided ``the most powerful evidence ... that this whole thing is a house of cards.''

Kessler replied: ``Perhaps it suggests that there are some additional influences being brought to bear on what was the government's case.''

Months ago Kessler urged the two sides to reach a settlement -- with no result so far. There was speculation Wednesday that the dramatic reduction of the government's smoking-cessation proposal was part of an attempt to facilitate talks by narrowing the distance between the parties on the size of a settlement.

In a five-hour summation, tobacco attorneys accused the government of hypocrisy and said it had failed to prove the companies conspired to mislead the public. Cigarette makers did not violate the anti-racketeering -- or RICO -- statute, but even if they did, their **lawyers** argued, the remedies were improper.

The shift to $10 billion for smoking cessation has further reduced the threat to the companies if Kessler finds them liable, as most observers think she will.

The government originally sought forfeiture of $280 billion in allegedly ill-gotten profits. That possibility was eliminated during the trial, when the U.S. Court of Appeals for the District of Columbia ruled that forfeiture was not an available sanction under civil provisions of RICO. The Justice Department has until July 20 to appeal to the U.S. Supreme Court.

Kessler may decide she cannot adopt other government proposals either because of the appeals court's ruling that sanctions under RICO can only be aimed at preventing future acts of fraud, not at undoing past misconduct.

To rule for the government, Kessler must find that the industry not only committed fraud in the past, but also that the fraud is likely to continue.

**Tobacco lawyers** said the conduct of their clients, while questionable at times, did not rise to the level of fraud. They also say the government has refused to acknowledge that the companies have been forthright with the public since their 1998 **settlement** with the states.

Ninety minutes will be allotted to both sides for rebuttal Thursday. Then Kessler, who tried the case without a jury, will be left to ponder 45,000 pages of testimony by more than 240 witnesses, along with about 15,000 exhibits. A ruling isn't expected for weeks or months.

---- INDEX REFERENCES ----

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Westlaw.

The New York Times

6/16/05 NYT A1

Page 1

6/16/05 N.Y. Times A1
2005 WLNR 9531256

New York Times (NY)
Copyright (c) 2005 The New York Times. All rights reserved.

June 16, 2005

Section: A

LAWYERS FOUGHT U.S. MOVE TO CURB TOBACCO PENALTY

ERIC LICHTBLAU

Senior Justice Dept officials reportedly ordered career lawyers running
government's **tobacco** racketeering trial to reduce penalties sought at close of
trial by $120 billion, over lawyers' objections; lawyers argued that move would be
seen as politically motivated and legally groundless; they claim lower penalty
recommendation ordered by Assoc Atty Gen Robert D McCallum would weaken
department's position in any possible **settlement** with industry, and would create
incentive for companies to engage in future misconduct; Justice Dept spokesman
claims that $10 billion reduction reflects effort to arrive at figure that would
comply with adverse decision from appellate court (M)

WASHINGTON, June 15 Senior Justice Department officials overrode the objections of
career lawyers running the government's tobacco racketeering trial and ordered
them to reduce the penalties sought at the close of the nine-month trial by
$120billion, internal documents and interviews show.

The trial team argued that the move would be seen as politically motivated and
legally groundless.

"We do not want politics to be perceived as the underlying motivation, and that is
certainly a risk if we make adjustments in our remedies presentation that are not
based on evidence," the two top lawyers for the trial team, Sharon Y. Eubanks and
Stephen D. Brody, wrote in a memorandum on May 30 to Associate Attorney General
Robert D. McCallum that was reviewed by The New York Times.

The two lawyers said the lower penalty recommendation ordered by Mr. McCallum
would weaken the department's position in any possible settlement with the
industry and "create an incentive for defendants to engage in future misconduct by
making the misconduct profitable."

At the close of a major trial that dozens of Justice Department lawyers spent five
years preparing, the department stunned a federal courtroom last week by reducing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the penalties sought against the industry, from $130billion to $10billion, over accusations of fraud and racketeering.

The decision generated protests from health advocates and Democratic lawmakers, who accused the Bush administration of political motives, and it prompted an internal departmental inquiry. But details of the behind-the-scenes debate over the issue had remained a mystery.

The department has vigorously defended the decision, denying political motives and saying the $10billion reflected an effort to arrive at a figure that would comply with an adverse decision from an appellate court this year that some officials said sharply limited the types of sanctions the department could seek. The department did not dispute the authenticity of the memo, but declined to make Mr. McCallum or other lawyers available to discuss it.

A spokesman for the department, Kevin Madden, said political considerations were never factored into the decision to reduce the penalty.

"This was a decision that was made on the merits of the case and that strictly followed the law," Mr. Madden said.

In light of the appellate court ruling, he said, "a decision was made by the department that the best argument for the government to make was one that would preserve credibility in the government's case with the trial judge, would result in a favorable decision from the trial judge and would result in a trial court decision sustainable upon appeal."

The newly disclosed documents make clear that the decision was made after weeks of tumult in the department and accusations from lawyers on the tobacco team that Mr. McCallum and other political appointees had effectively undermined their case. Mr. McCallum, No.3 at the department, is a close friend of President Bush from their days as Skull & Bones members at Yale, and he was also a partner at an Atlanta law firm, Alston & Bird, that has done legal work for R.J. Reynolds Tobacco, part of Reynolds American, a defendant in the case.

"Everyone is asking, 'Why now?'" said a Justice Department employee involved in the case who insisted on anonymity for fear of retaliation. "Why would you throw the case down the toilet at the very last hour, after five years?"

Ultimately, Mr. McCallum overruled the objections from the trial team, and the documents and interviews suggest that his senior aides took the unusual step of writing parts of the closing argument that Ms. Eubanks delivered last week in federal court in seeking the reduction in penalties.

Officials who insisted on anonymity said the change on the penalties provoked such strong objections from the trial team that some lawyers threatened to quit. Department officials have now proposed that a lower-level lawyer who has outlined the reasons for reduced penalties take over crucial parts of the remainder of the trial.

In another memo sent on Tuesday that was also reviewed by The Times, a senior official in the criminal division of the department recommended that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lower-level lawyer on the team, Frank Marine, who has supported the $10billion penalty internally and publicly, "be in charge of preparing" the final briefs and the proposed order on penalties.

That work would normally go to Ms. Eubanks, director of the team. Department officials said Wednesday that there had been no decision to replace Ms. Eubanks.

Mr. McCallum, in an op-ed article last week in USA Today, said the new decision on the penalties was driven by an appellate decision in February that found any damages had to be "forward looking" to prevent future wrongful acts.

"The trial court and the government are bound by this decision," he wrote, and that led the department to propose the $10billion penalty to pay for a stop-smoking program.

A judge will make the final decision on the penalty.

The explanations have not quieted complaints from Democrats. A group of 50 lawmakers sent a letter to Attorney General Alberto R. Gonzales on Wednesday urging him not to agree to an accord with the tobacco industry "based on the unreasonably weak demands made by the government last week."

This week, in response to Democrats' protests, the department disclosed that its Office of Professional Responsibility, which handles ethics complaints, planned to investigate accusations, largely by Democrats, of interference in the case.

Although Ms. Eubanks and Mr. Brody said in their May 30 memo that the lower penalty could create a perception of interference, they gave no direct evidence to show that the decision was politically motivated.

Still, the disclosure that career lawyers strongly objected is highly likely to provoke further accusations by antismoking advocates and Congressional Democrats.

In saying the decision was politically motivated, critics have pointed not only to Mr. McCallum's role at a law firm tied to the industry, a role that a Justice Department ethics office ruled did not prevent him from overseeing the case, but also to the industry's significant political contributions to the Republican Party. The industry gave $2.7million to Republicans last year and $938,000 to Democrats.

In their seven-page memo, Ms. Eubanks and Mr. Brody offered a point-by-point rebuttal to what they characterized as Mr. McCallum's "watered down approach." They said the higher penalty, as outlined by a health expert last month, was in keeping with the appellate court's "forward looking" approach and would help millions of people quit smoking in the next 25 years.

The trial team lawyers also suggested that resistance to the $130billion plan by senior Justice Department officials grew out of "sticker shock" over the costs that the industry would pay for the stop-smoking program.

The lawyers also expressed some frustration that Mr. McCallum had already reached a preliminary decision to reduce the proposed penalty "without reviewing the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

evidence that supports our factual and legal arguments." They said "it is regrettable that no one would even review" their rationale "and tell us where it went wrong."

The memo also questioned the handling of some government witnesses who were asked to alter their written testimony to reflect the department's concerns.

One witness, Matthew Myers, president of the Campaign for **Tobacco**-Free Kids, said in an interview Wednesday that Ms. Eubanks called him last month, hours before his final written testimony was due to be filed, and told him that Mr. McCallum and other senior officials wanted him to eliminate part of the testimony. The part the department wanted to omit, Mr. Myers said, centered on antismoking steps that he believed were wrongly omitted from the **tobacco settlement** in 1997, including limits on advertising.

"Eubanks was the good trouper, and she didn't let on at all what she thought of the request" to omit part of his testimony, Mr. Myers said. "But I said: 'No, I won't change it. It is what it is.'"

In the end, the only change he agreed to was an additional line that he did not know the steps the department would seek in the current case. Mr. Myers said he remained troubled by the case.

"To have the lawyers work on a case this long," he said, "and then just have the department basically throw it out seems despicable to me."

---- INDEX REFERENCES ----

COMPANY: RJ REYNOLDS TOBACCO CO

NEWS SUBJECT:  (Judicial (1JU36); Legal (1LE33))

REGION:  (USA (1US73); Americas (1AM92); North America (1NO39))

Language:  EN

OTHER INDEXING:  (Lichtblau, Eric; Mccallum, Robert D)  (ASSOC ATTY GEN ROBERT; DEPARTMENT; JUSTICE DEPARTMENT; JUSTICE DEPT; OFFICE OF PROFESSIONAL RESPONSIBILITY; RJ REYNOLDS TOBACCO; REPUBLICAN PARTY; SENIOR JUSTICE DEPT) (Alberto R. Gonzales; Alston Bird; Brody; Bush; Eubanks; Frank Marine; Kevin Madden; Madden; Matthew Myers; McCallum; Myers; Robert D. McCallum; Sharon Y. Eubanks; Stephen D. Brody; Ultimately)  (Smoking and Tobacco; Liability for Products; Suits and Litigation; Fines (Penalties); Smoking and Tobacco)

EDITION: Late Edition - Final

Word Count: 1812
6/16/05 NYT A1

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Westlaw.                                                          NewsRoom

6/20/05 WP-BUS (No Page)                                              Page 1


6/20/05 Wash. Post (Bus. Sec.) (Pg. Unavail. Online)
2005 WLNR 9720499

Washington Post
Copyright 2005 The Washington Post

**June 20, 2005**

Expert Witness Says Justice Told Him to Water Down Penalty Recommendation

By Carol D. Leonnig

WASHINGTON _ A top Justice Department official threatened to remove a government
expert from its witness list if he did not water down his recommended penalties
for the tobacco industry, the witness said in an interview Sunday.

Harvard University business professor Max Bazerman said a career trial attorney
told him senior Justice officials wanted him to change his recommendation that the
court appoint a monitor to review whether it was appropriate to remove senior
tobacco company management. Bazerman said the attorney was passing along a
``strong request'' the week before Bazerman was to take the witness stand on May 4
in the government's landmark racketeering case against the industry.

The government claims the tobacco industry engaged in a 50-year conspiracy to
defraud the public about the dangers and addictiveness of smoking.

Bazerman said the attorney told him the change _ opposed by the career lawyers on
the case _ had come from Justice Department Attorney Frank Marine and Associate
Attorney General Robert D. McCallum Jr.

Bazerman declined to name the attorney, saying he was concerned the person could
face retaliation from Justice Department superiors. Bazerman said the attorney
told him McCallum had threatened removing Bazerman from the government's witness
list and prohibiting him from testifying if Bazerman did not change his testimony.
In the proposed change, Bazerman said he was expected to say appointing a monitor
to consider removing senior management would likely be legally inappropriate under
certain circumstances. Bazerman said he refused to make the change and was
ultimately allowed to testify May 4.

``I would have felt I was lying under oath, and I couldn't do that,'' Bazerman
said. ``I thought then and I believe now that it was inappropriate influence to
weaken the government's case against the tobacco industry.''

Bazerman testified a court monitor should appointed by the judge to study whether
future violations could be prevented by removing longtime senior management.
Bazerman said he does not know why the government allowed him to testify.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In the six-year lawsuit, the Justice Department has argued that America's six largest tobacco companies lied about the dangers of smoking. The Justice Department stunned anti-smoking activists and members of Congress two weeks ago by announcing in the closing days of the eight-month trial that the government would cut its demand for an industry-funded smoking cessation program from $130 billion to $10 billion.

Bazerman said in an interview Sunday that he is coming forward because of recent reports in The Washington Post and the Los Angeles Times that the career trial team had pressured senior political appointees at Justice to weaken their case and urged other witnesses to soften their testimony against the industry.

``I want the government to behave appropriately. I can't think of an honest plausible reason other than political interference for what they're doing,'' he said of political appointees at Justice.

Justice Department spokesman Charles Miller said Sunday that Bazerman's interpretation of the government's motives was inaccurate but he declined to give details of the government's reasons.

``The issues discussed with Dr. Bazerman regarding his testimony were focused on ensuring that the department's proposals in this case complied with the long standing department policies that apply to all racketeering cases the government brings, policies that substantially pre-date this administration,'' Miller said.

Bazerman describes a career trial team, led by attorney Sharon Eubanks and her deputy Stephen Brody, increasingly under assault from all sides in the final months of the racketeering trial.

``It was clear they were fighting on multiple fronts, not just with the tobacco industry but with their own government,'' he said. ``They were asking me to do things and it was obvious their heart wasn't in it.''

Allegations of last-minute interference center on McCallum and Marine, a senior criminal attorney with Justice who has had a limited role in the government's case. As senior Justice officials pressured the trial team to reduce the smoking cessation program it wants the tobacco industry to fund, officials proposed that Marine oversee the drafting of the government's closing statement, said sources involved in the case.

Louis Clark, president of the Government Accountability Project, which is representing Bazerman, said the professor's account should prompt the government to conduct a probe independent from the Justice Department.

``In our twenty-eight years of experience, we've learned when there's this much smoke, there's definitely fire, and we as Americans need to find out where its coming from,'' Clark said.

Monday, U.S. District Judge Gladys Kessler, who is set to decide whether the industry engaged in a conspiracy and whether to impose penalties upon the companies, is to meet in a closed-door session with government and **tobacco** lawyers.Sources close to the case say they expect Kessler will question lawyers

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

about the government's last-minute reversal of its recommended penalties. Numerous members of Congress have called for an investigation of political interference into the case and on Friday four senators demanded McCallum be removed from the case or future **settlement** talks. The Justice Department's Office of Professional Responsibility has begun investigating the allegations.<

---- INDEX REFERENCES ----

NEWS SUBJECT:  (Judicial (1JU36); Legal (1LE33); Government Litigation (1GO18))

REGION:  (USA (1US73); Americas (1AM92); North America (1NO39))

Language:  EN

OTHER INDEXING:  (CONGRESS; GOVERNMENT ACCOUNTABILITY PROJECT; HARVARD UNIVERSITY; JUSTICE; JUSTICE DEPARTMENT; MCCALLUM)  (Bazerman; Charles Miller; Clark; Frank Marine; Gladys Kessler; Louis Clark; Marine; Max Bazerman; Miller; Numerous; Robert D. McCallum Jr; Sharon Eubanks; Stephen Brody; Witness)

Word Count: 1085
6/20/05 WP-BUS (No Page)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 4

# Congress of the United States
## Washington, DC 20515

June 8, 2005

The Honorable Glenn A. Fine
Inspector General
U. S. Department of Justice
Office of the Inspector General
950 Pennsylvania Avenue, NW, Suite 4322
Washington, DC 20530-0001

Dear Mr. Fine:

We request that the Office of the Inspector General investigate whether improper political interference led to yesterday's sudden reversal by the Department of Justice in the landmark tobacco case in U.S. District Court.  Despite the testimony of a key government witness and leading national expert that $130 billion is necessary to fund smoking cessation programs, the Justice Department, without explanation, asked the Court for only $10 billion.

We also ask you to investigate the role of Associate Attorney General Robert D. McCallum, Jr., a former tobacco industry lawyer, in this surprising reversal.

During the trial, a key government witness was Dr. Michael C. Fiore, who is considered the leading expert in the United States on smoking cessation.  At the request of former Secretary of Health and Human Services Tommy G. Thompson, Dr. Fiore recently led the Subcommittee on Cessation of the Interagency Committee on Smoking and Health.   This subcommittee included experts from the Centers for Disease Control and Prevention, National Cancer Institute, the American Cancer Society, the American Medical Association, the American Association of Health Plans, state health departments, and leading research institutions.[1]

Dr. Fiore based his testimony on the recommendations of this blue-ribbon panel.  He testified that a comprehensive cessation program would cost $5.2 billion per year, including $3.2 billion for a national quit line, $1 billion for a national media campaign, $500 million for research to improve cessation, and $500 million for training of clinicians.[2]  He also testified that 25 years of funding at this level would be necessary.  He stated:

> Given the current size of the smoking population — about 45 million people, about 30 million of who tell us they want to quit — it is reasonable to expect that it will take as many as 25 or more years to allow every smoker in America who wants to quit to do so successfully.[3]

---

[1] Subcommittee on Cessation, Interagency Committee on Smoking and Health, *Preventing 3 Million Premature Deaths, Helping 5 Million Smokers Quit: A National Action Plan for Tobacco Cessation* (Feb. 13, 2003).

[2] United States Direct Written Examination of Dr. Michael C. Fiore, M.D. M.P.H, Submitted Pursuant to Order #471, United States v. Philip Morris USA Inc. et al (2005).

[3] *Id.*

Glenn A. Fine
June 8, 2005
Page 2

Yesterday, the Justice Department abandoned Dr. Fiore's evidence-based estimate and asked only for a $10 billion smoking cessation program, funded at a rate of $2 billion per year for five years. The over-90% cut in the request was not explained. While the Justice Department's lawyer stated that the $2 billion in funding might need to be extended past five years, he added that the Department hoped "it won't be necessary."[4]

According to news reports, the sudden reversal was not the result of any new scientific evidence on smoking cessation. Rather, it apparently is the result of political pressures brought to bear on the prosecutors responsible for the case. In particular, a political appointee, Associate Attorney General Robert D. McCallum, Jr., has been linked to the decision. According to the *Washington Post*:

> Sources and government officials close to the case said that trial lawyers wanted to request $130 billion for smoking-cessation programs, but were pressured by leaders in the attorney general's office, particularly McCallum, to make the cut.[5]

Similarly, the *Los Angeles Times* reported:

> A person familiar with the situation, speaking on condition of anonymity, said the change was "forced on the tobacco team by higher-level, politically appointed officials of the Justice Department," including Associate Atty. Gen. Robert McCallum, who oversees the civil division.[6]

The *Los Angeles Times* has also reported that prior to joining the Justice Department, Mr. McCallum was a partner at a law firm that represented tobacco giant R.J. Reynolds and had signed a Supreme Court brief on behalf of the company. For reasons that are difficult to understand, he apparently had been cleared by the Department's ethics office for his participation in the trial.[7]

The Justice Department's approach to tobacco litigation should be based on the facts of the case and not political favors to the tobacco industry. It is highly unusual for government prosecutors to abandon evidence-based testimony by their key witnesses at the last moment in a major trial. It is even more unusual for changes in strategy to be dictated by a political appointee with clear ties to the industry that is the defendant in the case.

---

[4] *Transcript of Trial Record, Volume 113 Afternoon Session*, United States v. Philip Morris et al. (June 7, 2005).

[5] *Tobacco Escapes Huge Penalty*, Washington Post (June 8, 2005).

[6] *U.S. Eases Demands on Tobacco Companies*, Los Angeles Times (June 8, 2005).

[7] *Id.*

Glenn A. Fine
June 8, 2005
Page 3

We ask that you investigate whether the Justice Department's reversal was the result of improper political interference, determine the role played by Mr. McCallum and other political appointees, and assess whether the ethics process was handled appropriately.

Because of the urgency of the case, we ask that you conduct this investigation as quickly as possible.

Sincerely,

Henry A. Waxman
Ranking Minority Member
Committee on Government Reform

Martin T. Meehan
Democratic Co-Chairman
Congressional Task Force on
Tobacco and Health

# EXHIBIT 5

# Congress of the United States
## Washington, DC 20515

June 9, 2005

The Honorable Glenn A. Fine
Inspector General
U. S. Department of Justice
Office of the Inspector General
950 Pennsylvania Avenue, NW, Suite 4322
Washington, DC 20530-0001

Dear Mr. Fine:

Yesterday, we asked you to investigate the recent reversal by the Justice Department in the tobacco case and the role of Associate Attorney General Robert D. McCallum in this reversal. In light of recent developments, we are writing again to ask you to extend this investigation to cover several new matters.

*ABC News* reported yesterday that during the trial, the Justice Department asked a witness to soften the remedies that he had recommended in earlier written testimony.[1] President and CEO of the Campaign for Tobacco-Free Kids Matthew Myers stated, "I was taken aback when I was told that the political level people, the people who were not involved in the day-to-day trial, were demanding that I change my testimony."[2] The *Washington Post* reported today that a second witness received a similar request to change his testimony.[3] These are significant allegations of political interference in the litigation, and we urge you to investigate them.

Our letter yesterday asked you to investigate the role of Mr. McCallum, a political appointee who was alleged to have pressed for the shift in the Department's position. As the *Los Angeles Times* reported, Mr. McCallum has previous connections to the tobacco industry. He was a partner at a law firm that has represented R.J. Reynolds, and he signed an amicus brief for the Justice Department in 2002 that supported the position of R.J. Reynolds in litigation on cigarette smuggling before the Supreme Court.[4]

We have since learned that two other senior political appointees in the Justice Department also have connections to the tobacco industry. These are:

- Senior Counselor to the Attorney General Raul Yanes, whose clients previously included Philip Morris and R.J. Reynolds Tobacco Company;[5] and

- Chief-of-Staff Theodore Ullyot, a former partner at Kirkland & Ellis. This firm represents Brown & Williamson Tobacco Company in the Justice Department litigation.[6]

---

[1] *Government Seeks Reduced Damages in Lawsuit,* ABC News (June 8, 2005)
[2] *Id.*
[3] *Tobacco Witnesses Were Told to Ease Up,* Washington Post (June 9, 2005).
[4] *U.S. Eases Demands on Tobacco Companies,* Los Angeles Times (June 8, 2005).
[5] *Gonzales Tapes White House Lawyers As Aides,* Associated Press (Feb. 14, 2005).
[6] *Id.*

Glenn A. Fine
June 9, 2005
Page 2

Given these new disclosures, we urge you to expand your investigation to consider whether Mr. Yanes or Mr. Ullyot or any other Justice Department officials with ties to the tobacco industry played any role in the change in the Department's legal position.

At today's closing arguments in the case, Justice Department attorneys appeared to depart even further from the testimony of its expert that the tobacco industry should fund a $130 billion nationwide cessation program for all current smokers. Yesterday we learned that the Department is seeking only a small fraction of the funding needed for cessation. Today's testimony indicates that the Department may also be seeking to severely limit eligibility for the program, possibly excluding most existing smokers from coverage. While it is immensely difficult to ascertain exactly what the Department's new position actually is, this appears to be yet another instance of inappropriate political interference, which your investigation should examine.

Once again, thank you for your consideration of this important matter.

Sincerely,

Henry A. Waxman
Ranking Minority Member
Committee on Government Reform

Martin T. Meehan
Democratic Co-Chairman
Congressional Task Force on
Tobacco and Health

**EXHIBIT 6**



**U.S. Department of Justice**

Office of the Inspector General

June 13, 2005

The Honorable Henry A. Waxman
Ranking Member
Committee on Government Reform
U.S. House of Representatives
Washington, D.C. 20515

The Honorable Martin T. Meehan
Democratic Co-Chairman
Congressional Task Force on Tobacco
    and Health
U.S. House of Representatives
Washington, D.C. 20515

Dear Congressmen Waxman and Meehan:

    This is in response to your letters dated June 8 and June 9, 2005, in which you asked the Office of the Inspector General (OIG) to investigate whether improper political interference influenced the Department of Justice (Department) to reduce the damages it is seeking in the ongoing tobacco litigation. In addition, in your June 9 letter, you asked the OIG to review allegations that the Department asked certain witnesses to change their testimony in that litigation.

    After careful review, we have concluded that the letters raise issues that the OIG does not have jurisdiction to investigate. The OIG has jurisdiction to investigate all allegations within the Department, except for allegations that involve the actions of Department attorneys acting in their capacity to litigate, investigate, or provide legal advice. Those matters have been assigned to the Department of Justice Office of Professional Responsibility (DOJ OPR) to investigate, according to Attorney General Order 1931-94 (codified in the DOJ Reauthorization Act of 2002 (Public Law 107-273; 5 U.S.C.A. App. 3, § 8E)).

    As described in your letters, the allegations in this case fall within DOJ OPR's jurisdiction because they relate to the actions of Department attorneys concerning their authority to litigate, investigate, or provide legal advice. Therefore, we forwarded your letters to Marshall Jarrett, the head of DOJ OPR. He has informed us that DOJ OPR intends to initiate an investigation concerning these matters.

However, thank you for bringing these matters to our attention and for expressing confidence in the OIG's ability to conduct an independent investigation of these issues.

Please contact me if you have any questions about this response.

Sincerely,

Glenn A. Fine
Inspector General

cc: H. Marshall Jarrett, Counsel
    Office of Professional Responsibility
    Department of Justice

**EXHIBIT 7**

# Congress of the United States
## Washington, DC 20510
June 15, 2005

Honorable Alberto Gonzales
Attorney General
Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530

Dear Attorney General Gonzales:

We are writing to express our serious concern over the direction of the government's case in *United States of America vs. Philip Morris USA Inc. et al.* currently before the United States District Court for the District of Columbia.  Because of the extraordinary importance of this case for the health of the American people, we believe it is essential that we, as Members of Congress who have followed this issue closely, communicate these concerns directly to you.

Every dollar spent on smoking cessation and prevention -- to cure addicted smokers and to stop our children from beginning to smoke -- saves lives.  The Department of Justice's last-minute decision to abandon evidence and testimony and sharply reduce its demand in the case from a $130 billion program that would have substantially advanced the public health to a $10 billion program is inexplicable.  The decision to suddenly reduce the government's demand in this case by more than 90 percent cannot credibly be blamed on the D.C. Circuit's ruling regarding the unrelated remedy of disgorgement, as some in the Justice Department have attempted to claim.  In fact, the Department's trial team presented evidence supporting a $130 billion smoking cessation program three months after the Court of Appeals decision was issued.

As you know, the Department of Justice has been asked to investigate the circumstances surrounding this complete reversal.  Whatever the ultimate findings as to the reasons behind your Department's surprising actions, it is imperative that the Department not cause further damage by settling the case for insufficient relief.  It is our understanding that settlement discussions may be pursued in the coming weeks.

We strongly urge you not to enter into a settlement at this time based on the unreasonably weak demands made by the government last week.  Such a settlement would be contrary to the goal of exposing the tobacco companies' past misconduct and preventing future misconduct by the industry.

We also urge you to file a petition for certiorari to the United States Supreme Court regarding the D.C. Circuit's February 4, 2005 decision on interlocutory appeal on this case.  If allowed to stand, that D.C. Circuit decision will greatly undermine the ability of the government to battle corporate misconduct and corruption.  By prohibiting the government from disgorging the profits of proven unlawful conduct, the D.C.

Circuit's decision is inconsistent with the law of other circuits and strips prosecutors of an essential enforcement tool needed to root out illegal activity in criminal conspiracies and corporate board rooms.

As Senators and Representatives in Congress, we represent the interests of the people of the United States. On their behalf, on behalf of the 45 million Americans who deserve smoking cessation assistance, and especially on behalf of our nation's children, we urge you to put the health of the American people ahead of other interests in this case.

Sincerely,

_John F. Kerry_

_Hillary Rodham Clinton_

_J. Lieberman_

_Herb Kohl_

_Chris Dodd_

_Jon Corzine_

_Ron Wyden_

_Bill Nelson_

_Paul S. Sarbanes_

_Maria Cantwell_

_Mary L. Landrieu_

Jim Moran

Peter DeFazio

Dale E. Kildee

Marcy Kaptur

Lois Capps

Michael E. Capuano

Danny K. Davis

Chris Van Hollen

Lloyd Doggett

Jim McGovern

Daniel Lipinski

Ze Lofgren

Jim McDermott

John Lewis

Barney Frank

# EXHIBIT 8

# United States Senate

WASHINGTON, DC 20510
June 17, 2005

Honorable Alberto Gonzales
Attorney General
Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Attorney General Gonzales:

We are writing to urge you to take immediate action to salvage the Justice Department's landmark litigation against the tobacco industry, *United States of America vs. Philip Morris USA Inc. et al.*. In light of continued, detailed revelations about political interference in the litigation by senior Justice Department officials, we believe it is essential for you to direct Associate Attorney General Robert D. McCallum and other political appointees to recuse themselves from further involvement in this litigation and for you to take whatever other steps are necessary to ensure that there is no political interference in the future in this case. In addition, you should immediately restore authority for this litigation in the hands of the senior career attorneys who have shepherded this case since its inception.

As yesterday's *New York Times* makes clear, the Department's recent decision to reduce its claim for damages from $130 billion over 25 years to $10 billion over 5 years was made over the strong objections of the lead attorneys in the litigation. Specifically, these attorneys wrote:

"We do not want politics to be perceived as the underlying motivation, and that is certainly a risk if we make adjustments in our remedies presentation *that are not based on evidence*." (emphasis added)

According to the article, the lawyers further went on to write that the lower penalty recommendation would weaken the department's position with regards to future settlement discussions, and would *"create an incentive for defendants to engage in future misconduct by making the misconduct profitable."*

These most recent revelations are only the latest in a recent disturbing series of events in this case. Over the past 2 weeks, we have learned that the decision to seek a lower penalty contradicted the testimony of the government's own expert witnesses; that government attorneys pressured their own witnesses to alter their testimony to favor tobacco companies; and that, just one month ago, Department attorneys argued in favor of the higher penalties that they have asked the court to disregard. Indeed, the Department's own Office of Professional Responsibility has announced that it will conduct an investigation into the troubling pattern of behavior in this case.

This conduct cannot be allowed to continue. The very credibility of the Justice Department is at stake. At best, Mr. McCallum has demonstrated poor leadership and an inability to manage this case effectively. At worst, and even more troubling, he has allowed his political judgment to cloud the Department's six-year effort to ensure that the tobacco industry is held accountable for their decades of efforts to mislead the American people in order to hook them on a deadly habit that kills 400,000 Americans each and every year. For all of these reasons, we urge you to seek his immediate recusal, and put the interests of the American public ahead of the interests of big tobacco.

Sincerely,

**EXHIBIT 9**

# United States Senate
### WASHINGTON, DC 20510

June 20, 2005

Honorable Alberto Gonzales
Attorney General
Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Attorney General Gonzales:

In light of the controversy surrounding the government's handling of *United States of America vs. Philip Morris USA Inc. et al.*, currently before the United States District Court for the District of Columbia, we ask that you immediately issue a memorandum to all Department of Justice employees detailing their whistleblower protection rights under 5 U.S.C. § 2302. We also request that you make clear to Department of Justice employees that there will be no retaliation by managers against an employee who comes forward with information.

A June 19th *New York Times* article references a memo from two career attorneys on the trial team raising questions about political interference in the case and remedy changes that are not based on evidence. Anonymous officials suggested that some members of the trial team threatened to quit over concerns about the sudden reductions, and still another DOJ employee requested anonymity specifically out of fear of retaliation.

As you know, the DOJ Office of Professional Responsibility is investigating possible political interference in the last-minute decision to reduce the government's demand from $130 billion to $10 billion. In order to instill public confidence in our judicial system and in our Federal government, we hope that you will encourage DOJ employees with valuable information about this case to come forward. Protections for federal employees who report violations of laws, rules and regulations, abuses of authority, and dangers to public health or safety are essential for a transparent and trusted Federal government.

Sincerely,

FRANK R. LAUTENBERG

EDWARD M. KENNEDY

JACK REED

# EXHIBIT 10

# United States Senate

WASHINGTON, DC 20510

June 24, 2005

Honorable Alberto Gonzales
U.S. Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Dear Attorney General Gonzales:

In light of recent developments in the lawsuit the Department of Justice is prosecuting against the major tobacco companies, we request a meeting with you to discuss the Department's recent handling of the government's case.

We are concerned that the Department's apparent intention to seek $10 billion in remedies for smoking cessation is woefully inadequate to meet the needs of the 45 million Americans who currently smoke and those who will become addicted in the future due to the companies' ongoing efforts to obtain new consumers of their deadly products. We are aware of the Department's statement that a restricted remedy is called for under the February 4, 2005, decision of the U.S. Court of Appeals for the District of Columbia, but are mystified by this sudden and extreme interpretation of that decision.

Today, 45 million lives are at stake in this process. Forty-five million Americans are using tobacco products despite what we now know -- tobacco use is the leading preventable cause of death and disease in this country. The purpose of the government's lawsuit is to hold accountable the corporate entities that deceived and misled the American people about the addictive nature of tobacco products and the health risks associated with using them.

We are concerned that the Department may be willing to settle for insufficient remedies. We are dismayed at the prospect that the lives of these American people may be compromised by a legal strategy influenced by political pressure.

It is our hope to discuss with you the Department's recent handling of the case, the perception of inappropriate influence on the attorneys leading the case and the circumstances surrounding the talk of an early settlement. We look forward to meeting with you as soon as practicable.

Sincerely,

Richard J. Durbin
United States Senator

Jack Reed
United States Senator

Frank Lautenberg
United States Senator

Tom Harkin
United States Senator

Edward Kennedy
United States Senator

# EXHIBIT 11

     

June 17, 2005

The Honorable Alberto Gonzales
Attorney General
United States Department of Justice
Robert F. Kennedy Building
Tenth Street and Constitution Avenue, NW
Washington, DC 20530

Transmitted Via Fax:  202-307-6777

Dear Attorney General Gonzales:

We are writing today to express our concern over recent developments in the Department's case against the tobacco industry.

The arguments laid out last week by the Department in your closing statements fall short of the smoking cessation plan recommended by your own expert witness, Dr. Michael Fiore of the University of Wisconsin, who recommended a 25-year, $130 billion program that would include a national telephone quitline network, universal access to smoking cessation medication and counseling, an extensive media campaign, research and education of medical providers.  Until last week, the Department gave absolutely no indication that there was agreement around this recommendation.  During closing arguments, Department lawyers unexpectedly abandoned the proposal and called for only a five-year, $10 billion smoking cessation program.  This dramatic reversal is not warranted by the law or facts of this case and is inconsistent with the powerful liability case the Department has made.

Unless the Department reverses course and seeks strong remedies, you will miss a truly historic opportunity to hold the tobacco industry legally accountable for its wrongful behavior and reduce tobacco's terrible toll in health, lives and money.  We urge that the Department submit a proposed remedies order for the June 27th deadline that is consistent with the strong case put on by the trial team prior to closing arguments and with the recommendations made by your own expert witnesses, including fundamental reform of the industry's harmful marketing practices; the establishment of well-funded, sustained, nationwide programs to prevent kids from smoking and help smokers quit; and financial penalties against the tobacco companies should they continue to addict our children.

Furthermore, we urge you not to enter into a settlement with the tobacco industry based on the arguments laid out in your closing arguments to the court.  Such a settlement would fail to hold the tobacco industry accountable for decades of wrong-doing that has resulted in millions of premature deaths, addicted smokers and our nation's children.

Sincerely,

American Cancer Society
American Heart Association
American Lung Association

The Honorable Alberto Gonzales
Page Two

American Public Health Association
American Academy of Chest Physicians
American Association for Respiratory Care
American College of Cardiology
American Dental Hygienists' Association
Americans for Nonsmokers' Rights
American Thoracic Society
Campaign for Tobacco-Free Kids
Community Anti-Drug Coalition of America
National Association of County and City Health Officials
National Latino Council on Alcohol and Tobacco
Oncology Nursing Society
Oral Health America
Society for Public Health Education
Society for Research on Nicotine and Tobacco


cc:     President George W. Bush

# EXHIBIT 12

June 13, 2005

Honorable Gladys Kessler
United States District Court
for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Re: *United States v. Philip Morris et al,*
   99-CV-2496

Dear Judge Kessler:

I am chairman of the Citizens' Commission to Protect the Truth, which filed an amicus
brief in the above entitled matter on February 24, 2005.

I write out of concern about reported recent actions of parties in this case that may be
undermining the integrity with which you have conducted this trial.

During closing arguments last week, attorneys for the Justice Department abandoned the
expert testimony that they had presented to support forward-looking relief to fund
national public education, smoking-prevention and smoking-cessation efforts. That
testimony had indicated that $130 billion over 25 years would be required to mount
effective efforts; at the last minute, Justice Department lawyers reduced the amount
requested to $10 billion over 5 years and abandoned their earlier demand that the
tobacco companies fund programs to help 45 million current smokers quit. News stories
in the Los Angeles Times, Washington Post and New York Times, and on the
Associated Press wire, reported that other witnesses, including Matthew Meyers,
president of the Campaign for Tobacco-Free Kids, and Michael Eriksen, former director
of the Office on Smoking and Health at the Centers for Disease Control and Prevention,
were pressured by Justice Department attorneys to alter the testimony those witnesses
had prepared.

It appears that these decisions were transmitted to the litigating attorneys by Robert
McCallum, a political appointee who supervises the Civil Division and who ordered the
attorneys to abandon their expert testimony in the case. Mr. McCallum came to his post
from Alston & Bird, a law firm that has represented R.J. Reynolds, a defendant in this
case. Moreover, the tobacco industry--led by co-defendants Philip Morris/Altria, R.J.
Reynolds, and Lorillard-- contributed more than $2.7 million in 2004 alone to the
Republican party.

My own experiences with tobacco companies while I was Secretary of Health,
Education, and Welfare from 1977 to 1979, as well as the companies' long resistance to
public efforts to curb smoking and the documented history of their deceptive behavior,

Honorable Gladys Kessler
June 13, 2005
Page 2

lead me to suspect the worst about the government's abandonment of its own testimony. When I was secretary, the tobacco industry fiercely lobbied against any funds to support public education of the dangers of smoking. The ridiculously reduced remedies now sought mock any claim that they are sufficient to support an effective public health campaign.

From what I have read in the past few days, I am concerned that the actions of the Justice Department political appointees and the defendants are undermining the integrity of the judicial process.

Your Honor, you yourself have noted that "additional influence" may have been "brought to bear on the government's position." When witnesses are asked to tone down the truth; when attorneys are ordered by their superiors to counter their own expert witnesses; when those superiors are political appointees with close ties to defendants who have contributed millions of dollars to the political party and administration which appointed them, serious questions arise as to whether parties to this case are thwarting the ability of this Court to render justice on the present record.

I urge the Court to conduct a hearing not only to protect the integrity of the judicial process, but also to ensure that the Department of Justice, charged with protecting the interests of the United States, is fulfilling its responsibility. Such a hearing can determine, from witnesses under oath, what happened and whether there were improper attempts to obstruct the judicial process. Furthermore, because it appears that non-experts in political positions ordered the government attorneys trying the case to seek a remedy counter to that proposed by their own expert witnesses, a hearing could also determine what, in fact, an appropriate remedy would be.

The Court has the inherent power to act in this manner. The Tunney Act of 1974 (15 U.S.C. § 16) suggests by analogy procedures the Court might invoke. The Tunney Act was passed in the wake of a similar scandalous situation whereby the Justice Department and International Telephone and Telegraph Corporation (ITT), the defendant in an anti-trust suit, agreed to an unconscionable settlement. It later came to light that ITT had made a substantial donation to the Republican National Convention, and that President Nixon and his White House assistants applied considerable pressure to the Deputy and Associate Attorneys General overseeing the case to reach a settlement advantageous to ITT. The Tunney Act thus was designed to ensure that government anti-trust settlements serve the public interest and that political money and backroom politics not be permitted to corrupt the judicial process.

In this analogous situation, the Court can take testimony from government officials and corporate executives, lobbyists and other representatives of defendants to determine, for example, whether they discussed this case with political appointees in the White House, the Republican National Committee or the Justice Department in order to influence the position the government should take in fashioning relief. The Court can take testimony

Honorable Gladys Kessler
June 13, 2005
Page 3

from the Justice Department litigators about the pressures they faced to reduce their request for relief. It can ask higher up Justice Department officials whether they were in contact with the tobacco industry or any individuals at the White House. The Court can recall witnesses to obtain from them under oath the content of their conversations with Justice Department lawyers about changing their testimony.

In a politically charged situation such as this, with enormously high financial stakes for the tobacco industry, which has contributed so heavily to the parties in control of the other two branches of government, this Court is the only forum in which to assure an objective examination of what has transpired in this case. At stake is not only the integrity of the judicial process, but millions of lives that might be saved by a full scale smoking cessation and prevention campaign.

Where defendants have such a long record of deception and manipulation of the public, and so many individuals have been killed and crippled by the product they sell, it is essential that justice be both rendered and perceived. The only way that can happen is for this Court to conduct a Tunney-like hearing into the causes of the government's startling change of position.

In view of the foregoing, I urge this Court to hold hearings to determine whether the judicial process in this case has been compromised and to determine appropriate and effective remedies for defendants' misconduct.

Sincerely,


Joseph A. Califano, Jr.


Cc: All counsel on attached service list

# EXHIBIT 13

# CREW | citizens for responsibility and ethics in washington

June 28, 2005

**FOIA REQUEST**

Melanie Ann Pustay
Deputy Director
Office of Information and Privacy
Department of Justice
Suite 570, Flag Building
Washington, D.C.

**BY FAX: 202-514-1009**

Dear Ms. Pustay:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, et seq, and U.S. Department of Justice regulations, 28 CFR Part 16.

This request is for any all records in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General relating in any way to the government's proposed penalty in United States of America v. Philip Morris, Inc., et al., Civil Action No. 99-2496 (GK) (D.D.C.) (hereinafter "tobacco lawsuit."). Specifically, CREW seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from January 1, 2001, to the present, discussing or mentioning in any way any penalty that the U.S. Department of Justice, on behalf of the plaintiff United States of America, can, may, should or will propose in the above-referenced litigation. This request includes, but is not limited to, records discussing, mentioning, or referring in any way to the government's decision to reduce the penalties it is seeking against the tobacco industry from $130 billion to $10 billion. CREW also seeks all records relating in any way to any offer of settlement in the tobacco lawsuit from any source whatsoever, including, but not limited to, Philip Morris, Inc., R.J. Reynolds Tobacco Co., Brown & Williamson Tobacco Corp., Lorillard Tobacco Co., Inc., Liggett Group, Inc., American Tobacco Co., Philip Morris Companies, N.C., British American Tobacco, P.L.C., British American Tobacco, Ltd., Philip Morris Companies, BAT P.C.C. & BAT Investments, the Council for Tobacco Research – U.S.A., Inc., and The Tobacco Institute, Inc.

In addition, CREW seeks any and all records of any contacts between any and all individuals in the Offices of the Attorney General, Deputy Attorney General, and

Associate Attorney General and the White House concerning in any way the tobacco lawsuit. CREW also seeks records of any contacts between Associate Attorney General Robert D. McCallum and the law firm Alston & Bird concerning in any way the tobacco lawsuit.

We seek records of any and all kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. §552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**Request for Expedition**

2

Pursuant to 5 U.S.C. §552(a)(6)(E)(I) and Department of Justice regulations, 28 CFR Part 16, CREW requests that the Department of Justice expedite the processing of this request in light of the compelling need for the requested information. CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the Freedom of Information Act, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. CREW's website, www.citizensforethics.org, contains numerous examples of its efforts, including a link to a site, prepared by CREW, that details the many activities of Jack Abramoff, a Washington lawyer and lobbyist currently under criminal investigation, and the many powerful individuals linked to Abramoff through such things as campaign contributions. CREW recently published a report, *Addicted to Porn: How Members of Congress Benefit from Pornography*, that details the campaign contributions that members of Congress had received from corporations involved in pornography. It is CREW's hope that by disseminating this type of information, the public will be better able to evaluate the actions of our public officials and will have a more effective voice, including in the voting booth.

There is a particular urgency in informing the public about the circumstances surrounding the Department of Justice's proposed penalties in the tobacco lawsuit. News reports have suggested that the proposed penalty was the product of improper political influence brought to bear on the government's trial team of career lawyers and that these influences included improper attempts to have government witnesses alter their trial testimony. The public, as well as the court that is considering this matter, has a need to know the true facts underlying the government's proposed penalties. Accordingly, CREW requests that this request be expedited.

### Fee Waiver Request

In accordance with 5 U.S.C. §552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the individuals and organizations that influence or attempt to influence the litigating position of the United States of America in a lawsuit of major and far-reaching consequences.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in

3

government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

If you have any questions about this request or foresee any problems in releasing fully the requested records on an expedited basis, please call either Anne Weismann or Melanie Sloan at (202) 588-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Anne Weismann, Citizens for Responsibility and Ethics in Washington, 11 Dupont Circle, N.W., 2nd Floor, Washington, D.C. 20036.

Sincerely,

ANNE L. WEISMANN

4

```
┌─────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT    │
└─────────────────────────────────────┘
```

```
                              TIME   : 06/28/2005 09:46
                              NAME   : CREW
                              FAX    : 2025885563
                              TEL    : 2025885565
                              SER.#  : BROM2J870748
```

```
┌────────────────────────────────────────────────────────────────────────┐
│                                                                          │
│       DATE,TIME              06/28  09:45                                 │
│       FAX NO./NAME           2025141009                                   │
│       DURATION               00:01:37                                     │
│       PAGE(S)                05                                           │
│       RESULT                 OK                                           │
│       MODE                   STANDARD                                     │
│                              ECM                                          │
│                                                                          │
└────────────────────────────────────────────────────────────────────────┘
```

# EXHIBIT 14

**U.S. Department of Justice**

Office of Information and Privacy

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**JUL 1 1 2005**

Ms. Anne Weismann
Citizens for Responsibility and Ethics
    in Washington              Re:    AG/05-R0788
11 Dupont Circle, N.W.                DAG/05-R0789
2nd Floor                             ASG/05-R0790
Washington, DC 20036                  MAP:CLM:NT

Dear Ms. Weismann:

    This is to acknowledge receipt of your letter dated June 28, 2005, which was received in this Office on July 1, 2005, in which you requested records concerning the government's proposed penalty in *United States v. Philip Morris, Inc.* This response is being made on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.

    We have interpreted your letter as requesting expedited processing of your request pursuant to the Department's standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii) (2003). Based on the information you have provided, I have determined that your request for expedited processing under this standard should be denied. This Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally. In addition, the primary activity of your organization does not appear to be information dissemination, which is required for a requester to qualify for expedited processing under this standard. Nevertheless, please be advised that your request has been assigned to a FOIA Specialist in this Office and searches will be initiated in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.

    Because the records you seek are maintained outside of this Office, we have not been able to complete the searches to determine whether there are records within the scope of your request. Accordingly, we will be unable to comply with the twenty-working-day time limit in this case, as well as the ten additional days provided by the statute. In an effort to speed up our record searches, you may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our record searches to discuss either of these options.

    We have not yet made a decision on your request for a fee waiver. We will do so after we determine whether or not fees will be assessed for this request.

−2−

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact Nicole Trudeau, the analyst processing your request, at (202) 514-3642.

If you are not satisfied with the denial of your request for expedited processing, you may administratively appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, DC 20530-0001, within sixty days from the date of this letter. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Melanie Ann Pustay

Melanie Ann Pustay
Deputy Director

**EXHIBIT 15**

# CREW | citizens for responsibility and ethics in washington

July 18, 2005

Co-Director
Office of Information and Privacy
United States Department of Justice
Flag Building
Suite 570
Washington, D.C. 20530-0001

Re: <u>Freedom of Information Act Appeal</u>

Dear Sir:

By letter dated July 11, 2005, Melanie Ann Pustay, Deputy Director, Office of Information and Privacy, U.S. Department of Justice ("DOJ"), advised me that the request of Citizens for Responsibility and Ethics in Washington ("CREW") for expedition of its Freedom of Information Act "(FOIA") request dated June 28, 2005, was denied. CREW hereby appeals that determination and requests that you reverse it for the reasons set forth below.

CREW's FOIA request of June 28, 2005, sought all records in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General relating to the government's proposed penalty in <u>United States v. Philip Morris, Inc., et al.</u>, Civil Action No. 99-2496 (GK). CREW also sought all records relating to any offer of settlement in that lawsuit, records of all contacts between any individuals in the Offices of the Attorney General, Deputy Attorney General and Associate Attorney General and the White House concerning the tobacco lawsuit, and records of any contacts between Associate Attorney General Robert D. McCallum and the law firm Alston & Bird concerning the tobacco lawsuit. In accordance with 5 U.S.C. §552(a)(6)(E)(ii) and DOJ regulations, 28 CFR Part 16, CREW requested that DOJ expedite its processing of CREW's FOIA request.

In her letter of July 11, 2005, Ms. Pustay characterized CREW's request for expedition as based only on "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," pursuant to 28 CFR 16.5(d)(1)(ii)(2003). She denied that request based on the inability of her office to "identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally." She also found that "the primary activity" of CREW "does not appear to be information dissemination."

This determination is wrong as a matter of law and fact. As CREW explained in its request for expedition, there is a particular urgency in informing the public about the circumstances surrounding DOJ's proposed penalty in the tobacco lawsuit. A legion of news reports have suggested that the proposed penalty was the product of improper political influence brought to bear on the government's trial team of career lawyers and that these influences included improper attempts to have government witnesses alter their trial testimony. I have attached copies of these news articles to this letter (Attachment A). In addition, numerous members of Congress have called for an investigation into these very serious matters, and written letters to the Attorney General expressing their concerns about the possibility that the government's proposed penalty was the product of improper influence and raising questions about the integrity of the Department of Justice. *See* Attachment B. And DOJ's own Office of Professional Responsibility has initiated an investigation into these charges. *See* Attachment C.

Moreover, the government's proposed penalty, the subject matter of CREW's FOIA request, was made in litigation that will have a significant and far-reaching effect, as demonstrated by the magnitude of the monetary penalties that have been under consideration in this matter, and the degree of public attention given to DOJ's most recent proposal. The urgency for this information to be made public could not be clearer, as the government's proposal implicates the rights and responsibilities of millions of Americans and tobacco companies that make up some of the most powerful and lucrative businesses in the United States and abroad.[1] This urgency is heightened by the advanced stage of the tobacco litigation, wherein the district court is currently considering what, if any, penalties should be imposed against the defendants. *See* Attachment E (letter from Joseph A. Califano, Jr., former Secretary of Health, Education and Welfare, to the Honorable Gladys Kessler).

Second, CREW has demonstrated that it is "engaged primarily in disseminating information," as required by 28 CFR 16.5(d)(1)(ii). As we explained in our request for expedition, CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the Freedom of Information Act, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. CREW's website, www.citizensforethics.org, contains numerous examples of its efforts, including a link to a site, prepared by CREW, that details the many activities of Jack Abramoff, a Washington lawyer and lobbyist currently under criminal investigation, and the many powerful individuals linked to Abramoff through such things as campaign contributions. CREW recently published a report, *Addicted to Porn: How Members of Congress Benefit from Pornography*, that details the campaign contributions that members of Congress had received from corporations involved in pornography. As with the Electronic Privacy Information Center and the

---

[1] *See* Attachment D (letter from 18 health organizations to the Attorney General).

ACLU, two organizations that the courts have found satisfy this criteria,[2] CREW "'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'" ACLU, 321 F.Supp.2d. at 30 n.5, *quoting* EPIC, 241 F.Supp.2d at 11.

We also note that DOJ's Civil Division, by letter dated July 7, 2005,  granted CREW's request for expedition pursuant to 28 CFR 16.5(d)(1)(ii) for a comparable FOIA request relating to the tobacco litigation.  The Civil Division's determination that CREW has demonstrated a "compelling need" and is therefore entitled to expedition of its FOIA request based on the same record presented here compels a reversal of the Office of Information and Privacy's initial determination to the contrary.[3]

Finally, CREW's request for expedition also satisfies the separate criteria set forth in 28 CFR 16.5(d)(2)(iv), in that it involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."  As an initial matter, we note that DOJ failed to even consider the applicability of this regulation, notwithstanding DOJ regulations that require "[a] component that receives a request that must be handled by the Office of Public Affairs" to "forward it immediately to that office by hand-delivery or fax."  28 CFR 16.5(d)(2).[4]

On the merits of this independent basis for expedition, the degree of media attention paid to the subject matter of CREW's FOIA request and the questions that have been raised about the integrity of the government's proposal unquestionably demonstrate that CREW is entitled to expedition of its request.

---

[2] *See* ACLU v. U.S. Dep't of Justice, 321 F.Supp.2d 24, 30 (D.D.C. 2004); EPIC v. Dep't of Defense, 241 F.Supp.2d 5, 11 (D.D.C. 2003).

[3] If, as the D.C. Circuit has found, the "compelling need" set forth in the statutory criteria for expedition sets "a government-wide rather than an agency-specific standard," it necessarily follows that within an agency there cannot be differing conclusions by two different agency components as to what constitutes "compelling need." *See* Al-Fayed v. CIA, 254 F.3d 300, 306 (D.C. Cir. 2001).

[4] CREW is herewith submitting to DOJ's Office of Public Affairs a copy of its original request for expedition made to the Office of Information and Privacy, along with a copy of this appeal.

Under these circumstances, CREW satisfies fully the criteria for expedition of its FOIA request and, accordingly, the initial determination by the Office of Information and Privacy denying CREW's request must be reversed.

Sincerely,

ANNE L. WEISMANN

cc: Director of Public Affairs
    U.S. Department of Justice

4

# EXHIBIT 16

# CREW | citizens for responsibility and ethics in washington

July 18, 2005

**FOIA REQUEST**

Tasio Scalinos
Director
Office of Public Affairs
U.S. Department of Justice
Room 1128
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Dear Ms. Scalinos:

By letter dated June 28, 2005, Citizens for Responsibility and Ethics in
Washington ("CREW") submitted to the Office of Information and Privacy, U.S.
Department of Justice, a request for records pursuant to the Freedom of Information Act
("FOIA"), 5 U.S.C. §552, et seq, and U.S. Department of Justice regulations, 28 CFR
Part 16. The request sought all records in the Offices of the Attorney General, Deputy
Attorney General, and Associate Attorney General relating in any way to the
government's proposed penalty in United States of America v. Philip Morris, Inc., et al.,
Civil Action No. 99-2496 (GK) (D.D.C.) (hereinafter "tobacco lawsuit."). CREW also
sought all records relating in any way to any offer of settlement in the tobacco lawsuit
from any source whatsoever, and all records of any contacts between any and all
individuals in the Offices of the Attorney General, Deputy Attorney General, and
Associate Attorney General and the White House concerning in any way the tobacco
lawsuit. In addition, CREW sought records of any contacts between Associate Attorney
General Robert D. McCallum and the law firm Alston & Bird concerning in any way the
tobacco lawsuit. A copy of this request is attached.

CREW requested that OIP expedite CREW's FOIA request in light of the
compelling need for the requested information. As explained in our request of June 28,
2005, CREW is a non-profit corporation engaged primarily in disseminating information
it gathers from a variety of sources, including the Freedom of Information Act, and seeks
the information requested in this FOIA request for the express purpose of disseminating
it to the public. CREW's website, www.citizensforethics.org, contains numerous
examples of its efforts, including a link to a site, prepared by CREW, that details the
many activities of Jack Abramoff, a Washington lawyer and lobbyist currently under
criminal investigation, and the many powerful individuals linked to Abramoff through
such things as campaign contributions. CREW recently published a report, *Addicted to
Porn: How Members of Congress Benefit from Pornography*, that details the campaign

contributions that members of Congress had received from corporations involved in pornography.

Moreover, there is a particular urgency in informing the public about the circumstances surrounding the Department of Justice's proposed penalties in the tobacco lawsuit. News reports have suggested that the proposed penalty was the product of improper political influence brought to bear on the government's trial team of career lawyers and that these influences included improper attempts to have government witnesses alter their trial testimony. The public, as well as the court that is considering this matter, have a need to know the true facts underlying the government's proposed penalties.

By letter dated July 11, 2005, Melanie Ann Pustay, Deputy Director of the Office of Information and Privacy, advised CREW that our request for expedition had been denied. A copy of that letter is also attached. CREW has now appealed that determination; a copy of CREW's appeal together with attachments is enclosed herewith.

CREW also requests, pursuant to 28 CFR 16.5(d)(1)(iv), that its request be expedited because the underlying subject of the request is a matter of widespread and exceptional media interest, as documented in the numerous news articles submitted with CREW's appeal of July 18, 2005. Moreover, there exist possible questions about the government's integrity which affect public confidence. As we explained in our initial request for expedition and in our appeal, press articles, members of Congress, and numerous other public health organizations have raised serious questions about whether the government's proposed penalty in the tobacco litigation is the result of improper political influence. Indeed, DOJ's own Office of Professional Responsibility has initiated an investigation into these allegations. Thus, CREW satisfies fully the requirements for expedition set out in 28 CFR 16.5(d).

For the foregoing reasons, as well as those set forth in CREW's FOIA request of June 28, 2005, and its appeal of July 18, 2005, CREW requests its June 28 FOIA request be expedited.

Sincerely,


ANNE L. WEISMANN

cc: Melanie Ann Pustay

**EXHIBIT 17**

**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

AUG   9 2005

Ms. Anne Weismann
Citizens for Responsibility and Ethics
    in Washington                    Re:    AG/05-R0788
11 Dupont Circle, N.W.                            DAG/05-R0789
2ⁿᵈ Floor                                         ASG/05-R0790
Washington, DC  20036                             MAP:CLM:NT

Dear Ms. Weismann:

    This is in response to your letter dated July 18, 2005, to the Director of the Office of Public Affairs seeking expedited processing of your Freedom of Information Act request for records concerning the government's proposed penalty in *United States v. Philip Morris, Inc.*

    In your letter to the Office of Public Affairs, you requested expedited processing on the basis that the material requested is "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5 (d)(1)(iv). Pursuant to Department policy, the Director of the Office of Public Affairs makes the decision whether to grant or deny expedited processing under this standard. Id. § 16.5 (d)(2). Please be advised that the Director has granted your request for expedited processing.

    As we advised you in our letter dated July 11, 2005, we have already initiated searches in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General. If you have any questions regarding this matter, you may contact Nicole Trudeau, the analyst handling your request, by telephone at the above number or you may write to her at the above address.

    Sincerely,

Melanie Ann Pustay

Melanie Ann Pustay
Deputy Director

# EXHIBIT 18



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

AUG 1 2 2005

Anne L. Weismann, Esq.
Citizens for Responsibility
   and Ethics in Washington          Re:   Appeal No. 05-2360
Second Floor                               Request Nos. 05-R0788
11 Dupont Circle, NW                       through R0790
Washington, D.C.  20036                    RLH:ADW

Dear Ms. Weismann:

      This responds to your letter dated July 18, 2005, in
which you appealed from the action of the Office of
Information and Privacy's Deputy Director, Melanie Ann Pustay,
acting on behalf of the Offices of the Attorney General,
Deputy Attorney General, and Associate Attorney General,
denying your request for expedited processing of your request
for access to records concerning certain matters relating to
the government's proposed penalty in *United States v. Philip
Morris, Inc.*

      I have been advised that the Office of Public Affairs has
determined that your request should be afforded expedited
treatment.  Accordingly, your appeal is moot.

                              Sincerely,

                              Richard L. Huff
                              Co-Director

# EXHIBIT 19

# CREW | citizens for responsibility and ethics in washington

June 28, 2005

**FOIA REQUEST**

James M. Kovakas
Freedom of Information/Privacy Act Officer
Civil Division
Department of Justice
Room 7304
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530-0001

**BY FAX: 202-616-8202**

Dear Mr. Kovakas:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, et seq, and U.S. Department of Justice regulations, 28 CFR Part 16.

This request is for any all records relating in any way to the government's proposed penalty in United States of America v. Philip Morris, Inc., et al., Civil Action No. 99-2496 (GK) (D.D.C.) (hereinafter "tobacco lawsuit."). Specifically, CREW seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from January 1, 2001, to the present, discussing or mentioning in any way any penalty that the U.S. Department of Justice, on behalf of the plaintiff United States of America, can, may, should or will propose in the above-referenced litigation. This request includes, but is not limited to, records discussing, mentioning, or referring in any way to the government's decision to reduce the penalties it is seeking against the tobacco industry from $130 billion to $10 billion. CREW also seeks all records relating in any way to any offer of settlement in the tobacco lawsuit from any source whatsoever, including, but not limited to, Philip Morris, Inc., R.J. Reynolds Tobacco Co., Brown & Williamson Tobacco Corp., Lorillard Tobacco Co., Inc., Liggett Group, Inc., American Tobacco Co., Philip Morris Companies, N.C., British American Tobacco, P.L.C., British American Tobacco, Ltd., Philip Morris Companies, BAT P.C.C. & BAT Investments, the Council for Tobacco Research – U.S.A., Inc., and The Tobacco Institute, Inc.

We seek records of any and all kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail

messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. §552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

### Request for Expedition

Pursuant to 5 U.S.C. §552(a)(6)(E)(I) and Department of Justice regulations, 28 CFR Part 16, CREW requests that the Department of Justice expedite the processing of this request in light of the compelling need for the requested information. CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the Freedom of Information Act, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. CREW's website, www.citizensforethics.org, contains numerous examples of its efforts,

including a link to a site, prepared by CREW, that details the many activities of Jack Abramoff, a Washington lawyer and lobbyist currently under criminal investigation, and the many powerful individuals linked to Abramoff through such things as campaign contributions. CREW recently published a report, *Addicted to Porn: How Members of Congress Benefit from Pornography*, that details the campaign contributions that members of Congress had received from corporations involved in pornography. It is CREW's hope that by disseminating this type of information, the public will be better able to evaluate the actions of our public officials and will have a more effective voice, including in the voting booth.

There is a particular urgency in informing the public about the circumstances surrounding the Department of Justice's proposed penalties in the tobacco lawsuit. News reports have suggested that the proposed penalty was the product of improper political influence brought to bear on the government's trial team of career lawyers and that these influences included improper attempts to have government witnesses alter their trial testimony. The public, as well as the court that is considering this matter, has a need to know the true facts underlying the government's proposed penalties. Accordingly, CREW requests that this request be expedited.

### Fee Waiver Request

In accordance with 5 U.S.C. §552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the individuals and organizations that influence or attempt to influence the litigating position of the United States of America in a lawsuit of major and far-reaching consequences.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

If you have any questions about this request or foresee any problems in releasing fully the requested records on an expedited basis, please call either Anne Weismann or Melanie Sloan at (202) 588-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Anne Weismann, Citizens for Responsibility and Ethics in Washington, 11 Dupont Circle, N.W., 2nd Floor, Washington, D.C. 20036.

Sincerely,

ANNE L. WEISMANN

4

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT        │
└─────────────────────────────────────────┘

                              TIME   : 06/28/2005 09:48
                              NAME   : CREW
                              FAX    : 2025885563
                              TEL    : 2025885565
                              SER.#  : BROM2J870748


┌────────────────────────────────────────────────────────────────────┐
│                                                                      │
│      DATE,TIME            06/28  09:47                                │
│      FAX NO./NAME         2026168202                                  │
│      DURATION            00:01:36                                     │
│      PAGE(S)             05                                           │
│      RESULT              OK                                           │
│      MODE                STANDARD                                     │
│                          ECM                                          │
│                                                                      │
└────────────────────────────────────────────────────────────────────┘
```

**EXHIBIT 20**



**U.S. Department of Justice**

Civil Division

_Washington, D.C. 20530_

JMK:jk:145-FOI-8394                July 7, 2005

Anne L. Weismann, Esq.
CREW
11 Dupont Circle, N.W., 2nd Floor
Washington, D.C. 20036

Dear Ms. Weismann:

    This letter is in response to your June 28, 2005 request, made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. §552, for copies of all documents pertaining to the proposed penalty in _U.S. v. Philip Morris USA, et al._, No. 99-CV-2496-GK, from January 1, 2001 to the present.  We received your request in this office on June 28, 2005 and assigned control number 145-FOI-8394 to your request.

    In your letter you also requested expedited review of your request because you anticipate that documents responsive to your request will provide "information essential to news gathering and public policy issues."

    We reviewed your request under departmental regulations and have granted your request to expedite processing pursuant to 28 CFR 16.5(d)(1)(ii).

    In your letter you also requested a waiver of the fees for the processing your request.  After careful review, I have determined that a fee waiver is not appropriate.  My denial is based upon analysis of your request and the application of criteria for fee waivers set out at 28 CFR R §16.11(k).

    A fee waiver may be granted when disclosure "is likely to contribute significantly to public understanding of the operations or activities of the government."  I considered the following three criteria in determining whether a fee waiver would be justified.  The three criteria are: (1) Does the record concern the operations and activities of the government? (2) If the record concerns the operations or activities of the

government, is its disclosure likely to contribute to public
understanding of these operations and activities? (3) If there is
likely to be a contribution to public understanding, will that
contribution be significant?

The government activity at issue in this instance is the
government's prosecution of the tobacco litigation. We have
reviewed a portion of the documents responsive to your request
and except for documents filed as part of the public court record
or otherwise in the public domain, the documents responsive to
your request are internal Civil Division and department memoranda
and electronic communications discussing, analyzing, commenting
upon, and recommending a proposed remedy in the litigation. As
such these records reflect the deliberative process and work
product of agency attorneys and are not subject to disclosure
under the FOIA. Additionally, release of these records cannot be
made at this time, because such release would interfere with
ongoing law enforcement proceedings. Because these documents
cannot be released, the public's understanding will not be
enhanced either quantitatively or qualitatively. Accordingly, a
waiver of fees is therefore not appropriate under 28 CFR
§16.11(k)(1)(2).

If, as we proceed with the processing of this request, we
determine that records can be released, we will reevaluate our
determination at that time. We estimate the search fees will
likely exceed $25.00 and in fact may be considerably more than
that. Please advise me if you are willing to incur fees
associated with the processing of your request and specify an
amount you are willing to expend for fees.

We have undertaken a preliminary search for records
responsive to your request. Your request is broadly worded to
include records relating "in any way to the government's proposed
penalty" in the tobacco litigation. In prosecuting the tobacco
litigation, the Civil Division generated a large volume of
records relating to the remedy phase of this litigation. These
records must be gathered and reviewed. Due to the need to search
for, collect, and review this volume of records, I have
determined that "unusual circumstances" pursuant to 5 U.S.C.
§552(B)(iii)(II) exist.

Because of these "unusual circumstances," I am notifying you
that we cannot meet the time limits prescribed in 5 U.S.C.
§552(6)(A)(ii). Accordingly, we are providing you with the
opportunity to either limit the scope of your request so that it

-3-

might be processed within the prescribed time limits or arrange an alternate time frame to process these records.

Please contact me at (202) 514-3319 to discuss these arrangements with you.

You may appeal my determination regarding your request for a fee waiver by writing within 60 working days of the receipt of this letter to Co-Director, Office of Information and Privacy, Suite 570, FLAG Bldg., United States Department of Justice, Washington, D.C.  20530.  Both the letter appealing the decision and the envelope should be clearly marked "FOIA APPEAL."

Thereafter, judicial review would be available in the U.S. District Court in the district in which you reside or have your principal place of business or in the United States District Court for the District of Columbia.

Sincerely,

*James M. Kovakas*

James M. Kovakas
Attorney In Charge
FOI/PA Unit, Civil Division

# EXHIBIT 21

# CREW | citizens for responsibility and ethics in washington

July 11, 2005

Co-Director
Office of Information and Privacy
Suite 570, FLAG Building
United States Department of Justice
Washington, D.C. 20530

**Re: Freedom of Information Act Appeal**

Dear Sir/Madam:

By letter dated July 7, 2005, James M. Kovakas, Attorney In Charge, FOI/PA Unit, Civil Division, U.S. Department of Justice ("DOJ"), advised Citizens for Responsibility and Ethics in Washington ("CREW") that our request for a fee waiver for our Freedom of Information Act ("FOIA") request of June 28, 2005, was denied. CREW hereby appeals that initial determination and requests that you reverse it for the reasons set forth below.

Our June 28, 2005 FOIA request sought copies of all records relating to the government's proposed penalty in <u>United States v. Philip Morris USA, et al.</u>, No. 99-CV-2496 (GK). In accordance with the six factors set forth in 5 U.S.C. §552(a)(4)(A)(iii), CREW requested a waiver of fees associated with processing this request for records.

CREW satisfies fully the requirements for a fee waiver. There has been wide public attention given to the government's proposed penalty and whether it was the product of improper political influence brought to bear on the government's trial team of career lawyers and government witnesses. As explained in our request, the subject of this request concerns the operations of the federal government and the disclosure will likely contribute significantly to a better understanding of the individuals and organizations that influenced, or attempted to influence, the litigating position of the United States in a lawsuit of major and far-reaching consequences.

DOJ's initial assessment, expressed in the July 7, 2005 letter, is that, based on a review of "a portion of the documents responsive" to our request, the documents CREW has requested cannot be released, with the exception of documents filed as part of the public court record or ones that are already in the public domain. DOJ therefore concluded that because these documents cannot be released, "the public's understanding will not be enhanced either quantitatively or qualitatively," and that CREW's request for fees was therefore denied.

DOJ's initial fee determination is wrong as a matter of law. As at least one court has found, DOJ's approach here would "invert the burden of proof and foist upon [the requester] a burden that is not provided under the FOIA." Project on Military Procurement v. Dep't of the Navy, 710 F.Supp. 362, 367 (D.D.C. 1989). The law, however, is clear – it is the government, not the requester, that bears the burden of demonstrating the propriety of its withholdings. Id. To require the requester to instead bear that burden, before the agency has even completed its review of the responsive documents, much less withheld material under a claim of exemption, would be contrary to the statutory scheme and common sense. At this point, with no knowledge about what the universe of responsive documents is, CREW is simply not in a position, legally or factually, to refute DOJ's speculative claim that all of the documents CREW requests would be exempt from disclosure, save those already in the public domain.

This conclusion is reinforced by DOJ's concession that its initial determination on CREW's request for a fee waiver is based on a review of only a "portion" of responsive documents. Letter of July 7, 2005, to CREW from James K. Kovakas. That DOJ contemplates asserting exemptions over all of the non-public material based on a "nonexistent" record of review and decision, Project on Military Procurement, 711 F.Supp. at 367, underlines the premature and faulty conclusion DOJ has reached to date on CREW's fee waiver request.

From its initial fee determination, DOJ appears to concede that CREW has met the other criteria for a fee waiver. As a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code, CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the governmental decision-making process. CREW uses a combination of research, litigation, and advocacy to advance is mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will share its analysis with the public, either through memoranda or reports. As a review of CREW's website – www. citizensforethics.org – illustrates, CREW has an established history of using the Freedom of Information Act for these purposes.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver and, accordingly, DOJ's initial determination to deny CREW a fee waiver must be reversed.

Sincerely,

ANNE L. WEISMANN

2

# EXHIBIT 22

**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

JUL 2 8 2005

Ms. Anne L. Weismann
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle NW., 2nd Floor
Washington, DC 20036

      Re: Your letter of July 11, 2005

Dear Ms. Weismann:

      This is to advise you that your administrative appeal from the action of the Civil Division on your request for information from the files of the Department of Justice was received by this Office on July 22, 2005.

      The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **05-2367**. Please mention this number in any future correspondence to this Office regarding this matter.

      We will notify you of the decision on your appeal as soon as we can. The necessity of this delay is regretted and your continuing courtesy is appreciated.

              Sincerely,

              Priscilla Jones
              Chief, Administrative Staff