# EXHIBIT A

6/9/05 USA TODAY 21A
2005 WLNR 9119856

USA Today (USA)
Copyright 2005 USA TODAY

June 9, 2005

Section: EDIT

Remedy is 'forward-looking "

Robert **McCallum**

The U.S. Department of Justice has proven time and again a strong commitment to holding the **tobacco** industry accountable for past fraud and abuse. Over the past nine months, we have made a strong and decisive case showing decades of fraudulent behavior by companies within the **tobacco** industry.

First and foremost, the government's suggested cessation program comports with a recent decision of the D.C. Circuit Court of Appeals. The United States vigorously argued for the industry to disgorge $280 billion in profits for decades of fraudulent behavior. This spring, the Circuit Court ruled in favor of the **tobacco** industry, reversing a prior decision of the trial court, and held that any remedies in the case must be "forward-looking" to prevent and restrain future wrongful acts, rather than to address even lingering consequences of past acts.

The trial court and the government are bound by this decision.

Equally important is the fact that the suggested cessation program, as proposed by the government Tuesday, is only an initial requirement, one based upon compelling evidence that the defendants will continue to commit frauds. If court-appointed monitors find that the defendants continue to commit acts of fraud, the court can extend and expand the program to exceed the $10 billion over five years proposed Tuesday, in order to prevent and restrain the continuation of fraudulent activities by the **tobacco** companies. Under such circumstances, the overall length and cost of the proposed remedy is open-ended and could be less than, equal to, or more than the expert witness study introduced into evidence by the government. That study suggested $130 billion over 25 years. The government's proposal is therefore forward-looking, focused on future frauds by the defendants and consistent with the Circuit Court opinion.

Critics have questioned the motives behind the government's cessation program proposal. But its form and structure are dictated by the law. The cessation remedy is but one element of a comprehensive and coordinated array of solutions to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

prevent and restrain future frauds. It does not abandon, but rather embraces, the costing methodology the government has presented with expert testimony, and then applies that methodology -- as the appellate decision requires -- to future frauds rather than past acts.

Robert **McCallum** is the U.S. Associate Attorney General.


                        ---- INDEX REFERENCES ----

NEWS SUBJECT:  (Crime (1CR87); Legal (1LE33); Social Issues (1SO05); Criminal Law (1CR79))

REGION:  (USA (1US73); Americas (1AM92); North America (1NO39))

Language:  EN

OTHER INDEXING:  (CIRCUIT COURT; CIRCUIT COURT OF APPEALS; US DEPARTMENT OF JUSTICE)  (Robert McCallum)

EDITION: FIRST

Word Count: 482
6/9/05 USATD 21A




END OF DOCUMENT




© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

COPY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,

Plaintiff,

vs.

U.S. DEPARTMENT OF JUSTICE,

Defendant.

Docket No. CA-05-2078

Washington, D.C.
Thursday, February 9, 2006
12:20 p.m.

TRANSCRIPT OF A HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: ANNE L. WEISMANN, Esquire
CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
11 Dupont Circle, NW
Second Floor
Washington, DC 20036

For the Government: LISA ANN OLSON, Esquire
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Room 6118
Washington, DC 20530

Court Reporter: Elaine A. Merchant, RPR, CRR
Official Court Reporter
333 Constitution Avenue, NW
Room 6822
Washington, DC 20001
(202)289-1571

Proceedings recorded by machine shorthand, transcript produced by computer-aided transcription.

P R O C E E D I N G S

THE CLERK: Civil Action 05-2078, Citizens for Responsibility and Ethics in Washington versus U.S. Department of Justice.

Would counsel please identify yourselves for the record.

MS. WEISMANN: Anne Weismann, Your Honor, on behalf of CREW. And with me also is Melanie Sloan.

MS. OLSON: And Lisa Olson, Your Honor, representing the Department of Justice. With me is Melanie Pustay, Vanessa Brinkman and Ken Chason.

THE COURT: All right. Good morning, counsel. I'm sorry to keep you waiting. I had a meeting outside the court this morning regarding a family member. And, I'm sorry, I was not able to get back by noon.

Let me invite principal counsel to the microphone.

Why do I have this case? Why doesn't Judge Kessler have this case?

MS. WEISMANN: I can answer that, Your Honor. I think that you have this case because it's brought under the Freedom of Information Act. And the courts have recognized that those are distinct actions, and, therefore, it would be completely unrelated to the tobacco litigation itself.

Well, I actually want to rephrase that. I'm not sure it's completely unrelated, actually.

THE COURT: I doubt that seriously.

MS. WEISMANN: We think there is a relationship, at least, with respect to the conduct of the government.

THE COURT: All right. Well, it's before me and it will stay before me for the time being. No one has sought to have it consolidated with anything that Judge Kessler is doing, so that's fine.

Should the Court focus on the fee waiver issue first before focusing on these other issues of discovery, if there's a need for discovery and the ultimate merits?

MS. WEISMANN: Well, Your Honor, it's CREW's position, and we set this out in the joint statement, that we think a preliminary and necessary step before we get to the fee issue is to examine the conduct of the government. Because we believe there are numerous indicia that demonstrate that the government is not taking its obligations under the Freedom of Information Act seriously. And we filed two -- we served two FOIA requests on the government back in June of 2005.

Here it is seven and a half months later and we have yet to receive a single document. Instead, we have a pattern of delay and obfuscation which seems to be designed to prevent the disclosure of a single document or even the accounting. We don't even know what they have, much less what they're claiming is exempt.

They've put every procedural ready roadblock they can

think of in our way, Your Honor. And we think that there are multiple factors that indicate they're simply not complying in good faith.

And that's why we are loathe to go immediately to the fee waiver issue, because we think it will effectively bypass a serious examination of what the government's conduct has been here, which we think is necessary.

THE COURT: What should the government have done in the past several months?

MS. WEISMANN: Well, first of all, Your Honor, as I've said, we filed our FOIA request in June. I think a delay of seven and a half months, when both the Civil Division and eventually the Office of Information and Privacy agreed that our request should be expedited.

The Civil Division acted promptly. Within weeks of filing our request they granted our request for expedition. They denied our request for a fee waiver. We appealed that within days or less than a week, I believe it was, from that determination, in July now we're talking, to the Office of Information and Privacy. They did not rule on our appeal until January of this year, days before we had to submit the joint statement to this Court.

The Office of Information and Privacy initially denied our request for expedition, notwithstanding Civil's finding. We sent a separate request to Public Affairs, who

agreed that there was an urgency and a need for the public to have access to information about why the government made such a dramatic reversal in its proposed penalty in the tobacco litigation. So there we have OIP then agreeing that we need to expedite. And yet they did not even rule in the first instance on our request for a fee waiver until January.

So I think that those actions are completely inconsistent with their recognition that this is a matter of such urgency that we are entitled to expedition of the processing. So those are, we think, several key factors that really demonstrate bad faith on the part of the department.

But there are others, Your Honor. The department in OIP, when it denied fees, part of the reason it gave was that we were requesting documents, that many of the documents we were requesting were in the public domain. And they said, therefore, it wouldn't add anything to the public for you to get these documents.

But they knew, as their letter later acknowledged, that we weren't seeking those documents. We made it clear to the Civil Division right up front we're not interested in documents that were publicly filed in this case. Let's not waste either side's time with those. So why we would offer that up as a basis to deny fees is just incredible to us.

Another thing that OIP did, which we also think suggests bad faith, is that they ran out of free time. When

they denied our fee waiver they said, yes, but you're entitled to two hours of free time, but we never got around to the associated attorney general, so sorry.

Well, Your Honor, it's pretty clear from the face of our request that the associated attorney general's office is really at the heart of what we think is a potential scandal here. And it's pretty clear from the press reports and the reports of several witnesses in the underlying tobacco litigation that they believe they were pressured by the associated attorney general to change their testimony to make it more consistent with the watered down proposal that the department was proposing. So it's just incomprehensible to us why they would choose to bypass that office.

Another factor, Your Honor, is that I had a telephone conversation with OIP in September of 2005 to find out the status. They told me at that time that their search of the attorney general's office was complete. I have yet to receive a single document or a single explanation of what that search yielded. Instead, we just get these roadblocks.

And I think the fact that seven and a half months have passed, that they agreed it should be expedited, but we don't have a single thing in hand, is not a record of good faith compliance with the FOIA. And I don't make these allegations lightly. But you have to keep in mind the underlying background to this case.

We filed these FOIA requests because there were very serious allegations in the public that the government had changed its position in the tobacco litigation as a result of political pressure and collusion with the tobacco industry. And those are very serious charges.

Fifty members of Congress wrote to the attorney general expressing their concerns. The department's Office of Professional Responsibility is investigating the matter. The former attorney general Janet Reno has publicly expressed her concerns. And the underlying litigation was initiated during her tenure. There are numerous -- and, you know, Joseph Calfano, the former secretary of HHS, wrote a letter to Judge Kessler in which he expressed his serious concerns about what the government was doing and why.

THE COURT: Did Judge Kessler explore this issue?

MS. WEISMANN: My understanding is the public record does not reflect that she has taken any action whatsoever. I know initially when these charges came to light she expressed some concerns about the government's conduct, but I am not aware that she has done anything formally or publicly, you know, to follow up on those concerns.

So this is why, Your Honor, we are reluctant to just put this case on the normal briefing track of issues, because we believe that that just allows the government to further its conduct and we're just very troubled. And we just think there

are multiple indicia here that the government is not acting in good faith. Not acting in good faith with how it's complying with its FOIA obligations.

THE COURT: If I agree with you, what type of discovery are you proposing?

MS. WEISMANN: Well, what we have suggested in the joint statement is that we think the most expeditious thing is depositions, because they really kind of cut right to the chase. And that's what we would recommend, with a possibility of some interrogatories.

THE COURT: Depositions of who?

MS. WEISMANN: Well, we would like to start at the top. Because this is, after all, a case where the allegations are that the political pressure is coming from the top. So I think -- again, we don't want to waste a lot of time with discovery. We're not proposing discovery so we can spend months --

THE COURT: That's going to be the next point, because if there is some discovery there's going to be a passage of time before the Court even focuses on the merits in this case.

MS. WEISMANN: Right. I think the period we proposed was 60 days. We really want a short, but an effective opportunity to get to the heart of this. And we're not proposing just to allow us to go digging anywhere and

everywhere within the department. We want some focused discovery. But the reason we think that depositions are appropriate is because that really cuts to it. I mean, their lawyers are very capable lawyers, I know all too well. They can answer interrogatories with assistance. But when you ask an individual directly under oath in a deposition, they have to answer. And we think they should have to answer, not just to us, but to this Court and the public.

THE COURT: All right. Ms. Olson.

MS. OLSON: Thank you, Your Honor.

There's no evidence of bad faith in this case because there isn't any bad faith. Both components of the agency, the Civil Division and the Office of Information and Privacy responded promptly to the plaintiff's request. I mean, within two weeks.

They in that response asked the plaintiff to narrow its request, because as originally phrased their request encompassed eight to 10 million documents. But the agency did not get any response from CREW on narrowing the language of the request. So at any point in the process from July until now CREW could have triggered the continued processing of these documents by either narrowing its request or paying an installment of fees, and it didn't do either. It was only after this litigation started that we got an agreement to narrow the request to manageable proportions.

And at that point the Office of Information and Privacy immediately concluded its searches.

THE COURT: You say the complaint was filed in October?

MS. OLSON: Right, in October. I think we got it --

THE COURT: So you're saying that from the date that the initial request, the informal request was made, until October you didn't get a response from plaintiffs?

MS. OLSON: That's right. I believe Ms. Weismann called OIP in September to inquire about the status of the request and was informed that it was still pending, but there was no --

THE COURT: Well, did the government take the position that the request should be handled on an expedited basis or not?

MS. OLSON: Yes.

THE COURT: What does that mean?

MS. OLSON: It means -- well, there is no statutory time limit when expedited processing is granted. And it means that they get in line behind all the other people that have expedited, that have been granted expedited processing. And six or seven months is a very reasonable, if you know anything about FOIA litigations or FOIA requests, it's a very reasonable amount of time to come to the point where, as we are now, the government has done all of the processing it's allowed to do

under the statute.

THE COURT: Even if it's expedited, six months is reasonable?

MS. OLSON: Yes, that's very reasonable. And during that time be reminded that their request was being actively considered and documents were being gathered. And contrary to what plaintiff's counsel said, OIP has spent its statutory two hours on all three of the senior departmental offices encompassed by their request, so they did not bypass any office.

We are now ripe for a decision on the fee waiver because CREW has gotten all of the time it is statutorily entitled to. And without fees that are forthcoming the government is not obligated, and, indeed, would probably be prohibited from proceeding. It's up to the plaintiff to offer the fees. And then if later on it's determined that there can be a waiver as to some documents, the money could be given back.

But so far I think it takes no leap of faith to determine or to conclude that documents pertaining to the remedy phase in litigation are going to be encompassed, are going to be covered by the work product doctrine and the deliberative process privilege at the very least.

And, in addition, there's an ongoing OPR investigation concerning this very issue and these documents

would be covered by the, or we're expecting them to be covered by the law enforcement privilege.

So what expedition has been granted was granted by both components as of August 2005. On the fee waiver the Civil Division denied the fee waiver and the -- I believe the Civil Division denied the fee waiver and the Office of Information and Privacy deferred its decision on the fee waiver while it gathered documents.

Eventually, we narrowed the request and now a decision has been reached, a complete decision on both expedition and the fee waiver, and what is now ripe for decision, what's now on the table is whether the fee waiver was properly denied. So expedition was granted. I mean, this is water under the bridge and there's no point in rehashing it at this point. They're allegations of bad faith or speculation.

Honestly, Your Honor, if a senior member of the department were deposed, it would be fruitless because they would have nothing to say.

THE COURT: Nothing to say?

MS. OLSON: Well, I don't think they would have anything to say on the issue of how these documents were processed. They're all recused from the case. We've had no contact with them except to notify them that we need to look at portions of the documents, which we have done.

THE COURT: If they're all recused, who is making the