UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:05-cv-02078 |
| U.S. DEPARTMENT OF JUSTICE, | ) ) | Judge: Emmet G. Sullivan |
| Defendant. | ) ) ) | |

<u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR DISCOVERY</u>

<u>INTRODUCTION</u>

Brandishing unfounded and irresponsible allegations of bad faith, plaintiff in this case attempts to obscure its own inaction in what, in reality, is a routine Freedom of Information Act ("FOIA") request. Courts rarely permit discovery in FOIA cases and plaintiff here has presented no basis to deviate from that norm. Defendant Department of Justice ("DOJ") has exercised ordinary diligence in processing plaintiff's FOIA request, treating it no better and no worse than every other expedited FOIA request. Indeed, given the sweeping breadth of plaintiff's request and the vast number of documents it originally encompassed, defendant proceeded with remarkable expedition. Plaintiff's whimsical allegations of bad faith ring particularly hollow in light of plaintiff's own inaction in this matter. At any point since receiving defendant's FOIA responses last July plaintiff could have narrowed the scope of its request or committed to paying the requisite fees. Moreover, although plaintiff complains about delay, it sat on its rights under the statute, failing to invoke the remedy Congress provided for any perceived delay, namely filing an action in district court based on the principle of constructive exhaustion. Rather than

seeking to vindicate its alleged entitlement to a fee waiver once its administrative appeal was

pending for more than twenty working days, plaintiff waited until October before filing suit,

wherein it now urges the Court <u>not</u> to resolve its entitlement to a fee waiver, but to instead allow

improper discovery based on an alleged delay that plaintiff itself manufactured.

Plaintiff's motion rests purely on speculation and is a transparent attempt to impute

alleged bad faith in the <u>Philip Morris</u> litigation to the timely and routine processing of a FOIA

request.  Discovery on this basis is inappropriate and should be denied.

BACKGROUND

1.      <u>Plaintiff's FOIA Request</u>

Plaintiff's FOIA request, submitted on June 28, 2005, sought "any [and] all

records . . . relating in any way to the government's proposed penalty in <u>United States of America</u>

<u>v. Phillip Morris, Inc.</u>," from January 1, 2001, to the present.  Complaint Exh. 13, 19.  This

request encompassed millions of documents (estimated at approximately 8-10 million) since

virtually every document generated during this time frame would "relate to" the remedy phase.

Declaration of James M. Kovakas ("Kovakas Dec.") ¶ 8; <u>see also</u> Declaration of Melanie Ann

Pustay ("Pustay Dec.") ¶ 33.  The request would include every draft pleading, research item, and

internal communication concerning the filing of pleadings among approximately 35 attorneys and

200 staff members.  Kovakas Dec. ¶ 8.  It would also encompass materials containing substantive

discussions regarding proposed remedies, materials relating to proposed penalties which are non-

substantive or procedural, and internal departmental predecisional communications and

communications from outside sources (<u>i.e.</u>, the government's witnesses) prior to the

government's formulation of a final position on remedies.  <u>Id.</u>  The request was submitted both to

-2-

the Civil Division and the Office of Information and Privacy ("OIP").  Complaint for Declaratory

Judgment and Injunctive Relief (Complaint) Exhibit ("Exh.") 13, 19.

    In connection with its FOIA request to each component, plaintiff asked for two things.

First, it sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(I), on grounds that

plaintiff had a "compelling need" to disseminate the information to the public.  Complaint Exh.

13 at 3; id. Exh. 19 at 2.  Second, plaintiff asked for a waiver of the fees associated with

processing documents responsive to its request pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), on

grounds that the information revealed by defendant's responses would contribute to a better

public understanding of government.  Complaint Exh. 13 at 3; id. Exh. 19 at 3.  Both the Civil

Division and the Office of Information and Privacy responded promptly to plaintiff's FOIA

requests.

2.    The Civil Division's Response

            a.    Granting of Expedition and Plaintiff's Failure to Narrow Request

    On July 7, 2005, the Civil Division granted plaintiff's request for expedited processing.

Complaint Exh. 20.  However, it also notified plaintiff that due to "unusual circumstances," 5

U.S.C.  § 552(a)(6)(B)(i), it could not process the request within the twenty working days

specified by 5 U.S.C. § 552(a)(6)(A)(i).  Complaint Exhibit 20 at 2.  Specifically, the response to

this request encompassed a "large volume" of records.  5 U.S.C. § 552(a)(6)(B)(iii)(II);

Complaint Exh. 20 at 2; Kovakas Dec. ¶ 3.  Given the enormous number of responsive materials,

the Civil Division urged plaintiff to "limit" the scope of the request to accelerate processing.

Complaint Exhibit 20 at 2-3.

    Between July 2005 and January 2006, plaintiff failed to follow the recommendation to

narrow the scope of its request.  See 5 U.S.C. § 552(a)(6)(B)(ii); id. § 552(a)(6)(C)(iii).   Instead,

plaintiff filed this lawsuit on October 24, 2005.  The Complaint reached the desk of defendant's

counsel in mid-November.  Upon being advised that plaintiff's FOIA request, as originally

phrased, encompassed 8-10 million documents, defendant's counsel took the initiative to contact

plaintiff's counsel by telephone at the beginning of December to discuss the possibility of

narrowing the scope of plaintiff's request.  Over the next few weeks the parties discussed

alternative language which would narrow the request without excluding any documents plaintiff

wished to obtain.  The parties reached an agreement on January 9, 2006, pursuant to which

plaintiff narrowed its request to include:

> Documents dealing with the identification and selection of remedies sought by the
> Department and any changes to particular remedies sought by the Department
> from January 2005 onward, including records discussing, mentioning or referring
> in any way to the government's decision to reduce the penalties it is seeking
> against the tobacco industry from $130 billion to $10 billion or the government's
> decision to offer testimony from any witness during the remedies phase of trial in
> United States v. Philip Morris.

b.    Denial of Fee Waiver and Plaintiff's Failure to Pay Fees

Faced with the prospect of processing an enormous number of documents responsive to

plaintiff's June 28, 2005 FOIA request, the Civil Division was also presented with the question

of who would bear the costs.  The Civil Division denied plaintiff's request for a fee waiver on

July 7, 2005.  Complaint Exhibit 20.  It explained that, based on its preliminary search[1] for

records responsive to the request as required by 5 U.S.C. § 552(a)(4)(A)(iv)(II); see also id.

§ 552(a)(3)(D); 28 C.F.R. § 16.11(b)(8), the release of documents responsive to the FOIA request

---

[1] The term "search" means "to review . . . agency records for the purpose of locating those
records which are responsive to a request."  5 U.S.C. § 552(a)(3)(D).

(excluding public source) would violate the deliberative process privilege and work product doctrine and interfere with law enforcement proceedings. Complaint Exh. 20 at 2; see 5 U.S.C. § 552(b)(5), (7)(A). Therefore, because it appeared that the documents could not be disclosed, they would not contribute to the "public understanding" of the operations and activities of the government, and no fee waiver was warranted. 5 U.S.C. § 552(a)(4)(A)(iii).

However, the Civil Division indicated to plaintiff on July 7, 2005, that processing of the request could in fact proceed if plaintiff were willing to pay the necessary fees. Complaint Exh. 20 at 2; see 28 C.F.R. § 16.11 (requiring commitment to pay fees and, if over $250, an advance payment of fees). It also advised that fees could later be waived if further processing uncovered documents that met the standards for a fee waiver. Even under the narrowed request agreed to on January 9, 2006, plaintiff would be required to pay fees, because the processing of the responsive documents would require more than the two hours of free search time plaintiff had already been accorded. Kovakas Dec. ¶ 7; see 5 U.S.C. § 552(a)(4)(A)(iv)(II) (providing that no fee may be charged for the first two hours of search time or the first 100 pages of duplication). Therefore, after the Civil Division reached its decision on July 7, 2005, that a fee waiver was not warranted, no further processing of plaintiff's FOIA request was allowed until such fees, or an appropriate commitment to pay, were forthcoming. 5 U.S.C. § 552(a)(3). From July 2005 to the present, plaintiff has failed to provide a commitment or to pay any fees.

On July 11, 2005, plaintiff appealed the Civil Division's denial of the fee waiver to the Office of Information and Privacy, which handles fee waiver appeals from the decisions of other components. 28 C.F.R. § 16.9. OIP received this appeal on July 22 and acknowledged it on July 28, 2005. A career senior counsel was assigned to plaintiff's appeal in August 2005. Pustay

Dec. ¶ 44.  Upon review of background material obtained from the Civil Division in September,

and in order to draft a response, the senior counsel had multiple substantive conversations with

personnel in the Civil Division seeking clarification and additional information.  Id.  The senior

counsel was actively working on a draft response in November and December, and had a final

draft prepared by early January which was then reviewed.  Id.  During this time period the senior

counsel's other responsibilities included supervising litigation, reviewing fee waiver appeals of

other OIP staff members, working on approximately forty other pending administrative appeals,

performing designated FOIA ombudsperson work and other duties including the drafting of

letters, drafting appeal recommendations, and providing instruction in FOIA training programs.

Id. ¶ 45.  On January 23, 2006, OIP affirmed the denial by the Civil Division of plaintiff's

request for a fee waiver.  Id. ¶ 46; Plaintiff's Motion for Discovery and Supporting Memorandum

of Points and Authorities ("Pl. Motion") Exh. C.  As indicated above, throughout the pendency

of its appeal and to the present, plaintiff could at any time have paid a portion of fees to allow the

Civil Division to resume its processing under the regulatory requirements but failed to do so.  See

5 U.S.C. § 552(a)(4)(A)(iv)(II).

3.     OIP's Response[2]

        a.     Granting of Expedition and Plaintiff's Failure to Narrow Request

        Plaintiff also received a prompt response to its June 28, 2005 FOIA request from OIP.

On July 11, 2005, OIP acknowledged receipt of plaintiff's request and advised plaintiff that

searches would be initiated in the Offices of the Attorney General, Deputy Attorney General, and

---

        [2] OIP has two functions, serving both as an appellate entity, 28 C.F.R. § 16.9, and as a
first responder for the leadership offices within the Department of Justice, 28 C.F.R. App. to Part
16.

Associate Attorney General.  Complaint Exh. 14 at 1.  OIP notified CREW that it could not

comply with the 20-day time limit because the records CREW sought were maintained in offices

separate from OIP.  Complaint Exh. 14 at 1; 5 U.S.C. § 552(a)(6)(B)(iii)(I).

Plaintiff's June 28, 2005 request to OIP sought expedition on grounds that CREW has a

compelling need to disseminate the information to the public.  Complaint Exh. 13 at 3; 28 C.F.R.

§ 16.5(d)(1)(ii) (permitting expedition for requests involving an "urgency to inform the public"

about federal government activity).  OIP determined that plaintiff failed to identify any particular

urgency to inform the public beyond the public's right to know about government activities

generally, and failed to show that its primary activity was information dissemination.  Complaint

Exh. 14 at 1.  On July 11, OIP therefore denied CREW's request on those grounds.  Id.

Plaintiff appealed OIP's denial, and in its appeal CREW raised new regulatory grounds

for the claim that its request should be expedited, i.e., it claimed for the first time that the

information in question would be of "widespread and exceptional media interest."  Complaint

Exh. 15 at 3; 28 C.F.R. § 16.5(d)(2)(iv).  Pursuant to 28 C.F.R. § 16.5(d)(iv)(2), requiring

requests for expedited processing due to alleged "widespread and exceptional media interest" to

be submitted to the Office of Public Affairs, plaintiff also contacted that Office on July 18, 2005,

seeking expedited processing on this new basis.[3]  Complaint Exh. 16 at 2; 28 C.F.R. § 16.5(d)(2).

---

[3] Plaintiff erroneously suggests that OIP wrongly failed to submit CREW's initial request for expedition to the Office of Public Affairs.  Pl. Motion at 10.  However, CREW's initial request for expedition could not properly have been submitted to the Office of Public Affairs because it was based exclusively on alleged "compelling need," not on alleged "widespread and exceptional media interest," Complaint Exh. 13 at 3, a fact which plaintiff fails to bring to the Court's attention.  Only requests based on the latter can properly be forwarded by OIP to the Office of Public Affairs.  28 C.F.R. § 16.5(d)(2).  Requests based on "compelling need" must be submitted to the component that maintains the records requested, i.e., OIP.  Id.  Thus, OIP acted properly in not forwarding CREW's initial request for expedition to the Office of Public Affairs.

On August 9, 2005, plaintiff was informed that the Office of Public Affairs had granted expedition on grounds that the information would be of widespread and exceptional media interest. Complaint Exh. 17. As a result, plaintiff's appeal of OIP's initial denial of expedition on July 11, 2005, became moot, as the appellate authority of OIP informed plaintiff on August 12, 2005. Complaint Exh.18.

Like the Civil Division, on July 11, 2005, OIP explicitly recommended, as provided for in the statute, that plaintiff "narrow the scope" of its request in order to "speed up" OIP's record searches given the large number of potentially responsive records. Complaint Exh. 14 at 1. Plaintiff never narrowed its request until it reached the January 9, 2006 agreement with defendant's counsel. OIP therefore initiated its record searches based on the far broader phrasing contained in plaintiff's original July 28, 2005 letter to OIP. Complaint Exh. 14.

b.    Denial of Fee Waiver and Plaintiff's Failure to Pay Fees

OIP also notified plaintiff on July 11, 2005, that it had not yet made a decision on plaintiff's request for a fee waiver, but would do so once it determined whether fees would be assessed for the request. Complaint Exh. 14. This is OIP's standard practice and is done because noncommercial requesters are entitled to two hours of free search time per component. Pustay

_____

The first time CREW alleged that the requested information would be of "widespread and exceptional media interest" was in its July 18, 2005 appeal of OIP's initial denial of expedition. Complaint Exh. 15 at 3. Also on July 18, CREW submitted a request for expedition to the Office of Public Affairs on grounds that the information requested would be of "widespread and exceptional media interest." Complaint Exh. 16. Given that CREW raised this as a basis for expedition simultaneously before OIP and the Office of Public Affairs, it would have been virtually impossible for OIP to forward CREW's appeal to the Office of Public Affairs before CREW contacted that Office directly, as plaintiff contends should have been done. Pl. Motion at 10. Moreover, it was CREW's obligation in the first instance to submit its request for expedition on this basis to the Office of Public Affairs in accordance with the regulations that clearly require this to be done. 28 C.F.R. § 16.5(d)(2).

Dec.¶ 6.  In the event the searches for plaintiff's request were completed within that two-hour period, there would be no fees charged to plaintiff.  Id.  In the absence of fees to charge, there would be no need to adjudicate plaintiff's request for a fee waiver.  Id.  Accordingly, OIP deferred its decision on plaintiff's fee waiver request until the time it determined that its search in the Office of the Associate Attorney General would exceed two hours.  Id.

OIP searched the database of the Departmental Executive Secretariat, where some potentially responsive records were stored electronically.  Pustay Dec. ¶ 9.  It also initiated searches by each individual staff member in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General for paper and electronic records, Pustay Dec. ¶ 10-11, and advised those offices in August 2005 that their searches should be expedited, id. ¶ 13.

In September the Offices of the Attorney General and Associate Attorney General informed OIP that they had located records that were potentially responsive to plaintiff's requests.  Id. ¶¶ 14-15.  The Office of the Attorney General completed its records search in September, and OIP's FOIA specialist retrieved the potentially responsive documents from that Office for further review by OIP's Initial Request staff.  Id. ¶¶ 15, 17, 19-20.  Also in September, OIP notified plaintiff that records searches were continuing in the Offices of the Deputy Attorney General and Associate Attorney General.  Id. ¶ 20.

The Office of the Associate Attorney General advised OIP through the career attorney assigned to the matter that it had a large number of potentially responsive records.  Id. ¶ 14.  That Office completed its search on November 1, and OIP retrieved the records shortly thereafter for further review by its Initial Request staff.  Id. ¶¶ 25-26.  Finally, OIP had discussions with the

search contact in the Office of the Deputy Attorney General in October and early November.  Id. ¶¶ 24, 27.

OIP was ready to prepare an interim response to plaintiff in mid-November with respect to its findings in each of the three Offices and would have addressed plaintiff's request for a fee waiver, but plaintiff filed suit.  Pustay Dec. ¶ 28.  Once this action was initiated, OIP placed its plans to prepare an interim response on hold while the parties discussed the possible narrowing of plaintiff's FOIA requests.  Id. ¶ 29.  Then, in December OIP visited the Office of the Associate Attorney General to conduct a more targeted search for relevant documents.  Id. ¶ 31.  Also in December the Office of the Deputy Attorney General completed its search and found no responsive documents.  Id. ¶ 32.

As records were located and compiled throughout the pendency of OIP's record searches, its Initial Request staff conducted a continual analysis and review of the documents located.  Pustay Dec. ¶ 34.  Plaintiff's original request was exceedingly broad and encompassed over 450 documents.  Id. ¶ 33.  An estimated 62,000 e-mail communications, 300 pages of hand-written notes, fifty pages of electronic files, 100 pages of paper files, and an indeterminate number of calendar entries remain to be searched.  Id. ¶ 33.  Once plaintiff agreed to narrow its request, OIP was able to hone in on and more readily process the records, and was able to drastically reduce the amount of responsive material to a total of twenty pages of documents.  Id. ¶ 36.

On January 19, 2006, just ten days after plaintiff had narrowed the scope of its request, OIP responded to plaintiff on the results of its searches.  Pustay Dec. ¶ 37.  OIP advised that it had afforded plaintiff two hours of free search time for each component searched, in accordance with Department of Justice regulations, 28 C.F.R. § 16.11(d); see also 5 U.S.C.

§ 552(a)(4)(A)(iv)(II).  Pl. Motion Exh. E at 2; Pustay Dec. ¶ 37.  As a result of those searches, five documents were located that were responsive to plaintiff's request.  Pustay Dec. ¶ 38.  Pl. Motion Exh. E at 2.  OIP withheld one document in full as privileged, 5 U.S.C. § 552(b)(5), and it referred two documents to the Civil Division and two documents to the Criminal Division. Pustay Dec. ¶ 38; Pl. Motion Exh. E at 3.  OIP informed plaintiff that it was not able to complete its search in the Office of the Associate Attorney General within the two hours of free search time and advised plaintiff that additional time would be necessary to complete the search in that Office.  Pustay Dec. ¶ 37; Pl. Motion Exh. E at 3.

After carefully analyzing the statutory standard in conjunction with Department of Justice regulations, 28 C.F.R. § 16.11(k)(2)(ii), OIP denied plaintiff's request for a fee waiver for the additional search time that would be needed.  Pustay Dec. ¶ 37; Pl. Motion Exh. E at 2.  In addition, OIP stated that based upon its review of documents located so far, its knowledge of the subject matter, and its general familiarity with the responsive records, the public understanding of government operations would not be increased by disclosure through plaintiff's FOIA request, 5 U.S.C. § 552(a)(4)(A)(iii), because the records sought were almost certainly protected under the attorney work-product, attorney-client, and deliberative process privileges encompassed by FOIA Exemption 5, 5 U.S.C. § 552(b)(5).  Pl. Motion Exh. E at 2.  Nevertheless, OIP advised that if in the course of further processing (provided plaintiff paid the additional estimated search fees) any documents were located that qualified for a fee waiver, they would be provided without cost.  Pl. Motion Exh. E at 2.  Lastly, OIP notified plaintiff that continued processing would require plaintiff to pay the estimated search fees.  Id.; Pustay Dec. ¶ 37.  To date, plaintiff has not paid or committed to pay fees so that OIP can complete its search.  Pustay Dec. ¶ 37.

<u>ARGUMENT</u>

DISCOVERY IS UNWARRANTED BECAUSE
<u>DEFENDANT ACTED EXPEDITIOUSLY AND IN GOOD FAITH</u>

"Discovery is generally unavailable in FOIA actions."  <u>Wheeler v. CIA</u>, 271 F. Supp. 2d

132, 139 (D.D.C. 2003); <u>see also</u> <u>Voinche v. FBI</u>, 2006 WL 177399 (D.D.C.) ("FOIA actions are

typically resolved without discovery."); <u>Pub. Citizen Health Research Group v. FDA</u>, 997 F.

Supp. 56, 72 (D.D.C. 1998) ("Discovery is to be sparingly granted in FOIA actions."), <u>aff'd in</u>

<u>part, rev'd in part</u>, 185 F.3d 898 (D.C. Cir. 1999).  An exception can be made, <u>inter alia</u>, if the

plaintiff makes a sufficient showing that the agency acted in bad faith.  <u>Voinche</u>, 2006 WL

177399, at *9.  Such a showing of bad faith, however, is not sufficient unless it impugns the

agency's affidavits or declarations, or provides some "tangible evidence" of bad faith.  <u>Id.</u>

(quoting <u>Carney v. U. S. Dep't of Justice</u>, 19 F.3d 807, 812 (2d Cir. 1994) (citing <u>Goland v. CIA</u>,

607 F.2d 339, 355 (D.C. Cir. 1978), <u>cert. denied</u>, 445 U.S. 927 (1980)).

In the present case, defendant has provided declarations from the Civil Division and OIP

explaining their general search methodology and the search for records conducted in this case.

<u>See</u> <u>Voinche</u>, 2006 WL 177399, at *9.  Those declarations are detailed and nonconclusory, and

they show that defendants have acted in good faith.  <u>See</u> <u>Safecard Servs., Inc. v. SEC</u>, 926 F.2d

1197, 1200 (D.C. Cir. 1991) (stating that agency affidavits must be "'relatively detailed and non-

conclusory, and submitted in good faith'").  Defendant's declarations are entitled to a

presumption of good faith that cannot be rebutted by mere speculation, <u>Safecard</u>, 926 F.2d at

1200; <u>Voinche</u>, 2006 WL 177399, at *9 (indicating that the plaintiff must present "actual

evidence" refuting agency statements rather than "mere assertions"); <u>Physicians' Comm. for</u>

Responsible Medicine v. Glickman, 117 F. Supp. 2d 1, 4 (D.D.C. 2000) (indicating that reliance

on affidavits is appropriate if they "'are not controverted by either contrary evidence in the record

[or] by evidence of agency bad faith'") (quoting Military Audit Project v. Casey, 656 F.2d at 738

(D.C. Cir. 1981)); Kay v. FCC, 976 F. Supp. 23, 34 (D.D.C. 1997) (holding that plaintiff's "so-

called 'evidence'" of bad faith was too speculative and conclusory to offer a "concrete basis" for

a finding of bad faith).

        Here, plaintiff's bare assertions of bad faith rest on nothing but speculation. "Discovery

to pursue a suspicion or a hunch is unwarranted." Physicians' Committee for Responsible

Medicine v. Glickman, 117 F. Supp. 2d at 4; Military Audit Project v. Casey, 656 F.2d at 751-52

(finding that discovery should not be granted where, as here, it would merely allow plaintiff to

"'pursue a 'bare hope of falling upon something that might impugn [the agency's] affidavits.'")

(quoting Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Security Agency,

610 F.2d 824, 837 n.101 (D.C. Cir. 1979). In the instant case, plaintiff seeks discovery solely for

that purpose, and its request for discovery should be denied.

I.    The Civil Division and OIP Responded Promptly and Plaintiff's Failure to Pay Fees or
      Narrow Its Request Caused Any Alleged Delays

        Plaintiff argues that defendant's alleged delay in processing its FOIA requests are

evidence of bad faith. However, defendant acted promptly on plaintiff's requests, and plaintiff is

responsible for any alleged delays. Both the Civil Division and OIP responded to plaintiff's June

28, 2005 FOIA requests, on July 7 and July 11, respectively. Both informed plaintiff that

"unusual circumstances" relating to the extraordinary breadth of plaintiff's FOIA request

required them to extend the 20-day time limit for determining whether to comply with the

request.  5 U.S.C. § 552(a)(6)(A)(i); id. § 552(a)(6)(B).  And both futilely urged plaintiff to take measures, i.e., the payment of fees or narrowing of its request, which would hasten the processing of its request.[4]  From that time forward, the ball was entirely in plaintiff's court to further the processing of its FOIA requests.  Plaintiff also had the option to sue defendant if it believed records were improperly being withheld.[5]  5 U.S.C. § 552(a)(4)(B).

The Civil Division could not continue to process plaintiff's request until plaintiff paid at least a portion of the necessary fees.  On July 7, the Civil Division notified plaintiff that it had conducted the free, two-hour preliminary search permitted by FOIA and determined that the responsive documents it found were privileged.  Complaint Exh. 20.  The Civil Division therefore concluded that because the documents could not be publicly released, fees for further processing could not be waived on grounds that their disclosure would enhance the public understanding of government.  Id. at 1-2.

Plaintiff was told to advise the Civil Division if it were willing to incur fees so that processing could proceed, and was also informed that the Civil Division could waive fees with

---

[4] The failure to limit the scope of a request is a factor that may allow for a stay of judicial proceedings in order to allow an agency additional time to process a request.  See 5 U.S.C. § 552(a)(6)(C)(iii) (stating that a requester's "refusal . . . to reasonably modify the scope of a request or arrange for an alternative time frame for processing . . . shall be considered as a factor in determining whether exceptional circumstances exist"); Al-Fayed v. CIA, No. 00-2092, slip op. at 6, 12 (D.D.C. Jan. 16, 2001) (denying discovery and granting additional time to process FOIA request where plaintiffs' ostensible efforts to limit the scope of their requests were "more symbolic than substantive") (Exhibit 4), aff'd on other grounds, 254 F.3d 300 (D.C. Cir. 2001).

[5] Plaintiff filed its administrative appeal of the Civil Division's decision on July 28, 2005.  Pl. Motion at 7.  Twenty working-days thereafter, CREW could have brought suit in district court to challenge the withholding of records and the denial of a fee waiver.  5 U.S.C. § 552(a)(6)(A)(ii).  Instead, CREW waited until October to invoke its statutory rights and now uses its own, manufactured delay to argue "bad faith" entitling it to discovery.

respect to documents that, in the course of further processing, it determined could be released. Id. at 2.  From this time on, then, plaintiff had the power to initiate the further processing of documents responsive to its FOIA request to the Civil Division if it paid an installment of fees. Plaintiff could have done this with the added assurance that the fees would be reimbursed if a fee waiver were later granted for documents found to be disclosable.[6]

Contrary to plaintiff's argument, Pl. Motion at 14, the fact that OIP adjudicated plaintiff's appeal of its denial of a fee waiver in January 2006 is hardly evidence of bad faith.  Nor did it stall the processing of plaintiff's request.[7]  Plaintiff had constructively exhausted its administrative appeal and could have invoked the Court's jurisdiction to resolve the fee issue. Plaintiff also could have restarted the Civil Division's processing of its FOIA request at any time during the pendency of the appeal simply by paying fees.  In the absence of an agreement to pay, no further action was allowed beyond the statutory entitlement of two hours of search time.  5 U.S.C. § 552(a)(4)(A)(iv)(II); see Pollack v. Dep't of Justice, 49 F.3d 115, 120 (4th Cir. 1995) (finding that when requester refused to commit to pay fees, agency "had the authority to cease processing [his] request"); Daniel v. U.S. Dep't of Justice, No. 99-2423, slip op. at 2 (D.D.C. March 30, 2001) (dismissing complaint for production of records where plaintiff had failed to pay fee after fee waiver was denied) (Exhibit 5), summary affirmance granted, No. 01-5119, 2001 WL 1029156, at *1 (D.C. Cir. Aug. 28, 2001).  Even after plaintiff agreed to narrow its

_____

[6] On July 7, 2005, the Civil Division also granted plaintiff's request for expedited processing and urged plaintiff to narrow the scope of its broadly worded FOIA request in order to speed the processing along.  Complaint Exh. 20 at 2.  Plaintiff failed to take this statutory based step either.

[7] Notably, plaintiff has taken no significant action since January based upon its receipt of the administrative appeal adjudication.

FOIA request on January 9, processing could not proceed without plaintiff's payment of fees because the documents responsive to the narrowed request were still too voluminous to process within the two hours of free search time allowed under FOIA.  Kovakas Dec. ¶ 7; id. Exh. E.

Similarly, OIP, as initial responder, acted promptly on plaintiff's FOIA request, and any alleged delays with respect to OIP's processing were largely due to plaintiff's failure to narrow the broad scope of its request.  See Pustay Dec. ¶ 39.  OIP quickly notified plaintiff on July 11 that a search for responsive documents would have to be conducted in several different offices, and that plaintiff should narrow its request in order to speed the processing along.  Complaint Exh. 14.  The exceedingly broad scope of plaintiff's original request made the searches for responsive records daunting and time-consuming.  Pustay Dec. ¶ 39.  Moreover, the request encompassed hundreds of documents that needed to be referred to other Department of Justice components.  Id.  If, at any time, plaintiff had narrowed its request, the search for and processing of records would have been significantly faster.  Id.  Ironically, the filing of this lawsuit itself delayed the preparation of an interim response because attention was focused on preparing an Answer and coordinating with defense counsel.  Id.  Throughout the process, plaintiff's request was being handled in a routine manner, and progress was consistently being made throughout that time.  Id.

Plaintiff's contention that defendant acted in bad faith by "dragging its feet" with respect to plaintiff's request is utterly misguided.  At any point since last July it was completely within CREW's power to trigger defendant's resumption of the processing of CREW's FOIA request if CREW had simply paid at least some of the costs of processing or narrowed its request – or CREW could have simply challenged the withholding of documents in district court.

Moreover, even if, arguendo, defendant had been slow in responding, mere delay is not evidence of bad faith.  In Goland v. CIA, 607 F.2d 339, 355 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980), the plaintiff accused the agency of a "pattern of obfuscation and delay," just as plaintiff has in this case, Pl. Motion at 17.   However, the Court held that where an agency's responses were not always timely, and "in view of the well-publicized problems created by the statute's 10- and 20-day time limits for processing FOIA requests and appeals, the [agency's] delay alone cannot be said to indicate an absence of good faith."  Id.  Plaintiff's attempt to seek unwarranted discovery based on a short delay that resulted from the ordinary processing of an overbroad and unwieldy request should be soundly rejected.

II.    Plaintiff's Other Allegations of Bad Faith Are Based on Speculation and Innuendo

Apparently aware that its accusation of delay is unwarranted, plaintiff offers speculation and innuendo to suggest that defendant acted improperly.  Agency affidavits, however, are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  Safecard Servs. Inc. v. SEC, 926 F.2d at 1200 (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).  The contention that defendant has acted in bad faith by not producing any responsive documents, Pl. Motion at 14, is baseless.  The reason defendant has not produced any responsive documents is that all of the responsive documents found during the free two-hour search which FOIA allows are privileged and therefore are exempt from disclosure under FOIA.  Complaint Exh. 20 at 2; Pl. Motion Exh. E at 2.  The Civil Division conducted two such searches, first in response to plaintiff's initial FOIA request which encompassed approximately 8-10 million documents, and second when plaintiff appealed the Civil Division's denial of a fee waiver.  Kovakas Dec. ¶¶ 11,

-17-

13, 16-18.  Similarly, OIP conducted a two-hour search which it completed after plaintiff had narrowed its FOIA request on January 9.  Pustay Dec. ¶ 37.  After completing these searches, both Civil and OIP notified plaintiff that the records found were privileged and therefore not subject to disclosure under FOIA.  Complaint Exh 20 at 2; Kovakas Dec. ¶ 19; Pustay Dec. ¶ 38; Pl. Motion Exh. E at 2.  The situation here does not involve an alleged suspicious failure to uncover documents, Pl. Motion at 14, but rather, the uncovering of too many documents to allow the completion of processing without the payment of fees.

The notion that defendant is obligated at this point to assess – without the payment of fees – whether the remaining responsive documents can be disclosed is erroneous.  Pl. Motion at 8. FOIA permits an agency to furnish only two free hours of search time before fees must be charged.  5 U.S.C. § 552(a)(4)A)(iv)(II).  For the government to review hundreds of records over many hours on a free basis would impose costs on the taxpayer that the requester should properly bear.  See Judicial Watch v. U.S. Dep't of Justice, No. 01-0639, slip op. at 7-8 (D.D.C. March 31, 2003) (recognizing that the court's prior opinion "essentially requiring [agency] to process Plaintiff's entire FOIA request for free without requiring Plaintiff to meet its burden of proof" of entitlement to fee waiver was improper) (Exhibit 6).  If plaintiff wants to find out whether the rest of the records are disclosable, it can pay for their processing and obtain reimbursement if it is found that any documents are releaseable and a fee waiver is therefore warranted.

Plaintiff erroneously argues that Mr. Kovakas of the Civil Division wrongly failed to explain what portion of the 8-10 million documents he reviewed in response to plaintiff's original FOIA request or to describe how those documents were selected.  Pl. Motion at 6.  FOIA requires no such explanation.  The agency is simply obligated to conduct a two-hour search that

is "reasonably calculated to uncover all relevant documents," Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983), and it has no obligation to itemize and describe the specific documents it considered or explain how they were selected. See 5 U.S.C. § 552(a)(4)(A)(iv)(II). The Civil Division reviewed the key responsive documents from the original pool of millions of potentially responsive records, and to confirm its original conclusion, reviewed a second sample of potentially responsive documents. Kovakas Dec. ¶¶ 11, 14, 16, 18-19. Similarly, OIP searched the pool of potentially responsive documents it obtained from the Offices of the Attorney General and Associate Attorney General. Pustay Dec. ¶ 31. Once plaintiff narrowed its request, OIP then conducted a more targeted search. Pustay Dec. ¶ 36. The processing of plaintiff's requests by both the Civil Division and OIP was routine, and there is no evidence whatsoever of any wrongdoing. See NARA v. Favish, 541 U.S. 157, 174 (noting realistically that "[a]llegations of government misconduct are easy to 'allege and hard to disprove'" (quoting Crawford-El v. Britton, 523 U.S. 574, 585 (1998) (non-FOIA case))), reh'g denied, 541 U.S. 1057 (2004).

Contrary to plaintiff's claim, Pl. Motion at 6 n.2, 7-8, plaintiff actually did not make clear at the outset that it was not interested in all publicly filed documents. In fact, its FOIA requests say nothing of the kind. Complaint Exh. 13, 19. Plaintiff's counsel made this clear only after defendant's counsel initiated conversations in about December 2005 after the lawsuit was filed to narrow plaintiff's FOIA request. In any event, the argument that the Civil Division inflated its estimate of potentially responsive documents by including publicly available documents (which it did not) is not only unfounded but irrelevant. Pl. Motion at 6 n.2. The important point is that regardless of the exact number of documents, the request encompassed far more records than

could be searched in two hours, and it was therefore incumbent on plaintiff to pay fees before the search could be completed.

Plaintiff claims that defendant showed disdain for FOIA's statutorily prescribed time limits in responding to its FOIA request and has a pattern of late responses which would justify discovery on the basis of bad faith.  Pl. Motion at 7, 8.  Contrary to these assertions, not only is there no "pattern and practice," but in this case both the Civil Division and OIP responded promptly to plaintiff's requests, and proceeded expeditiously with their processing until they reached statutory roadblocks which only plaintiff could clear.

Plaintiff argues that OIP's specific urging that plaintiff narrow its request was couched in boilerplate.  Pl. Motion at 9 n.5.  While the language OIP uses to address the problem of overly broad requests may necessarily be similar in its letters to different requesters, that fact does not provide plaintiff with a license to ignore it.  Had plaintiff heeded OIP's suggestion, whether or not it was expressed in alleged boilerplate, the processing of its request would have been streamlined and accelerated.  Pustay Dec. ¶ 39.

Finally, plaintiff suggests that OIP's inability to complete its search in the Office of the Associate Attorney General is evidence of bad faith because Associate Attorney General McCallum is a central figure in this matter.  Pl. Motion at 12.  This claim is misleading at best.  OIP could not complete its search in that Office only because plaintiff failed to pay necessary fees.  Pl. Motion Exh. E at 3.  The Associate Attorney General's Office possesses more potentially responsive documents than can be reviewed in the two hours of free search time permitted by FOIA, and the search will be completed as soon as plaintiff pays the fees.  Pustay Dec. ¶ 37.  The search of the Office of the Attorney General was completed by September 2005,

Pl. Motion at 12 n.6, and because it could be accomplished within two hours, no additional searching was necessary.  Pustay Dec. ¶ 19.

The suggestion that career Department of Justice lawyers, including defendant's counsel, have not been permitted access to the records of the Associate Attorney General, Pl. Motion at 21, is patently false.  And there certainly is not a scintilla of evidence that any documents have been illegally destroyed in an effort to circumvent disclosure requirements.  Pl. Motion at 14.  Absent any evidence at all that documents are being improperly withheld, there is no reason that this case should not proceed as any other, with adjudication of summary judgment motions on the merits.

III.    Plaintiff Is Seeking Discovery For An Improper Purpose

Plaintiff alleges that defendant should "be accountable for its actions."  Pl. Motion at 22.  Those actions are, to date, a denial of plaintiff's request for a fee waiver and the withholding of exempt documents.  If plaintiff had any interest at all in resolving those issues, it would urge a briefing schedule for summary judgment and seek a speedy resolution of these purely legal issues.  Instead, plaintiff urges the court to avoid adjudicating the merits, where plaintiff would have to actually prove its entitlement to a fee waiver and privileged documents, and focus on giving "a full airing" to "whether DOJ is proceeding in good faith."  Pl. Motion at 24.

Plaintiff is unabashedly and transparently seeking this discovery for an improper purpose, i.e., to explore its underlying allegation of misconduct in the Department's tobacco litigation.  As explained above, discovery is rare in FOIA cases, and even in the rare cases it is granted, it is nearly always limited to the scope of the search.  See Long v. Dep't of Justice, 10 F. Supp. 2d 205 (N.D.N.Y. 1998); Judicial Watch v. U.S. Dep't of Commerce, 34 F. Supp. 2d 28 (D.D.C.

1998); Pl. Motion at 13-14.  Here, the scope of the search is not at issue, because plaintiff has not

yet tendered the requisite fees to trigger more than the two hour search that the statute provides at

no cost.  Nor can plaintiff obtain discovery based on an equitable theory that there has been a

"pattern and practice" of obfuscation and delay.  See Pl. Motion at 13, citing Gilmore v. U.S.

Dep't of Energy, 35 F. Supp. 2d 1184 (N.D. Cal. 1998); see Pl. Motion at 13.[8]  Indeed, plaintiff

takes pains to point out that DOJ's "pattern and practice" is to be exceptionally timely in

processing FOIA requests.  See Pl. Motion at 14-15.

    The true motivation behind plaintiff's motion for discovery is apparent from the very

discovery it seeks.  CREW first and foremost seeks to depose the Associate Attorney General,

because he "is at the heart of the allegations of government misconduct surrounding the

government's decision to reduce its proposed penalty in the tobacco litigation." Pl. Motion at 21.

Plaintiff is not interested in litigating its entitlement to a fee waiver, or even its purported

entitlement to litigation documents that CREW, a sophisticated FOIA requester, surely knows are

privileged and therefore exempt from disclosure.  Plaintiff, instead, is interested in substituting

---

    [8] The pattern or practice issue in Gilmore was one of standing, not discovery.  In any
event, plaintiff's reliance on Gilmore v. U.S. Department of Energy, 33 F. Supp. 2d 1184 (N.D.
Cal. 1998), to support a pattern or practice claim is misplaced.  Pl. Motion at 13.  Unlike the
present case, where plaintiff heard from each component within a matter of days, in Gilmore, the
requester waited six months to hear from the agency at all.  33 F. Supp. 2d at 1186 n.1.  While in
certain limited circumstances courts have held that claims alleging a "pattern and practice" of
violating the FOIA are ripe for review, such claims have been deemed ripe only under
circumstances that do not apply here, i.e., when either (i) a written, generally applicable policy
has been challenged, see, e.g., Public Citizen v. Dep't of State, 276 F.3d 634, 641-42 (D.C. Cir.
2002) (challenge to "published [FOIA] guidance" ripe for review); Better Gov't Ass'n v. Dep't of
State, 780 F.2d 86 (D.C. Cir. 1986) (challenge to published FOIA guidelines and regulation ripe
for review) or (ii) when such claims are predicated on repeat, specific conduct, see, e.g., Payne
Enters., Inc. v. United States, 837 F.2d 486, 493 (D.C. Cir. 1988); Long v. IRS, 693 F.2d 907,
910 (9th Cir. 1982); Public Citizen v. U.S. Trade Representative, 804 F. Supp. 385, 387 (D.D.C.
1992).

itself for the Office of Professional Responsibility, which is already tasked with investigating the allegations made in connection with United States v. Philip Morris.[9]  See Declaration of H. Marshall Jarrett ("Jarrett Dec.") (Exhibit 3) ¶ 7.  CREW is not entitled to invoke this Court's jurisdiction under FOIA to appoint itself a roving investigator of government misconduct. CREW's sole right in this lawsuit is to obtain access to any non-exempt, agency records that have been wrongfully withheld.  Unlike the plaintiff, defendant stands ready to defend its legal position and move this case forward.  Specifically, DOJ is prepared to either (a) accept CREW's commitment to pay appropriate fees and move forward with the search, or (b) immediately brief on summary judgment why CREW is not entitled to a fee waiver.  A proposed order and briefing schedule is attached.

CONCLUSION

For the foregoing reasons, plaintiff's motion for discovery should be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney

**/s/ Lisa A. Olson**
ELIZABETH J. SHAPIRO
LISA A. OLSON
U.S. Department of Justice
20 Mass. Ave., N.W., Room 7300
Washington, D.C. 20530
Telephone: (202) 514-5633
Telefacsimile: (202) 616-8470
E-mail: lisa.olson@usdoj.gov

Dated: March 10, 2006                    Counsel for Defendant

---

[9] Contrary to plaintiff's assertion, Pl. Motion at 17 n.16, Associate Attorney General Robert McCallum has never played any role in OPR's investigation.  Jarrett Dec. ¶ 9.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 10, 2006, Defendant's Opposition to Plaintiff's Motion for

Discovery with Exhibits 1-6 and proposed Order and Briefing Schedule was filed electronically

with the Clerk of the Court to be served by operation of the Court's electronic filing system upon

plaintiffs' counsel as follows:

> Anne L. Weismann
> Melanie Sloan
> Citizens for Responsibility and Ethics
>     in Washington
> 11 Dupont Circle, N.W.
> Second Floor
> Washington, DC 20036
> Email: aweismann@citizensforethics.org


/s/ **Lisa A. Olson**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>     Plaintiff,<br><br>     v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>     Defendant. | Civil Action No. 1:05-cv-02078<br><br>Judge: Emmet G. Sullivan |

ORDER AND BRIEFING SCHEDULE

The Court having considered plaintiff's motion for discovery and defendant's opposition thereto, it is hereby

ORDERED that plaintiff's motion for discovery is hereby denied; and it is further

ORDERED that defendant shall file its motion for summary judgment on the issue of whether or not a fee waiver should be granted within twenty-one days, and the filing of plaintiff's response and defendant's reply shall subsequently be filed within the time allowed by the Local Rules.


Dated: _____, 2006          _____
                                        EMMET G. SULLIVAN
                                        UNITED STATES DISTRICT JUDGE