UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CITIZENS FOR RESPONSIBILITY AND  :
ETHICS IN WASHINGTON             :
11 Dupont Circle, N.W.           :
Washington, D.C. 20036           :
                                 :
      Plaintiff,                 :
                                 :
   v.                         : Civil Action No. 05-2078 (EGS)
                                 :
U.S. DEPARTMENT OF JUSTICE       :
950 Pennsylvania Avenue, N.W.    :
Washington, D.C. 20530           :
                                 :
      Defendant.                 :

---

**PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR DISCOVERY**

Defendant Department of Justice's ("DOJ) opposition to Plaintiff Citizens for Responsibility and Ethic's ("CREW") motion for discovery rests on three flawed assertions: (1) that discovery is unwarranted because DOJ has exercised "ordinary diligence" in processing plaintiff's Freedom of Information Act ("FOIA") requests;[1] (2) that any delay is the result of inaction on the part of the plaintiff, not DOJ; and (3) that plaintiff CREW is at fault because it failed to narrow its FOIA requests or pay fees to DOJ to cover the cost of processing its requests. As demonstrated in CREW's opening brief and further below, each of these contentions is demonstrably false, and none can excuse DOJ's unjustified delay in processing CREW's FOIA requests or rebut the evidence of record supporting discovery as to whether DOJ has complied in good faith with its obligations under the FOIA. At bottom, DOJ's arguments are red herrings

---

[1] Defendant's Opposition to Plaintiff's Motion for Discovery ("D's Opp."), p. 1.

designed to divert attention from the agency's own misconduct.

### 1. Defendant's Claim Of Justified Delay In Processing Plaintiff's FOIA Requests Is Contradicted By The Evidence Of Record.

As CREW demonstrated in its opening brief, DOJ's failure to date to produce a single responsive document, notwithstanding the passage of eight months, coupled with its seven-month delay in resolving CREW's fee waiver requests evidence DOJ's bad faith.  In response, DOJ offers the same mantra it offered at the February 9, 2006 hearing, namely that it has exercised "ordinary diligence," (D's Opp. at 1), and that CREW's allegations and evidence to the contrary are mere "whims[y]." Id.  The facts, however, tell a different story, and it is far from whimsical.

Simply stated, since June 28, 2005, when CREW first served its two FOIA requests on DOJ, to the present, almost nine months later, DOJ has completed processing of only one document, totaling one page, which it has withheld in full pursuant to Exemption 5 of the FOIA. *See* Declaration of Melanie Ann Pustay("Pustay Decl."), ¶38.  And with respect to that single document, it took OIP until January 19, 2006, to advise CREW of its decision.  Id. at ¶¶ 37-38. In other words, DOJ consumed almost seven full months processing a single one-page document.

Similarly, the Civil Division has made broad claims of privilege that purport to cover the universe of responsive documents, based in part on the pendency of an internal DOJ investigation.  *See* Exhibits B and E to Declaration of James M. Kovakas ("Kovakas Decl.).  As Mr. Kovakas explained, "[t]hese documents were also requested by the Office of Professional Responsibility "OPR")." Kovakas Decl., ¶ 12.  But what Mr. Kovakas did not explain is why, if OPR had already requested these documents as part of its investigation, it took the Civil Division until March 8, 2006 (Exhibit E to Kovakas Decl.), to account for these documents to CREW, and

then only did so in the broadest way possible.

In response DOJ argues that it "acted promptly" citing to the fact that it "responded to plaintiff's June 28, 2005 FOIA requests, on July 7 and July 11, respectfully." D's Opp. at 13.[2] As DOJ is well aware, however, an agency's mere acknowledgment that it has received a FOIA request – an acknowledgment that DOJ has labeled here as a prompt response – "does not constitute a 'determination' under the FOIA in that it neither denies records nor grants the right to appeal the agency's determination." Freedom of Information Act Guide & Privacy Act Overview, U.S. Department of Justice, Office of Information and Privacy, May 2004 Edition, p. 742.

In fact, OIP did not make any determination within the meaning of the FOIA until January 19, 2006, when it advised CREW that it was withholding one document in full. *See* Exhibit E to Pustay Decl. The Civil Division's letter of July 7, 2005 (Exhibit B to Kovakas Decl.) purports to be a partial determination in that it claims, based on a review of a portion of responsive documents, that the documents are exempt from disclosure under the FOIA. That same letter, however, goes on to state that Civil has undertaken only a "preliminary search" for responsive records, id., and seeks to invoke the "unusual circumstances" exception to the 20-day

---

[2] In further support of its claim to have acted expeditiously, DOJ asserts that it properly extended the 20-day time limit for responding by establishing "unusual circumstances." D's Opp. at 13-14. To the contrary, neither OIP nor the Civil Division complied with the requirements for invoking the "unusual circumstances" exception to the 20-day requirement, as neither component advised CREW in writing of "the date on which a determination is expected to be dispatched." 5 U.S.C. §552(a)(6)(B)(i). Instead, OIP stated merely that it could neither comply with the 20-day statutory requirement nor the 10 additional days afforded by the "unusual circumstances" provision of the FOIA. *See* Exhibit B to Pustay Decl. And the Civil Division stated simply that "we cannot meet the time limits" prescribed by the FOIA. Exhibit B to Kovakas Decl.

agency response time.  Thus, it is highly questionable whether this letter in fact constitutes a "determination" of withholding under the FOIA.  In a subsequent newly-minted letter of March 8, 2006, Civil appears to be communicating its determination that both unidentified documents it has reviewed as well as "all of the records potentially responsive to [CREW's] modified request" are exempt from disclosure.  *See* Exhibit E to Kovakas Decl.  But to the extent this response is based on "potentially" responsive records, it cannot properly be characterized as a "determination" under the FOIA.  In sum, DOJ did not respond "promptly" in any legally cognizable way as it now claims, but waited seven months in the case of OIP and over eight months in the case of the Civil Division.

In an effort to obscure these facts, DOJ devotes a lot of time in its opposition and supporting declarations describing the monthly back and forth between DOJ's Office of Information and Privacy ("OIP") and the three senior leadership offices from which CREW sought documents.[3]  But this attempt to account for the seven-month gap in taking any substantive action is mere background noise seemingly designed to obscure the pitiful and indefensibly scant results of OIP's effort – specifically, one single-page document.

Moreover, what OIP has not explained is why, for example, it took the agency seven months to exhaust the two free hours of search time per office to which OIP claims CREW is entitled.  Nor has DOJ explained why the attorney and FOIA Specialist assigned in OIP to CREW's FOIA request let months go by with no tangible results from the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General, notwithstanding that DOJ purported to be expediting its processing of the request.  Similarly, DOJ has failed to

---

[3] *See* Pustay Decl., ¶¶ 11-31.

explain why the Office of the Attorney General claimed to have completed its records search by mid-September (Pustay Decl, ¶ 19), yet OIP did not get around to advising CREW of those results until January 19, 2006 (Pustay Decl., ¶ 37). And there are many unanswered questions about DOJ's conduct with respect to the Office of the Associate Attorney General, including why that office advised OIP on November 1, 2005, that its search was complete (Pustay Decl, ¶25), yet OIP claimed over two months later that it was "unable to complete our records search in the Office of the Associate Attorney General within the two hours of free search time allotted" (Pustay Decl., ¶ 37). And DOJ has yet to explain why it still hasn't provided CREW with any results from the two hours of search time it claimed to have used in that office. These are some of the myriad questions raised, but not answered, by DOJ's supporting declarations – questions that go to the heart of DOJ's conduct at issue.

Apparently, DOJ believes that its repeated claim that the seven to eight month delay is "short" and a result of its "ordinary processing" of CREW's requests, D's Opp., p.17, will carry the day under the principle that the agency is entitled to a presumption of regularity and good faith. *See, e.g.*, D's Opp. at 12. But that presumption is overcome here by the evidence of record. As CREW demonstrated conclusively in its opening brief, DOJ's own statistics show that there is nothing "short" or "ordinary" about how DOJ has handled its supposedly expedited processing of CREW's request. When compared to the median processing time for other expedited requests by the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General over the past five years, it is clear that DOJ has delayed here beyond a point of reasonableness. *See* Plaintiff's Motion for Discovery and Supporting Memorandum of Points and Authorities ("P's Mem."), pp. 14-16 and Exhibit F to P's Mem. Most tellingly, in the

face of this evidence DOJ offers deafening silence. The agency has failed to even mention, much less explain or refute, the five years of statistical evidence proffered by CREW that OIP's handling of CREW's FOIA request here is anything but expedited, and can only be characterized as extraordinary. This alone justifies CREW's request for discovery.

### 2. Plaintiff Bears No Responsibility For DOJ's Extraordinary Delay In Responding to Plaintiff's FOIA Requests.

When faced with the evidence of its own unjustified delay in processing CREW's FOIA requests DOJ responds in what is, sadly, a predictable fashion – it blames the delay on CREW. According to DOJ, CREW is at fault for failing to pay fees once its fee waiver request was denied, for failing to narrow the scope of both requests until January of this year, and for simultaneously failing to file suit immediately once there had been constructive exhaustion and eventually filing suit, thereby diverting agency resources from processing the requests.

First, that CREW, a non-profit public interest organization that filed its FOIA requests for the purpose of shedding public light on DOJ's dramatic reversal of position in the tobacco litigation, should be faulted for pressing its legal right to a fee waiver rather than paying fees it can ill afford is nothing short of remarkable. It is not CREW's prosecution of its legal rights that has unjustly delayed the agency's processing of CREW's FOIA requests, but DOJ's unwarranted eight-month delay in resolving the fee issues administratively coupled with its failure to promptly process even the free search time DOJ claims to have afforded CREW.[4] At every turn

---

[4] DOJ relies on Judicial Watch v. Dep't of Justice, No. 01-0639 (D.D.C. March 31, 2003), for the proposition that CREW's only legitimate option is to pay now and hope for reimbursement later. D's Opp. at 18. The decision in that case, however, does not support DOJ's argument, as the issue was whether plaintiff was entitled to a fee waiver when the documents it sought were already in the public domain from a prior release by the agency. There has been no such release here; CREW seeks documents that the agency has shielded from public

CREW has pressed its entitlement to a fee waiver as promptly as possible, filing administrative appeals within days of receiving adverse fee determinations. And at every turn DOJ has delayed past the point of reasonableness.

Second, DOJ's repeated cry that CREW is at fault for failing to promptly narrow its requests is both false and largely irrelevant. CREW has yet to receive a single responsive document not because it failed to promptly narrow its requests, but because DOJ has determined that CREW is not entitled to a fee waiver.[5] Stated differently, even if CREW had narrowed its requests at the outset the outcome would have been no different, as DOJ would still have denied CREW's fee waiver requests, thereby limiting CREW to two hours of free search time per component. Thus, whether those two hours were consumed on a broad or narrowed request would have had no impact on DOJ's conduct.

That this is a makeweight argument is also made clear by DOJ's position that all of the responsive documents are, in any case, exempt from disclosure as they are "part of an ongoing investigation into congressional allegations concerning penalties proposed in the tobacco litigation," and "are also exempt from disclosure pursuant to 5 U.S.C. §552(b)(5). <u>Letter from James Kovakas to Anne Weismann</u>, March 8, 2006 (Exhibit E to Kovakas Decl.). This latest response, which purports to describe the documents that are responsive to the modified request, mirrors the Civil Division's initial letter of July 7, 2005, in which it claimed that "the documents

---

scrutiny.

[5] *See, e.g.*, D's Opp. at 14: "The Civil Division could not continue to process plaintiff's request until plaintiff paid at least a portion of the necessary fees," and at p. 15: "in the absence of any agreement to pay, no further action was allowed beyond the statutory entitlement of two hours of search time."

7

responsive to your request [as originally submitted] . . . are not subject to disclosure." Exhibit B to Kovakas Decl. And this same position was echoed repeatedly by DOJ's counsel during the February 9, 2006 hearing.[6] DOJ's position is clear: CREW is not entitled to a fee waiver because all of the documents – whether responsive to the original or modified requests – are exempt from disclosure. It is therefore essentially futile for CREW to narrow its request as DOJ has made clear that any request, broad or narrow, will be denied.

Moreover, while DOJ has been quick to complain to the Court that CREW acted unreasonably in not narrowing its requests, the agency never really brought this issue to CREW's attention before the matter was in litigation. Instead, the Civil Division merely provided CREW with a form letter noting that CREW had "the opportunity to limit the scope of [its] request . . . or arrange an alternative time frame." <u>Letter from James Kovakas to Anne Weismann</u>, July 7, 2005 (Exhibit B to Kovakas Decl.). Similarly, OIP merely advised CREW of these same options in addition to the option of "await[ing] the completion of our record searches to discuss either of these options." <u>Letter from Melanie Ann Pustay to Anne Weismann</u>, July 11, 2005 (Exhibit B to Pustay Decl.). But what DOJ did not do was respond to CREW's request, set out in its FOIA requests of June 28, 2006, that the agency contact CREW by telephone if it "foresee[s] any problems in releasing fully the requested records on an expedited basis." Exhibit A to Kovakas Decl.; Exhibit A to Pustay Decl.

DOJ is also wrong in its assertion that CREW waited until January 2006, to narrow its request. CREW made clear much earlier that it had no interest in publicly filed records.

---

[6] *See, e.g.*, transcript at p. 40: "Ms. Olson: Yeah. The understanding of the government would not be enhanced because these documents will never come to public light . . ."

8

Moreover, counsel for CREW repeatedly requested that she be permitted to speak to a custodian of records for the Civil Division or any other individual with knowledge about the contents of Civil's records. Absent that information, CREW simply had no basis from which to reformulate its request. DOJ had all the information necessary for CREW to determine which categories of records were of no interest to it; until DOJ was willing to share that information CREW could not meaningfully narrow its request.

DOJ's claim of overbreadth with respect to the OIP FOIA rings especially hollow, given that the request as initially framed generated a total of only 450 documents in the Offices of the Attorney General and Associate Attorney General (Pustay Decl., ¶ 33), while the Office of the Deputy Attorney General had no responsive documents whatsoever (Pustay Decl., ¶ 32). Far from proving that CREW's request was "exceptionally broad," these results demonstrate the reasonableness of the request.

Third, DOJ faults CREW for "wait[ing] until October to invoke its statutory rights and now us[ing] its own, manufactured delay to argue 'bad faith' entitling it to discovery." P's Opp. at 14 n.5. This is nothing short of ludicrous. Had CREW filed suit on the 21st day after it submitted its FOIA requests the result would have been no different – DOJ would be claiming, as it claims here, that it cannot process the requests within the time mandated by the FOIA. Indeed, DOJ is arguing here that a seven-month delay is reasonable and to be expected given the scope of CREW's requests and the "many other duties and responsibilities" of OIP's staff.[7] DOJ cannot have it both ways – it cannot fault CREW for giving the agency four months to process the requests before it filed suit while, at the same time, claim that even those four months are

---

[7] Pustay Decl., ¶ 45.

insufficient time.

Conversely, DOJ argues that CREW is at fault for filing this lawsuit and thereby diverting agency resources from processing the requests to defending the litigation. *See, e.g.*, Pustay Decl., ¶ 39 ("the filing of this lawsuit itself resulted in a delay of preparation of an interim response because attention was focused on preparing the Answer and coordinating with the litigator."). This argument ignores the fact that FOIA imposes on DOJ a continuing statutory mandate to process CREW's requests, which the agency was not free to simply ignore, particularly given its decision to expedite the requests.

The argument is also nothing short of ridiculous. By January 19, 2006, when OIP finally sent its long-delayed interim response, DOJ, through counsel in the Civil Division, had only filed a nine-page answer, which it filed on December 8, 2005, after receiving a two-week extension. There is simply no merit to DOJ's claims that the agency could not simultaneously continue its processing of CREW's requests.[8]

### 3. Defendant Has Failed To Refute The Evidence Of Bad Faith

Defendant argues that plaintiff's request for discovery is based on "speculation and innuendo" and asks the Court to rely instead on the agency's declarations. D's Opp. at 17. As discussed above, however, those declarations not only do not refute plaintiff's evidence, but they raise even more questions about DOJ's conduct in responding to CREW's FOIA requests. For example, DOJ relies on the Pustay Declaration to try to explain why the agency has yet to

---

[8] OIP also claims that its staff simply had "many other duties and responsibilities," Pustay Decl. at ¶ 45, that apparently had to take precedence. It is this continuing failure by OIP to give precedence to CREW's expedited FOIA request – a failure echoed in DOJ's recently filed motion for an extension to file its opposition brief – that evidences the agency's bad faith.

10

account for a single document from the Office of the Associate Attorney General – a central figure in this matter. Id. But while Ms. Pustay does state that "[t]he Associate Attorney General's Office possesses more potentially responsive documents than can be reviewed in the two hours of free search time," Pustay Decl. at ¶ 37, she does not reveal the results of the two hours of free search time that the agency claims to have already expended. We still have no concrete information on how many responsive documents are with the Office of the Associate Attorney General, the nature of those documents, and why after two hours of search time DOJ has yet to account for anything whatsoever from that office. It is these kind of gaps that raise a serous question about the agency's good faith.

Similarly, DOJ disputes CREW's understanding that agency lawyers, including defendant's counsel, have not been provided full access to all of the records in the Office of the Associate Attorney General. D's Opp. at 21. But while Ms. Pustay's Declaration describes at various points how at least one member of her staff has reviewed at least some records from the Office of the Associate Attorney General, there is nothing in the totality of what DOJ has offered that states unequivocally that any DOJ attorney with OIP or the Civil Division has been afforded complete and unfettered access to the requested records. Absent this level of proof CREW's claims have not been adequately rebutted.

Finally, DOJ resorts to name-calling by arguing that CREW seeks discovery here for "an improper purpose," D's Opp. at 21, specifically to "appoint itself a roving investigator of government misconduct." Id. at 23. CREW admittedly is "committed to the protection of the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials." Complaint, ¶ 4. And CREW uses the FOIA "to provide full,

accurate, and current information to the public." Id. at ¶ 6.  CREW now seeks discovery because DOJ's conduct to date has not only deprived CREW and the public of vital information, but seems to have been designed purposely to evade the agency's responsibilities under the FOIA.  There is absolutely nothing improper about CREW and, more fundamentally, this Court ensuring that DOJ complies in good faith with its statutory obligations.  It is this purpose for which the requested discovery is designed.

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiff's Motion for Discovery and Supporting Memorandum of Points and Authorities Plaintiff's motion should be granted.

Respectfully submitted,

\_\_\_/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and
 Ethics in Washington
11 Dupont Circle, N.W.
Washington, D.C.  20036
Phone: (202) 588-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

Dated:  March 16, 2006