UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
CITIZENS FOR RESPONSIBILITY    )
AND ETHICS IN WASHINGTON,      )
                               )
            Plaintiff,         )
                               )
                               )    Civ. No. 05-2078 (EGS)
       v.                      )
                               )
U.S. DEPARTMENT OF JUSTICE,    )
                               )
            Defendant.         )
_____)
```

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW"), commenced this action against the United States Department of Justice pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  CREW seeks information concerning the government's recent decision to reduce its monetary penalty request in its ongoing litigation against the tobacco industry.

Pending before the Court is plaintiff's Motion for Discovery.  A motions hearing was held on April 6, 2006.  Upon consideration of the motion, the response and reply thereto, the oral arguments, and the entire record herein, plaintiff's motion for discovery is **GRANTED**.  Accordingly, plaintiff shall be permitted to depose the following individuals: (1) Associate Attorney General Robert McCallum; (2) Daniel Metcalfe, Director

1

of the Office of Information and Privacy ("OIP"); (3) Steve Brody, individual on the tobacco team responsible for assembling documents responsive to CREW's FOIA requests; and (4) James Kovakas, attorney in charge of the Civil Division's FOIA processing.  The depositions of these individuals shall be limited to 5 hours total.  Further, United States Magistrate Judge Alan Kay will supervise the depositions and resolve any issues that may arise therein.  The parties are directed to communicate promptly with Magistrate Judge Kay's chambers to schedule the depositions.

## I.   Background[1]

Plaintiff CREW is a non-profit organization that strives to inform the public about the activities of government officials. Compl. ¶ 4.  By letters dated June 28, 2005, CREW made two separate FOIA requests, one to the Department of Justice's ("DOJ") Office of Information and Privacy ("OIP") and the other to DOJ's Civil Division. *Id*. at ¶¶ 28, 36.  CREW specifically requested that OIP and the Civil Division produce all records in the Offices of the Attorney General ("OAG"), the Deputy Attorney General ("ODAG"), and the Associate Attorney General ("OAAG") relating in any way to the government's proposed penalty in the

---

[1]The facts cited herein are undisputed by the parties.

tobacco litigation.[2] *Id*.

In its FOIA request to the OIP, CREW sought expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E)(i), and a fee waiver associated with processing the request, pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). *Id*. at ¶ 29. By letter dated July 11, 2005, OIP acknowledged receipt of CREW's request, denied CREW's request for expedited processing, and informed CREW that it had yet to make a decision on CREW's request for a fee waiver. *Id*. at ¶¶ 31, 32. On July 18, 2005, CREW appealed OIP's denial of expedited processing to the Co-Director of OIP and, at that time, also requested the Office of Public Affairs, pursuant to 28 C.F.R. § 16.5(d)(1)(iv), to consider CREW's request for expedited processing. *Id*. at ¶¶ 33, 34. On August 9, 2005, the Office of Public Affairs granted CREW's request for expedited processing.

---

[2] The DOJ has been litigating a racketeering case on behalf of the United States against the tobacco industry, including Philip Morris, R.J. Reynolds, Brown & Williamson Tobacco Co., and British American Tobacco. Compl. ¶ 15. *See also United States v. Philip Morris, Inc., et al.,* Civil Action No. 99-2496 (D.D.C.). On June 7, 2005, DOJ attorneys requested that as a penalty for the tobacco industry's violations, the court order the industry to fund a $10 billion smoking cessation program, at a rate of $2 billion per year for five years. Compl. ¶ 16. As reported by the newspapers closely following the tobacco litigation, this proposed penalty represented a significant departure from the government's position in the case up to that point, which was a $130 billion smoking cessation program, at a rate of $5.2 billion per year for 25 years. *Id*. at ¶¶ 16-18. DOJ's proposed penalty also sparked concerns from several Congressmen, which prompted a request of DOJ's Inspector General to investigate whether improper political interference led to the government's change in the penalty it was seeking from the court. *Id*. at ¶¶ 19, 20.

*Id*. at ¶ 35.  Finally, on January 19, 2006, OIP informed CREW that its fee waiver request was denied. Pl.'s Mot. for Disc. at 11.

In its FOIA request to the Civil Division, CREW also sought expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E)(i), and a fee waiver associated with processing the request, pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). *Id*. at ¶ 36.  By letter dated July 7, 2005, the Civil Division acknowledged receipt of CREW's FOIA request, granted CREW's request for expedited processing, but denied its request for a fee waiver. *Id*. at ¶ 37.  On July 11, 2005, CREW filed an administrative appeal of the Civil Division's denial of its fee waiver request to the OIP. *Id*. at ¶ 38.  On January 23, 2006, CREW was informed by OIP that it was affirming the Civil Division's decision to deny CREW's fee waiver request. Pl.'s Mot. for Disc. at 7.

## II. Plaintiff's Discovery Request

CREW argues that this case presents facts that raise a sufficient question of bad faith on the part of the government in responding to CREW's two FOIA requests to warrant further exploration through discovery.  Specifically, CREW makes the following claims: (i) OIP took seven months to resolve CREW's fee waiver request and appeal, despite its claim that it was processing the request on an expedited basis; (ii) the government has failed to adequately explain why it took almost five months

to exhaust the statutorily allotted two hours of free search time; (iii) not a single responsive document to CREW's FOIA requests has been produced; and (iv) the government's own statistics show that the amount of time OIP has taken to respond to CREW's expedited FOIA requests is substantially longer than the average processing time for other expedited requests.

The government, in turn, contends that it has processed CREW's FOIA requests in a timely, normal manner, and that any delay that has resulted is due to CREW's failure to narrow the scope of its broad requests as suggested by the government. Next, the government was not able to conduct any search beyond the statutorily provided two free hours of search because CREW did not pay any portion of the required fees to continue processing its request.[3]  Third, although the government did locate responsive documents during the two hours of free search, all of these documents were determined to be privileged. Finally, the government argues that CREW is not interested in litigating its entitlement to a fee waiver, but is seeking discovery for an improper purpose, and is "going on a frolicking detour to do discovery into [the] tobacco litigation." Transcript of the Motions Hearing, Apr. 6, 2006 ("TR 4/6/06"), 36:13-15.

---

[3] It would cost just over $300 to complete the search of OIP and over $90,000 to complete the search of the Civil Division. *See* Transcript of the Motions Hearing, April 6, 2006 ("TR 4/6/06"), 44:21-45:2.

5

**III. Discussion**

The Freedom of Information Act ("FOIA") was enacted to provide a statutory right to public access to documents and records held by agencies of the federal government. *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982). "As such, FOIA embodies a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Id. See also Dep't of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 7-8 (2001) (noting that the basic objective of FOIA is disclosure, not secrecy).

Typically, FOIA actions are resolved without discovery. *Voinche v. FBI*, 412 F. Supp. 2d 60, 71 (D.D.C. 2006). *See also Pub. Citizen Health Research Group v. FDA*, 997 F. Supp. 56, 72 (D.D.C. 1998) ("Discovery is to be sparingly granted in FOIA actions."). However, discovery may be granted when plaintiff has made a sufficient showing that the agency acted in bad faith, *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994), has raised a sufficient question as to the agency's good faith, *Judicial Watch Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000), or when a factual dispute exists and the plaintiff has called the affidavits submitted by the government into question, *Pub.*

*Citizen Health Research Group*, 997 F. Supp. at 72-73.[4] On the other hand, discovery is not to be granted when discovery is sought for the "bare hope of falling upon something that might impugn the affidavits" submitted by the government. *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836-37 n. 101 (D.C. Cir. 1979). Moreover, affidavits submitted by an agency are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims." *Safecard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). *See Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (agency affidavits must be "relatively detailed and non-conclusory, and . . . submitted in good faith.").

With these principles in mind, the Court turns to the discovery dispute at issue, and determines that discovery is warranted in this case. Plaintiff has sufficiently raised a question as to whether the government has processed its FOIA

---

[4] *See e.g. Judicial Watch v. U.S. Dep't of Commerce,* 34 F. Supp. 2d 28, 33 (D.D.C. 1998) (the court ordered discovery on the issue of the adequacy of the agency's search for documents and permitted further discovery when evidence was uncovered that the government illegally destroyed and removed from its custody responsive documents in an attempt to circumvent FOIA disclosure requirements); *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1190 (N.D. Ca. 1998) (holding that an agency's failure to comply with the FOIA's time limits is, by itself, a violation of the FOIA, thus, the court permitted plaintiff to conduct discovery of the agency's policies and practices for responding to FOIA requests); *Long v. U.S. Dep't of Justice*, 10 F. Supp. 2d 205, 210 (N.D. N.Y. 1998) (granting discovery in a FOIA case finding that the government's affidavits raise questions as to the adequacy of the search performed by the government).

requests in a reasonable and expeditious manner, thereby complying with the government's FOIA obligations.  Further, plaintiff is not simply "fishing" for information that may impugn the affidavits submitted by the government.  Rather, even after a full round of briefing and a motions hearing, there still remain unanswered questions regarding the government's position that what occurred here is an ordinary and normal processing of a voluminous FOIA request.  Indeed, the Court is troubled by the length of time the government took to exhaust the two free hours of search, by the government's responses to the statistical data presented by the plaintiff, and by the government's obvious delay in adjudicating CREW's fee waiver request and appeal.  The Court addresses each of these concerns more fully below.

### A.   *Two Hours of Free Search*

The Court is troubled by the fact that the statutorily provided two hours of free search spanned several months to complete, and why plaintiff was not informed about the results of these searches soon after their completion.  Because CREW is a non-media, non-commercial  requester, *see* 5 U.S.C. § 552(a)(4)(A)(ii)(III), it is entitled to two free hours of search time and 100 pages of records without incurring search or duplication charges, *see* 28 C.F.R. § 16.11(d).  According to the government, the two free hours of search for the FOIA request to

the OIP occurred in three different offices[5], the OAG, the ODAG, and the OAAG. *See* Pustay Decl. ¶ 10.  On September 16, 2005, OAG completed its two free hours of record search, *id*. at ¶¶ 14, 19, and the government informed plaintiff's attorney by telephone of its completion, *id*. at ¶ 20.  At the same time, the government also informed plaintiff's counsel that further review of the responsive documents was necessary. *Id*.  On November 1, 2005, OAAG completed its two free hours of record search, but plaintiff was not informed of this completion. *Id*. at ¶ 25.  On December 22, 2005, ODAG completed its two free hours of record search and did not find any records responsive to plaintiff's request. *Id*. at ¶ 32.  Plaintiff was not advised of this completion either. *Id*.  By a letter dated January 19, 2006, the government informed plaintiff as to the status of the two free hours of search in all three offices.

The Court is troubled by the fact that a mere two hour search that started in August took several months to complete, and why the government waited until mid-January, 2006, to advise plaintiff of the results of the search, especially since CREW's

---

[5] The court also notes a curious discrepancy in the government's affidavit.  The government states that the record searches were "initiated" in the OAG, ODAG, and OAAG on July 22, 2005, *see* Pustay Decl. ¶ 10, then one line later, it states that the record searches were "commenced" in these three offices in July and August of 2005, *id*. at ¶ 11.  The Court is unclear as to the difference between "initiating" a search and "commencing" a search, and the government fails to explain the distinction in either the affidavit or at the motions hearing.

FOIA requests were granted expedited processing. When the Court asked the government to explain how a two hour search can be conducted over a span of several months, the government did not have an answer.[6] Also, when the Court asked why plaintiff was

---

[6] **Court:** I am still confused about this two hour search that started in August and concluded after Christmas. I just don't understand that. Can you shed any light?

**Government:** I did want to point out to you to show that there is no bad faith here, the deputy attorney general's office, and I don't know how many other – what other different priorities they have, how many other expedited requests, FOIA requests, they may even be facing. They took until December to decide that they had no documents. They took the longest of any office. And their conclusion was they had nothing responsive to plaintiff's FOIA request. So how can there be bad faith in their delay when they had nothing to hide? It just doesn't make logical sense to say there was any bad faith here because of what was the ordinary process.

**Court:** I missed that one. How could there be bad faith because they had nothing to hide because they have nothing to produce?

**Government:** They're alleging that our delay is an indication of bad faith. Bad faith suggests we're trying to hide documents from them, we're trying thwart them.

**Court:** And you tell me that that office took the longest period of time to determine that there are no documents producible?

**Government:** Exactly.

**Court:** Which shows that they have nothing to hide?

**Government:** There's no evidence of any other, there's no evidence of bad faith. It's just the length of time these things take to work their way through the Justice Department.

Tr. 4/6/06, 40:7-41:11.

10

not advised earlier as to the results of the search, again, the government did not provide a sufficient answer. It directed the Court to paragraphs 19 and 20 of the Pustay Declaration[7], however, those two paragraphs do not address the Court's concerns. *See* Tr. 54:13-55:14. Moreover, the government contends that an interim response advising plaintiff of the status of its FOIA requests would have been provided earlier, but for the fact that plaintiff filed this instant action and resources had to be reallocated to defend the lawsuit. *See* Pustay Decl. ¶ 39 ("[i]ronically, the filing of this lawsuit itself resulted in a

---

[7] Paragraph 19 of the Pustay Declaration provides, "On September 16, 2005, subsequent to the OIP FOIA Specialists's conversation with plaintiff's counsel on that same day, the Office of the Attorney General advised OIP that it has completed its records search and had not located any additional records that appeared responsive to the request beyond those which had already been obtained by OIP."

Paragraph 20 provides, "On September 26, 2005, plaintiff's counsel, Anne Weismann, again called FOIA Specialist assigned to plaintiff's request. The FOIA Specialist informed Ms. Weismann that OIP had completed its records search in the Office of the Attorney General, but that the records located in that Office required further review, including consultation with other Department components, before an interim response could be provided. Such consultations are required by Department of Justice regulation 28 C.F.R. § 16.4(c)(1) (2005), and are appropriate in determining whether to disclose records when other components within the Department have an interest in the documents. The consultations envisioned at that time were with FOIA personnel in the Offices of the Inspector General, Solicitor General, Professional Responsibility, and Legislative Affairs, and in the Justice management, Civil, and Criminal Divisions. The FOIA Specialist also advised Ms. Weismann that records searches were continuing in the Offices of the Deputy Attorney General and Associate Attorney General."

delay of preparation of an interim response because attention was focused on preparing the Answer and coordinating with the litigator."). In sum, the Court is not persuaded that plaintiff's requests, which were granted expedited processing, were handled in such a manner, nor was the plaintiff advised of the progress of its requests in a time sensitive manner. Because the government has not provided any evidence to show that the two hours of free search time were handled in an expedited manner, the Court finds that a sufficient question has been raised as to the propriety of its conduct to warrant limited discovery.

### B. *DOJ'S FOIA Annual Reports*

Plaintiff presented statistical evidence, collected annually by the DOJ for submission to Congress, that showed the median period of time for processing expedited FOIA requests for years 2000 to 2004.[8] Plaintiff's fee waiver request to the Civil Division was denied 201 days[9] after its FOIA request was granted

---

[8] The statistics are as follows: in 2004, 136 days was the median number of days the Office of the Attorney General ("OAG") took to process expedited FOIA requests, and 47 days was the median number of days the Office of the Associate Attorney General ("OAAG") took to process expedited FOIA requests; in 2003, 80 days for OAG and the Deputy Attorney General's Office ("ODAG"), and 42 days for OAAG; in 2002, 134 days for OAG, 128 days for ODAG, and 148 days for OAAG; in 2001, 107 days for OAG, 47 days for ODAG, and 47 days for OAAG ; in 2000, 12 days for OAG and OAAG, and 9 days for ODAG. *See* Pl.'s Mot. for Disc., 14-16 (citing *DOJ FOIA Annual Report* for years 2000 to 2004).

[9] From July 7, 2005, to January 23, 2006.

expedited processing and 210 days[10] after its initial FOIA request was submitted.  Further, plaintiff's fee waiver request to the OIP was denied 163 days[11] after its FOIA request was granted expedited processing[12] and 206 days[13] after its initial FOIA request was submitted.  The Court observes that the time periods for processing plaintiff's fee waiver requests exceeds the median processing time reflected in the statistics for years 2000 to 2004.  Thus, the time periods for actually producing responsive documents would greatly exceed the median time for processing expedited FOIA requests.

The government argues that the statistics, although reflective of the reasonable amount of time the government takes to process expedited requests, are irrelevant and are not applicable to this case because this case is an "atypical" case involving an unusually large number of documents.  However, when the court inquired of the government how it can be sure that this case is "atypical," the government admitted that it did not

---

[10] From June 28, 2005, to January 23, 2006.

[11] From August 9, 2005, to January 19, 2006.

[12] It took OIP 42 days to grant plaintiff's request for expedited processing. Plaintiff's submitted its request on June 28, 2005, and it was granted on August 9, 2005.

[13] From June 28, 2005, to January 19, 2006.

know.[14]  In fact, the government counsel conceded that she had

---

[14] The following exchange occurred between the Court and the government counsel:

**Government**: And these statistics that they're talking about, which I think show that the agency does process these requests in a reasonable amount of time, we didn't talk about them because they are irrelevant.

**Court**: I'm not so sure it's irrelevant. If you told me at the last hearing, Judge, this is just business as usual and this is the requisite time frame for these types of requests, your representation are belied by the stats, aren't they?

**Government**: This request involved eight to ten million documents. Not one of statistics they cite necessarily involve that volume of documents. . . . This is a normal processing of an extraordinary request. . . . We processed this as expeditiously as we would process any request we've given expeditious handling.  Because there are more documents, it's going to take more time. . . .

Tr. 4/6/06 27:5-16; 29:4-9.

**Court**: [G]overnment says to Congress this is the normal period for resolving requests for expedited review, and there are a number of days cited depending on the year. And you're telling me now, though, that those are the atypical cases or this is the atypical case, the case before me?

**Government**: The statistics don't represent the normal amount of time for processing.

**Court**: I thought it was the average amount of time?

**Government**: Well, there is a median.

*Id*. at 32:13-22.

**Court**: Do you know for a fact that the request in those reports provided to Congress did not border on the number of documents in this case, do you know that for a fact?

**Government**: I know that all of them didn't.

14

not even looked at the statistics because she considered them to be largely irrelevant. *See* Tr. 4/6/06, 35:12-14 ("As I told you before, Your Honor, I haven't looked at those statistics because they're largely irrelevant.").

The Court finds the government's dismissive view of the statistical evidence troubling. The crux of the government's argument is that there is nothing unusual or out of ordinary in the amount of time it has taken to process CREW's two FOIA requests. However, its own annual statistics submitted to Congress belie that argument. The statistics clearly show that the time it has taken the government to process CREW's two expedited requests has been much longer than the average period of time it has taken to process expedited requests during the past five years. The Court does not find such evidence irrelevant. To the contrary, the evidence is quite relevant and informative as to what constitutes the average or ordinary period of time for processing expedited requests.

The government has repeatedly claimed that "this is a normal processing of an extraordinary request," Tr. 4/6/06, 29:4-5, yet,

---

**Court:** Is there any one case in there that's unlike or like this case?

**Government:** I don't know.

**Court:** Then how can you tell me this case is different?

*Id*. at 33:19-34:2.

15

when the Court inquired as to what makes CREW's requests extraordinary compared to the FOIA requests cited in DOJ's reports, the government could not provide an adequate response. In fact, the government has not presented any comparative evidence at all to demonstrate the extraordinary nature of CREW's requests, including no evidence as to the number of responsive documents involved in the FOIA requests cited in its annual statistical reports to Congress.  Such comparative evidence may have demonstrated to the Court that CREW's FOIA requests are truly "extraordinary" compared to other expedited requests for previous years.  Although the government has had an adequate opportunity to present such evidence, in its opposition to the plaintiff's discovery request, at the motions hearing, and through its affidavits, it has failed to do so.  In short, the Court finds the government's statements about the "extraordinary" nature of CREW's requests to be conclusory and utterly unsubstantiated.  The government's own statistics indicate that the processing of CREW's requests has been anything but ordinary and normal, and the paucity of evidence proffered by the government to show otherwise raises a question as to whether the government has been diligent and expeditious in complying with its FOIA obligations.

### C.   *Fee Waiver*

Finally, the government argues that beyond the two hours of

free search, it could not have undertaken any further document searches because it could not continue to search without payment or a commitment to pay from plaintiff under the FOIA statute. Thus, according to the government, plaintiff is partly to blame for the delay in processing its FOIA requests.

The OIP did not notify CREW that its fee waiver request was denied until January 19, 2006, nearly seven months after CREW initially made its request. The same length of delay applies to CREW's fee waiver request to the Civil Division. The OIP finally affirmed the Civil Division's denial of CREW's fee waiver request on January 23, 2006. Surely, the OIP was aware that both of CREW's FOIA requests had been granted expedited processing and it must also have been aware that it and the Civil Division could not undertake further searches beyond the free two hours without payment. Nonetheless, OIP did not issue its decisions regarding CREW's fee waiver request and appeal for seven months. The government can hardly fault CREW for failing to pay and holding up the search process when it actually held up the process by not adjudicating CREW's fee waiver request and appeal in an expeditious manner. After all, the cost of continuing the search was over $90,000, and as already recognized, CREW is a non-profit organization.

The government further alleges that its adjudication of CREW's administrative appeal of the Civil Division's fee waiver

denial was handled in a normal and ordinary manner by showing how a senior counsel assigned to the appeal worked in a diligent manner to prepare a response by January 23, 2006. *See* Pustay Decl. ¶¶ 44, 45. (the senior counsel was "assigned to many other duties and responsibilities including supervising litigation, reviewing fee waiver appeals of other OIP staff members, working on approximately forty other pending administrative appeals, performing designated FOIA ombudsperson work, drafting letters and appeal recommendations, and instructing in FOIA training programs."). Yet, the government does not specify exactly how many other fee waiver appeals the senior counsel was handling and how many of those appeals involved requests that were granted expedited processing. The Court is not persuaded by the government's argument that CREW is to blame for the delay for not paying up front for its FOIA requests. The ball was in the government's court with regard to CREW's fee waiver requests and it was the government that took seven months to decide the fee waiver issue. In sum, the Court is persuaded that the facts of this case warrant limited discovery for the purpose of exploring the reasons behind the delays in processing CREW's FOIA requests.

**IV. Conclusion**

The foregoing discussion demonstrates that limited discovery is warranted in this FOIA case. Accordingly, plaintiff's Motion for Discovery is **GRANTED;** and it is

**ORDERED** that plaintiff shall depose (1) Associate Attorney General Robert McCallum; (2) Director of OIP, Daniel Metcalfe; (3) Steve Brody, individual on the tobacco team responsible for assembling documents responsive to CREW's FOIA requests; and (4) James Kovakas, attorney in charge of the Civil Division's FOIA processing; and it is

**FURTHER ORDERED** that depositions of the four above-named individuals shall be limited to 5 hours total; and it is

**FURTHER ORDERED** that United States Magistrate Judge Alan Kay will supervise the taking of the depositions and resolve any issues that may arise therein; and it is

**FURTHER ORDERED** that briefing on the merits of CREW's entitlement to a fee waiver shall be postponed until the completion of the depositions; and it is

**FURTHER ORDERED** that the parties are to submit a joint status report as to the status of this case within 60 days of this ORDER.

**SO ORDERED.**

**SIGNED:    EMMET G. SULLIVAN**
**            UNITED STATES DISTRICT COURT JUDGE**
**            JUNE 1, 2006**