UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON<br>1400 Eye Street, N.W.<br>Washington, D.C. 20005<br><br>        Plaintiff,<br><br>        v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530<br><br>        Defendant. | Civil Action No. 05-2078 (EGS)<br><br>Magistrate Judge Alan Kay |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
A PROTECTIVE ORDER REGARDING DEPOSITIONS**

**STATEMENT**

This case concerns two Freedom of Information Act ("FOIA") requests that plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed with defendant U.S. Department of Justice ("DOJ").  After full briefing and two hearings, the Court authorized CREW to depose four individuals, including Associate Attorney General Robert McCallum, to determine whether DOJ acted in bad faith in responding to CREW's requests.

From the outset DOJ has resisted this discovery and, even in the face of the Court's order, has continued to argue that Mr. McCallum should not be deposed, that he should only be deposed if plaintiff can adduce evidence of his involvement from other deponents, and that DOJ, not plaintiff, should be able to dictate when, where, and how his deposition should be taken. DOJ's latest motion for a protective order is yet another attempt by the government to put a roadblock in CREW's way and avoid public accountability for Mr. McCallum's actions.  As

discussed below, DOJ's motion is completely without foundation, based in part on an outright falsehood, and seemingly made for an improper purpose. This Court should therefore deny DOJ's request for a protective order and consider whether sanctions are appropriate given the frivolous nature of the government's motion.

### 1. DOJ's Request to Limit Attendance at the Depositions Is Premised On a Falsehood and Completely Without Foundation.

Rule 26(c) of the Federal Rules of Civil Procedure authorizes a court, upon a showing of good cause, to enter an order protecting a party in discovery from "annoyance, embarrassment, oppression, or undue burden or expense." As a necessary prerequisite, the party seeking a protective order must make a showing of "good cause." Id. *See also* Flaherty v. Seroussi, 209 F.R.D. 295, 298 (N.D.N.Y. 2001) (citations omitted). DOJ has not come close to satisfying its initial burden of demonstrating good cause for the protective order it seeks.

DOJ seeks a protective order that would, *inter alia*, limit attendance at the depositions to the parties and their legal counsel based on CREW's purported "reticence" from which DOJ has "intimated" that CREW "will attempt to admit members of the public or the media to the depositions." Defendant's Motion for a Protective Order Regarding Depositions, and Supporting Memorandum ("D's Mem."), p. 1. As further basis for its motion, DOJ asserts that "Plaintiff has also refused to agree to hold Robert McCallum's deposition at his office building (the Main Justice Building), indicating that defendant's two available conference rooms there, each of which plaintiff was informed holds ten or more people, were – for unspecified reasons – unsatisfactory." Id. at 2. This assertion by DOJ is a complete falsehood. Nor can CREW's conduct be characterized as a refusal to give the government information to which it is entitled.

Indeed, it is DOJ that has, at every turn, imposed roadblocks to Mr. McCallum's

deposition, some of which unfortunately have required the assistance of Judge Kay to resolve. For example, counsel for DOJ refused to give CREW a comprehensive list of dates for which Mr. McCallum was available and kept insisting that his deposition be at the latest possible date.[1] *See, e.g.*, Email from Lisa Olson to Anne Weismann, June 8, 2006 ("The first date that he and I are both available is July 25.  He is also available any Tuesday, Wed, or Thursday in August.") (attached as Exhibit A).  Only with Judge Kay's assistance were the parties able to reach agreement on a date.

Even then, DOJ's counsel made multiple objections and demands, including that the deposition be at Main Justice.  CREW acceded to this request, provided that CREW was afforded access to a room in which it could confer privately, a telephone line for its use, and that DOJ inform CREW of "what space at Main would be potentially available so we can determine what would best suit our needs."  Email from Anne Weismann to Lisa Olson, June 19, 2006 (attached as Exhibit B) . Counsel for DOJ refused to answer CREW's repeated requests for the number and size of available rooms in which to take Mr. McCallum's deposition, instead demanding to know why CREW wanted this information.  *See* Email from Lisa Olson to Anne Weismann, June 20, 2006 (attached as Exhibit C).  When CREW reiterated the reason – "[s]o [CREW] can decide which room would best suit our purposes," id., counsel for DOJ still refused to provide the requested information.  At that point CREW turned to Judge Kay's office

---

[1] This was most likely due to the fact that Mr. McCallum was scheduled to appear before the Senate Foreign Relations Committee on June 19, 2006, for a hearing on his nomination to be ambassador to Australia.  Questions about his conduct in deciding to scale back the government's proposed remedy in the tobacco litigation had already been raised in that forum and Mr. McCallum undoubtedly was hoping to avoid testimony in this litigation that could have a negative impact on his confirmation.

for assistance in resolving this impasse and, when Judge Kay proposed that Mr. McCallum's deposition be conducted at the courthouse, CREW agreed readily.[2]

As these facts make clear, at no time did CREW refuse to hold Mr. McCallum's deposition at Main Justice. To the contrary, CREW agreed to honor DOJ's demand that the deposition be at Main Justice, provided that DOJ give CREW a modest amount of information so that CREW could determine the most appropriate room. That Mr. McCallum's deposition is not being held at Main Justice is solely the fault of DOJ and its counsel, who refused CREW's repeated requests for information, even after CREW explained that it needed the information to determine the most appropriate room at Main Justice for the deposition. For DOJ to now represent otherwise is nothing short of a lie.

Nor is there any basis to DOJ's speculation that CREW intends to have members of the public, including the media, attend Mr. McCallum's deposition. DOJ concedes as much, admitting that its motion is based on mere "intimat[ion]." D's Mem. at 1. The complete lack of factual support for DOJ's request as well as the falsehood on which it is based lead to the conclusion that DOJ seeks a protective order for an improper purpose. The focus of this discovery is DOJ's conduct and whether the agency has acted in bad faith in responding to CREW's two FOIA requests. DOJ's latest motion represents a transparent attempt by DOJ to shift the focus to CREW by suggesting that CREW intends to conduct discovery for an improper purpose. DOJ's unsupported and unsupportable claims of potential misconduct by CREW, however, should not be permitted to delay or obscure the real issue here: did Mr. McCallum

---

[2] That CREW agreed readily to Judge Kay's suggestion that the deposition be conducted at the courthouse – a forum over which CREW has no control – only underscores that DOJ's motion is completely without foundation.

4

play a role in DOJ's "delays in processing CREW's FOIA requests." Memorandum Opinion and Order of June 1, 2006, at 18.[3]

### 2. DOJ's Request to Shield Mr. McCallum's Deposition From Public Scrutiny Is Without Foundation, Made for an Improper Purpose, and Should Be Denied.

At the first available opportunity, on June 14, 2006, CREW announced to DOJ and Judge Kay that CREW intended to videotape Mr. McCallum's deposition, as authorized by Fed. R. Civ. P. 30(b)(2). From that point onward, DOJ's counsel made clear her objection to this procedure, at first apparently without any knowledge of Rule 30(b)(2), which grants to CREW the unilateral right to record Mr. McCallum's deposition by videotape, and more recently based on trumped-up allegations that CREW intends to "embarrass or annoy" Mr. McCallum. *See* D's Mem. at 4. That DOJ has been threatening to seek a protective order from the outset[4] underscores what is apparent from a careful reading of DOJ's motion – there is not a single piece of evidence that supports the government's request for a protective order "prohibiting the use of the videotape for any purpose unrelated to this litigation." Id. Through the vehicle of a protective order DOJ is attempting to protect Mr. McCallum and the Department of Justice from any embarrassment that might flow from his own testimony. This is a misuse of Rule 26(c) of the Federal Rules of Civil

---

[3] This is not the first time DOJ and its counsel have made unsubstantiated assertions. The Court authorized discovery based, in part, on its finding that "the government's statements about the 'extraordinary' nature of CREW's requests" were "conclusory and utterly unsubstantiated." Id. at 16.

[4] DOJ initially announced its intention to seek a protective order at a conference call with Judge Kay on June 16, 2006, well before the alleged refusal of CREW to inform DOJ who CREW intends to bring to the deposition, which DOJ claims forms the factual premise for its motion. Although DOJ repeated its threat to file the motion multiple times thereafter, it did not actually file its six-and-one-half page motion until 8:00 p.m. on Friday, June 30, just before the long holiday weekend.

Procedure.

First, there can be no question that CREW has a legitimate purpose in deposing Mr. McCallum. The Court's Opinion and Order of June 1, 2006, expressly authorizes CREW to depose four individuals, including Mr. McCallum, based on the Court's finding that, far from "simply 'fishing' for information," CREW was entitled to discovery based on "unanswered questions regarding the government's position that what occurred here is an ordinary and normal processing of a voluminous FOIA request." Memorandum Opinion and Order, at 8. Accordingly, DOJ's reliance on cases in which protective orders were granted where the discovery request itself was being sought for an improper purpose, D's Mem. at 4-5, are completely inapposite.

Second, DOJ's request, like its request to limit attendance at the depositions, is completely without a factual foundation. Here, unlike the Westmoreland case on which DOJ relies,[5] no news organization has requested permission to videotape Mr. McCallum's deposition, and Mr. McCallum is not "a non-party witness dragged unwillingly into a dispute between others." Paisley Park Enterprises, Inc. v. Uptown Productions, 54 F.Supp.2d 347, 348 (S.D.N.Y. 1999) (describing status of deponent in Westmoreland). Rather, the request has come from CREW, a party authorized to take the deposition of Mr. McCallum, a party deponent, pursuant to Rule 30(b)(2), which provides that "unless the court orders otherwise," a deposition "may be recorded by sound, sound-and-visual, or stenographic means." Fed. R.Civ. P. 30(b)(2).[6]

---

[5] 584 F.Supp. 1206 (D.D.C. 1984).

[6] Westmoreland is also inapposite for the additional reason that it was based on the pre-amended version of Rule 30, which required parties seeking to record a deposition by any means other than a non-stenographic recording to seek court approval. The 1993 amendments to the

Third, DOJ has no evidence whatsoever that CREW intends to use any videotape of Mr. McCallum's deposition in a way that would "demean" "these proceedings."  D's Mem. at 6. Instead, DOJ relies on the fact that portions of the deposition of another government official in another proceeding involving completely different parties were aired on a comedy show.  Such reliance, however, is completely misplaced.[7]  DOJ has not, and cannot, cite to any evidence that CREW intends to misuse the discovery process here in such a way that a protective order is warranted.

Indeed, given the nature of this case, the involvement of top-level DOJ officials such as Mr. McCallum, and the reasons for the Court-ordered discovery, there is a heightened public interest in Mr. McCallum's deposition testimony.  Under such circumstances involving allegations of "improper official action" courts have found protective orders to prevent public dissemination of a videotaped deposition inappropriate.  *See*, *e.g.*, Condit v. Dunne, 225 F.R.D. 113, 117 (S.D.N.Y. 2004); Flaherty v. Seroussi, 209 F.R.D. 295 (N.D.N.Y 2001).  These cases stand in stark contrast to those involving purely private disputes between non-governmental parties, where courts have found protective orders to be appropriate to protect against commercial and other exploitation.  *See*, *e.g.*, Paisley Park Enterprises, Inc. v. Uptown Productions, 54 F.Supp.2d 347, 350 (S.D.N.Y. 1999) (contrasting commercial and private

---

Federal Rules of Civil Procedure "dramatically liberalized the rules governing the taking of video depositions." Michael J. Henke and Craig D. Margolis, *The Taking and Use of Video Depositions: An Update*, 17 Rev. Litig. 1, 2 (1998).  Specifically, amended Rule 30(b)(2) now grants to the party noticing a deposition the unilateral right to select the method by which the deposition will be recorded, expressly including videotaping.

[7] As of this date, July 5, 2006, CREW has yet to receive the CD that is Exhibit 1 to D's Mem., notwithstanding its counsel's representation that it was mailed on June 30, 2006. Nevertheless, CREW is filing its opposition in the interest of expediting resolution of this issue.

interests at issue in case before it with cases in which the government is a party).[8]

Moreover, even where there is evidence of a party's intent to disseminate a videotaped deposition in the hope of embarrassing the deponent – evidence that is lacking here – courts have still denied requests for protective orders where the case involves an issue of public interest. In Flaherty, for example, the deposing party's counsel had announced his intention to publicize the deposition of the defendant mayor, after stating publicly that he "relishes the opportunity to question [the mayor]" and is "going to concentrate [his] efforts on knocking Mayor Seroussi's teeth down his throat." 209 F.R.D. at 298. Nevertheless, the court denied the mayor's motion for a protective order, ruling that "[t]he mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of Mayor Seroussi's deposition testimony is not in and of itself sufficient to establish good cause to support the issuance of [a] protective order." Id. at 299, citing Culinary Foods, Inc. v. Raychem Corp., 151 F.R.D. 297, 301 (N.D. Ill. 19930; Hawley v. Hall, 131 F.R.D. 578, 584-85 (D. Nev. 1990). The court also found that there was a strong public interest in accessing his deposition where the litigation involved "elected officials and the performance of their governmental responsibilities." 209 F.R.D. at 299-300. As the court reasoned,

> In cases where issues of strong public interest favoring the free dissemination of discovery materials are at play, the normal practice of not according discovery materials the same degree of access as those filed in connection with trial gives way to a presumption of open inspection.

---

[8] Courts have also recognized that videotaping depositions may be a superior form of recordation when the issue involves the credibility of the deponent. See, e.g., Alexander v. FBI, 186 F.R.D. 123, 127, citing Riley v. Murdock, 156 F.R.D. 130, 131 (E.D.N.C. 1994). Here, where the issue is whether DOJ acted in bad faith, the ability to assess the credibility of the deponents is especially important.

Id. at 299.

Similarly, in Condit v. Dunne, the court refused to enter a protective order barring public dissemination of a videotaped deposition based, in part, on the public interest in "the propriety of a then-sitting United States Congressman in the discharge of his duties." 225 F.R.D. at 120. The defendant in Condit was seeking a protective order based on the fear that his deposition "might be misrepresented by the media through the use of sound bites." Id. at 118. Notwithstanding this risk, the court concluded that "the fact that the media may edit a tape that may or may not be released by the parties does not warrant a protective order barring all public dissemination of the videotape in this case." Id.

The instant case presents an even stronger basis on which to deny DOJ's request for a protective order. CREW has made no threats or other statements that would suggest an intent to embarrass Mr. McCallum, as in Flaherty.[9] From this alone the Court should conclude, as in Condit, that, as "officers of the Court and absent other evidence" CREW's counsel has no "malicious malicious or improper intentions regarding any of the discovery materials in this case." 225 F.R.D. at 117.

Even more significantly, Mr. McCallum is being deposed to ascertain his role in DOJ's mishandling of CREW's two FOIA requests, and whether he and the agency acted in bad faith. As a high-level official, and particularly given the public controversy over his decision to dramatically scale back the government's proposed remedy in the tobacco litigation – the subject of CREW's requests – the public interest in Mr. McCallum's deposition testimony is at an apex.

---

[9] Of course, a mere intent to embarrass a public official is not, in an of itself, sufficient good cause on which to base a protective order. *See*, *e.g.*, Flaherty, 209 F.R.D. at 299.

Given the "strong, legitimate public interest on the part of the citizenry to have unfettered access to court proceedings, particularly when they involve elected officials[10] and the performance of their governmental responsibilities," and the at most "modest embarrassment which might befall [Mr. McCallum] should his videotapes deposition be aired publicly," there is not "sufficient good cause to restrict the public's right of access" to his videotaped deposition. Flaherty, 209 F.R.D. at 300.

In arguing to the contrary, DOJ also suggests that CREW seeks to reap some financial gain from disseminating the videotape of Mr. McCallum's deposition. *See* D's Mem. at 6. This completely baseless allegation is belied by DOJ's own administrative findings in denying CREW's request for a waiver of fees associated with processing CREW's two FOIA requests. DOJ agreed with CREW that it is not a commercial requester that was filing its FOIA requests for commercial gain, and denied the fee waiver request on other factors such as DOJ's speculation that all of the requested records would be exempt from mandatory disclosure. *See* Letter from Melanie Ann Pustay, Office of Information and Privacy, DOJ, to Anne Weismann, January 19, 2006 (attached as Exhibit D).

This case stands in marked contrast to cases like Paisley Park Enterprises, Inc., in which the court entered a protective order to limit the use of a videotaped deposition of the musician Prince (or The Artist Formerly Known As Prince) based on its finding that the defendants sought the videotape for publication on their website to generate both publicity and economic gains for themselves. CREW seeks Mr. McCallum's deposition testimony to answer the legitimate

---

[10] While Mr. McCallum is not himself an elected official, he was nominated for his position by President Bush, the highest elected official in the country.

question of what role he played in the government's misconduct in processing CREW's FOIA requests – a question that has nothing to do with generating publicity or revenue for CREW. That CREW has included this lawsuit on its website (D's Mem. at 6) merely demonstrates why CREW filed the FOIA requests that are the subject of this litigation in the first place – to hold public officials accountable for their official acts by disseminating to the public relevant information about what those officials have done and why.[11]  As a non-profit, public interest "watchdog" organization CREW exists for a public purpose and not to generate revenue for itself or others.  Accordingly, DOJ's base speculation to the contrary regarding CREW's purported motive in seeking to videotape Mr. McCallum's deposition cannot supply the otherwise missing good cause for DOJ's motion for a protective order.

At bottom, DOJ is left with nothing more than the suggestion that CREW's public dissemination of Mr. McCallum's videotaped deposition would be, in and of itself, inappropriate and demeaning.  In the context of this case nothing could be further from the truth.  CREW filed the FOIA requests at issue to shed public light on a decision, the propriety of which had already been called into question.  CREW sought discovery when evidence suggested that DOJ was not complying in good faith with its statutory obligations under the FOIA, also a matter of great public interest.  The Court agreed that discovery was necessary to answer this question,

---

[11] DOJ misleadingly suggests that the mere mention of the lawsuit on CREW's website is enough to bring this case within the ambit of Paisley Park Enterprises, Inc.  See D's Mem. at 6-7. In fact, the two cases could not be more dissimilar – Paisley Park involved a private dispute between private parties and the defendant's mention of the lawsuit on its webpage was considered to be an effort to generate both publicity and revenue for the defendant.  This case, by contrast, involves governmental actors on a matter of great public interest and CREW's inclusion of this litigation on its website, which includes all of CREW's legal actions, is for the sole purpose of educating the public.

including specifically the deposition of Mr. McCallum.  Should CREW exercise its right to make public the videotape of Mr. McCallum's deposition, it will be for the very legitimate purpose of shedding further public light on what DOJ did and why.  If either Mr. McCallum or DOJ is demeaned in that process it will be the result of their own actions, not any action of CREW.  Therefore, a protective order is neither necessary nor appropriate as it would serve only to shield from public scrutiny matters that are unquestionably of legitimate public interest.

### 3. **DOJ Appears To Be Seeking A Protective Order For An Improper Purpose.**

The totality of the circumstances, coupled with the complete lack of a factual or legal predicate for this motion, suggest that DOJ is seeking a protective order for an improper purpose.  As discussed herein, DOJ has not offered a scintilla of factual evidence to support what is otherwise gross and unwarranted speculation about why and what CREW intends to do at and after Mr. McCallum's deposition.  Nor has it shown why public dissemination of Mr. McCallum's deposition would be unwarranted.

What DOJ has offered instead is manufactured evidence.  For example, as support for its argument that CREW "intends to invite the public to these depositions and/or circulate Mr. McCallum's videotaped deposition outside the confines of the litigation," D's Mem. At 2 n.1, DOJ cites to the fact that CREW is opposing the instant motion.  This is completely nonsensical.  CREW advised DOJ of its opposition to the protective order when DOJ was attempting to fulfill its meet-and-confer obligations – something that happened on Friday, June 30, at 7:00 p.m., **after** DOJ had written its motion, and less than an hour before DOJ filed the motion.  Indeed, CREW made clear that the basis for its objection was the complete lack of a factual predicate for the motion when DOJ's counsel could articulate only that its motion was based on an

"inference" it was drawing.  Similarly, DOJ relies on discussions between the parties concerning the scheduling of the depositions (D's Mem. at 2) as purported evidence that CREW is somehow up to no good.  But, as discussed herein, DOJ announced its intention to seek a protective order at least as early as June 16, days before these discussions took place.

DOJ's motion also rests on the notion that, as a high-level government official, Mr. McCallum should be protected from media scrutiny that might "demean his office."  D's Mem. at 6.  This rationale also makes no sense given that Mr. McCallum has himself used the media to further his own goals.  Surely if Mr. McCallum did not demean his office by soliciting media attention when he wrote an editorial for *USA Today* [12] attempting to explain his decision to so drastically change the remedy the government had proposed two days earlier in the tobacco litigation, media attention to his explanation of his role in delaying the processing of CREW's FOIA requests runs no greater risk of demeaning his office.[13]

Moreover, counsel for DOJ has represented that Mr. McCallum has no relevant information to offer and that, accordingly, any deposition will be a very short proceeding.  If this is the case, why is DOJ fighting so hard to shield his testimony from public scrutiny?  The clear implication is that DOJ is seeking a protective order for an improper purpose, most likely to

---

[12] This article is attached as Exhibit E.

[13] In a similar vein, in a hearing before the Senate Foreign Relations Committee on his nomination to be ambassador to Australia, Mr. McCallum discussed at length his role in the tobacco litigation and offered to supplement the record with even more detail.  A visual and audio broadcast of this hearing was available on-line.  *See* Webcast of United States Senate Committee on Foreign Relations Nomination Hearing of Robert D. McCallum, Jr., to be Ambassador to Australia, *available at* http://foreign.senate.gov/hearings/2006/hrg060619p.html (click on "nominations" for archived broadcast) (last visited July 5, 2006).  CREW is not aware of any evidence, nor has DOJ supplied such evidence, that this publicly-broadcast proceeding in any way demeaned his office.

protect Mr. McCallum, the status of his ambassadorship, the agency, and the Administration from any embarrassment that may flow from Mr. McCallum's testimony. This, however, is not the type of embarrassment Rule 26(c) was designed to protect against. Moreover, given the complete lack of a factual or legal basis for the government's motion, sanctions may be appropriate under Rule 37(a)(4) of the Federal Rules of Civil Procedure.[14]

## CONCLUSION

For the foregoing reasons, the Court should deny DOJ's motion for a protective order and should consider whether sanctions are appropriate, including the payment of CREW's costs, pursuant to Rules 26(c) and 37(a)(4) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: July 5, 2006

   /s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and
 Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
Phone: (202) 408-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

---

[14] Rule 26(c) provides that if a motion for a protective order is denied, "[t]he provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion."