EXHIBIT A

**Anne Weismann**

| | |
|---|---|
| **From:** | Lisa.Olson@usdoj.gov |
| **Sent:** | Thursday, June 08, 2006 1:30 PM |
| **To:** | Anne Weismann |
| **Subject:** | RE: scheduling |

The first date that he and I are both available is July 25.  He is also available any
Tuesday, Wed, or Thursday in August.

-----Original Message-----
From: aweismann@citizensforethics.org [mailto:aweismann@citizensforethics.org]
Sent: Thursday, June 08, 2006 1:23 PM
To: Olson, Lisa (CIV)
Subject: RE: scheduling

What is Mr. McCallum's availability?

-----Original Message-----
From: Lisa.Olson@usdoj.gov [mailto:Lisa.Olson@usdoj.gov]
Sent: Thursday, June 08, 2006 1:01 PM
To: Anne Weismann
Subject: scheduling

At 12:20 today I received a response from Robert McCallum's secretary to my message of
yesterday indicating his availability.  I propose we schedule Dan Metcalfe for July 24,
Robert McCallum for July 25, and Steve Brody for either June 21 or 23, or July 6.  If you
want to take Steve's deposition after the others, the earliest he will be in town in
August is the 8th-10th.  My understanding is that other than July 24 and 25, the
Magistrate's only other availability earlier in July is right around the holiday, which
does not work for me or the witnesses.

# EXHIBIT B

## Anne Weismann

| | |
|---|---|
| **From:** | Anne Weismann |
| **Sent:** | Monday, June 19, 2006 10:47 AM |
| **To:** | Lisa.Olson@usdoj.gov |
| **Cc:** | Melanie Sloan |
| **Subject:** | RE: deposition location |

We had noticed his deposition for our offices because we had not understood he had any
conflicts that week that would make a deposition here difficult for him.  If he needs to
have his deposition taken at the Main Building, we will be happy to do so provided we are
afforded a private room in which to confer, a telephone for which we are assured privacy,
and the ability to easily bring into the building a number of people.  Please let me know
what space at Main would be potentially available so we can determine what would best suit
our needs.  Anne Weismann

-----Original Message-----
From: Lisa.Olson@usdoj.gov [mailto:Lisa.Olson@usdoj.gov]
Sent: Friday, June 16, 2006 2:19 PM
To: Anne Weismann
Subject: deposition location

Anne: would you mind having Mr. McCallum's deposition at his offices in the event there
are delays, so that he can go about his business while we wait?  I'm assuming you meant to
do this in the notice.  The location would be Room 5706 of the Main Building.  Please
confirm.  Thanks.  Lisa

**EXHIBIT C**

## Anne Weismann

| | |
|---|---|
| **From:** | Anne Weismann |
| **Sent:** | Tuesday, June 20, 2006 9:18 AM |
| **To:** | 'Lisa.Olson@usdoj.gov' |
| **Subject:** | RE: |

So I can decide which room would best suit our purposes.  Yesterday morning I sent a comprehensive email asking for a variety of information so we could best decide where to conduct Mr. McCallum's deposition.  We have the unilateral right to decide where he will be deposed.  We are, of course, happy to accommodate his busy schedule, but your continued questioning of what and why we are doing what we are doing is unnecessary and inappropriate.  We will reschedule the deposition for Main once we have received all the information we have requested.

-----Original Message-----
From: Lisa.Olson@usdoj.gov [mailto:Lisa.Olson@usdoj.gov]
Sent: Monday, June 19, 2006 5:59 PM
To: Anne Weismann
Subject: RE:

Why do you want this information?
-----Original Message-----
From: aweismann@citizensforethics.org [mailto:aweismann@citizensforethics.org]
Sent: Monday, June 19, 2006 4:32 PM
To: Olson, Lisa (CIV)
Subject: RE:

Give me a sense of how many each holds and what the room number for each is.  Thanks.

-----Original Message-----
From: Lisa.Olson@usdoj.gov [mailto:Lisa.Olson@usdoj.gov]
Sent: Monday, June 19, 2006 3:03 PM
To: Anne Weismann
Subject: RE:

McCallum has two conference rooms that are exclusively his, depending on the size we need.

-----Original Message-----
From: aweismann@citizensforethics.org
[mailto:aweismann@citizensforethics.org]
Sent: Monday, June 19, 2006 2:41 PM
To: Olson, Lisa (CIV)
Subject: RE:

What are the options as far as a room to hold the deposition?

-----Original Message-----
From: Lisa.Olson@usdoj.gov [mailto:Lisa.Olson@usdoj.gov]
Sent: Monday, June 19, 2006 2:25 PM
To: Anne Weismann
Subject:

As I indicated at our meeting with the Magistrate last week, Mr.
McCallum needs to have his deposition at the Main Building so that he can be available to fulfill the responsibilities of his office should delays arise during the deposition that do not require his participation, such as what the Magistrate mentioned last week, i.e., his need to take some time to consider objections that are raised or other issues that might arise.  (I could not find anything in your original e-mail request on this subject.)
Lisa

-----Original Message-----
From: aweismann@citizensforethics.org
[mailto:aweismann@citizensforethics.org]

1

# EXHIBIT D



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

Ms. Anne Weismann                          JAN 19 2006
Citizens for Responsibility and Ethics
    in Washington                     Re:    AG/05-R0788
11 Dupont Circle, N.W.                                DAG/05-R0789
2ⁿᵈ Floor                                             ASG/05-R0790
Washington, DC 20036                                  MAP:VRB

Dear Ms. Weismann:

    This is in response to your Freedom of Information Act (FOIA) request dated June 28, 2005, and received in this Office on July 1, 2005, in which you requested certain records concerning the government's litigation of <u>United States v. Philip Morris, Inc.</u> This response is made on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.

    By letter dated July 11, 2005, we acknowledged receipt of your request and, in an effort to speed up our searches for responsive records, suggested that you narrow the scope of your request. However, because we did not receive any response or indication from you that you were willing to narrow the scope of your request, we initiated records searches based on the phrasing of your initial letter to this Office, which sought records "discussing or mentioning in any way any penalty that the U.S. Department of Justice . . . can, may, should or will propose" in the litigation of <u>United States v. Philip Morris, Inc.</u> since January 2001, as well as records of a number of contacts "concerning in any way the tobacco lawsuit." Subsequently, on January 9, 2006, after the commencement of litigation in this case, you agreed to narrow the scope of your request to "documents dealing with the identification and selection of remedies sought by the Department and any changes to particular remedies sought by the Department from January 2005 onward, including records discussing, mentioning or referring in any way to the government's decision to reduce the penalties it is seeking against the tobacco industry from $130 billion to $10 billion or the government's decision to offer testimony from any witness during the remedies phase of trial in <u>United States v. Philip Morris.</u>" On other occasions, you also advised that you are not interested in receiving Court filings or correspondence. Accordingly, we were able to significantly narrow the scope of our records searches based on this new formulation of your request.

    You have requested a "public interest" fee waiver for this request. A fee waiver is appropriate only when "disclosure of the [requested] information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); <u>see also</u> 28 C.F.R. § 16.11(k) (2005) (six fee waiver factors to be considered). While the records you seek do concern the operations or activities of the Department of Justice and you do not appear to have an overriding commercial interest in the

-2-

records, other relevant factors have not been met. Your blanket assertion that "these records are likely to contribute to the public's understanding of the individuals and organizations that influence or attempt to influence the litigating position of the United States of America in a lawsuit of major and far-reaching consequences" is not a sufficient basis for me to grant a fee waiver. First, you provide no evidence that, in fact, any individual or organization attempted to influence or did influence the government's litigating position. Moreover your statement is too ephemeral a basis on which to grant a fee waiver. See American Fed'n of Gov't Employees v. United States Dep't of Commerce, 632 F. Supp. 1272, 1278 (D.D.C. 1986) (finding allegations of malfeasance too ephemeral to warrant waiver of search fees without further evidence that informative material will be found), aff'd on other grounds, 907 F.2d 203 (D.C. Cir. 1990); Fazzini v. United States Dep't of Justice, No. 90 C 3303, slip op. at 11 (N.D. Ill. May 2, 1991) (holding that allegations of government coverup, unsupported by objective evidence, do not create legitimate public interest for purposes of fee waiver); Conklin v. United States, 654 F. Supp. 1104, 1105 (D. Colo. 1987) (finding mere allegations of wrongdoing do not justify fee waiver).

Further, a fee waiver is granted when it is determined that the substantive content of the disclosable portions of the records requested is likely to contribute significantly to public understanding of government operations or activities. See 28 C.F.R. § 16.11(k)(2)(ii). Based upon our review of the documents we have located, our knowledge of the subject matter, and our general familiarity with the records that are responsive to this request, I have determined that a fee waiver is not appropriate. The records you seek are virtually inherently protected by the attorney work-product, attorney-client, and deliberative process privileges. To warrant a waiver or reduction of fees, the public's understanding of the subject matter in question, as compared to the level of public understanding existing prior to the disclosure, must be likely to be enhanced by the disclosure to a significant extent. For the records that are being withheld, there can be no increase in public understanding of the government's operations, and so a fee waiver is not warranted. See Van Fripp v. Parks, No. 97-0159, slip op. at 10 (D.D.C. Mar. 16, 2000) (stating that "reviewing agencies and courts should consider . . . whether the disclosable portions of requested information are meaningfully informative in relation to the subject matter requested" (citing agency's fee waiver regulation)). Thus, we have denied your request for a fee waiver at this time. If in the course of processing your request further we determine that a fee waiver is appropriate for a particular document, we will provide it without cost.

We have determined that you are a non-media, non-commercial requester pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(III). Therefore, you are entitled to two free hours of search time and 100 pages of records per component without incurring search or duplication charges. See 28 C.F.R. § 16.11(d). Beyond the two hours of free search time per component to which you are entitled, you will be required to pay for additional search time incurred at the cost of $28.00 for each hour spent by professional personnel in obtaining these records. See 28 C.F.R. § 16.11(c)(1)(ii). Duplication fees beyond one hundred pages will be assessed at ten cents per page. See 28 C.F.R. § 16.11(c)(2). Because you have not been granted a fee waiver and have not indicated an amount that you are willing to pay, by this letter we are providing you with the results of the two free hours of search time per component that we have provided you.

-3-

We conducted records searches in the Departmental Executive Secretariat, which is the official records repository for the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General, and in the Offices of the Attorney General and Deputy Attorney General. We also initiated a records search in the Office of the Associate Attorney General; however, we were unable to complete our search in that Office within your two hours of free search time. At this time, five documents, totaling twenty pages, responsive to your request have been located. One document, totaling one page, is being withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), which pertains to certain inter- and intra-agency communications protected by the attorney-client, attorney work-product, and deliberative process privileges. This document is not appropriate for discretionary disclosure.

We have referred two documents, totaling thirteen pages, to the Civil Division, and two documents, totaling six pages, to the Criminal Division.

As mentioned above, we have not yet completed our records search in the Office of the Associate Attorney General. We estimate that it will take an additional twelve hours to complete our search in that Office. If you wish for us to continue searching for responsive documents in the Office of the Associate Attorney General, you must pay for the additional search time at a rate of $28.00 per hour, for a total of $336.00. Because this estimate exceeds $250.00, we require an advance payment of $250.00. See 28 C.F.R. § 16.11(i)(2). You may also choose to specify a particular amount you are willing to pay and forward a check for that amount.

Please forward your check or money order, made payable to the United States Treasury, to the Office of Information and Privacy, Flag Building, Suite 570, Washington, D.C. 20530-0001. Both your check or money order and the envelope should be marked with the reference numbers AG/05-R0788; DAG/05-R0789; ASG/05-R0790. If we do not receive your payment within thirty calendar days from the date of this letter, we will assume that you are not interested in any further records search and we will consider your request closed in this Office.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that you have the right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay

Melanie Ann Pustay
Deputy Director

**EXHIBIT E**

Westlaw.                                                              **News**Room

6/9/05 USATD 21A                                                          Page 1


6/9/05 USA TODAY 21A
2005 WLNR 9119856

                              USA Today (USA)
                         Copyright 2005 USA TODAY

                             June 9, 2005

                          Section: EDIT

                     Remedy is 'forward-looking "

                        Robert **McCallum**

   The U.S. Department of Justice has proven time and again a strong commitment to
holding the **tobacco** industry accountable for past fraud and abuse. Over the past
nine months, we have made a strong and decisive case showing decades of fraudulent
behavior by companies within the **tobacco** industry.

   First and foremost, the government's suggested cessation program comports with a
recent decision of the D.C. Circuit Court of Appeals. The United States vigorously
argued for the industry to disgorge $280 billion in profits for decades of
fraudulent behavior. This spring, the Circuit Court ruled in favor of the **tobacco**
industry, reversing a prior decision of the trial court, and held that any
remedies in the case must be "forward-looking" to prevent and restrain future
wrongful acts, rather than to address even lingering consequences of past acts.

   The trial court and the government are bound by this decision.

   Equally important is the fact that the suggested cessation program, as proposed
by the government Tuesday, is only an initial requirement, one based upon
compelling evidence that the defendants will continue to commit frauds. If
court-appointed monitors find that the defendants continue to commit acts of
fraud, the court can extend and expand the program to exceed the $10 billion over
five years proposed Tuesday, in order to prevent and restrain the continuation of
fraudulent activities by the **tobacco** companies. Under such circumstances, the
overall length and cost of the proposed remedy is open-ended and could be less
than, equal to, or more than the expert witness study introduced into evidence by
the government. That study suggested $130 billion over 25 years. The government's
proposal is therefore forward-looking, focused on future frauds by the defendants
and consistent with the Circuit Court opinion.

   Critics have questioned the motives behind the government's cessation program
proposal. But its form and structure are dictated by the law. The cessation remedy
is but one element of a comprehensive and coordinated array of solutions to

            © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

6/9/05 USATD 21A                                                         Page 2

prevent and restrain future frauds. It does not abandon, but rather embraces, the
costing methodology the government has presented with expert testimony, and then
applies that methodology -- as the appellate decision requires -- to future frauds
rather than past acts.

   Robert **McCallum** is the U.S. Associate Attorney General.



                        ---- INDEX REFERENCES ----

NEWS SUBJECT:  (Crime (1CR87); Legal (1LE33); Social Issues (1SO05); Criminal Law
(1CR79))

REGION:  (USA (1US73); Americas (1AM92); North America (1NO39))

Language:  EN

OTHER INDEXING:  (CIRCUIT COURT; CIRCUIT COURT OF APPEALS; US DEPARTMENT OF
JUSTICE)  (Robert McCallum)

EDITION: FIRST

Word Count: 482
6/9/05 USATD 21A




END OF DOCUMENT




© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.