UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:05-cv-02078 |
| U.S. DEPARTMENT OF JUSTICE, | ) ) ) | Magistrate Judge Alan Kay |
| Defendant. | ) ) ) | |

REPLY IN SUPPORT OF DEFENDANT'S MOTION
FOR A PROTECTIVE ORDER REGARDING DEPOSITIONS

Plaintiff has engaged in an elaborate game of hide-the-ball regarding its plans for next weeks' depositions. It says there is no need for a protective order limiting attendance to the parties and their counsel, yet it will not clearly disclaim any intention to admit members of the public. Similarly, according to plaintiff, there is no evidence to support defendant's request to restrict the use of the videotape to litigation purposes, yet plaintiff vigorously defends the hypothetical right to publicize it. Plaintiff's actions point in one direction: it plans to use the depositions as a publicity stunt. The Court should issue a protective order to prevent plaintiff's abuse of the discovery process.

1. ATTENDANCE AT THE DEPOSITIONS SHOULD BE LIMITED TO THE PARTIES AND THEIR LEGAL COUNSEL

A straightforward denial by plaintiff that it planned to bring members of the public to the depositions in this case would have quickly resolved this issue – and would have obviated the need for the Court's involvement. Among plaintiff's lengthy fulminations, however, a clear denial is notably absent. And plaintiff's actions lead to the conclusion that it harbors such a plan.

Indeed, if it did not, it would have no reason for opposing this motion and thereby wasting the Court's resources.

If plaintiff's position is that it will not in fact bring, invite, or admit anyone to the depositions other than counsel of record, the client, a stenographer, and a videographer, then defendant of course agrees that no protective order is necessary.  However, plaintiff has never been willing to make such an unequivocal statement despite numerous requests by defendant that it clarify its intentions.  In a supplemental brief filed at the eleventh hour, plaintiff has indicated for the first time that it intends to bring only counsel and client to Mr. McCallum's deposition. See Plaintiff's Supplement to Plaintiff's Opposition to Defendant's Motion for a Protective Order Regarding Depositions ("Pl. Supp.") at 2 ("DOJ knew at least as early as June 19, 2006, that CREW intended to bring to Mr. McCallum's deposition only counsel, the client, a stenographer, and a videographer.") Even this statement is ambiguous, however, given plaintiff's insistence on holding the deposition at a public location, i.e., the Courthouse, where plaintiff may invite members of the public or media to attend even if it does not actually "bring" them.

Plaintiff's earlier statement that it was "talking about co-counsel," see Pl. Supp., left matters equally murky.  After agreeing in chambers to take Mr. McCallum's deposition at his offices in the Main Justice Building, plaintiff stated that it wished to be assured that it could "easily bring into the building a number of people." Exhibit 1[1] (June 19, 10:47 AM e-mail).  Its subsequent identification of these people as "co-counsel" was followed by a series of questions seeking unnecessary details about the available conference rooms.  Exhibit 1.  Plaintiff then

---

[1] Exhibits 1-5 are part of the same e-mail dialogue, but sometimes contain different strands of the e-mail chain stemming from a common e-mail.  The entire dialogue is attached for the sake of completeness.

reneged on its agreement to hold Mr. McCallum's deposition at his Department of Justice offices, despite having been informed that each of the two available conference rooms there held at least ten people. Exhibit 1 (June 20, 10:59 AM and 11:50 AM e-mails). Plaintiff's ostensible reason for reneging was that defendant failed to provide sufficient information regarding the conference rooms in question. See id. (June 20, 11:11 AM and 11:50 AM e-mails).

This can have been nothing but a pretext: defendant notified plaintiff of the room number, id. (June 16, 2:19 PM e-mail); the location of the conference rooms near Mr. McCallum's private office, id. (June 19, 3:03 PM, and June 20, 10:59 AM e-mails); and that each could accommodate more than the seven individuals properly in attendance, i.e. plaintiff and its counsel, defendant's counsel, the deponent, the stenographer, and the videographer, id. (June 19, 12:32 PM, June 20, 10:59 AM, and June 20, 11:50 AM e-mails). Defendant also offered plaintiff two unoccupied offices near Mr. McCallum's office for private conferences with telephones for plaintiff's use. Exhibits 1 and 5 (June 19, 12:32 PM e-mail); Exhibit 3 (1:01 PM e-mail). If plaintiff truly intended to bring only "co-counsel," as asserted, and considering that CREW is, by plaintiff's own words, only a three-member organization, there was no logical reason for its refusal to take the deposition of Mr. McCallum at his offices. Instead, plaintiff's manufactured objections enabled it to shift the deposition to a location which would accommodate far more than ten people and also be accessible to members of the public or media that plaintiff wishes to attend. Plaintiff's allegation of falsehood, Plaintiff's Opposition to Defendant's Motion for a Protective Order Regarding Depositions ("Pl. Opp.") at 2,[2] is therefore invective and nothing more.

---

[2] Plaintiff dubs "a complete falsehood" and "a lie" defendant's assertion that "Plaintiff has also refused to agree to hold Robert McCallum's deposition at his office building (the Main Justice Building), indicating that defendant's two available conference rooms there, each of

In view of these significant ambiguities, prior to filing this motion, defendant's counsel repeatedly asked plaintiff's counsel exactly whom plaintiff intended to bring to the depositions. For example, defendant's counsel asked: "Please inform me immediately if you had planned for others [besides the reported, videotape person, yourself, your client Melanie Sloan, and one co-counsel who is employed by CREW] to attend [Mr. McCallum's deposition], as we will need to file a formal objection prior to the deposition." Exhibit 1 (June 20, 11:50 AM e-mail); see also Exhibit 2 (June 20, 12:41 PM e-mail) (asking plaintiff to identify whom it intended to bring to the deposition). Instead of simply answering the question, plaintiff called chambers and arranged a conference call, during which plaintiff again refused to provide any information in response. Plaintiff's counsel denied that defendant had any right to such information, see also Exhibit 1 (June 20, 9:18 AM e-mail) (stating that defendant's request for information was "inappropriate"), even though defendant's counsel indicated that without some clarification, defendant would be compelled to file a motion for a protective order. The deposition was then relocated to the Courthouse.

Plaintiff's accusations that defendant has been obstructive are simply a smoke screen. Contrary to plaintiff's claim, Pl. Opp. at 1, since the Court denied defendant's motion for a protective order, defendant has never argued that Mr. McCallum should not be deposed. Pl. Opp.

---

which plaintiff was informed holds ten or more people, were – for unspecified reasons – unsatisfactory." Pl. Opp. at 2, 4. Defendant's statement is true: plaintiff has refused to hold the deposition at the Main Justice Building despite the ample accommodations offered. More simply put, if plaintiff has not refused to hold the deposition at the Main Justice Building, why isn't it being held there? And contrary to plaintiff's claim, Pl. Opp. at 3, defendant did inform plaintiff as to the number and size of the available rooms. Exhibits 1, 4. Plaintiff's exhibits misleadingly omit the portion of the parties' e-mail exchange in which this information was provided. See, e.g., Pl. Exhibit C.

at 1. Rather, it has correctly argued to the Court that, as a high-level official, Mr. McCallum should be deposed last. See Judicial Watch, Inc. v. Dep't of Commerce, 34 F. Supp. 2d 28, 32 (D.D.C. 1998) (staying Secretary's deposition to permit discovery from other agency personnel, in an effort to avoid interfering with the Secretary's schedule unless other avenues of discovery proved inadequate); Alexander v. FBI, 186 F.R.D. 1, 4 (D.D.C. 1998) (citing "substantial case law standing for the proposition that high ranking government officials are generally not subject to depositions unless they have *some* personal knowledge about the matter and the party seeking the deposition makes a strong showing that the information cannot be obtained elsewhere"); Church of Scientology of Boston v. IRS, 138 F.R.D. 9, 12 (D. Mass. 1990) ("A top government official may, however, only be deposed upon a showing that the information to be gained from such a deposition is not available through any other source."). In the spirit of cooperation, however, defendant has complied with plaintiff's demand that Mr. McCallum be deposed first, even though, as will be shown, he has less knowledge of the FOIA processing at issue than the other two witnesses.[3]

The notion that defendant failed to provide a comprehensive list of dates for which Mr. McCallum was available and insisted that his deposition be at the latest possible date, Pl. Opp. at 3, is also frivolous. Within two business days after the judge issued his June 1, 2006 Memorandum Opinion and Order, defendant notified plaintiff that all three deponents were

---

[3] Also in the spirit of cooperation, defendant agreed to hold Mr. McCallum's deposition at the Courthouse, despite its wish to have it at a location where Mr. McCallum could continue to conduct the public business should delays arise during the deposition. Exhibit 1 (June 19, 2:25 PM e-mail).

available to be deposed during the last two weeks in June.  Exhibit 2.[4]  Because these dates conflicted either with the Magistrate's schedule or the vacation schedule of plaintiff's counsel, other dates on the Magistrate's very crowded July schedule had to be found.

The relevant facts indicate that plaintiff improperly intends to ambush the deposition with nonparties or the media, and worse yet, that it has engaged in deception regarding that intention.  If plaintiff does not plan to allow any member of the public into the depositions, then it should make that intention perfectly clear.  Otherwise, a protective order should be entered to prevent this abuse of the discovery process.

2.   THE USE FOR NON-LITIGATION-RELATED PURPOSES OF THE DEPOSITION VIDEO RECORDING SHOULD BE PROHIBITED

On the issue of publicizing the videotape of Mr. McCallum's deposition, plaintiff again equivocates.  On the one hand, it contends that there is no evidence that plaintiff will use the videotape for purposes unrelated to this litigation.  Pl. Opp. at 5-6.  On the other, without openly admitting that it plans to publicize the videotape, it spends six pages arguing that it should be allowed to do so.  Pl. Opp. at 7-12.  Plaintiff even goes so far as to concede that the hypothetical, but unadmitted, publication of the videotape could cause Mr. McCallum "embarrassment."  Pl. Opp. at 10.  The Supreme Court has stated that "pretrial discovery by depositions . . . has a significant potential for abuse," Seattle Times Co. v. Rhinehart, 467 U.S. at 34; that the powers of a district judge to prevent abuse are "ample," id. at 34 n.20, and that "[t]he prevention of the abuse . . . is sufficient justification for the authorization of protective orders," id. at 35-36.  Plaintiff's lack of forthrightness about its intentions underscores the need for a protective order to

---

[4] Again, plaintiff's exhibits omit these e-mails.

prevent the exploitation of Mr. McCallum's videotape for plaintiff's private and undisclosed ends.

There is no merit to the notion that defendant is seeking to prevent the circulation of the videotape in order to protect the Administration from embarrassment that may flow from Mr. McCallum's testimony. Pl. Opp. at 5, 14. Defendant does not oppose the written publication of the <u>testimony</u>, because it is not the testimony itself which may be embarrassing. Rather, it is plaintiff's abuse of the videotape, and the possibilities it offers for the distortion of testimony or its use out of context, which could cause "annoyance" or "embarrassment." <u>See</u> Fed. R. Civ. P. 26(c). This situation occurred when portions of the deposition videotape of an FBI official were aired on a television comedy program, <u>see</u> Exhibit 1 to Defendant's Motion for a Protective Order, an Supporting Memorandum, prompting the issuance of a protective order in a subsequent case in this Court[5] to prevent similarly unforeseeable abuse, <u>id.</u> Exhibit 2 ( April 10, 2006 Order, <u>Hatfill v. Ashcroft</u>, No. 03-CV-1793 (D.D.C.)); <u>see also</u> <u>Westmoreland v. CBS, Inc.</u>, 770 F.2d 1168, 1175 (D.C. Cir. 1985); <u>Westmoreland v. CBS, Inc.</u>, 584 F. Supp. 1206, 1213 (D.D.C. 1984). Defendant signaled its early intention to seek a protective order regarding Mr. McCallum's videotape, not in automatic opposition to plaintiff, as suggested, Pl. Opp. at 5, but rather, because Mr. McCallum is a high-level public official, and his videotape is therefore patently more marketable for such improper uses.

Plaintiff fails to explain why it must publish the videotape in order to accomplish its professed objective, which is to obtain answers to "questions regarding the government's

---

[5] By contrast, plaintiff relies primarily on two cases from district courts in New York, Pl. Opp. at 7, and fails to cite a single decision from this Circuit to support the disclosure of the videotape.

position that what occurred here is an ordinary and normal processing of a voluminous FOIA request." Pl. Opp. at 6. These answers can be obtained without disseminating the videotape. To the extent there is a heightened public interest in Mr. McCallum's deposition testimony, Pl. Opp. at 7, the publication of the transcript, but not the videotape, would serve that interest as well. Plaintiff also contends that the ability to assess the credibility of the deponents is especially important. Pl. Opp.. at 8 n.8. Again, however, the Court's ability to assess credibility would not be impaired by a protective order limiting the use of the videotape to this litigation, and conversely, the publication of the videotape would not help the Court. That plaintiff has opted <u>not</u> to videotape the depositions of witnesses other than Mr. McCallum suggests that credibility assessment is not the real issue, and that publicity or financial gain is.[6]

The fact that no news organization has sought to videotape the deposition, Pl. Opp. at 6, is irrelevant. The point is that plaintiff may use the videotape for its own purposes – by displaying it on its web site or supplying it to a broadcast company in return for being credited as the source.[7] Plaintiff fails to draw a meaningful distinction between this case and those in which a protective order was imposed to prevent a party from publishing the videotape on its website for publicity and economic gain. Pl. Opp. at 10. As a self-anointed "watchdog" organization, Pl. Opp. at 11, plaintiff is in fact no different from any other entity seeking recognition and revenue to aid in pursuing its private objectives.

---

[6] If such a motivation were not obvious enough, Ms. Weismann admitted in chambers, when asked whether CREW would be interested in monetary sanctions, that "we could always use more money," or words to that effect.

[7] In this regard, whether plaintiff qualified as a "commercial requester" pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) when filing its initial FOIA requests, <u>see</u> Pl. Opp. at 10, is unrelated to the question whether it will abuse the discovery process for improper commercial gain.

There is no basis for allowing the publication of the videotape simply because Mr. McCallum wrote a newspaper editorial. Pl. Opp. at 13. This is a far cry from appearing on Comedy Central, nor would a protective order prevent plaintiff from publishing the deposition transcript in the newspaper too if it wished. In the same vein, Mr. McCallum's public testimony at a televised Congressional hearing, Pl. Opp. at 13, bears no correlation to testimony at a private deposition, nor does it justify the publication of the deposition videotape. Moreover, the editorial in question, as well as Mr. McCallum's Congressional testimony, did not concern the subject of this discovery, i.e., the alleged bad faith delay in processing plaintiff's FOIA request. Rather, they concerned the underlying merits of the Department of Justice's decision to lower the damages sought in the tobacco litigation. While plaintiff conflates the two issues, the alleged "public controversy over the decision to dramatically scale back the government's proposed remedy in the tobacco litigation," Pl. Opp.. at 9, provides no support for disseminating videotaped testimony about the processing of plaintiff's FOIA request.

3.     ANY IMPROPER PURPOSE MUST BE ASCRIBED TO PLAINTIFF

Despite repeated requests from defendant that it do so, plaintiff has consistently refused to clearly state its intentions with respect to the deposition. Lacking such information, defendant was left with no choice but to assume the worst, based on plaintiff's unwillingness to hold the deposition at the Department of Justice and the obvious gains it could improperly achieve from circulating the videotape. If, in fact, plaintiff does not plan to open the deposition to the public or use the videotape outside this litigation, it had an obligation to inform the Court and defendant before this motion was filed. And by its own admission, Pl. Opp. at 5 n.4, plaintiff had multiple opportunities to voice its intentions, either on June 16 or thereafter, when defendant explained its

plans to file this motion.[8] Instead, plaintiff has continued to shilly-shally, accusing defendant of filing the motion without any basis for doing so, while at the same time failing to assent to it. From these circumstances, it can only be deduced that plaintiff is concealing improper aims, and a protective order should be issued to ensure that they are not carried out.

CONCLUSION

For the foregoing reasons, a protective order should be entered (1) restricting attendance at the depositions to parties and their legal counsel, and (2) restricting the use of the videotape to purposes related to this litigation only.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney

**/s/ Lisa A. Olson**
ELIZABETH J. SHAPIRO
LISA A. OLSON (D.C. Bar #38266)
U.S. Department of Justice
20 Mass. Ave., N.W., Room 7300
Washington, D.C. 20530
Telephone: (202) 514-5633
Telefacsimile: (202) 616-8470
E-mail: lisa.olson@usdoj.gov

Dated: July 13, 2006                             Counsel for Defendant

---

[8] Plaintiff argues that defendant manufactured evidence for its motion since it was allegedly not aware of plaintiff's opposition until the meet-and-confer conference on the evening of filing. Pl. Opp. at 12. By the time the motion was filed, plaintiff's opposition was abundantly clear, and the meet-and-confer conference was reduced to a formality.