UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND<br>ETHICS IN WASHINGTON<br>1400 Eye Street, N.W.<br>Washington, D.C. 20005<br><br>         Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530<br><br>         Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 05-2078 (EGS) |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF
ORDER OF JUDGE KAY GRANTING DEFENDANT'S
<u>MOTION FOR A PROTECTIVE ORDER REGARDING DEPOSITIONS</u>**

<u>STATEMENT</u>

On July 17, 2006, one day before the scheduled deposition of Robert McCallum in this case, Judge Kay issued an order granting the request of defendant U.S. Department of Justice ("DOJ") for a protective order. Specifically, Judge Kay ordered (1) that attendance at the depositions is limited to the deponents, their counsel, the parties, a stenographer and videographer; and (2) the videotape of Mr. McCallum's deposition cannot be made public without a good cause showing by plaintiff Citizens for Responsibility and Ethics in Washington ("CREW"). As discussed below, Judge Kay's decision to limit use of Mr. McCallum's deposition absent a showing of good cause by CREW is unsupported by either fact or law and must, accordingly, be set aside. CREW does not seek reconsideration of that part of Judge Kay's order limiting attendance at the deposition to the parties, the deponents and their counsel.

This case concerns two Freedom of Information Act ("FOIA") requests that CREW filed with defendant U.S. Department of Justice ("DOJ"). After full briefing and two hearings, the Court authorized CREW to depose four individuals, including Associate Attorney General Robert McCallum, to determine whether DOJ acted in bad faith in responding to CREW's requests.

From the outset DOJ resisted this discovery and, with respect to Mr. McCallum, attempted to dictate when, where, and how his deposition should be taken. DOJ then sought a protective order (1) that attendance at Mr. McCallum's deposition be limited to the parties and their counsel, and (2) that the public be denied access to the videotape of Mr. McCallum's deposition. As discussed below, this motion was not based on any evidence but rather an "intimation" DOJ was drawing that is both unsupported and cannot substitute for the evidentiary burden DOJ carries as the moving party.

**DOJ's Request to Shield Mr. McCallum's Deposition From Public Scrutiny Is Without Foundation, and Should Be Denied**

Rule 26(c) of the Federal Rules of Civil Procedure authorizes a court, upon a showing of good cause, to enter an order protecting a party in discovery from "annoyance, embarrassment, oppression, or undue burden or expense." As a necessary prerequisite, the party seeking a protective order must make a showing of "good cause." Id. *See also* Flaherty v. Seroussi, 209 F.R.D. 295, 298 (N.D.N.Y. 2001) (citations omitted). DOJ has not come close to satisfying its initial burden of demonstrating good cause for the protective order it seeks.

In granting DOJ's motion, Judge Kay did not point to any evidence DOJ had submitted demonstrating good cause for the protective order. Instead, Judge Kay reasoned that because the scope of discovery is broader than what may be admissible at trial and what would, accordingly,

be made public, it was appropriate for him to exercise his "discretion to restrict access to the depositions as necessary to protect any person 'from annoyance [or] embarrassment.'" Order of July 17, 2006, p. 2.

This finding ignores the fact that DOJ, as the moving party, had an affirmative obligation to come forward with some basis to justify its otherwise bald allegations that Mr. McCallum would be embarrassed by the public dissemination of his videotaped deposition, and that such embarrassment is of the kind that Rule 26 is intended to protect against. It is also contrary to the prevailing weight of authority that in cases like this one, where the conduct of a high level government official is at issue, protective orders to shield that office from potential embarrassment are not appropriate.

As an initial matter, DOJ signaled its dissatisfaction with CREW's choice of recordation at the first available opportunity, on June 14, 2006, when CREW announced to DOJ and Judge Kay that CREW intended to videotape Mr. McCallum's deposition, as authorized by Fed. R. Civ. P. 30(b)(2). From that point onward, DOJ's counsel made clear her objection to this procedure, at first apparently without any knowledge of Rule 30(b)(2), which grants to CREW the unilateral right to record Mr. McCallum's deposition by videotape, and thereafter based on trumped-up allegations that CREW intends to "embarrass or annoy" Mr. McCallum. *See* Defendant's Memorandum in Support of Motion for Protective Order ("D's Mem.") at 4.

That DOJ threatened to seek a protective order from the outset underscores what is apparent from a careful reading of DOJ's motion – there is not a single piece of evidence that supports the government's request for a protective order "prohibiting the use of the videotape for any purpose unrelated to this litigation." Id. Through the vehicle of a protective order DOJ

3

seeks to protect Mr. McCallum and the Department of Justice from any embarrassment that might flow from his own testimony. This is a misuse of Rule 26(c) of the Federal Rules of Civil Procedure.

First, there can be no question that CREW has a legitimate purpose in deposing Mr. McCallum. The Court's Opinion and Order of June 1, 2006, expressly authorizes CREW to depose four individuals, including Mr. McCallum, based on the Court's finding that, far from "simply 'fishing' for information," CREW was entitled to discovery based on "unanswered questions regarding the government's position that what occurred here is an ordinary and normal processing of a voluminous FOIA request." Memorandum Opinion and Order, at 8. Accordingly, DOJ's reliance on cases in which protective orders were granted where the discovery request itself was being sought for an improper purpose, D's Mem. at 4-5, are completely inapposite.

Second, DOJ's request, like its request to limit attendance at the depositions, is completely without a factual foundation. Here, unlike the Westmoreland case on which DOJ relied,[1] no news organization has requested permission to videotape Mr. McCallum's deposition, and Mr. McCallum is not "a non-party witness dragged unwillingly into a dispute between others." Paisley Park Enterprises, Inc. v. Uptown Productions, 54 F.Supp.2d 347, 348 (S.D.N.Y. 1999) (describing status of deponent in Westmoreland). Rather, the request has come from CREW, a party authorized to take the deposition of Mr. McCallum, a party deponent, pursuant to Rule 30(b)(2), which provides that "unless the court orders otherwise," a deposition "may be

---

[1] 584 F.Supp. 1206 (D.D.C. 1984).

recorded by sound, sound-and-visual, or stenographic means." Fed. R.Civ. P. 30(b)(2).[2]

Third, DOJ has no evidence whatsoever that CREW intends to use any videotape of Mr. McCallum's deposition in a way that would "demean" "these proceedings." D's Mem. at 6. Instead, DOJ relies on the fact that portions of the deposition of another government official in another proceeding involving completely different parties were aired on a comedy show. Such reliance, however, is completely misplaced. DOJ has not, and cannot, cite to any evidence that CREW intends to misuse the discovery process here in such a way that a protective order is warranted.

Indeed, given the nature of this case, the involvement of top-level DOJ officials such as Mr. McCallum, and the reasons for the Court-ordered discovery, there is a heightened public interest in Mr. McCallum's deposition testimony. Under such circumstances involving allegations of "improper official action" courts have found protective orders to prevent public dissemination of a videotaped deposition inappropriate. *See*, *e.g.*, Condit v. Dunne, 225 F.R.D. 113, 117 (S.D.N.Y. 2004); Flaherty v. Seroussi, 209 F.R.D. 295 (N.D.N.Y 2001). These cases stand in stark contrast to those involving purely private disputes between non-governmental parties, where courts have found protective orders to be appropriate to protect against commercial and other exploitation. *See*, *e.g.*, Paisley Park Enterprises, Inc. v. Uptown

---

[2] Westmoreland is also inapposite for the additional reason that it was based on the pre-amended version of Rule 30, which required parties seeking to record a deposition by any means other than a non-stenographic recording to seek court approval. The 1993 amendments to the Federal Rules of Civil Procedure "dramatically liberalized the rules governing the taking of video depositions." Michael J. Henke and Craig D. Margolis, *The Taking and Use of Video Depositions: An Update*, 17 Rev. Litig. 1, 2 (1998). Specifically, amended Rule 30(b)(2) now grants to the party noticing a deposition the unilateral right to select the method by which the deposition will be recorded, expressly including videotaping.

Productions, 54 F.Supp.2d 347, 350 (S.D.N.Y. 1999) (contrasting commercial and private interests at issue in case before it with cases in which the government is a party).[3]

Moreover, even where there is evidence of a party's intent to disseminate a videotaped deposition in the hope of embarrassing the deponent – evidence that is lacking here – courts have still denied requests for protective orders where the case involves an issue of public interest.  In Flaherty, for example, the deposing party's counsel had announced his intention to publicize the deposition of the defendant mayor, after stating publicly that he "relishes the opportunity to question [the mayor]" and is "going to concentrate [his] efforts on knocking Mayor Seroussi's teeth down his throat."  209 F.R.D. at 298.  Nevertheless, the court denied the mayor's motion for a protective order, ruling that "[t]he mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of Mayor Seroussi's deposition testimony is not in and of itself sufficient to establish good cause to support the issuance of [a] protective order."  Id. at 299, *citing* Culinary Foods, Inc. v. Raychem Corp., 151 F.R.D. 297, 301 (N.D. Ill. 19930; Hawley v. Hall, 131 F.R.D. 578, 584-85 (D. Nev. 1990).  The court also found that there was a strong public interest in accessing his deposition where the litigation involved "elected officials and the performance of their governmental responsibilities."  209 F.R.D. at 299-300.  As the court reasoned,

> In cases where issues of strong public interest favoring the
> free dissemination of discovery materials are at play, the
> normal practice of not according discovery materials the

---

[3] Courts have also recognized that videotaping depositions may be a superior form of recordation when the issue involves the credibility of the deponent. *See*, *e.g.*, Alexander v. FBI, 186 F.R.D. 123, 127, *citing* Riley v. Murdock, 156 F.R.D. 130, 131 (E.D.N.C. 1994).  Here, where the issue is whether DOJ acted in bad faith, the ability to assess the credibility of the deponents is especially important.

6

>      same degree of access as those filed in connection with trial
>      gives way to a presumption of open inspection.

Id. at 299.

Similarly, in Condit v. Dunne, the court refused to enter a protective order barring public dissemination of a videotaped deposition based, in part, on the public interest in "the propriety of a then-sitting United States Congressman in the discharge of his duties." 225 F.R.D. at 120. The defendant in Condit was seeking a protective order based on the fear that his deposition "might be misrepresented by the media through the use of sound bites." Id. at 118. Notwithstanding this risk, the court concluded that "the fact that the media may edit a tape that may or may not be released by the parties does not warrant a protective order barring all public dissemination of the videotape in this case." Id.

The instant case presents an even stronger basis on which to deny DOJ's request for a protective order. CREW has made no threats or other statements that would suggest an intent to embarrass Mr. McCallum, as in Flaherty.[4] From this alone the Court should conclude, as in Condit, that, as "officers of the Court and absent other evidence" CREW's counsel has no "malicious or improper intentions regarding any of the discovery materials in this case." 225 F.R.D. at 117.

Even more significantly, Mr. McCallum is being deposed to ascertain his role in DOJ's mishandling of CREW's two FOIA requests, and whether he and the agency acted in bad faith. As a high-level official, and particularly given the public controversy over his decision to dramatically scale back the government's proposed remedy in the tobacco litigation – the subject

---

[4] Of course, a mere intent to embarrass a public official is not, in an of itself, sufficient good cause on which to base a protective order. See, e.g., Flaherty, 209 F.R.D. at 299.

of CREW's requests – the public interest in Mr. McCallum's deposition testimony is at an apex. Given the "strong, legitimate public interest on the part of the citizenry to have unfettered access to court proceedings, particularly when they involve elected officials[5] and the performance of their governmental responsibilities," and the at most "modest embarrassment which might befall [Mr. McCallum] should his videotapes deposition be aired publicly," there is not "sufficient good cause to restrict the public's right of access" to his videotaped deposition. Flaherty, 209 F.R.D. at 300.

In arguing to the contrary, DOJ also suggested that CREW seeks to reap some financial gain from disseminating the videotape of Mr. McCallum's deposition. *See* D's Mem. at 6. This completely baseless allegation is belied by DOJ's own administrative findings in denying CREW's request for a waiver of fees associated with processing CREW's two FOIA requests. DOJ agreed with CREW that it is not a commercial requester that was filing its FOIA requests for commercial gain, and denied the fee waiver request on other factors such as DOJ's speculation that all of the requested records would be exempt from mandatory disclosure. *See* Letter from Melanie Ann Pustay, Office of Information and Privacy, DOJ, to Anne Weismann, January 19, 2006 (attached as Exhibit A).

This case stands in marked contrast to cases like Paisley Park Enterprises, Inc., in which the court entered a protective order to limit the use of a videotaped deposition of the musician Prince (or The Artist Formerly Known As Prince) based on its finding that the defendants sought the videotape for publication on their website to generate both publicity and economic gains for

---

[5] While Mr. McCallum is not himself an elected official, he was nominated for his position by President Bush, the highest elected official in the country.

themselves. CREW seeks Mr. McCallum's deposition testimony to answer the legitimate question of what role he played in the government's misconduct in processing CREW's FOIA requests – a question that has nothing to do with generating publicity or revenue for CREW. That CREW has included this lawsuit on its website (D's Mem. at 6) merely demonstrates why CREW filed the FOIA requests that are the subject of this litigation in the first place – to hold public officials accountable for their official acts by disseminating to the public relevant information about what those officials have done and why.[6] As a non-profit, public interest "watchdog" organization CREW exists for a public purpose and not to generate revenue for itself or others. Accordingly, DOJ's base speculation to the contrary regarding CREW's purported motive in seeking to videotape Mr. McCallum's deposition cannot supply the otherwise missing good cause for DOJ's motion for a protective order.

At bottom, DOJ is left with nothing more than the suggestion that CREW's public dissemination of Mr. McCallum's videotaped deposition would be, in and of itself, inappropriate and demeaning. In the context of this case nothing could be further from the truth. CREW filed the FOIA requests at issue to shed public light on a decision, the propriety of which had already been called into question. CREW sought discovery when evidence suggested that DOJ was not complying in good faith with its statutory obligations under the FOIA, also a matter of great

---

[6] DOJ misleadingly suggested that the mere mention of the lawsuit on CREW's website is enough to bring this case within the ambit of Paisley Park Enterprises, Inc. *See* D's Mem. at 6-7. In fact, the two cases could not be more dissimilar – Paisley Park involved a private dispute between private parties and the defendant's mention of the lawsuit on its webpage was considered to be an effort to generate both publicity and revenue for the defendant. This case, by contrast, involves governmental actors on a matter of great public interest and CREW's inclusion of this litigation on its website, which includes all of CREW's legal actions, is for the sole purpose of educating the public.

9

public interest. The Court agreed that discovery was necessary to answer this question, including specifically the deposition of Mr. McCallum. Should CREW exercise its right to make public the videotape of Mr. McCallum's deposition, it will be for the very legitimate purpose of shedding further public light on what DOJ did and why. If either Mr. McCallum or DOJ is demeaned in that process it will be the result of their own actions, not any action of CREW. Therefore, a protective order is neither necessary nor appropriate as it would serve only to shield from public scrutiny matters that are unquestionably of legitimate public interest.

DOJ's motion also rests on the notion that, as a high-level government official, Mr. McCallum should be protected from media scrutiny that might "demean his office." D's Mem. at 6. This rationale also makes no sense given that Mr. McCallum has himself used the media to further his own goals. Surely if Mr. McCallum did not demean his office by soliciting media attention when he wrote an editorial for *USA Today* [7] attempting to explain his decision to so drastically change the remedy the government had proposed two days earlier in the tobacco litigation, media attention to his explanation of his role in delaying the processing of CREW's FOIA requests runs no greater risk of demeaning his office.

Moreover, counsel for DOJ has represented that Mr. McCallum has no relevant information to offer and that, accordingly, any deposition will be a very short proceeding. If this is the case, why is DOJ fighting so hard to shield his testimony from public scrutiny? The clear implication is that DOJ is seeking a protective order for an improper purpose, most likely to protect Mr. McCallum, the status of his ambassadorship, the agency, and the Administration from any embarrassment that may flow from Mr. McCallum's testimony. This, however, is not

---

[7] This article is attached as Exhibit B.

the type of embarrassment Rule 26(c) was designed to protect against.

## CONCLUSION

For the foregoing reasons, the Court should reconsider Judge Kay's Order of July 17, 2006, and deny defendant's request for a protective order to the extent it seeks to shield Mr. McCallum's deposition from public scrutiny by limiting the use and availability of the videotape of his deposition

                                Respectfully submitted,

Dated: July 17, 2006                       /s/_____
                                       Anne L. Weismann
                                       (D.C. Bar No. 298190)
                                       Melanie Sloan
                                       (D.C. Bar No. 434584)
                                       Citizens for Responsibility and
                                         Ethics in Washington
                                       1400 Eye Street, N.W., Suite 450
                                       Washington, D.C. 20005
                                       Phone: (202) 408-5565
                                       Fax: (202) 588-5020

                                       Attorneys for Plaintiff