UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY AND    :
ETHICS IN WASHINGTON               :
1400 Eye Street, N.W.              :
Washington, D.C.  20005            :
                                   :
            Plaintiff,             :
                                   :
      v.                           :   Civil Action No. 05-2078 (EGS)
                                   :
U.S. DEPARTMENT OF JUSTICE         :
950 Pennsylvania Avenue, N.W.      :
Washington, D.C.  20530            :
                                   :
            Defendant.             :
_____:

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF
ORDER OF JUDGE KAY LIMITING SCOPE OF EXAMINATION
AND MOTION TO COMPEL**

**STATEMENT**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brought this

action to compel defendant U.S. Department of Justice ("DOJ") to satisfy its obligations under

the Freedom of Information Act ("FOIA") and produce for public scrutiny documents relating to

DOJ's last-minute decision to reduce its proposed penalty in the tobacco litigation from $130

billion to $10 billion.  When it became apparent that there was a serious question of whether

DOJ's seven-month delay in resolving even preliminary issues relating to CREW's two FOIA

requests was evidence that DOJ was acting in bad faith, CREW sought and was granted leave of

the Court to take limited discovery in the form of four depositions.  The Court specifically

authorized CREW to "explore[] the reasons behind the delays in processing CREW's FOIA

requests."  Memorandum Opinion and Order of June 1, 2006 at 18.

As CREW explained when it first raised the issue of the government's bad faith, the background to this case is highly relevant in understanding what the government has done and why. That background includes allegations that the reduced penalty resulted from improper political influence brought to bear on the government's trial team of career lawyers, including improper attempts to have government witnesses alter their trial testimony. Through discovery CREW sought to determine whether DOJ's delay was motivated by a desire to shield from the pubic any evidence of impropriety. CREW also sought to probe the veracity of deponent Robert McCallum based on extrinsic evidence CREW had that Mr. McCallum had given less than truthful statements in the past regarding the tobacco litigation.

CREW was prevented from pursuing either of these legitimate lines of inquiry, however, by a ruling of Judge Kay limiting the scope of CREW's inquiry. As discussed below, this limitation deprived CREW of an opportunity to adduce relevant probative evidence bearing directly on a government deponent's veracity and its motive in delaying the processing of CREW's two FOIA requests. In addition, the obstructionist conduct and improper speaking objections of Mr. Brody's private counsel impeded CREW's fair examination of Mr. Brody and warrant the imposition of sanctions. And third, CREW seeks to strike the cross-examination of Mr. Metcalfe which appears to be the product, at least in part, of improper consultation with his counsel.

1. **In Denying CREW The Opportunity To Develop Evidence Bearing On The Deponent's Veracity and Motive Judge Kay Improperly Limited The Scope Of The Depositions.**

CREW is not challenging the discretion of this Court to limit both the scope and duration of a deposition. Nor is CREW challenging the authority and responsibility of Judge Kay to

2

ensure that the parties conform to any limits the Court has imposed.  Rather, CREW is challenging the limitations Judge Kay imposed on the scope of discovery because they deprived CREW of an opportunity to adduce relevant and probative evidence on the issue of the government's bad faith.

The scope of the discovery afforded CREW, even as narrowed by the Court, still allows CREW to obtain any discovery that is relevant to CREW's claim that the government acted in bad faith in its processing of CREW's FOIA requests.  *See* Rule 26(b) of the Federal Rules of Civil Procedure.  Moreover, relevant evidence need not be admissible evidence; it is enough if the discovery "appears reasonably calculated to lead to the discovery of admissible evidence." Id.  Included within the range of relevant discovery is any matter that would identify the "existence, description, nature, custody, condition, and location of any . . . documents" that are relevant to the issue of the government's bad faith.  Id.  The limitations imposed by Judge Kay prohibited CREW from pursuing relevant evidence as defined in Rule 26.

First, CREW was not allowed to complete questions that went to Mr. McCallum's role generally in the tobacco litigation, and which would have established a foundation from which to assess the credibility of Mr. McCallum's assertion that he had little, if any, recollection of any aspect of CREW's requests or, indeed, the bulk of the contents of his own files on the tobacco litigation.  Similarly, CREW was not permitted to fully question Stephen Brody, the former Deputy Director and current Acting Director of the tobacco litigation team, on this same issue. Because CREW was limited in its questioning of Mr. McCallum, it was similarly limited in its ability to ascertain from Mr. Brody the accuracy of  Mr. McCallum's portrayal of his role in the tobacco litigation.

Second, CREW was limited in its efforts to establish the universe of responsive

documents Mr. McCallum may have by both Judge Kay and DOJ counsel. CREW sought this

testimony to establish a foundation from which to assess the accuracy of DOJ's representations

about the nature and volume of responsive documents in the Office of the Associate Attorney

General. For example, when CREW attempted to ascertain whether Mr. McCallum's files would

have included notes from conversations with tobacco industry representatives in any capacity

whatsoever (notes that CREW believes would not be privileged and therefore should have been

released), Mr. McCallum relied on a sealing order issued by Judge Kessler in the tobacco

litigation as a basis for refusing to identify any tobacco contacts, no matter what the context. *See*

Transcript of Deposition of Robert D. McCallum, Jr. ("McCallum Trans."), pp. 71-73 (attached

as Exhibit A).[1] And when counsel for CREW requested that Mr. McCallum confirm after the

close of his deposition whether or not the order precluded him from answering all of CREW's

questions on the topic of contacts with tobacco representatives, DOJ refused, suggesting it was

CREW's burden to seek that information from Judge Kessler.[2] Id.  In short, the limitations

imposed by Judge Kay prevented CREW from obtaining relevant information about the

existence of documents that would bear directly on the government's motive to delay processing.

Third, Judge Kay's limitations on the scope of the depositions precluded CREW from

asking questions that bear directly on Mr. McCallum's veracity, an issue that is unquestionably

---

[1] Exhibit A contains relevant excerpts from the deposition transcript of Mr. McCallum. Because portions of that transcript are under seal, CREW is including only those non-sealed portions that are cited herein.

[2] Given that the relevant order is under seal, CREW seeks the assistance of this Court in ascertaining whether the order prohibits Mr. McCallum from answering any questions about any contacts whatsoever with tobacco industry representatives.

relevant to the Court in determining whether DOJ acted in bad faith.  For example, CREW
sought to question Mr. McCallum on two documents, both of which have been sealed at the
government's request, because CREW believes those documents demonstrate that Mr.
McCallum did not answer truthfully to questions posed to him by members of the Senate Foreign
Relations Committee who were considering his nomination to be ambassador to Australia.
Judge Kay allowed CREW to use these documents, but only for the purpose of refreshing Mr.
McCallum's memory.  Judge Kay expressly prohibited CREW from questioning Mr. McCallum
on the contents of these documents.

    Had CREW been permitted to question Mr. McCallum more thoroughly, CREW believes
it could have adduced even more testimony on the issue of Mr. McCallum's veracity.  For
example, after Mr. McCallum's deposition CREW obtained a copy of a document that Mr.
McCallum had referenced and discussed in his deposition that pertained to the subject of sealed
McCallum Exhibit 2.  This document is Mr. McCallum's answer to a supplemental question
posed by the Senate Foreign Relations Committee (attached as Exhibit B).  CREW submits that
this document, when compared to sealed McCallum Exhibit 1 and Mr. McCallum's deposition
testimony (the relevant portions of which are also under seal), demonstrates that Mr. McCallum
has not answered the questions of either CREW or the Senate Foreign Relations Committee
truthfully.  CREW should be permitted to explore this issue more fully through additional
deposition testimony.

    Similarly, Judge Kay precluded CREW from questioning Mr. McCallum and Mr. Brody
about the contents of another sealed document, McCallum Exhibit 3.  Judge Kay made it clear
that any aspect of the document's substance was off-limits to CREW and that CREW's use of the

5

document was limited to refreshing Mr. McCallum's memory. CREW was thereby denied the opportunity to question a witness on the issue of the witness's veracity, a plainly relevant and probative inquiry. The prejudice to CREW was compounded when CREW was prevented from asking Mr. Brody anything about the substance of this document unless Mr. Brody had direct knowledge of the truthfulness of the information reported in the document. Rule 26(b), however, is not limited to admissible, first-hand knowledge. At a minimum, CREW should have been permitted to probe, through the testimony of both Messrs. McCallum and Brody, the reliability of Mr. McCallum's current recollection of a conversation that took place over one year ago, when compared to a contemporaneous record of that conversation. The answer to this question bears directly on Mr. McCallum's veracity.[3]

In sum, the limitations Judge Kay imposed deprived CREW of an opportunity to probe "the veracity and contours" of Mr. McCallum's statements and the government's representations to date about the processing of CREW's FOIA requests, and to test Mr. McCallum's "asserted lack of knowledge." Alexander v. FBI, 186 F.R.D. 113, 121 (D.D.C. 1998). Accordingly, pursuant to Rule 30(a)(2), CREW should be permitted to redepose Mr. McCallum on the matters outlined herein.[4]

---

[3] In order to file this pleading on the public record CREW has not included the sealed documents or any deposition testimony about those documents. Should the Court deem it necessary, CREW will be happy to supplement the record with a sealed filing.

[4] Mr. McCallum terminated his employment with DOJ on July 21, 2006, and stated during his deposition that on August 13 he is leaving the country for Australia. McCallum Trans. at 50. Thus, CREW should be afforded an opportunity to promptly depose Mr. McCallum. Moreover, because Mr. McCallum's veracity is at issue, a deposition upon written questions would not be an adequate substitute for his oral testimony. *See, e.g.*, Alexander v. FBI, 186 F.R.D. at 121: "Face-to-face confrontations prior to trial, with such indicia of formality as administration of the oath, the presence of counsel and stenographic recording of the

**2.  The Obstructionist Conduct of Mr. Brody's Private Counsel And His Improper Speaking Objections Impeded CREW's Fair Examination Of Mr. Brody.**

Under Rule 30(d) of the Federal Rules of Civil Procedure, objections to deposition questions must be stated concisely and in a non-argumentative and non-suggestive manner." Moreover, individuals who "imped[], delay" or engage in other conduct that "frustrate[s] the fair examination of the deponent" are subject to sanction, including any costs and attorneys' fees incurred as a result of such conduct.  Id.  Adherence to these restrictions furthers the underlying purpose of a deposition – "to find out what a witness saw, heard, or did – what the witness thinks . . . There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers."  Hall v. Clifton Precision, 150 F.R.D. 525, 528 (E.D.Pa. 1993) (footnote omitted).

The conduct of private counsel for Mr. Brody, when measured against these standards, falls far short.[5]  Over and over again Mr. Brody's private counsel stated his objections in a suggestive manner and virtually testified for the deponent.  The instances of such improper conduct are so numerous that, for the Court's convenience, CREW has attached as Exhibit C an redacted deposition transcript with the relevant objectionable portions highlighted.[6]

Based on this conduct, CREW respectfully requests that it be awarded its costs and fees in filing this motion, as well as the costs of any redeposition of Mr. Brody that the Court permits.

---

proceedings, are a critical component of the tools of justice in civil litigation."

[5] CREW is not challenging the conduct of Mr. Brody, who at all times was polite and responsive within the restrictions his counsel established.

[6] CREW has redacted from the transcript any discussion of sealed documents.

In this regard, CREW notes its willingness to consider further deposition of Mr. Brody upon written examination.

### 3. DOJ Counsel And Mr. Metcalfe Appear To Have Had An Improper Off-The-Record Conference About The Subject Of Mr. Metcalfe's Cross-Examination

Pursuant to Rule 30(c) of the Federal Rules of Civil Procedure, examination and cross-examination of a witness in a deposition are to proceed "as permitted at the trial." Courts have interpreted this to mean that, just as in trials, witnesses and their counsel do not have the unfettered right to confer privately. *See, e.g.*, Hall v. Clifton Precision, 150 F.R.D. at 528. While courts in this Circuit have declined to recognize a categorical prohibition on communications once a deposition has started, they have held that "such a prohibition is appropriate if there is no temporal interruption" in the deposition. United States v. Philip Morris Inc., 212 F.R.D. 418, 420 (D.D.C. 2002). Factors to consider include "the importance of ensuring that depositions are free from impermissible coaching and reflect true and accurate testimony." Id.

DOJ counsel's conduct in the deposition of Daniel Metcalfe did not conform with this proscription. DOJ sought to cross-examine Mr. Metcalfe on 19 prepared questions concerning the statistics on which this Court relied in its opinion of June 1, 2006.[7] When Judge Kay granted DOJ counsel the right to ask only seven of those questions, counsel and the deponent left the room with the questions and conferred privately for at least five minutes. *See* Transcript of Deposition of Daniel Metcalfe at 38 (attached as Exhibit D). The clear implication was that

_____

[7] CREW has other objections to this cross-examination, including that it went well beyond the scope of CREW's direct examination, but will raise its other objections at a more appropriate time.

counsel and the deponent were conferring on the substance of his cross-examination testimony and how to whittle it down from the prepared responses to the 19 prepared questions. When CREW sought to ascertain if such a prohibited conversation had taken place, counsel invoked the attorney-client privilege. Id. at 40-43.

The apparent private conference between Mr. Metcalfe and his counsel for the purpose of discussing the substance of his cross-examination was improper. Simply stated, the right to counsel does not encompass the right to coach a witness on his or her upcoming testimony, particularly when it occurs mere minutes before that testimony is to begin. Accordingly, CREW requests that Mr. Metcalfe's cross-examination be stricken from the record.[8]

<u>**CONCLUSION**</u>

CREW is mindful of the need to complete the discovery in this matter in as expeditious a manner as possible. The unduly circumscribed limits that Judge Kay placed on the depositions and the obstructionist behavior of Mr. Brody's private counsel, however, impeded CREW's access to relevant and probative evidence. Accordingly, CREW respectfully requests that the

---

[8] When CREW first advised DOJ counsel that CREW objected to any cross-examination as beyond the scope of the Court's order (a position with which Judge Kay appeared to agree), DOJ counsel accused CREW of not wanting the truth to come to light. Quite apart from the fact that it is DOJ, and not CREW, that has fought vociferously to shield the truth from the public, CREW's objection went not to the substance of Mr. Metcalfe's testimony on statistics, but its timing and place. CREW submitted the statistics in question months ago in its motion for discovery. DOJ failed to respond in any way to these statistics because, as it later advised the Court, it deemed them "irrelevant." DOJ never sought to supplement the record after the hearing on this matter when it was clear that the Court found the statistics to be most relevant. Nor did DOJ move to reconsider the Court's Order and Opinion of June 1, 2006, which relied in part on these statistics and the government's failure to offer any response to them or explanation of why the statistics were not relevant. In light of these multiple opportunities, CREW submits that it was highly improper and unfair to CREW and the Court to hold back until the deposition of Mr. Metcalfe, who is the government's own witness and someone over whom they have control and access.

Court grant CREW an opportunity to redepose Mr. McCallum on the subjects outlined herein[9]

and the right to redepose Mr. Brody by written questions on the areas that were limited by his

counsel's improper conduct.

Respectfully submitted,

___/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and
 Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

June 22, 2006

---

[9] By CREW's count CREW has consumed 4 hours and five minutes of its allotted five hours for depositions.  CREW requests an additional hour beyond the remaining 55 minutes to complete its questioning.

10