UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:05-cv-02078 |
| U.S. DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S MOTION FOR A PROTECTIVE/SEALING ORDER
AND FOR RETURN OF FEDERAL DOCUMENTS**

**STATEMENT**

Plaintiff acquired from an undisclosed source several internal, privileged Department of Justice electronic e-mail messages ("e-mails") which are the property of the federal government and should be returned. Their public release has never been authorized by the government. After plaintiff attempted to use these e-mails in the deposition of Robert McCallum earlier this week, the magistrate judge entered an order prohibiting their further dissemination pending a ruling by this Court. The magistrate judge affirmed his order the next day. The following day, an article discussing some of the e-mails appeared in the *Associated Press*.

Federal records, including privileged documents, may not be removed from the government absent express authorization, and numerous statutes and cases equate such unauthorized removal to theft of government property. Plaintiff is now on notice that it is in the possession of stolen property, and the Court has ample authority to compel the return of that property, including, *inter alia*, the Court's inherent authority, the Federal Rules of Civil

Procedure, the common law writ of replevin, and any additional writs as necessary to effect justice under the All Writs Act. The Court should therefore order the immediate surrender of all copies of these e-mails in plaintiff's possession, (to include <u>all</u> plaintiff's current employees) and should seal any future proceedings involving this information to prevent further erosion of the government's privileges. Moreover, plaintiff should be required to give an accounting under oath of how it obtained these e-mails, what it knows about their misappropriation, and any third parties to whom they have supplied them.

## **ARGUMENT**

1. **The E-Mails Are Government Property Whose Release Was Never Authorized, And The Government Is Entitled To Their Return**

The e-mails in question are internal Department of Justice communications which appear to have been printed from the government computer of former Department employee Sharon Eubanks. <u>See, e.g.</u>, 5 U.S.C. § 2635.101(b)(1), (9) (Because "[p]ublic service is a public trust," federal employees are required to "protect and conserve Federal property and shall not use it for other than authorized activities"); <u>see also</u> 28 C.F.R. § 45.735-16 ("Misuse of Federal Property") (same). The Department of Justice specifically provides that federal records "may NEVER be removed" from the custody of the Department of Justice, and that "[a]ll other types of nonpublic Federally-owned documentary materials, including privileged materials, may be removed only with specific approval." DOJ 2710.8C at ¶¶ 9, 11 (emphasis in original); <u>see also</u> DOJ 2630.2A at ¶ 9 ("Removal of Federally owned property from DOJ facilities is PROHIBITED unless authorized . . . .") (emphasis in original); DOJ 2620.7 ("The Department of Justice has access to a considerable amount of unclassified information which must be safeguarded . . . to protect . . .

critical operations of the Department or the integrity of the policy making process").

The government's property right to these e-mails is reinforced by the fact that they contain privileged government information, i.e., the internal recommendations and advice of Department of Justice officials regarding certain agency decisions and processes. Specifically, the first set of e-mails (marked as "McCallum 2") contains successive drafts of an editorial circulated on June 8, 2005, among Department of Justice officials for comment. The editorial explained the basis for the decision by the Department of Justice to reduce the penalty it was proposing in the tobacco litigation. The final version of the editorial was published in the newspaper. Drafts, comments on drafts, and recommendations are quintessentially privileged pursuant to the deliberative process privilege. See, e.g., NLRB v. Sears, Roebuck & Co., 421 U.S. 32 (1975); In re Sealed Case, 148 F.3d 1073 (D.C. Cir. 1998); Judicial Watch, Inc. v. Clinton, 880 F. Supp. 1, 13 (D.D.C. 1995) (drafts and predecisional advice and recommendations are privileged), aff'd, 76 F.3d 1232 (D.C. Cir. 1996).

The second e-mail at issue (marked as "McCallum 3") consists of a July 21, 2005 message from Sharon Eubanks, the former director of the tobacco litigation team, to Stephen Brody, her deputy, in which Ms. Eubanks recounts her recommendations to her superior, Associate Attorney General McCallum, as to the procedures that should be followed during the Office of Professional Responsibility investigation. Again, advice and recommendations fall squarely within the deliberative process privilege. See supra. A paragraph at the beginning of this e-mail appears to have been deleted. It is unknown whether the missing paragraph also contains privileged or confidential information, and whether plaintiff has the unredacted version in its possession. The e-mails in question therefore clearly contain information that is protected

by the deliberative process privilege.

As the Supreme Court has stated, "[c]onfidential business information has long been recognized as property." Carpenter v. United States, 484 U.S. 19, 26 (1987). This same principle applies to confidential government information. See, e.g., Snepp v. United States, 444 U.S. 507, 515 (1980) (finding that where former CIA employee published a book about CIA activities without submitting the manuscript for pre-publication review to remove classified information, that it was appropriate to impress a constructive trust upon the proceeds of the breach for the benefit of the United States); Pfeiffer v. CIA, 60 F.3d at 864 (holding that a classified CIA report was "indisputably the property of the Government").

The government's property right in confidential or privileged information is implicitly acknowledged in the criminal statutes which prohibit the misuse or mishandling of such information. See, e.g., 18 U.S.C. §§ 793 (information relating to national defense); 794 (same); 798 (classified information concerning codes); 952 (diplomatic codes and correspondence); 50 U.S.C. § 783 (communication of classified information to foreign government). Similarly, 18 U.S.C. § 641 has been held to apply to prohibit the theft, conversion or unauthorized use of confidential government information. See, e.g., United States v. Nichols, 820 F.2d 508, 612-13 (1st Cir. 1987) (confidential law enforcement information); United States v. Jeter, 775 F.2d 670, 679-81 (6th Cir. 1985) (secret grand jury information), cert. denied, 475 U.S. 1142 (1986); United States v. Girard, 601 F.2d 69, 70-71 (2d Cir.), cert. denied, 444 U.S. 871 (1979), approving United States v. Lambert, 446 F. Supp. 890, 892-95 (D. Conn. 1978) (law enforcement computer records); United States v. Friedman, 445 F.2d 1076, 1087 (9th Cir.) (secret grand jury information), cert. denied sub nom. Jacobs v. United States, 404 U.S. 958 (1971); United States

v. Vicenzi, 1988 WL 98634, *8 (D. Mass. 1988) (confidential government procurement information); United States v. Morison, 604 F. Supp. 655, 663-64 (D. Md) (classified government information), appeal dismissed mem., 774 F.2d 1156 (4th Cir. 1985). By prohibiting the unauthorized use or handling of confidential or privileged government information, these statutes affirm that such information is the property of the United States.

The Department of Justice has never authorized the release of the e-mails in question, and plaintiff has refused to disclose how they came to acquire them. Moreover, before the recent *Associated Press* article on July 20, 2006, these emails had not found their way into the public domain.[1] Thus, while it is impossible to revert to the status quo ante, it is nevertheless possible to avoid further compromising the government's deliberative process privilege by requiring their return and preventing their use in this litigation[2] And regardless of what the documents themselves say, they are still federal property which must be returned.

**2.    Plaintiff Will Not Be Prejudiced By The Return and Sealing of the E-Mails**

Plaintiff will not be prejudiced if they are required to surrender or destroy all copies of the e-mails in question. The documents have no bearing on the issue of whether the agency caused a bad faith delay in processing plaintiff's FOIA request, and no bearing on the merits of plaintiff's FOIA suit. The e-mails pre-date plaintiff's June 28, 2005 filing of its FOIA requests and

---

[1] The *Associated Press* quoted portions from "McCallum 2" but did not reproduce the e-mails in their entirety. "McCallum 3" was neither referenced in the article nor published.

[2] The fact that the e-mails may be in the hands of other third-parties does not abrogate the privilege. See Medina-Hincapie v. Dep't of State, 700 F.2d 737, 742 n.20 (D.C. Cir. 1983) (finding that official's ultra vires release does not constitute waiver); Safeway Stores, Inc. v. FTC, 428 F, Supp. 346, 347-48 (D.D.C. 1977) (finding no waiver where congressional committee leaked report to the press).

therefore could have no conceivable relationship to the processing of those requests. In fact, in accordance with the Court's June 1, 2006 Memorandum Opinion and Order, Magistrate Judge Kay ordered plaintiff to stay on point during the depositions, and therefore questions relating to these e-mails would have been precluded on grounds that they were outside the scope of the Court's Order.

Plaintiff has attempted to argue that these emails go to "motive" and "bias." But that claim is nonsensical. Mr. McCallum testified that he had nothing to do with plaintiff's FOIA claim, and that he delegated all document matters related to tobacco (including the OPR investigation and any FOIA requests) to others. Deposition of Robert D. McCallum, Jr.[3] ("McCallum Depo.") at 51 ll. 3-7; 52 ll. 4-5; He further testified that he delegated these matters for the very reason that he assumed that someone would later accuse him of improper interference, and his complete removal from these matters was intended to shield him from such accusations. Id. at 83 l. 16 - 84 l. 6. Absent any foundation whatsoever that Mr. McCallum had any involvement in the processing of plaintiff's FOIA request or any knowledge of how the request was being processed, questions regarding his "motive" to obstruct that which he knows nothing about serve no purpose other than to harass Mr. McCallum. See Fed. R. Civ. P. 26(c) and 30 (d)(4). Similarly, there is no suggestion whatsoever that Mr. McCallum was untruthful with respect to his testimony that he had no role in the processing of this FOIA request. To the contrary, Daniel Metcalf, the Director of the Office of Information and Privacy (OIP), confirmed that Jeff Senger -- the career employee in the Office of the Associate Attorney General to whom Mr. McCallum delegated responsibility – was the point of contact for Melanie Pustay, the Deputy

---

[3] The complete deposition transcripts will be filed with the Court on Monday.

Director of OIP who handled CREW's FOIA request to the leadership offices. Deposition of Daniel Metcalfe ("Metcalfe Depo.") at 16 l. 12 - 17 l. 7. Mr. Metcalf also confirmed that he never spoke to Mr. McCallum about the processing of plaintiff's FOIA request, even though Mr. McCallum was Mr. Metcalf's direct supervisor and he attended regular meetings with him. Id. at 23 ll. 10 - 25 l. 12. In addition, Stephen Brody, the former deputy director of the tobacco litigation team and its current director, testified that he never spoke to Mr. McCallum about plaintiff's FOIA request. Deposition of Stephen Brody ("Brody Depo.") at 29 ll. 13-22. There is simply no good faith basis on which to assert that Mr. McCallum is being untruthful about his lack of any role in this FOIA request, nor do the e-mails at issue provide any such evidence.

3.   **The Court Has Authority to Order the Return of the Documents and to Order Testimony from Plaintiff**

The Court has ample authority to issue the relief requested, including its own inherent authority to manage its docket, and its broad discretion to control discovery. See, e.g., Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962) (Courts have "'inherent power' . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."); Atkins v. Fischer, 232 F.R.D. 116, 128 (D.D.C. 2005) (same) (acknowledging "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (internal citations omitted). In addition, the Federal Rules of Civil Procedure permit the Court to "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (1) that the disclosure or discovery not be had; (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time

or place; (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c); see also Rule 30(d)(4) ("At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c).").

Moreover, The All Writs Act, 28 U.S.C. § 1651(a), provides the Court additional authority to award the relief requested here, if more were required.[4]  28 U.S.C. § 1651(a).  The Act serves as "a residual source of authority to issue writs that are not otherwise covered by statute."  See Pennsylvania Bd. of Corrections v. United States Marshal's Serv., 474 U.S. 34, 43 (1985).  The Act authorizes a federal court to issue "auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it."  Adams v. United States ex rel. McCann, 317 U.S. 269, 273 (1942); see also Harris v. Nelson, 394 U.S. 286, 299 (1969) (All Writs Act is a "legislatively approved source of procedural instruments designed to achieve the rational ends of law.").

Although a mandatory writ issued pursuant to the Act is an extraordinary remedy, this is an extraordinary case.  See Pennsylvania Bd. of Corrections, 474 U.S. at 43 (the All Writs Act empowers federal courts to fashion extraordinary remedies when the need arises).  We have

---

[4] The All Writs Act provides: "The Supreme Court and all other courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).

shown that plaintiff possesses privileged information which belongs to the government, and further, that the former employee from whose government computer this information apparently was printed is now plaintiff's employee. Some of these privileged e-mails were quoted in the newspaper just two days after the issuance of an order protecting them from further dissemination, and one day after that order was reaffirmed. The All Writs Act authorizes injunctive relief under precisely such circumstances. As one Circuit has held, an order under the All Writs Act is appropriate if "directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." ITT Community Development Corp. v. Barton, 569 F.2d 1351, 1358 (5th Cir. 1978).[5]

All of these authorities – the Court's inherent powers, the Federal Rules of Civil Procedure and the All Writs Act – empower the Court to order plaintiff to give an account, under oath, of how it acquired the e-mails and whether it has disseminated the e-mails to others. Without immediately obtaining this information, the United States cannot ensure the integrity of the privileged information, nor can this Court exercise complete jurisdiction over government property which may exist in the hands of third parties. See Harris, 394 U.S. at 299 ("the courts may rely upon [the All Writs Act] in issuing orders appropriate to assist them in conducting factual inquiries).

## **CONCLUSION**

For the foregoing reasons, defendant's motion for a protective/sealing order and for return

---

[5] The government can also initiate an action for replevin of the stolen material. See Wood v. Several Unknown Metropolitan Police Officers, 835 F.2d 340 (D.C. Cir. 1987) (discussing replevin action under District of Columbia law).

of federal documents should be granted.

                                               Respectfully submitted,

                                               KENNETH L. WAINSTEIN
                                               United States Attorney

                                               **/s/ Lisa A. Olson**
                                               ELIZABETH J. SHAPIRO
                                               LISA A. OLSON (D.C. Bar #38266)
                                               U.S. Department of Justice
                                               20 Mass. Ave., N.W., Room 7300
                                               Washington, D.C. 20530
                                               Telephone: (202) 514-5633
                                               Telefacsimile: (202) 616-8470
                                               E-mail: lisa.olson@usdoj.gov
Dated: July 22, 2006                          Counsel for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 1:05-cv-02078 |
| U.S. DEPARTMENT OF JUSTICE, ) ) | |
| Defendant. ) ) | |

ORDER

The Court having considered defendant's motion for a protective/sealing order and for return of federal documents, and good cause having been shown, it is hereby

ORDERED that defendant's motion is granted, and it is further

ORDERED that plaintiff will immediately either return all copies of the electronic mail messages in its possession, including the possession of all of its employees, to defendant or destroy them, and will not disseminate those documents or use them outside these proceedings, and it is further

ORDERED that further proceedings involving the messages in question or information contained therein will be conducted under seal.

Dated: _____, 2006      _____
                                   EMMET G. SULLIVAN
                                   UNITED STATES JUDGE