UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 1:05-cv-02078 |
| U.S. DEPARTMENT OF JUSTICE, ) ) | |
| Defendant. ) ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR RECONSIDERATION OF ORDER OF JUDGE KAY
LIMITING SCOPE OF EXAMINATION AND MOTION TO COMPEL**

<u>STATEMENT</u>

Plaintiff's discovery has left it empty-handed and unable to demonstrate any bad faith interference in the processing of plaintiff's FOIA requests. This result is unsurprising given the deponents' lack of substantive involvement with the FOIA requests. Associate Attorney General Robert McCallum deliberately recused himself from the process to avoid any implication of interference, Deposition of Robert D. McCallum, Jr. ("McCallum Depo.") (Exhibit 2) at 51:3-7; 52:7-12; 56:11-16; 81:17 - 82:4; 83:13-84:3; and turned his files over to career staff attorneys, <u>id.</u> at 53:6-14. Then-Deputy Director of tobacco litigation Stephen Brody knew next to nothing about the request. Deposition of Stephen Brody ("Brody Depo.") (Exhibit 1) at 27:2 - 28:1; 30:1-4; 51:9-20. And Office of Information and Privacy ("OIP") Director Daniel Metcalfe's minor involvement was largely limited to the routine handling of plaintiff's fee waiver appeal last January. Deposition of Daniel Metcalfe ("Metcalfe Depo.") (Exhibit 3) at 10:14 - 11:14; 13:5-12; 31:22 - 32:8. The evidence also showed that no improper influence was brought to bear on

anyone handling these requests, including Sharon Eubanks, the Director of the tobacco litigation, currently employed by plaintiff. Brody Depo. at 29:9-22; 61:9-12; Metcalfe Depo. at 23:1-15; 24:13-16; 25:7-12; 31:17-21; McCallum Depo. at 82:5-8; 82:12-19; 88:4-8; 88:9-12; 88:16-20; 89:2-4.  Again, this information comes as no surprise, since the two career attorneys who actually handled the request, OIP Deputy Director Melanie Pustay and Civil Division attorney James Kovakas, have detailed every step of the process, concerning which there is not a hint of bad faith.[1]  See March 10, 2006 Declaration of Melanie Ann Pustay; March 10, 2006 Declaration of James M. Kovakas.

Moreover, Mr. Metcalfe, the Director of OIP, also dispelled plaintiff's contention that there was undue delay in the processing of plaintiff's requests.  As Mr. Metcalfe explained, the time for processing plaintiff's FOIA requests, when calculated properly according to the methodology used to compile the statistics in the Department's annual reports to Congress, is well within the median range noted in those statistics for processing expedited requests.

A motion for reconsideration is not intended to be a second bite at the apple.[2]  Rather, it must meet a stringent standard by which the decisions of a Magistrate can be overturned only if they are clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a); see also LCvR 72.2(c) ("[A] judge may modify or set aside any portion of a magistrate judge's order under this rule found to be clearly erroneous or contrary to law.")".  Moore v. Chertoff, 2006 WL 1442447 (D.D.C.); see

---

[1] Notably, plaintiff had no interest in deposing these individuals, who do have knowledge about the FOIA processing.

[2] Plaintiff's counsel has suggested, incorrectly, that Judge Kay's rulings are merely "preliminary." Brody Depo. at 11:20 - 12:5.  While review by the district judge is certainly available, reversal requires the Court to find clear error.

also Adem v. Bush, 1193853, *1 (D.D.C.) (denying reconsideration where Magistrate's decision was not clearly erroneous and contrary to law). Plaintiff fails to cite a single instance in which the Magistrate's rulings meet this standard. Magistrate Kay correctly rejected the tortured logic of plaintiff's argument that so-far nonexistent evidence of Mr. McCallum's alleged lack of veracity in the underlying tobacco litigation justified a fishing expedition that would somehow prove bad faith in the processing of plaintiff's FOIA requests.

There was no bad faith; there was no undue delay. Plaintiff has had ample opportunity to prove otherwise but cannot do so. The case should now be refocused on the original purpose of this lawsuit, which is ostensibly to obtain documents. The issue of the fee waiver should be addressed so that the case can proceed to a conclusion. If plaintiff were truly concerned about alleged delays in processing that have prevented them from obtaining responses to their FOIA requests, it would have urged the Court to move forward on the fee waiver issue. If it had, plaintiff might very well have had producible documents in its possession by now. Instead, plaintiff seems more interested in perpetuating this litigation for its own sake. Plaintiff's motion for reconsideration and to compel should therefore be denied.[3]

---

[3] Plaintiff argues that they have consumed four hours and five minutes of its allotted five hours for depositions, Plaintiff's Motion for Reconsideration of Order of Judge Kay Limiting Scope of Examination and Motion to Compel ("Pl. Motion") at 10 n.9, whereas the transcripts show that it has used up its time. Mr. Brody was deposed for 85 minutes, from 10:45 A.M. - 12:10 P.M. Mr. Metcalfe was deposed for 110 minutes, from 3:30 P.M. - 5:20 P.M. Even if 10 minutes are subtracted for a conversation with the Magistrate, Metcalfe Depo. at 61-70, plaintiff would have used 100 minutes for Mr. Metcalfe. Finally, the deposition of Mr. McCallum lasted from 10:40 A.M. - 3:35 P.M. Even if time is subtracted for discussions with the Magistrate, discussions off the record, and breaks, the transcript reflects that Mr. McCallum was deposed from 10:40 A.M. - 11:12 A.M., 11:39 A.M. - 12:29 P.M., 12:37 P.M. - 12:47 P.M., 2:54 P.M. - 3:05 P.M., and 3:14 P.M. - 3:35 P.M., for a total of 114 minutes. Adding 85, 100, and 114, plaintiff's depositions lasted for 4 hours and 59 minutes.

**ARGUMENT**

1.  **The Scope of the Deposition Was Properly Limited to Questions About Alleged Bad Faith Delays in Processing Plaintiff's FOIA Requests**

Plaintiff argues that Judge Kay wrongly denied it the chance to question Mr. McCallum about his role generally in the tobacco litigation so as to assess the credibility of his assertion that he has little recollection of plaintiff's FOIA requests or the contents of his files. Pl. Motion at 3. Mr. McCallum has testified that he delegated responsibility for plaintiff's FOIA requests to two attorneys in his office,[4] McCallum Depo. at 51:3-7; 52:7-12; 56:11-16; 81:17 - 82:4, and therefore knows virtually nothing about the requests, id. at 48:21 - 49:3; 49:9-13; 49:17-19; 50:4-5; 50:18-19; 51:18-21; 52:4-5. The proper way to test the credibility of this statement is to verify it with the two staff attorneys who did process plaintiff's FOIA requests. Asking Mr. McCallum or Stephen Brody about Mr. McCallum's general role in the tobacco litigation to find out whether he is telling the truth about his involvement with plaintiff's FOIA requests makes little sense. Plaintiff is clearly looking for an excuse to inquire about the underlying tobacco litigation. Such information, however, is the subject of plaintiff's FOIA request, and discovery in a FOIA case cannot be used as a back-door method for obtaining the ultimate relief in the litigation. Tax Analysts v. IRS, 410 F.3d 715, 722 (D.C. Cir. 2005) (finding that "further inquiry into the substance of the documents would, if granted, turn FOIA on its head, awarding appellant in discovery the very remedy for which it seeks to prevail in the suit"). To say that Mr. McCallum can be interrogated about his role in the tobacco litigation to probe his veracity would be to say

---

[4] He did this in order to remove himself entirely and thereby avoid any implication of improper influence. McCallum Depo. 83:13 - 84:3. In doing so, he made his files fully available to the staff attorneys, id. at 53:6-14, and does not know what was done with his files in responding to plaintiff's FOIA requests, id. 82:20 - 83:9; 142:11-12.

he can also be asked about any other decision or statement that plaintiff deems objectionable. Such inquiries are unlikely to produce information that is even remotely relevant to whether there were bad faith delays in the processing of plaintiff's FOIA requests.

It would be equally nonsensical to inquire into Mr. McCallum's role in the tobacco litigation in order to test the credibility of his assertions about what is in his files. Mr. McCallum's recollection of what is in his files has no bearing on the issue of whether there were bad faith delays in the processing of plaintiff's FOIA requests. And if plaintiff truly cared about the contents of Mr. McCallum's files, it would urge the Court to resolve the fee waiver issue so that those files can be processed under FOIA.

Furthermore, the contention that plaintiff was denied the chance to ask Mr. McCallum about his role in the tobacco litigation is not accurate. Pl. Motion at 3. Plaintiff questioned Mr. McCallum about his role in that litigation for more than a half hour, McCallum Depo. at 7:18 - 33:18, but was ordered to stop when it became clear that its inquiries neither established a foundation nor were otherwise related to the question of bad faith delays. See id. at 35:17 - 48:10. The notion that Mr. McCallum had little knowledge of the contents of his files on the tobacco litigation is also inaccurate. He recalled that they contained judicial opinions and orders, e-mails, personal notes, memoranda from the tobacco litigation trial team or the Civil Division, and anything else he considered significant. Id. at 53:15 - 54:21; 130:9 - 131:2; 133:8-10; 136:13-20. His recollection was reasonable, given that he has reviewed the files only twice in the past six months. Id. at 126:20 - 127:6; 129:17 - 130:3. In any event, whether Mr. McCallum has memorized the particular contents of files accumulated over the past five or six years is of no moment to the issue of whether there was bad faith delay in the processing of plaintiff's FOIA

requests.

The assertion that plaintiff has been prevented from establishing the universe of responsive documents Mr. McCallum may have, Pl. Motion at 4, could not be farther from the truth. In fact, plaintiff asked Mr. McCallum at least 63 questions about the specific items in his files.[5] It is difficult to imagine what else plaintiff could want. Moreover, Mr. McCallum's files are no mystery. They will be processed once the fee waiver issue is resolved and the FOIA request is processed. Further discovery to "establish the universe" of those documents is therefore utterly pointless. To the extent plaintiff sought to inquire about communications with the tobacco industry, Pl. Motion at 3, – which inquiry is wholly irrelevant – the Court is respectfully referred to Judge Kessler.

The allegation that Judge Kay precluded plaintiff from asking questions that bear directly on Mr. McCallum's veracity is also incorrect. Pl. Motion at 4. Judge Kay expressly did allow such questioning. Brody Depo. at 19:3-7 ("I think, however, that on the issue of the deponent's veracity that may have some bearing on how Judge Sullivan assesses the information or the testimony of any of the witnesses who have been deposed."). However, he properly limited the questioning to first-hand knowledge rather than hearsay. Id. at 19:6 - 20:14. Plaintiff was simply unable to come up with any questions about Mr. McCallum's role in the underlying tobacco

---

[5] Some of these questions can be found as follows: McCallum Depo. at 53:15-17; 54:8-11; 54:13-14; 54:16-19; 69:20 - 70:5; 70:7-8; 120:18 - 121:1; 121:3; 121:5-7; 121:11; 121:13; 121:16; 121:21 - 122:1; 123:5-8; 123:12; 123:17-22; 124:4-8; 124:16-19; 125:9-11; 125:15-17; 127:8-11; 126:20 - 127:2; 128:17-21; 129:3-4; 129:12-14; 129:17; 130:4-18; 130:11-12; 130:16-17; 130:19; 130:22; 134:4-8; 135:20 - 136:2; 136:5-8; 136:10-12; 136:21-22; 137:2-4; 137:10-11; 137:13-14; 137:17-18; 137:22 - 138:4; 138:10-11; 138:19-20; 139:1-3; 139:8-11; 139:15-17; 140:4-5; 140:10-11; 140:18-19; 140:21-22; 141:3; 141:6-7; 141:15-16; 144:3-6; 144;8; 144:20-22; 145:13-16; 146:14-18; 148:13-14; 148:17-19; 150:20-22.

litigation that showed he lacked veracity, much less that he lacked veracity with regard to the alleged delays in FOIA processing. McCallum Depo. at 35-48.

Moreover, there is no merit to the assertion that Mr. McCallum's testimony before the Foreign Relations Committee conflicts with the contents of the e-mails in sealed McCallum Exhibit 1. Pl. Motion at 5. Plaintiff suggests that the Senate Foreign Relations Committee suggested that it had those e-mails in its possession, see Pl. Motion Exhibit B (indicating it had "some internal Justice Department emails about the drafting of the article"), but was still satisfied with Mr. McCallum's answers to its questions. The *Associated Press* article that appeared shortly after Mr. McCallum's deposition quotes plaintiff's employee, the former Director of the tobacco litigation, as believing that Mr. McCallum's statements were misleading, but the Senate Foreign Relations Committee reached no such conclusion.

Plaintiff also erroneously argues that the second sealed e-mail calls into question Mr. McCallum's assertion that he did not speak with the head of the Office of Professional Responsibility ("OPR"), Marshall Jarrett, about the OPR investigation. Pl. Motion at 5-6; see McCallum Depo. at 84:13-18; 149:12 - 150:19. However, Mr. Jarrett has already corroborated Mr. McCallum's testimony that the two did not speak. Mr. Jarrett declared that Mr. McCallum "has taken no part in supervising or directing OPR's investigation in this matter," "did not attend any of the meetings," and "gave no instructions or guidance on OPR's conduct of the investigation." March 10, 2006 Declaration of H. Marshall Jarrett at ¶ 9 (Exhibit 3 to Defendant's Opposition to Plaintiff's Motion for Discovery). There is no point in asking Mr. McCallum further questions about the e-mail, which shows no first-hand knowledge about any alleged contact between Mr. McCallum and Mr. Jarrett. Asking Mr. Brody about the e-mail to

probe Mr. McCallum's veracity on this question would be equally futile, since Mr. Brody has no knowledge of any contacts between Mr. McCallum and Mr. Jarrett. Declaration of Stephen Brody at 55:10-13.

**2.     Plaintiff Was Not Prevented From Obtaining Any Non-Privileged Or Relevant Information From Mr. Brody**

Plaintiff's assertion that Mr. Brody's attorney, Robert M. Weinberg of Bredhoff & Kaiser, engaged in "obstructionist" conduct during Mr. Brody's deposition is frivolous and should quickly be rejected by the Court. As a preliminary matter, the Court should be aware that CREW has not served Mr. Weinberg or Mr. Brody with its sanctions motion, and has not afforded them the opportunity to respond to the allegation of "obstructionist" conduct raised in CREW's motion. Substantively, CREW has not identified any information which it sought but was prevented from obtaining from Mr. Brody; and a review of the transcript of Mr. Brody's deposition demonstrates convincingly that, contrary to obstructing CREW's efforts to obtain information, Mr. Weinberg sought to identify ways in which CREW's counsel could frame questions in order to obtain the information it sought without intruding upon attorney-client communications.

Significantly, all of what CREW provides as highlighted text in Exhibit C to its motion[6] and relies on for its sanctions request arises in the context of questions posed by CREW's counsel that are outside the scope of the limited discovery permitted by the Court in its June 1, 2006 Memorandum Opinion and Order. The Court allowed "limited discovery for the purpose of exploring the reasons behind the delays in processing CREW's FOIA requests." Mem. Op. and

---

[6] CREW has highlighted two objections from the Department of Justice's attorney, Ms. Olson, in Exhibit C, but her conduct is not at issue.

Order of June 1, 2006, at 18.  At the outset of his deposition and repeatedly thereafter, however, Mr. Brody testified that he had no role in processing plaintiff's FOIA request.  Brody Dep. at 27:2-28:1; 30:1-4; 51:9-20.  His only involvement with any issues related to CREW's FOIA request has been "answering questions that [counsel for the Department of Justice] has had along the way to assist her with the defense of [CREW's] lawsuit," after CREW filed this action with the Court.  Id. at 30:5-13.

Counsel for CREW nevertheless proceeded to question Mr. Brody at length about the assistance he provided to DOJ counsel in the FOIA litigation and his work as Deputy Director of the Tobacco Litigation Team prosecuting the government's claims in United States v. Philip Morris USA – work that occurred months before CREW served its FOIA request and is therefore wholly unrelated to the processing of the request.  See, e.g., id. at 65-67.  DOJ counsel and Mr.Weinberg allowed the questioning to continue, subject to and without waiving relevance objections interposed by DOJ counsel.  Where appropriate, DOJ counsel raised privilege objections and instructed Mr. Brody not to answer.  Mr. Weinberg never instructed Mr. Brody not to answer.

Instead, in certain instances where DOJ counsel raised privilege objections, Mr.Weinberg suggested that counsel for CREW re-phrase questions in ways that would allow CREW to obtain the information it sought.  For example, when DOJ counsel raised a privilege objection to CREW's request that Mr. Brody describe his "understanding" of what documents DOJ counsel wished to review in preparation for a hearing before the Court in this litigation, DOJ counsel raised a privilege objection and instructed Mr. Brody not to answer.  Id. at 31:5-32:8.  After conferring off the record, Mr. Weinberg suggested that CREW rephrase its question to simply

ask what Mr. Brody did to assemble documents for DOJ counsel. Id. at 32:12-15. Mr. Brody then answered the question and CREW obtained the information it sought without an objection or instruction from DOJ counsel. CREW now asks the Court to impose sanctions based on this colloquy, in which Mr. Weinberg facilitated the provision of testimony by Mr. Brody after CREW had reached an impasse with DOJ counsel based on the privilege objection. Mr. Weinberg's conduct was not "obstructionist," but instead was entirely appropriate conduct of the type that attorneys are supposed to, and do, engage in every day in depositions.

Plaintiff's complaints about the other instances in which Mr. Weinberg sought to facilitate CREW's efforts to obtain testimony without the disclosure of privileged information, id. at 33:4-5, 34:16-19, 35:2-4, 45:19-46:1, 72:17-21, should similarly be rejected, as should CREW's complaints about valid objections to the effect that a question had been asked and answered, id. at 37:12-13, 38:8-10, 40:15-16, 75:2-3, was objectionable in form, id, at 47:2-3; 50:14-15; 53:8-10, or was outside the proper scope of the deposition. Id. at 65:1-10, 69:8-70:6.

In the end, CREW requests that it be allowed to re-depose Mr. Brody by written question "on the areas that were limited by his counsel's improper conduct." Pl. Motion at 10. But CREW fails to identify any information that it sought but was prevented from obtaining as a result of objections from Mr. Weinberg, nor could it: as indicted above, Mr. Weinberg never instructed Mr. Brody not to answer CREW's questions and, as CREW concedes in its Motion, Mr. Brody "at all times was polite and responsive." Pl. Motion at 7, n.5.

**3.    Defendant Properly Cross-Examined Mr. Metcalfe**

The brief conference that took place between defendant's counsel and Mr. Metcalfe

immediately after Judge Kay allowed cross-examination, Pl. Motion at 8, was perfectly proper.[7] During a break that was so short as not to be noted in the record, Deposition of Daniel Metcalfe at 70:16, defendant reduced the number of questions it had prepared for Mr. Metcalfe in accordance with Judge Kay's ruling. Metcalfe Depo. at 69:16-18. There is no evidence whatsoever that defendant counseled Mr. Metcalfe about the substance of his testimony during this break, and defendant's counsel had every right to confer with her client regarding the implications of Judge Kay's ruling.

Defendant's five questions to Mr. Metcalfe related directly to the root issue of this discovery, which is whether there was in fact undue delay in the processing of plaintiff's FOIA requests. The questions were also within the scope of plaintiff's direct examination. Plaintiff asked Mr. Metcalfe whether he was aware of the Court's Order finding delays in the processing of plaintiff's requests, and whether the June 1, 2006 Order caused Mr. Metcalfe to change the processes within the Office of Information and Privacy for handling appeals. Metcalfe Depo. at 47:20 - 50:5; see also McCallum Depo. at 57:13 - 62:10 (asking Mr. McCallum at length about the June 1, 2006 Order and the statistics showing the median time for processing requests). It was therefore appropriate to show the statistics provided no reason for doing so.

Plaintiff simply does not want this Court to hear truthful and relevant information, viz., in fact, the time period for defendant's processing of plaintiff's FOIA requests was well within the Department of Justice median according to the very statistics on which plaintiff relied to argue the opposite. See Plaintiff's Motion for Discovery at 14-15. First, the processing time for

---

[7] The Federal Rules of Civil Procedure expressly permit cross-examination of deposition witnesses, and this plaintiff's attempt to prevent any questioning of the witness by defendant was improper. See Fed. R. Civ. P. 30(c).

plaintiff's FOIA request to the Civil Division, if calculated consistently with the statistical regime established by Congress, was actually six days. Metcalfe Depo. at 74:6-21. The conclusion that it took 201 or 210 days and therefore exceeded the statistical median, June 1, 2006 Order at 12-13, is erroneous, because these inflated figures include processing time at the administrative appeal level, which at Congress' direction is excluded from statistics recorded in the annual report. Metcalfe Depo. at 11-22. Second, the statistical processing time for plaintiff's FOIA request to the Office of Information and Privacy was 136 days, not 206 days, see June 1, 2006 Order at 13, because Congress directed that weekends and holidays not be included in the statistical time periods. Metcalfe Depo. at 72:7-19. These numbers were well within the statistical median. Id. at 73:19-20; 74:14-21.

Over defendant's objections that these statistics could not provide a valid basis for comparison because, inter alia, they do not reflect the number of documents involved in each request, plaintiff argued that the Court should nevertheless rely on them. At a bare minimum, it was incumbent on plaintiff as the proponent of this approach to make a correct statistical count of the days it took defendant to process plaintiff's requests so as not to mislead the Court. The deposition of Mr. Metcalfe offered defendant its first opportunity since learning this information to correct these factual errors.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration and to compel should be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN

-13-

|  |  |
|---|---|
|  | United States Attorney |
|  |  |
|  | **/s/ Lisa A. Olson** |
|  | ELIZABETH J. SHAPIRO |
|  | LISA A. OLSON (D.C. Bar #38266) |
|  | U.S. Department of Justice |
|  | 20 Mass. Ave., N.W., Room 7300 |
|  | Washington, D.C. 20530 |
|  | Telephone: (202) 514-5633 |
|  | Telefacsimile: (202) 616-8470 |
|  | E-mail: lisa.olson@usdoj.gov |
| Dated: July 24, 2006 | Counsel for Defendant |