**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————
CITIZENS FOR RESPONSIBILITY AND          :
ETHICS IN WASHINGTON,                    :
                                         :
          Plaintiff,                     :
                                         :
     v.                                  :     Civil Action No. 05-2078 (EGS)
                                         :
U.S. DEPARTMENT OF JUSTICE,              :
                                         :
          Defendant.                     :
———————————————————:

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR RECONSIDERATION OF ORDER OF JUDGE KAY LIMITING**
**SCOPE OF EXAMINATION AND MOTION TO COMPEL**

The government's opposition to CREW's motion for reconsideration rests on the charge that through the Court-ordered discovery CREW is off on a frolic and banter, designed to avoid resolution of the underlying legal merits of CREW's Freedom of Information Act ("FOIA") complaint. Nothing could be further from the truth. No one is more eager than CREW to get the documents to which it is entitled under the FOIA. The parties are engaged in discovery, however, because rather than process CREW's FOIA requests, the Department of Justice ("DOJ") waited seven months and then told CREW that because every document was privileged, CREW was not entitled to a fee waiver. DOJ repeated this claim in response to queries from the Court about the necessity for discovery. Discovery would be fruitless, DOJ claimed, because every responsive document is exempt and not producible to CREW. *See*, *e.g.*, Transcript of February 9, 2006 Hearing at 15, 16-17 (attached to CREW's Motion for Discovery as Exhibit B).

In short, we are engaged in side issues on discovery precisely because DOJ has refused to produce any documents to CREW and has taken the sweeping and unsubstantiated position that

the entire universe of responsive documents is exempt.  The breadth of the government's

position coupled with its failure to explain its seven months of inaction appropriately led the

Court to authorize discovery on the issue of the government's bad faith.

Now DOJ argues that the Court need not consider the fruits of that discovery, beyond

accepting DOJ's decidedly abbreviated and lop-sided view of what discovery has shown to date.

From this, DOJ asks the Court to leapfrog over the issue of DOJ's bad faith and proceed directly

to the question of whether CREW is entitled to a fee waiver under the FOIA.  DOJ's eagerness to

avoid a full accounting of its handling of CREW's FOIA requests is understandable.  While any

consideration of the merits of the discovery is premature, under the most generous interpretation

of what it has yielded DOJ was grossly negligent at multiple levels in its handling of CREW's

two FOIA requests, and made it representations to this Court that are both factually incorrect and

misleading.[1]

Discovery has also raised more serious questions, however, about the veracity of a

government deponent, and it is these questions that CREW seeks to answer more fully.  As

CREW demonstrated in its opening brief, the unduly stringent parameters Judge Kay placed on

---

[1] For example, even though it was Mr. McCallum's decision that was at the heart of
CREW's FOIA request, Mr. McCallum had no specific recollection of the FOIA.  *See*, *e,g*.,
McCallum Depo. at 50.  Nor did he recall anyone within DOJ asking him to identify any
potentially responsive documents he may have had.  Id.  Similarly, Stephen Brody, former
Deputy Director and current Acting Director of the tobacco litigation team, testified that he had
no role within DOJ in processing CREW's FOIA request,  Brody Depo. at 30, and was not even
aware of CREW's FOIA requests until "probably October or November of 2005."  Id. at 27.  Mr.
Metcalfe testified that even though he was the decision-maker on CREW's appeal from the Civil
Division's initial decision to deny CREW's request for a fee waiver, he had no recollection of
being aware that CREW's request was expedited until January of 2006.  Metcalfe Depo. at 27.
In other words, at every level DOJ displayed a callous disregard for its statutory obligations
under the FOIA.  For the Court's convenience, these excerpts from the deposition transcripts are
attached as Exhibit A.

the scope of CREW's inquiry of Mr. McCallum deprived CREW and this Court of a full record

on the issue of Mr. McCallum's veracity and the veracity of the government's claims in

defending its seven-month delay.  CREW accordingly seeks targeted and limited additional

discovery to address these issues.[2]

### 1.  CREW Should Be Afforded An Opportunity To Ask Mr. McCallum Additional Questions That Bear Directly On His Veracity.

Contrary to DOJ's claims, CREW is not seeking to question Mr. McCallum about "the

underlying tobacco litigation,"[3] "the credibility of his assertions about what is in his files,"[4] or

"any other decision or statement that plaintiff deems objectionable."  Id.  Rather, CREW seeks to

question Mr. McCallum on a very limited universe of topics, specifically relating to the contents

of McCallum Exhibits 2 and 3.  There is no question that Judge Kay precluded CREW from

asking Mr. McCallum about these documents, and DOJ's suggestion to the contrary (D's Oppos.

at 7) rests on a ruling that Judge Kay made with respect to the deposition of Mr. Brody, not Mr.

McCallum.  As outlined in Plaintiff's Opposition to Defendant's Motion for a Protective/Sealing

Order and Return of Federal

---

[2] DOJ claims that contrary to CREW's count of having consumed four hours and five minutes of the five hours this Court allotted for discovery, CREW actually consumed four hours and 59 minutes.  D's Oppos. at 3 n.3.  As support, DOJ points to what it claims the transcripts show.  Id.  DOJ, however, ignores Judge Kay's ruling during the June 14, 2006 discussion with counsel (a ruling he repeated during Mr. McCallum's deposition) that only the time spent during the questioning and answering of witnesses counts in determining the amount of time CREW has consumed.  As the declaration of Daniel C. Roth attests (attached as Exhibit B), CREW took great pains to ensure an accurate representation to this Court.  DOJ, by contrast, has not provided the kind of calculations that would establish an accurate count, relying instead on nothing more than the transcripts themselves.

[3] Defendant's Opposition to Plaintiff's Motion for Reconsideration of Order of Judge Kay Limiting Scope of Examination and Motions to Compel ("D's Oppos.") at 5.

[4] Id. at 6.

Documents, ("P's Oppos."), there is a clear conflict between Mr. McCallum's deposition testimony in this matter and his written responses to questions from the Senate Foreign Relations Committee.

DOJ's only response to this conflict is to suggest that it does not exist because the Senate Foreign Relations Committee never reached such a conclusion. D's Oppos. at 8. This is nonsensical. The Senate Foreign Relations Committee was never presented with Mr. McCallum's deposition testimony. Even more to the point, that Committee has never opined one way or the other on Mr. McCallum's veracity in responding to written questions from its members.

DOJ also suggests that CREW is relying on the beliefs of Sharon Eubanks, currently an employee of CREW and formerly the Director of DOJ's tobacco litigation team, for evidence of this conflict. D's Oppos. at 8. To the contrary, as outlined in significant detail in P's Oppos., CREW is relying on extrinsic documentary evidence that includes the documents under seal and Mr. McCallum's initial and clarifying responses to written questions from Senator Joseph Biden, Ranking Member of the Senate Foreign Relations Committee.

DOJ also contests the significance of sealed McCallum Exhibit 3, arguing that the declaration of Marshall Jarrett "corroborate[s] Mr. McCallum's testimony that the two did not speak." D's Oppos. at 8. Mr. Jarrett did not attest that the two never spoke. Rather, he said "[t]he Associate Attorney General, Robert McCallum, has taken no part in supervising or directing OPR's investigation in this matter." Declaration of H. Marshall Jarrett at ¶9, submitted in support of Defendant's Opposition to Plaintiff's Motion for Discovery. Mr. McCallum, however, went further in response to a question from Senator Biden, by stating "I had no contact

4

with Marshall Jarrett regarding the OPR investigation."  Questions for the Record Submitted to

Ambassador-Designate Robert McCallum at 22 (Exhibit E to P's Oppos.).  At a minimum,

CREW should be entitled to explore the discrepancies raised by the contents of McCallum

Exhibit 3 and Mr. McCallum's response to the Senate Foreign Relations Committee.  Even if

Mr. McCallum did not follow-up on his promise to call Mr. Jarrett, the fact that the third-highest

ranking official at the Department of Justice held himself out to a subordinate as having the

authority to direct any aspect of the OPR investigation is relevant on the issue of Mr.

McCallum's truthfulness in the proceedings before this Court.[5]

DOJ also disputes CREW's entitlement to ascertain the universe of documents responsive

to CREW's FOIA request.  D's Oppos. at 7.  This argument overlooks the fact that DOJ has

attempted to explain the inordinate delay here by the large universe of responsive documents – a

universe DOJ has suggested constitutes many millions of pages, all of which are privileged.  The

veracity of DOJ's assertions in this regard are very much at issue, especially because DOJ has

never given either CREW or the Court any kind of precise count or accounting of what those

documents are.  CREW should therefore be permitted to explore this issue with limited questions

of witnesses such as Mr. McCallum, who have responsive documents and who can attest to their

volume and general nature

In sum, CREW's attempt to get seek limited additional discovery is by no means a wild

goose chase.  CREW has specific extrinsic evidence that in at least a few instances on key issues

---

[5] DOJ argues that Judge Kay properly limited CREW's questioning to first-hand knowledge.  D's Oppos. at 7.  As CREW explained in its opening brief, this ruling conflicts with Rule 26(b), which defines the scope of relevant discovery as follows: "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed.R.Civ.P. 26(b)(1).

Mr. McCallum may not have testified truthfully. CREW also seeks to probe facts that go to the government's own defense of its inaction, namely the privileged nature and vast volume of documents the agency has in response to CREW's FOIA requests. Permitting CREW to seek limited discovery beyond the unduly constricted limitations established by Judge Kay will assist this Court in answering the pending question of whether DOJ acted in bad faith.

**2. The Conduct of Mr. Brody's Private Counsel Did Not Conform With Rule 30(d) of the Federal Rules of Civil Procedure**.

DOJ takes issue with CREW's characterization of the conduct of Mr. Brody's private counsel, arguing that the information CREW was seeking was outside the scope of permissible discovery (D's Oppos. at 9) and, in any event, his counsel never instructed Mr. Brody not to answer CREW's questions (id. at 11). What DOJ fails to address, however, is that Rule 30(d) requires that "[a]ny objection during a deposition must be stated concisely and in a non-argumentative *and non-suggestive manner*." (emphasis added). Under any fair reading of the deposition transcript, the manner in which Mr. Brody's counsel articulated objections does not conform to this standard.

Indeed, CREW has provided the Court with the full transcript because the instances in which his counsel virtually testified for the deponent were so numerous. CREW stands by that transcript which, CREW submits, is proof enough of counsel's improper and obstructionist conduct. Because CREW was precluded from obtaining the full testimony of the deponent, CREW seeks the opportunity to submit a limited number of written questions to Mr. Brody.

**3. DOJ Has Failed To Demonstrate That Its Counsel Did Not Have An Improper, Off-the-Record Conference With Mr. Metcalfe.**

In its opening brief CREW set forth the bases for its claim that DOJ's counsel improperly

conferred with Mr. Metcalfe before conducting her cross-examination. They include the fact
that counsel and the deponent conferred privately for at least five minutes before the cross-
examination began, during which counsel had a list of prepared questions in hand. In response,
DOJ claims the right of its counsel to "confer with her client regarding the implications of Judge
Kay's ruling." D's Oppos. at 12.

But what DOJ has not explained is what those "implications" could possibly be, beyond
the substance of Mr. Metcalfe's upcoming cross-examination. The ruling in question limited
DOJ to seven questions. Thus, the only logical inference from what DOJ is now claiming is that
DOJ was conferring with the deponent to determine which of the seven out of 19 prepared
questions (to which Mr. Metcalfe undoubtedly had prepared answers) counsel would ask. This is
nothing short of prohibited coaching. *See* United States v. Philip Morris, Inc., 212 F.R.D. 418,
420 (D.D.C. 2002).

The reason for this prohibition is clear – under Rule 30(c), cross-examination, like direct
examination, is to proceed "as permitted at trial." Just as counsel would be prohibited from
mapping out with her witness his cross-examination at trial, so too is she prohibited from
mapping out his cross-examination during his deposition. Counsel's conduct appears to have run
afoul of this prohibition.

Tellingly, DOJ has not offered an explanation of what its counsel and the deponent did
discuss during the break, and relies instead on the absence of proof that the discussions
concerned the substance of his upcoming cross-examination. D's Oppos. at 12. But apart from
questioning the deponent on re-direct about the substance of these discussions – something
CREW attempted but was blocked by assertions of privilege – CREW has no way to ascertain

7

what the two discussed. Where, as here, there are external indicia that the discussion was improper and DOJ has failed to rebut that evidence, the Court should properly conclude that counsel's conduct violated Rule 30(c) of the Federal Rules of Civil Procedure.

As appropriate relief, CREW has requested that the cross-examination be stricken from the record. DOJ argues in response, as it did during the deposition, that CREW "does not want this Court to hear truthful and relevant information" on an issue that DOJ characterized repeatedly as irrelevant, but now calls "the root issue of this discovery." D's Oppos. at 12. CREW's objections go not to substance, but place. The Court should not countenance DOJ's use of the deposition forum to sandbag the plaintiff and, more seriously, the Court, with allegations that the Court's statistical analysis was based on incorrect numbers (Metcalfe Depo. at 71), incorrect time periods (id. at 72), and an apples to oranges comparison (id. at 74),[6] when the government failed to take advantage of its multiple opportunities to address this issue in a more appropriate venue.[7]

That this is not the appropriate venue to discuss these statistics is made all the more evident by the selective and misleading nature of the testimony DOJ elicited from Mr. Metcalfe. For example, to highlight a supposed error of the Court, counsel and Mr. Metcalfe focused on the disparity between the time it took the Civil Division to act on CREW's request for a fee waiver, which Mr. Metcalfe identified as six days, and the "201 or 210 days in the opinion."

---

[6] The full cross-examination of Mr. Metcalfe is attached as Exhibit C.

[7] Having failed to address the statistics during the briefing on the merits of CREW's request for discovery, apparently based on a strategic decision to call the statistics "irrelevant," and having failed to seek reconsideration of the Court's Memorandum Opinion and Order of June 1, 2006, it is especially inappropriate for DOJ to use the deposition forum as a vehicle to attack the factual sufficiency of the Court's findings.

Metcalfe Depo. at 74. The Opinion's statistics on which this question is based, however, deal with "processing expedited FOIA requests," (Opinion at 12) not deciding fee waiver requests. In other words, DOJ's question and answer conflate two separate inquiries. Moreover, DOJ's question takes advantage of an apparent typographical error in the Court's Opinion referring to the time it took OIP to deny CREW's fee waiver request as the time it took the Civil Division to deny a similar request. Id.

Similarly, in trying to place the conduct of DOJ's Office of Information and Privacy ("OIP") within the median time OIP processed other requests over a period of five years, Mr. Metcalfe overlooked years when the average time was significantly lower than the time period presented here. For example, Mr. Metcalfe testified: "I see numbers as low as 42, I see numbers as high as 148, 136, 128, so it does appear to me that, yes, that number 136 . . . is indeed within that range." Metcalfe Depo. at 73. What Mr. Metcalfe apparently did not see was numbers as low as 9 and 12 that, when averaged with the other numbers, yield an average median response time for the three senior leadership offices of 73 days. Whether one compares that number to the 136 days that DOJ now characterizes as the correct response time, or the 163 days that the Court used, one thing is clear: OIP's processing of CREW's FOIA request significantly exceeds the median response time of recent years.

## CONCLUSION

CREW is not seeking to continue the discovery process indefinitely. Rather, CREW seeks the opportunity to ask Mr. McCallum additional, targeted questions on topics that were precluded by Judge Kay's Order, but which relate to clearly relevant issues, namely the deponent's veracity and the truthfulness of DOJ's representations about the reason for the delay

in processing CREW's requests.  For the foregoing reasons and those set forth in CREW's

opening brief, CREW's motion for reconsideration and to compel should be granted.


Respectfully submitted,


___/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and
  Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Fax: (202) 588-5020

Attorneys for Plaintiff


Dated:  July 27, 2006