**EXHIBIT A**

# Capital Reporting Company

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
------------------------------:
CITIZENS FOR RESPONSIBILITY     :
AND ETHICS IN WASHINGTON,       :
                                :
     Plaintiff,                 :
                                :
        v.                      :   Case No.:
                                :   05-2078(EGS)
UNITED STATES                   :
DEPARTMENT OF JUSTICE           :
                                :
     Defendant.                 :
                                :
------------------------------:
```

Washington, D.C.
July 18th, 2006

Videotaped Deposition of:

ROBERT D. MCCALLUM, JR.,

Called for oral examination by counsel for

Plaintiff, pursuant to notice, at the District of

Columbia District Court, 333 Constitution Avenue,

N.W., Washington, D.C., beginning at 10:40 a.m,

before Teague Gibson of Capital Reporting, a Notary

Public.

\*    \*    \*    \*    \*

815e5731-183e-45df-806a-7acaf0961f09

Capital Reporting Company

Page 50

1   understood it's about the tobacco litigation.

2        Q    And did you understand that documents that

3   you might have could be responsive to this request?

4        A    I did not -- better way to say it is I

5   don't have any recollection of a specific request

6   and therefore knowing that my documents would have

7   been involved in it but it was my general

8   understanding certainly that my, you know, documents

9   would be involved in such a FOIA request.

10       Q    And did anyone within the Department of

11  Justice ask you to identify documents in your

12  possession that might be potentially responsive to

13  this request?

14       A    I don't recall anyone specifically asking

15  me to do that.  But I'm sure that occurred.

16       Q    And would that request come to you

17  directly?

18       A    I don't know or through somebody on my

19  staff at the Department of Justice.  I have no

20  recollection one way or the other.

21       Q    And do you have any recollection of making

22  any of your documents available for someone within

815e5731-183e-45df-806a-7acaf0961f09

Capital Reporting Company

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
------------------------------:
CITIZENS FOR RESPONSIBILITY   :
AND ETHICS IN WASHINGTON,     :
                              :
     Plaintiff,               :
                              :
     v.                       :  Case No.:
                              :  05-2078(EGS)
UNITED STATES                 :
DEPARTMENT OF JUSTICE         :
                              :
     Defendant.               :
                              :
------------------------------:
```

Washington, D.C.
July 19th, 2006

Deposition of:

STEPHEN BRODY,

Called for oral examination by counsel for

Plaintiff, pursuant to notice, at the offices of

Citizens for Responsibility and Ethics in

Washington, 1400 Eye Street, N.W., Suite 450,

Washington, D.C. beginning at 10:45 a.m, before

Teague Gibson of Capital Reporting, a Notary Public.


                *   *   *   *   *

f210b145-bab2-4e11-9932-5f71344e5e0b

1      A    Yes.

2      Q    And when did you first become aware that

3  CREW had filed those requests?

4      A    First time I was really aware of it was

5  probably October or November of 2005.

6      Q    And so at that time were you aware that

7  the Department was also in litigation with CREW

8  concerning the FOIA requests?

9      A    Yes.

10     Q    Prior to that period of time were you ever

11  asked by anyone to review documents to see whether

12  they would be responsive to CREW's FOIA request?

13     A    No.

14     Q    So I don't want to misstate your

15  testimony, I want to make sure I'm clear though, is

16  it your best recollection that you didn't have any

17  knowledge of the FOIA requests until CREW was

18  already in litigation with the Department?

19     A    Correct.  To be completely accurate, it's

20  possible that I may have seen the FOIA request when

21  it came in but there were a lot of FOIA requests at

22  that time and if I saw it it would have just been

f210b145-bab2-4e11-9932-5f71344e5e0b

Capital Reporting Company

1      Q     Is it your testimony that you have had no

2   role within the Department in processing CREW's FOIA

3   request?

4      A     That's correct.

5      Q     Have you had a role in the litigation and

6   the Department's defense of the litigation?

7      A     Yes.

8      Q     And please describe for me what that role

9   was?

10     A     Without describing the substance of

11  anything, my role has merely been answering

12  questions that Lisa Olson has had along the way to

13  assist her with the defense of the lawsuit.

14     Q     Were you ever tasked with putting together

15  documents, a representative sampling of documents,

16  from the body of documents that were potentially

17  responsive to CREW's FOIA request?

18     A     At one point in time --

19  MR. WEINBERG:  Why don't you answer this

20  question in terms of what you did without getting

21  into any conversations that you had.

22     A     Sure.  See if I can answer it this way.

f210b145-bab2-4e11-9932-5f71344e5e0b

# Capital Reporting Company

                    UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF COLUMBIA


         ------------------------------:
         CITIZENS FOR RESPONSIBILITY    :
         AND ETHICS IN WASHINGTON,      :
                                        :
              Plaintiff,                :
                                        :
              v.                        :   Case No.:
                                        :   05-2078(EGS)
         UNITED STATES                  :
         DEPARTMENT OF JUSTICE          :
                                        :
              Defendant.                :
                                        :
         ------------------------------:

                         Washington, D.C.
                         July 19th, 2006


         Deposition of:

                    DANIEL METCALFE,

              Called for oral examination by counsel for

         Plaintiff, pursuant to notice, at the offices of

         Citizens for Responsibility and Ethics in

         Washington, 1400 Eye Street, N.W., Suite 450,

         Washington, D.C. beginning at 3:30 p.m, before

         Teague Gibson of Capital Reporting, a Notary Public.



                    *   *   *   *   *

6bd7358f-adab-4f81-a960-d722e1b0d79b

Capital Reporting Company

1    appeal aspect of the Civil Division FOIA request.

2         Q    Who was that discussion with?

3         A    Janice McCloud.

4         Q    Was she the senior attorney that was

5    assigned to handle the appeal?

6         A    Yes.

7         Q    Were you aware that the requests had been

8    expedited?

9         A    You're asking was I aware.  You said were

10   you aware.

11        Q    Are you aware?

12        A    At what point in time?

13        Q    When did you -- were you aware that they

14   had been expedited?

15        A    Yes, I'm aware of that today, yes.

16        Q    And when did you become aware that the

17   Civil Division request had been expedited?

18        A    Sitting here today I have no recollection

19   of becoming aware of that prior to January of this

20   year when I acted upon or approximately the time I

21   acted upon the appeal from the denial of the fee

22   waiver request made to the Civil Division.

6bd7358f-adab-4f81-a960-d722e1b0d79b

**EXHIBIT B**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND    :
ETHICS IN WASHINGTON    :
    :
    Plaintiff,    :
    :
    v.    :    Civil Action No. 05-2078 (EGS)
    :
U.S. DEPARTMENT OF JUSTICE    :
    :
    Defendant.    :
    :

### DECLARATION OF DANIEL C. ROTH

I, Daniel C. Roth, hereby declare as follows:

1. I serve as Counsel at Citizens for Responsibility and Ethics in Washington ("CREW"), the plaintiff in the above-captioned case. For the depositions of Robert McCallum, Jr., Stephen Brody, and Daniel Metcalfe taken on July 18 and July 19, 2006, I was tasked with producing an accurate record of the time consumed by CREW, pursuant to the instructions issued by Judge Kay during a meeting with the parties on June 1, 2006, which I attended.

2. For the deposition of Mr. McCallum, CREW Chief Counsel, Anne Weismann, and I reviewed and marked the deposition transcript for objections that extended well beyond a concisely-stated objection or other instances, such as prolonged exchanges between counsel, constituting breaks in the questioning of Mr. McCallum. CREW staff then undertook two timed reviews of the video record, excluding time that had been marked on the transcript by CREW counsel. By this count, Mr. McCallum's deposition consumed 115 minutes, to which I added five minutes as a cushion of fairness, for a total of 120 minutes.

3. Because the depositions of Messrs. Brody and Metcalfe were recorded by stenographic

means, and because the stenographic transcript is not time-stamped at regular intervals that would be informative on the issue of time consumed, I kept track of the time expended on all extended speaking objections, conferences, and other time spent off-the-record with a watch that included a second hand. These excisions from the total time spent on the record totaled 30 minutes for the deposition of Mr. Brody (adding breaks of 3, 4, 3, 1, 1, 4, .5, .5, 1, 5, 1, 3.5, and 2.5 minutes) and 12 minutes (adding breaks of 6, 2, and 4 minutes) for the deposition of Mr. Metcalfe. In several instances I rounded down to the nearest minute or half-minute, but never did I round up. Subtracting these excisions from the total time spent on-the-record – 85 minutes in the case of Mr. Brody, 80 in the case of Mr. Metcalfe (ending at 4:40 PM, when CREW's examination of Mr. Metcalfe concluded) – I reached the final calculations that Mr. Brody's deposition consumed 55 minutes, and Mr. Metcalfe's 68 minutes.

4. Adding 120, 55, and 68, plus another two minutes to ensure fairness and the clarity of a round number, I submitted to Ms. Weismann the figure of 245 minutes, or four hours and five minutes, consumed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _July 26, 2006_

_____
DANIEL C. ROTH

**EXHIBIT C**

## Capital Reporting Company

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
------------------------------:
CITIZENS FOR RESPONSIBILITY    :
AND ETHICS IN WASHINGTON,      :
                               :
      Plaintiff,               :
                               :
      v.                       :   Case No.:
                               :   05-2078(EGS)
UNITED STATES                  :
DEPARTMENT OF JUSTICE          :
                               :
      Defendant.               :
                               :
------------------------------:
```

Washington, D.C.
July 19th, 2006

Deposition of:

DANIEL METCALFE,

Called for oral examination by counsel for

Plaintiff, pursuant to notice, at the offices of

Citizens for Responsibility and Ethics in

Washington, 1400 Eye Street, N.W., Suite 450,

Washington, D.C. beginning at 3:30 p.m, before

Teague Gibson of Capital Reporting, a Notary Public.


*    *    *    *    *

6bd7358f-adab-4f81-a960-d722e1b0d79b

Capital Reporting Company

Page 70

1  processing of the FOIA cases so I think it does

2  encompass some degree of an acknowledgment by Judge

3  Sullivan that he viewed the statistics and was

4  somewhat critical of the Department.  So I'm going

5  to permit you to ask those seven questions and

6  hopefully it'll be brief.  Counsel, get it over and

7  done with and go on.

8      MS. WEISMANN:  We may have redirect?

9      JUDGE KAY:  The answer is yes, on those

10  questions.

11      MS. WEISMANN:  Yes, of course.

12      JUDGE KAY:  Okay.  Thank you, Counsel.

13      MS. WEISMANN:  Thank you.

14      MS. OLSON:  Thank you.  Take a couple minutes

15  break, if that's okay.

16                  (Off the record)

17      MS. WEISMANN:  I'd like the record to reflect

18  that counsel and the witness just had at least a

19  five minute conversation in which they had questions

20  with them and it appeared that they were consulting

21  over the content of those questions.

22      MS. OLSON:  That's your perception of the

6bd7358f-adab-4f81-a960-d722e1b0d79b

Page 71

1    situation, Ms. Weismann, and I'm not going to

2    comment on it.

3    BY MS. OLSON:

4        Q    Mr. Metcalfe, I want to you look at what

5    we were looking at on page 12 at the bottom where it

6    says the plaintiff's fee waiver request to the Civil

7    Division was denied 201 days after its FOIA request

8    was granted expedited processing and 210 days after

9    its initial FOIA request was submitted.  Are the

10   courts numbers correct?

11       A    No, no, I believe the court's numbers are

12   incorrect in that putting aside the difference

13   between 201 and 210 these numbers appear to conflate

14   together.  Actually the initial request level with

15   action at the administrative appeal level which are

16   indeed two separate stages of action and when it

17   comes to two statistics are treated entirely

18   different.  By that I mean to say only the initial

19   request level activity is reflected in the annual

20   FOIA report that is cited in footnote 8, whereas

21   administrative appeal activity is not so treated or

22   reflected in the annual report.

Capital Reporting Company

Page 72

1        Q    If you please look at the sentence that

2   contains footnote 13.  The court says plaintiff's

3   fee waiver request to OIP was denied 206 days after

4   its initial request was submitted.  Is the time

5   period in footnote 13 on which he basis his

6   calculation correct?

7        A    No, it is incorrect because the phrase 206

8   days is presented as if those are working days or

9   business days is the phrasing of that as opposed to

10  calendar days.  And under the reporting requirements

11  and the reporting regime established by Congress

12  Subsection E of the Act through the 1996 amendments

13  all reporting and accounting statistics are based

14  upon working days, so that therefore if one were to

15  look at calendar days and present a number that

16  would be accurate with respect to calendar days that

17  would not be accurate with respect to working days

18  and one would be left with, to put it in common

19  parlance, an apples and oranges situation.

20       Q    Given the time period for OIP's request is

21  July 1st, 2005 to January 19th, 2006, what is the

22  number that correctly would be reported by the

6bd7358f-adab-4f81-a960-d722e1b0d79b

Capital Reporting Company

Page 73

1    agency in its statistics in the way those statistics

2    are required to be reported?

3         A    I can answer that question by first noting

4    that I believe there was a slight error in that the

5    court was counting as of the date of the action on

6    the expedited processing whereas it should have been

7    counting as of the date of the request for expedited

8    processing, by that I mean to say the date it was

9    received by the Agency which I believe was July 1st,

10    2005.  And if one were to count working days as the

11    statistics are in fact counted under the statute

12    scheme from July 1st, 2005 to January 19th, 2006 I

13    believe one would reach the number of 136 and it is

14    the number of 136 that would create an apples and

15    apples comparison with the numbers that appear in

16    footnote 8 as opposed to an apples and oranges

17    comparison which one is left with on the face of the

18    court's opinion.

19         Q    Is that 136 within the range of numbers in

20    the statistics in footnote 8?

21         A    I'm looking now at the range of numbers

22    appearing in footnote 8 and I see numbers as low as

Capital Reporting Company

Page 74

1    42, I see numbers as high as 148, 136 and 134, 128,

2    so it does appear to me that, yes, that number 136

3    again reflecting the working days so that we're

4    talking about apples and apples not oranges and

5    apples is indeed within that range.

6         Q    Going back to the Civil request that the

7    opinion discusses at the bottom of page 12, assuming

8    that CREW's FOIA request to Civil was opened on June

9    28th, 2005 and action was taken on the fee waiver

10   part of CREW's request on July 7th, 2005, what would

11   be the number of days used in the annual report to

12   record that request in its statistics as opposed to

13   the 201 or 210 days in the opinion?

14        A    Given the dates you just read to me I

15   think the answer would be nine calendar days, but

16   six working days with the 4th of July holiday being

17   there and that the number six is what would appear

18   properly in the annual report.  Specifically the

19   number of working or business days between the date

20   that the request was received by the component and

21   the date that the action was taken.

22        MS. OLSON:  No more questions.

6bd7358f-adab-4f81-a960-d722e1b0d79b

Capital Reporting Company

Page 75

1    BY MS. WEISMANN:

2         Q    During the break that you took your

3    counsel before we resumed the redirect did you

4    discuss any of the contents of your testimony with

5    your counsel?

6         MS. OLSON:  I object to that, of course he

7    discussed the contents of his testimony, I'm his

8    lawyer.

9         Q    I'm talking about the contents of the

10   testimony you just gave?

11        MS. OLSON:  I object.  Any discussions that we

12   had are attorney/client privilege.

13        Q    I'm entitled to ask the questions.  And

14   prior to coming here today did you discuss with your

15   counsel these precise questions that you would be --

16   that she would ask you?

17        MS. OLSON:  I object, attorney/client work

18   product.

19        Q    And are you aware that these statistics --

20   that the statistics on which Judge Sullivan relied

21   for his opinion were presented to the court based on

22   OIP's own annual statistics?  Are you aware of that?

6bd7358f-adab-4f81-a960-d722e1b0d79b

Capital Reporting Company

Page 76

1        A    Ms. Weismann, let me make sure I

2   understand your question.  I'm going to give you my

3   understanding of it, please tell me if I have it

4   correct or incorrect.  Are you asking me whether I'm

5   aware that the statistics that are in footnote 8 are

6   derived from the annual FOIA report?

7        Q    No.

8        A    I believe I answered that question or said

9   so.

10       Q    I'm asking whether you're aware that CREW

11   in its briefing on this issue submitted statistics

12   that CREW got directly from the annual statistics

13   that OIP presents to Congress?

14       MS. OLSON:  If he can answer that question.

15       A    I think I can.

16       Q    Have you read the pleading in the case,

17   that's the representation that was made.  I'm

18   talking about the briefing.  Have you read the brief

19   that we filed?

20       A    Yes, I definitely did.

21       Q    You're aware that we put in certain

22   statistics in our brief?

Capital Reporting Company

Page 77

1      A    I am aware having read the brief that

2   there are statistics in your brief, yes.

3      Q    Are you aware that Justice Department had

4   numerous opportunities to respond to this?

5      MS. OLSON:  I object, this is so outside the

6   issue.

7      MS. SLOAN:  You want to call Judge Kay, let's

8   call him.

9      MS. WEISMANN:  I don't think we need to call

10  him.

11     MS. OLSON:  It's outside the scope of the

12  order.  The order concerns delay in processing.

13     MS. SLOAN:  Not outside the scope of your

14  re-direct.

15     MS. OLSON:  You'll have to speak.

16     MS. WEISMANN:  Are you going to direct him not

17  to answer?

18     MS. OLSON:  It's outside the scope of the

19  order.  You're asking him what we did in litigation

20  and I know if you want to try to con Judge Sullivan

21  into some sort of a side track, that's fine.  It's

22  like -- this is so beside the point that I'd be

6bd7358f-adab-4f81-a960-d722e1b0d79b

## Capital Reporting Company

1    happy if you want to take it up.  Our questions

2    concerned the delays in the processing which are

3    discussed in this order and if you want -- the

4    question you are now asking are what we did in this

5    litigation in the briefs.  Mr. Metcalfe is a fact

6    witness.  If you want to ask him about the

7    statistics he's very happy to answer those questions

8    but you're asking him about a privileged

9    attorney/client and work product communication.

10       MS. WEISMANN:  Are you finished with your

11   objection?

12       MS. OLSON:  Yes, but I'm directing him not to

13   answer because you're asking him for privileged

14   information as well as information that's outside

15   the scope of the order.

16       MS. WEISMANN:  Just to be clear, it's your view

17   that it's privileged whether or not he was aware

18   that the Government had an opportunity to respond to

19   CREW's submission?

20       MS. OLSON:  That's outside the scope.  That

21   particular question is outside the scope of the

22   order allowing discovery in this case concerning

6bd7358f-adab-4f81-a960-d722e1b0d79b

Page 79

1   delays in FOIA processing.  So yes, under Rule 30

2   I'm instructing him not to answer.

3       Q    Was it your understanding when you came

4   here today, Mr. Metcalfe, that you would be

5   discussing statistics?

6       MS. OLSON:  Objection.  Again that calls for

7   privileged attorney/client communications.

8       MS. WEISMANN:  I'm asking for his

9   understanding, not the basis of his understanding.

10      MS. OLSON:  He would have no basis for any

11  understanding except what he and I discussed.

12      MS. WEISMANN:  So you're objecting?

13      MS. OLSON:  Yes, as attorney/client.

14      MS. WEISMANN:  And directing him not to answer?

15      MS. OLSON:  Yes.

16      MS. WEISMANN:  I want the record to reflect

17  since I think this is consist with the discussion we

18  had with Judge Kay who was not physically present

19  that counsel had a list of what she has identified

20  as 19 typed questions.

21      MS. OLSON:  And I'd like to state on the record

22  that opposing counsel, Ms. Weismann, has had

6bd7358f-adab-4f81-a960-d722e1b0d79b

## Capital Reporting Company

Page 80

1   probably 30 or 40 pages of typed questions

2   throughout these depositions as is the normal

3   practice of an attorney.

4        MS. WEISMANN:  We are done.

5            (Reading and signing was waived)

6        (5:20 p.m. the deposition was concluded)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

6bd7358f-adab-4f81-a960-d722e1b0d79b