**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
CITIZENS FOR RESPONSIBILITY AND )
AND ETHICS IN WASHINGTON       )
                               )
                Plaintiff,     )
                               )
          v.                   ) Civil Action No. 05-2078 (EGS)
                               )
                               )
U.S. DEPARTMENT OF JUSTICE,    )
                               )
                Defendant.     )
_____)
```

### Memorandum Opinion and Order

On June 1, 2006, the Court granted plaintiff Citizens for Responsibility and Ethics in Washington's ("CREW") motion for discovery, and permitted CREW to depose Robert McCallum, Associate Attorney General; Daniel Metcalfe, Director of the Office of Information and Privacy ("OIP"); Steve Brody; and James Kovakas[1]. The Court also requested Magistrate Judge Alan Kay to supervise the taking of these depositions and to resolve any issues that may arise. On July 17, 2006, Judge Kay granted defendant Department of Justice's ("DOJ") Motion for a Protective Order Regarding Depositions, and ordered CREW to show good cause why the videotaped deposition of Mr. McCallum should be made public. *See* Judge Kay's Order, July 17, 2006 (Doc. No. 21).

---

[1] Steve Brody and James Kovakas are involved in processing CREW's FOIA requests.

1

Pending before the Court are plaintiff's Motion for Reconsideration of Judge Kay's Order Granting Defendant's Motion for a Protective Order (Doc. No. 22); Defendant's Motion for a Protective Order and Return of Federal Documents (Doc. No. 32); and Plaintiff's Motion for Reconsideration of Judge Kay's Order Limiting the Scope of Examination (Doc. No. 31). A hearing on these pending motions was held on September 8, 2006. Upon careful consideration of the parties' respective motions, responses and replies thereto, their counsels' arguments at the hearing, and the entire record herein, the Court **GRANTS** plaintiff's Motion for Reconsideration of Judge Kay's Order Granting Defendant's Motion for a Protective Order (Doc. No. 22), **DENIES** Defendant's Motion for a Protective Order and Return of Federal Documents (Doc. No. 32), and **DENIES** Plaintiff's Motion for Reconsideration of Judge Kay's Order Limiting the Scope of Examination (Doc. No. 31).

**I.   Standard of Review**

A party may invoke Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.2 to seek reconsideration of a magistrate judge's determination in a discovery dispute. *See* Fed. R. Civ. P 72(a); L.Cv.R. 72.2. On review, the magistrate judge's decision is entitled to great deference and will be upheld unless it is found to be "clearly erroneous or contrary to law." *Boca Investerings Partnership v. U.S.*, 31 F. Supp. 2d 9, 11 (D.D.C.

1998). *See  Neuder v. Battelle Pacific Northwest Nat. Laboratory,* 194 F.R.D. 289, 292 (D.D.C. 2000) (the Court should affirm the magistrate judge's determination unless "on the entire evidence" the court "is left with the definite and firm conviction that a mistake has been committed.").

**II.  Plaintiff's Motion for Reconsideration of Judge Kay's Order Granting Defendant's Motion for a Protective Order**

CREW argues that Judge Kay's decision to limit use of Mr. McCallum's videotape deposition absent a showing of good cause by CREW is unsupported by either fact or law, and therefore, must be set aside.  In response, defendant argues that although it does not oppose written publication of the deposition, it does oppose public dissemination of the deposition videotape because Mr. McCallum's testimony may be distorted or used out of context to cause him annoyance or embarrassment.[2]

Federal Rule of Civil Procedure 26(c) provides that a Court may issue a protective order when, for good cause shown, the order is required by justice to protect the party from annoyance, embarrassment or oppression. Fed. R. Civ. P 26(c).  Under the Rule, the movant has the burden to show good cause for barring public dissemination of discovery materials. *Id*.  Accordingly, in this case, the defendant bears the burden to show good cause, not

---

[2] As an illustration, the defendant showed a clip from "The Daily Show," a popular comedic talk show, where comedian and host Jon Stewart poked fun at a top counterterrorism official's videotaped deposition statements.

the plaintiff.  Therefore, the Court respectfully disagrees with the opinion of Judge Kay when he placed the burden on CREW, the plaintiff.

Turning to the issue of whether the videotape of Mr. McCallum's deposition should be made available to the public, the Court finds that the defendant has not shown good cause to prevent public dissemination of the videotape.  At the motions hearing, the Court asked the defense counsel why the defendant opposed the public disclosure of the deposition videotape but not the deposition transcript when they are both easily susceptible to distortion and manipulation.  After all, Mr. McCallum's statements could be taken out of context and satirized to cause him annoyance or embarrassment both in print and via audiovisual media.  The defense counsel replied that a videotape is capable of engendering a "public spectacle," whereas a transcript would not.  In essence, the embarrassment or annoyance cited by the defendant is the deposition videotape's effectiveness as a tool for political satire.

Misrepresentation by the media through the use of sound bites is a recognized "Achilles' heel of videotaped depositions." *Condit v. Dunne*, 225 F.R.D. 113, 118 (S.D.N.Y. 2004). Regardless, courts have regularly permitted videotape depositions of public officials, and have refused to apply a protective order, particular when there is strong public interest in a case that

4

involves public officials and/or matters of public concern. *See Condit*, 225 F.R.D. at 116-18 (in a case where defendant accused a public official of wrongdoing, the court denied a motion for protective order barring public dissemination of a deposition videotape, stating that potential media misrepresentation of the deposition by use of sound bites does not alone warrant a protective order); *Flaherty v. Seroussi*, 209 F.R.D. 295 (N.D.N.Y. 2001) (although the plaintiff openly admitted that he wanted to use the deposition videotape to embarrass the mayor, the court denied a motion for protective order stating that some level of embarrassment or discomfort are not in and of itself sufficient to establish good cause, particularly in view of public interest in the conduct of public officials, which outweighs the minimal harms tendered to the deponent).

    This case involves issues of public interest.  In fact, the Court granted limited discovery because CREW raised legitimate questions about the conduct of a government agency concerning a matter of public interest.  The potential threat of annoyance and embarrassment alleged here to Mr. McCallum, a public official, does not rise to the level of good cause sufficient to justify barring public dissemination of the videotape.  Therefore, Judge Kay's July 17, 2006 Order is reversed in part, and CREW need not demonstrate good cause as to why the videotaped deposition of Mr.

McCallum should be made public prior to doing so.[3]

## II. Defendant's Motion for a Protective Order and Return of Federal Documents

Defendant requests that the Court prohibit CREW from further disseminating two sets of emails[4] that were generated between DOJ employees, that these emails be returned to DOJ, and that CREW explain how it acquired these government emails, which constitute government property.

During the motions' hearing, the defense counsel clearly stated that the government is not alleging that CREW unlawfully or inappropriately came into possession of these emails. In fact, the defense counsel stated that the government has no evidence that CREW misappropriated or stole these emails from the government. Further, defense counsel stated that the government

---

[3] Defendant cites to *Westmoreland v. CBS,* 584 F. Supp. 1206, 1213 (D.D.C. 1984) to argue that discovery should not be used as a vehicle for gathering information for use in venues and proceedings other than the pending suit. The Court is not persuaded that CREW, a non-profit organization whose purpose is to inform the public about governmental actions and proceedings, is trying to garner notoriety for itself or financial gain from the dissemination of the videotape. Therefore, the Court adopts CREW's reasons articulated in open court on September 8, 2006, and in its motion, *see* Pl.'s Mot. for Reconsideration of Judge Kay's Order Granting Def.'s Mot. for a Protective Order at 4-5, as to why *Westmoreland* is inapposite.

[4] The first set of emails contain successive drafts of an editorial circulated on June 8, 2005 among DOJ officials for comment. This set of emails are referred to as "McCallum Exhibit 2" by the parties. *See* Def.'s Mot. for a Protective Order and Return of Fed. Docs. at 3. The second email consists of a July 21, 2005 message from Sharon Eubanks to Stephen Brody. This email is referred to as "McCallum Exhibit 3." *Id*.

is not asserting any privilege over the emails.  She argued that invocation of privilege is unnecessary at this juncture because the government is trying to physically recover what is its property and was once in its possession, as opposed to trying to withhold any information from another.

Moreover, the defendant argues that DOJ never authorized the release of the emails in question to anyone and that until the July 20, 2006 *Associated Press* article, which mentioned the contents of McCallum Exhibit 2, these emails were never in the public domain. S*ee* Def.'s Mot. for a Protective Order and Return of Fed. Docs. at 5.  The defendant, however, acknowledged at the motions hearing that the Senate Foreign Relation Committee, as early as June 28, 2006, had access and possession of the McCallum Exhibit 2.  Senator Biden, the Ranking Member of the Senate Foreign Relation Committee, mentioned McCallum Exhibit 2 in a follow-up written question to Mr. McCallum during his confirmation process to be an Ambassador to Australia.

In view of the fact that the defendant has not demonstrated that the emails in question were improperly misappropriated from DOJ by the plaintiff and because the defendant is not claiming that the emails are privileged, the Court finds that the defendant has not offered legally cognizable justifications as to why the Court should compel CREW to return all copies of the

emails to DOJ.[5]  Further, contrary to the defendant's initial contention, the emails were already in the public domain prior to the publication of the *Associated Press* article and the deposition of Mr. McCallum.[6]  Accordingly, because there is no basis for compelling CREW to return the emails to DOJ or to enter a protective order as requested by the defendant, the Court vacates Magistrate Judge Kay's Order that prohibits further dissemination of the emails in questions pending ruling by this Court.  Further, the Court unseals McCallum Exhibits 2 and 3 and all portions of the deposition transcript that contain information from these emails.

### III. Plaintiff's Motion for Reconsideration of Judge Kay's Order Limiting the Scope of Examination

#### A. Mr. McCallum's Deposition

Plaintiff argues that Judge Kay's limitations on the scope

---

[5] The defendant argues that the Court has authority to order the return of the emails under Fed. R. Civ. P. 26(c) and the All Writs Act, 28 U.S.C. § 1651(a).  Defendant's requested relief is plainly not encompassed within the categories of relief expressly authorized by Rule 26(c), therefore, Rule 26(c) is inapplicable.  Further, the "remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002).  Mandamus is available only if: (1) the movant has a clear right to relief; (2) the movee has a clear duty to act; and (3) there is no other adequate remedy available to appellant. *Id*.  The defendant does not have a clear right to relief in this case and the plaintiff does not have a clear duty to act, therefore, the All Writs Act is not applicable.

[6] The Senate Foreign Relations Committee had possession of the McCallum 2 emails, and the defense counsel conceded at the motions hearing that DOJ has not asked that Committee to return those emails.

of Mr. McCallum's depositions precluded CREW from asking him questions that bear directly on his veracity.  Specifically, Judge Kay prohibited CREW from questioning Mr. McCallum on the contents of the McCallum Exhibits 2 and 3.

It is well settled that a party may not present extrinsic evidence to impeach a witness on collateral issues. *Patterson v. United States*, 580 A.2d 1319, 1322 (D.C. 1990). *See also U.S. v. Tarantino*, 846 F.2d 1384, 1409 (D.C. Cir. 1988).  Testimony is excludible on this ground if it would not have been admissible independently for any purpose other than contradiction. *Patterson*, 580 A.2d at 1322.  While certain types of testimony are allowed for impeachment, it is generally held that facts showing misconduct of the witness are collateral, and if denied on cross-examination cannot be proved to contradict. *Id*

Here, plaintiff would like to use McCallum Exhibit 2 to impeach Mr. McCallum on a collateral issue.  During his deposition, when Mr. McCallum denied any implication of wrongdoing, plaintiff wanted to use extrinsic evidence, the emails, to contradict his responses.[7]  The plaintiff shall not be

---

[7] In response to a written question of Senator Biden as to whether Mr. McCallum had discussed any aspect of the tobacco litigation, including any public statements or articles thereon, with any person working in the White House, Mr. McCallum responded that he "can not recall ever discussing any public statements or articles about the case with anyone at the White House." Questions for the Record Submitted to Ambassador-Designate Robert McCallum, Senate Foreign Relations Committee, June 19, 2006 at 21.

permitted to do this in view of the fact that the issue of whether Mr. McCallum's responses to the Senate Committee is wholly consistent with certain emails exchanged between other DOJ employees[8] is collateral to the primary issue before this Court,

---

Later, Senator Biden asked a follow-up question. He informed Mr. McCallum that the Committee had received a copy of internal DOJ emails about the drafting of an article which indicated that White House personnel had a role in editing the final text of the article. In view of the email, Senator Biden asked whether Mr. McCallum recall the involvement of the White House in the approval of this article and whether his position that no one at the White House ever tried to influence his decision in the tobacco litigation has been altered. Mr. McCallum responded in writing, "My answer remains the same relating to my public statements, specifically the op-ed piece below, in that I don't recall ever discussing it with anyone at the White House. Nor do I recall the involvement of the White House in the review or approval of this op-ed. Once my decision [about the remedies] was made and announced in the closing argument, I likely would have informed the White House of any op-ed to be published under my name so that the White House would be aware of it and have the opportunity to comment." *See* Robert McCallum Answer to SFRC Question, June 28, 2006.

During his deposition, plaintiff counsel's asked Mr. McCallum, in light of McCallum Exhibit 2, whether he felt the need to correct his written response to Senator Biden. He responded, "I sent back to them a clarification, not a correction, but a clarification based upon my understanding of what they had meant, what Senator Biden had meant, about public statements and articles to inform them that, yes, indeed, once I made the decision and I knew that there was going to be a firestorm of criticism and that I was going to be making public statements about it, I wanted to alert anyone that would have to deal with that political issue and that certainly included the White House." Not satisfied with that answer, plaintiff counsel requests that she be permitted to ask Mr. McCallum further questions using McCallum Exhibit 2. McCallum Deposition, July 18, 2006, at 42-43.

[8] In fact, Mr. McCallum was not even an active participant in these email exchanges. He did not initiate or respond to any of them. Rather, he was merely copied to these emails in the

10

namely whether the government acted in bad faith by delaying the processing of plaintiff's FOIA requests.

Further, despite plaintiff's argument that Mr. McCallum's answer at the deposition is indicative of him either not testifying truthfully in his deposition or failing to respond truthfully to Senator Biden, the Court finds that those are not the only reasonable conclusions.  Mr. McCallum's written statements to Senator Biden's questions and his answer in the deposition are not necessarily contradictory.  Mr. McCallum states that he does not recall speaking to the White House prior to his decision about the remedies, but that once he made the decision, he did speak with the White House.  Therefore, any value of reopening Mr. McCallum's deposition, as requested by the plaintiff, is outweighed by considerations of its relevance.[9]

### B.   Mr. Brody's Deposition

Plaintiff asserts that Mr. Brody's counsel, Robert Weinberg's speaking objections impeded CREW's fair examination of Mr. Brody, therefore, CREW should be permitted to serve Mr. Brody

---

"cc" line.

[9] Plaintiff also contends that Judge Kay deprived it of an opportunity to probe into Mr. McCallum's veracity by not permitting CREW to question Mr. McCallum about his role in general in the tobacco litigation, whether Mr. McCallum's files had notes from conversations with tobacco industry representatives, and about the content of McCallum Exhibit 3. The Court finds that the scope of the deposition was properly limited and affirms Judge Kay's decision not to permit questioning in the areas noted.

with written questions.  Having examined the deposition transcript, the Court concludes that plaintiff's opportunity to depose Mr. Brody was not unfairly impeded by the conduct of Mr. Weinberg, therefore, plaintiff's request that it be allowed to re-depose Mr. Brody by written questions is denied.

### C. Mr. Metcalfe's Deposition

Plaintiff alleges that defense counsel coached its witness, Mr. Metcalfe prior to his cross-examination, therefore, his cross-examination should be stricken from the record.  Plaintiff has presented no evidence to demonstrate that defendant counseled Mr. Metcalfe about the substance of his testimony during a short break between his direct testimony and cross-examination. Defense counsel concedes that she spoke with Mr. Metcalfe during the brief break, however, she asserts that nothing improper occurred.  Therefore, plaintiff's request is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby

**ORDERS** that plaintiff's Motion for Reconsideration of Judge Kay's Order Granting Defendant's Motion for a Protective Order (Doc. No. 22) is **GRANTED**; and it is

**FURTHER ORDERED** that Judge Kay's July 17, 2006 Order is reversed in part, and that CREW is not required to demonstrate good cause why the videotaped deposition of Mr. McCallum should be made public; and it is

**FURTHER ORDERED** that Defendant's Motion for a Protective Order and Return of Federal Documents (Doc. No.32) is **DENIED**; and it is

**FURTHER ORDERED** that the Court vacates Magistrate Judge Kay's Order that prohibits the dissemination of the video tape deposition and the emails, and the Court unseals McCallum Exhibits 2 and 3 and all portions of the deposition transcript that contain information from these emails; and it is

**FURTHER ORDERED** that Plaintiff's Motion for Reconsideration of Judge Kay's Order Limiting the Scope of Examination (Doc. No. 31) is **DENIED**; and it is

**FURTHER ORDERED** that the parties are to abide by the following briefing schedule:

(1) Parties' cross-motions for summary judgment on the issue of whether the government acted in bad faith in processing plaintiff's FOIA request are due no later than **November 10, 2006;** and

(2) Oppositions are due no later than **December 1, 2006.**

**IT IS SO ORDERED.**


**Signed:**   Emmet G. Sullivan
             United States District Judge
             October 5, 2006