UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) ) Plaintiff, ) ) v. ) ) U.S. DEPARTMENT OF JUSTICE, ) ) Defendant. ) ) | Civil Action No. 1:05-cv-02078 Judge: Emmet G. Sullivan |

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT REGARDING BAD FAITH ALLEGATIONS

INTRODUCTION

The processing of plaintiff's FOIA request has remained in a state of suspended animation while plaintiff pursued futile discovery which merely confirmed the good faith of the career officials who handled the request. Plaintiff's speculative allegations of bad faith were based exclusively on alleged delay, which is not, by itself, evidence of bad faith. In any event, discovery has shown that (1) there was no undue delay, since defendant's processing time actually fell within the median; and (2) there was no bad faith, since none of the accused officials were even involved in processing the request. In fact, plaintiff's discovery has been counter-productive: it has arrested their FOIA processing for longer than the alleged delay by defendant which purportedly justified discovery in the first place.

The Court has jurisdiction under FOIA solely to enjoin an agency from withholding records and to order the production of records improperly withheld. 5 U.S.C. § 552(a)(4)(B). FOIA neither provides for summary judgment regarding the issue of bad faith nor supplies any

legal standard to apply. This is because a finding of bad faith is just a means to an end, i.e., the production of documents, and the only proper remedy for a such finding is an order to locate, process, or produce documents.

Such a remedy in the present case would merely compel defendant to do what it has wanted to do all along. For the past nine months, defendant has stood ready and willing to proceed with the processing of plaintiff's FOIA request so that it could then produce all documents that are not exempt from disclosure. However, defendant's hands have been tied. Plaintiff has refused to pay necessary fees, without which defendant is not authorized to continue processing its FOIA request. Plaintiff has also avoided any adjudication of the fee waiver issue, which would have enabled the processing to move forward. Thus, nine months after plaintiff sought discovery, we have come full circle: even a finding of bad faith delay (for which there is not a shred of supporting evidence) can result only in an order directing defendant to continue with the processing of plaintiff's FOIA request -- action which defendant has wanted to take from the outset.

The Court should find that there was no bad faith in the processing of plaintiff's FOIA request, and it should set a briefing schedule on the fee waiver issue.

BACKGROUND

1.      Plaintiff's FOIA Request

Plaintiff's FOIA request, submitted on June 28, 2005, sought "any [and] all records . . . relating in any way to the government's proposed penalty in United States of America v. Phillip Morris, Inc.," from January 1, 2001, to the present. Complaint for Declaratory and Injunctive Relief ("Complaint") Exhibit ("Exh.") 13, 19 (Docket #1). This request encompassed

millions of documents (estimated at approximately 8-10 million) since virtually every document generated during this time frame would "relate to" the remedy phase. March 10, 2006 Declaration of James M. Kovakas ("Kovakas Dec.") ¶ 8; see also March 10, 2006 Declaration of Melanie Ann Pustay ("Pustay Dec.") ¶ 33.[1]  The request would include every draft pleading, research item, and internal communication concerning the filing of pleadings among approximately 35 attorneys and 200 staff members. Kovakas Dec. ¶ 8. It would also encompass materials containing substantive discussions regarding proposed remedies, materials relating to proposed penalties which are non-substantive or procedural, and internal departmental predecisional communications and communications from outside sources (i.e., the government's witnesses) prior to the government's formulation of a final position on remedies. Id.  The request was submitted both to the Civil Division and the Office of Information and Privacy ("OIP"). Complaint Exh. 13, 19.

In connection with its FOIA request to each component, plaintiff asked for two things. First, it sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(I), on grounds that plaintiff had a "compelling need" to disseminate the information to the public. Complaint Exh. 13 at 3; id. Exh. 19 at 2. Second, plaintiff asked for a waiver of the fees associated with processing documents responsive to its request pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), on grounds that the information revealed by defendant's responses would contribute to a better public understanding of government. Complaint Exh. 13 at 3; id. Exh. 19 at 3. Both the Civil Division and the Office of Information and Privacy responded promptly to plaintiff's FOIA

---

[1] These declarations were originally attached as exhibits to Defendant's Opposition to Plaintiff's Motion for Discovery (Docket #13).

requests.

2.   The Civil Division's Response

    a.   Granting of Expedition and Plaintiff's Failure to Narrow Request

On July 7, 2005, the Civil Division granted plaintiff's request for expedited processing. Complaint Exh. 20. However, it also notified plaintiff that due to "unusual circumstances," 5 U.S.C. § 552(a)(6)(B)(i), it could not process the request within the twenty working days specified by 5 U.S.C. § 552(a)(6)(A)(i). Complaint Exh. 20 at 2. Specifically, the response to this request encompassed a "large volume" of records. 5 U.S.C. § 552(a)(6)(B)(iii)(II); Complaint Exh. 20 at 2; Kovakas Dec. ¶ 3. Given the enormous number of responsive materials, the Civil Division urged plaintiff to "limit" the scope of the request to accelerate processing. Complaint Exhibit 20 at 2-3.

Between July 2005 and January 2006, plaintiff failed to follow the recommendation to narrow the scope of its request. See 5 U.S.C. § 552(a)(6)(B)(ii); id. § 552(a)(6)(C)(iii). Instead, plaintiff filed this lawsuit on October 24, 2005. The Complaint reached the desk of defendant's counsel in mid-November. Upon being advised that plaintiff's FOIA request, as originally phrased, encompassed 8-10 million documents, defendant's counsel took the initiative to contact plaintiff's counsel by telephone at the beginning of December to discuss the possibility of narrowing the scope of plaintiff's request. Over the next few weeks the parties discussed alternative language which would narrow the request without excluding any documents plaintiff wished to obtain. The parties reached an agreement on January 9, 2006, pursuant to which plaintiff narrowed its request to include:

    Documents dealing with the identification and selection of remedies sought by the

>   Department and any changes to particular remedies sought by the Department
>   from January 2005 onward, including records discussing, mentioning or referring
>   in any way to the government's decision to reduce the penalties it is seeking
>   against the tobacco industry from $130 billion to $10 billion or the government's
>   decision to offer testimony from any witness during the remedies phase of trial in
>   United States v. Philip Morris.

   b.    Denial of Fee Waiver and Plaintiff's Failure to Pay Fees

Faced with the prospect of processing an enormous number of documents responsive to plaintiff's June 28, 2005 FOIA request, the Civil Division was also presented with the question of who would bear the costs. The Civil Division denied plaintiff's request for a fee waiver on July 7, 2005. Complaint Exh. 20. It explained that, based on its preliminary search[2] for records responsive to the request as required by 5 U.S.C. § 552(a)(4)(A)(iv)(II); see also id. § 552(a)(3)(D); 28 C.F.R. § 16.11(b)(8), the release of documents responsive to the FOIA request (excluding public source) would violate the deliberative process privilege and work product doctrine and interfere with law enforcement proceedings. Complaint Exh. 20 at 2; see 5 U.S.C. § 552(b)(5), (7)(A). Therefore, because it appeared that the documents could not be disclosed, they would not contribute to the "public understanding" of the operations and activities of the government, and no fee waiver was warranted. 5 U.S.C. § 552(a)(4)(A)(iii).

However, the Civil Division indicated to plaintiff on July 7, 2005, that processing of the request could in fact proceed if plaintiff were willing to pay the necessary fees. Complaint Exh. 20 at 2; see 28 C.F.R. § 16.11 (requiring commitment to pay fees and, if over $250, an advance payment of fees). It also advised that fees could later be waived if further processing uncovered documents that met the standards for a fee waiver. Even under the narrowed request agreed to on

---

[2] The term "search" means "to review . . . agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D).

January 9, 2006, plaintiff would be required to pay fees, because the processing of the responsive documents would require more than the two hours of free search time plaintiff had already been accorded. Kovakas Dec. ¶ 7; see 5 U.S.C. § 552(a)(4)(A)(iv)(II) (providing that no fee may be charged for the first two hours of search time or the first 100 pages of duplication). Therefore, after the Civil Division reached its decision on July 7, 2005, that a fee waiver was not warranted, no further processing of plaintiff's FOIA request was allowed until such fees, or an appropriate commitment to pay, were forthcoming. 5 U.S.C. § 552(a)(3). From July 2005 to the present, plaintiff has failed to provide a commitment or to pay any fees.

On July 11, 2005, plaintiff appealed the Civil Division's denial of the fee waiver to the Office of Information and Privacy, which handles fee waiver appeals from the decisions of other components. 28 C.F.R. § 16.9. OIP received this appeal on July 22 and acknowledged it on July 28, 2005. A career senior counsel was assigned to plaintiff's appeal in August 2005. Pustay Dec. ¶ 44. Upon review of background material obtained from the Civil Division in September, and in order to draft a response, the senior counsel had multiple substantive conversations with personnel in the Civil Division seeking clarification and additional information. Id. The senior counsel was actively working on a draft response in November and December, and had a final draft prepared by early January which was then reviewed. Id. During this time period the senior counsel's other responsibilities included supervising litigation, reviewing fee waiver appeals of other OIP staff members, working on approximately forty other pending administrative appeals, performing designated FOIA ombudsperson work and other duties including the drafting of letters, drafting appeal recommendations, and providing instruction in FOIA training programs. Id. ¶ 45. On January 23, 2006, OIP affirmed the denial by the Civil Division of plaintiff's

request for a fee waiver. Id. ¶ 46; Plaintiff's Motion for Discovery and Supporting Memorandum of Points and Authorities ("Pl. Motion for Discovery") Exh. C (Docket #9). As indicated above, throughout the pendency of its appeal and to the present, plaintiff could at any time have paid a portion of fees to allow the Civil Division to resume its processing under the regulatory requirements but failed to do so. See 5 U.S.C. § 552(a)(4)(A)(iv)(II).

3.     OIP's Response[3]

       a.     Granting of Expedition and Plaintiff's Failure to Narrow Request

Plaintiff also received a prompt response to its June 28, 2005 FOIA request from OIP. On July 11, 2005, OIP acknowledged receipt of plaintiff's request and advised plaintiff that searches would be initiated in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General. Complaint Exh. 14 at 1. OIP notified CREW that it could not comply with the 20-day time limit because the records CREW sought were maintained in offices separate from OIP. Complaint Exh. 14 at 1; 5 U.S.C. § 552(a)(6)(B)(iii)(I).

Plaintiff's June 28, 2005 request to OIP sought expedition on grounds that CREW has a compelling need to disseminate the information to the public. Complaint Exh. 13 at 3; 28 C.F.R. § 16.5(d)(1)(ii) (permitting expedition for requests involving an "urgency to inform the public" about federal government activity). OIP determined that plaintiff failed to identify any particular urgency to inform the public beyond the public's right to know about government activities generally, and failed to show that its primary activity was information dissemination. Complaint Exh. 14 at 1. On July 11, OIP therefore denied CREW's request on those grounds. Id.

---

[3] OIP has two distinct functions, with one part of its staff serving as an appellate entity, 28 C.F.R. § 16.9, and a different part of its staff serving as the initial processing authority for the senior leadership offices within the Department of Justice, 28 C.F.R. App. to Part 16.

Plaintiff appealed OIP's denial, and in its appeal CREW raised new regulatory grounds for the claim that its request should be expedited, i.e., it claimed for the first time that the information in question would be of "widespread and exceptional media interest." Complaint Exh. 15 at 3; 28 C.F.R. § 16.5(d)(2)(iv). Pursuant to 28 C.F.R. § 16.5(d)(iv)(2), requiring requests for expedited processing due to alleged "widespread and exceptional media interest" to be submitted to the Office of Public Affairs, plaintiff also contacted that Office on July 18, 2005, seeking expedited processing on this new basis. Complaint Exh. 16 at 2; 28 C.F.R. § 16.5(d)(2). On August 9, 2005, plaintiff was informed that the Office of Public Affairs had granted expedition on grounds that the information would be of widespread and exceptional media interest. Complaint Exh. 17. As a result, plaintiff's appeal of OIP's initial denial of expedition on July 11, 2005, became moot, as the appellate authority of OIP informed plaintiff on August 12, 2005. Complaint Exh.18.

Like the Civil Division, on July 11, 2005, OIP explicitly recommended, as provided for in the statute, that plaintiff "narrow the scope" of its request in order to "speed up" OIP's record searches given the large number of potentially responsive records. Pustay Dec. ¶ 6. Plaintiff never narrowed its request until it reached the January 9, 2006 agreement with defendant's counsel. OIP therefore initiated its record searches based on the far broader phrasing contained in plaintiff's original July 28, 2005 letter to OIP. Pustay Dec. ¶ 33.

  b. <u>Denial of Fee Waiver and Plaintiff's Failure to Pay Fees</u>

OIP also notified plaintiff on July 11, 2005, that it had not yet made a decision on plaintiff's request for a fee waiver, but would do so once it determined whether fees would be assessed for the request. Pustay Dec. ¶ 6. This is OIP's standard practice and is done because

noncommercial requesters are entitled to two hours of free search time per component. Id. In the event the searches for plaintiff's request were completed within that two-hour period, there would be no fees charged to plaintiff. Id. In the absence of fees to charge, there would be no need to adjudicate plaintiff's request for a fee waiver. Id. Accordingly, OIP deferred its decision on plaintiff's fee waiver request until the time it determined that its search in the Office of the Associate Attorney General would exceed two hours. Id.

OIP searched the database of the Departmental Executive Secretariat, where some potentially responsive records were stored electronically. Pustay Dec. ¶ 9. It also initiated searches by each individual staff member in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General for paper and electronic records, Pustay Dec. ¶ 10-11, and advised those offices in August 2005 that their searches should be expedited, id. ¶ 13.

In September the Offices of the Attorney General and Associate Attorney General informed OIP that they had located records that were potentially responsive to plaintiff's requests. Id. ¶¶ 14-15. The Office of the Attorney General completed its records search in September, and OIP's FOIA specialist retrieved the potentially responsive documents from that Office for further review by OIP's Initial Request staff. Id. ¶¶ 15, 17, 19-20. Also in September, OIP notified plaintiff that records searches were continuing in the Offices of the Deputy Attorney General and Associate Attorney General. Id. ¶ 20.

The Office of the Associate Attorney General advised OIP through the career attorney assigned to the matter that it had a large number of potentially responsive records. Id. ¶ 14. That Office completed its search on November 1, and OIP retrieved the records shortly thereafter for

further review by its Initial Request staff. Id. ¶¶ 25-26. Finally, OIP had discussions with the search contact in the Office of the Deputy Attorney General in October and early November. Id. ¶¶ 24, 27.

OIP was ready to prepare an interim response to plaintiff in mid-November with respect to its findings in each of the three Offices and would have addressed plaintiff's request for a fee waiver, but plaintiff filed suit. Pustay Dec. ¶ 28. Once this action was initiated, OIP placed its plans to prepare an interim response on hold while the parties discussed the possible narrowing of plaintiff's FOIA requests. Id. ¶ 29. Then, in December OIP visited the Office of the Associate Attorney General to conduct a more targeted search for relevant documents. Id. ¶ 31. Also in December the Office of the Deputy Attorney General completed its search and found no responsive documents. Id. ¶ 32.

As records were located and compiled throughout the pendency of OIP's record searches, its Initial Request staff conducted a continual analysis and review of the documents located. Pustay Dec. ¶ 34. Plaintiff's original request was exceedingly broad and encompassed over 450 documents and required numerous referrals and consultations with other offices. Id. ¶¶ 33-34. An estimated 62,000 e-mail communications, 300 pages of hand-written notes, fifty pages of electronic files, 100 pages of paper files, and an indeterminate number of calendar entries remain to be searched. Id. ¶ 33. Once plaintiff agreed to narrow its request, OIP was able to hone in on and more readily process the records, and was able to drastically reduce the amount of responsive material to a total of twenty pages of documents. Id. ¶ 36.

On January 19, 2006, just ten days after plaintiff had narrowed the scope of its request, OIP responded to plaintiff on the results of its searches. Pustay Dec. ¶ 37. OIP advised that it

had afforded plaintiff two hours of free search time for each component searched, in accordance with Department of Justice regulations, 28 C.F.R. § 16.11(d); <u>see also</u> 5 U.S.C. § 552(a)(4)(A)(iv)(II).  Pl. Motion for Discovery Exh. E at 2; Pustay Dec. ¶ 37.  As a result of those searches, five documents were located that were responsive to plaintiff's request.  Pustay Dec. ¶ 38.  Pl. Motion for Discovery Exh. E at 2.  OIP withheld one document in full as privileged, 5 U.S.C. § 552(b)(5), and it referred two documents to the Civil Division and two documents to the Criminal Division.  Pustay Dec. ¶ 38; Pl. Motion for Discovery Exh. E at 3.  OIP informed plaintiff that it was not able to complete its search in the Office of the Associate Attorney General within the two hours of free search time and advised plaintiff that additional time would be necessary to complete the search in that Office.  Pustay Dec. ¶ 37; Pl. Motion for Discovery Exh. E at 3.

After carefully analyzing the statutory standard in conjunction with Department of Justice regulations, 28 C.F.R. § 16.11(k)(2)(ii), OIP denied plaintiff's request for a fee waiver for the additional search time that would be needed.  Pustay Dec. ¶ 37; Pl. Motion for Discovery Exh. E at 2.  In addition, OIP stated that based upon its review of documents located so far, its knowledge of the subject matter, and its general familiarity with the responsive records, the public understanding of government operations would not be increased by disclosure through plaintiff's FOIA request, 5 U.S.C. § 552(a)(4)(A)(iii), because the records sought were almost certainly protected under the attorney work-product, attorney-client, and deliberative process privileges encompassed by FOIA Exemption 5, 5 U.S.C. § 552(b)(5).  Pl. Motion for Discovery Exh. E at 2.  Nevertheless, OIP advised that if in the course of further processing (provided plaintiff paid the additional estimated search fees) any documents were located that qualified for

a fee waiver, they would be provided without cost. Pl. Motion for Discovery Exh. E at 2. Lastly, OIP notified plaintiff that continued processing would require plaintiff to pay the estimated search fees. Id.; Pustay Dec. ¶ 37. To date, plaintiff has not paid or committed to pay fees so that OIP can complete its search. Pustay Dec. ¶ 37.

ARGUMENT

THERE WAS NO BAD FAITH IN THE PROCESSING OF PLAINTIFF'S FOIA REQUEST

I.    Plaintiff's Discovery Adduced No Evidence Of Bad Faith

Ths discovery plaintiff sought based on the hypothesis that high-level officials stalled the processing of their FOIA request has proven exactly the opposite: two career staff attorneys (Melanie Pustay and James Kovakas) were responsible for handling the request and their processing time fell within the median. The officials plaintiff deposed in a futile effort to substantiate their speculative assertions of bad faith had no substantive involvement with plaintiff's FOIA requests at all. Therefore, no bad faith can reasonably be imputed to them. Associate Attorney General Robert McCallum delegated responsibility for plaintiff's FOIA requests to two staff attorneys in his office,[4] Deposition of Robert D. McCallum, Jr. ("McCallum Depo.")[5] at 51:3-7; 52:7-12; 56:11-16; 81:17 - 82:4; turned his files over to them entirely, id. at 53:6-14; and therefore knew virtually nothing about the requests, id. at 48:21 - 49:3; 49:9-13;

---

[4] He did this in order to remove himself entirely and thereby avoid any implication of improper influence. McCallum Depo. 83:13 - 84:3. In doing so, he made his files fully available to the staff attorneys, id. at 53:6-14, and does not know what was done with his files in responding to plaintiff's FOIA requests, id. 82:20 - 83:9; 142:11-12.

[5] The Depositions of Stephen Brody, Robert D. McCallum, Jr., and Daniel Metcalfe are attached as Exhibits 1, 2, and 3, respectively.

49:17-19; 50:4-5; 50:18-19; 51:18-21; 52:4-5.[6] He deliberately recused himself from the process to avoid any implication of interference. McCallum Depo. at 51:3-7; 52:7-12; 56:11-16; 81:17 - 82:4; 83:13-84:3. Then-Deputy Director of tobacco litigation Stephen Brody knew next to nothing about the request. Brody Depo. at 27:2 - 28:1; 30:1-4; 51:9-20. Mr. Brody affirmed that he "had no role within the Department in processing CREW's FOIA request." Brody Depo. 30:1-4 (emphasis added).[7] And Office of Information and Privacy ("OIP") Director Daniel Metcalfe's minor involvement was largely limited to the routine handling of plaintiff's fee waiver appeal for a short time in January. Metcalfe Depo. at 10:14 - 11:14; 13:5-12; 31:22 - 32:8.

The evidence also showed that no improper influence was brought to bear on anyone handling these requests, including Sharon Eubanks, the Director of the tobacco litigation, currently employed by plaintiff. Brody Depo. at 29:9-22; 61:9-12; Metcalfe Depo. at 23:1-15; 24:13-16; 25:7-12; 31:17-21; McCallum Depo. at 82:5-8; 82:12-19; 88:4-8; 88:9-12; 88:16-20; 89:2-4. This information comes as no surprise, since the two career attorneys who actually handled the request, OIP Deputy Director Melanie Pustay and Civil Division FOIA officer James Kovakas, have detailed every step of the process, concerning which there is not a hint of bad

---

[6] There is no reason to believe that Mr. McCallum was being anything but truthful. See 10/05/06 Memorandum Opinion and Order at 10-11. Moreover, Mr. Brody and Mr. Metcalfe corroborate Mr. McCallum's statements that he did not interfere. Deposition of Stephen Brody ("Brody Depo.") at 29:9-22; 61:9-12; Deposition of Daniel Metcalfe ("Metcalfe Depo.") at 23:1-15; 24:13-16; 25:7-12; 31:17-21.

[7] Cf. 10/5/06 Memorandum and Order at 1 n.1.

faith.[8]  See Pustay Dec.; Kovakas Dec.

Moreover, the testimony of Mr. Metcalfe, the Director of OIP, showed that there was no undue delay in the processing of plaintiff's requests.  As Mr. Metcalfe explained, the time for processing plaintiff's FOIA requests, when calculated properly according to the methodology used to compile the statistics in the Department's annual reports to Congress, was well within the median range noted in those statistics for processing expedited requests.  First, the processing time for plaintiff's FOIA request to the Civil Division, if calculated consistently with the statistical regime established by Congress, was actually six days.  Metcalfe Depo. at 74:6-21.  The conclusion that it took 201 or 210 days and therefore exceeded the statistical median, June 1, 2006 Order at 12-13, is erroneous, because these inflated figures include processing time at the administrative appeal level, which at Congress' direction is excluded from statistics recorded in the annual report.  Metcalfe Depo. at 11-22.  Second, the statistical processing time for plaintiff's FOIA request to the Office of Information and Privacy was 136 days, not 206 days, see June 1, 2006 Order at 13, because Congress directed that weekends and holidays not be included in the statistical time periods.  Metcalfe Depo. at 72:7-19.  These numbers were well within the statistical median.  Id. at 73:19-20; 74:14-21.  Plaintiff's discovery has therefore left it empty-handed and unable to demonstrate any bad faith in the processing of its FOIA requests.

II.     Defendant's Declarations Show That The Civil Division and OIP Handled Plaintiff's Requests Properly And In Accordance With All FOIA Requirements

Defendant has provided declarations from the Civil Division and OIP explaining their general search methodology and the search for records conducted in this case.  See Voinche v.

---

[8] Notably, plaintiff had no interest in deposing these individuals, who, in contrast to the other deponents, do have knowledge about the FOIA processing.

FBI, 2006 WL 177399, *9 (D.D.C.) . Those declarations are detailed and nonconclusory, and they show that defendants have acted in good faith. See Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (stating that agency affidavits must be "'relatively detailed and non-conclusory, and submitted in good faith'"). Defendant's declarations are entitled to a presumption of good faith that cannot be rebutted by mere speculation, Safecard, 926 F.2d at 1200; Voinche, 2006 WL 177399, at *9 (indicating that the plaintiff must present "actual evidence" refuting agency statements rather than "mere assertions"); Physicians' Comm. for Responsible Medicine v. Glickman, 117 F. Supp. 2d 1, 4 (D.D.C. 2000) (indicating that reliance on affidavits is appropriate if they "'are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith'") (quoting Military Audit Project v. Casey, 656 F.2d at 738 (D.C. Cir. 1981)); Kay v. FCC, 976 F. Supp. 23, 34 (D.D.C. 1997) (holding that plaintiff's "so-called 'evidence'" of bad faith was too speculative and conclusory to offer a "concrete basis" for a finding of bad faith).

      Here, plaintiff's bare assertions of bad faith rest on nothing but speculation. Plaintiff has argued that defendant's alleged delay in processing its FOIA requests are evidence of bad faith. However, defendant acted promptly on plaintiff's requests, and plaintiff is responsible for any alleged delays. Both the Civil Division and OIP responded to plaintiff's June 28, 2005 FOIA requests, on July 7 and July 11, respectively. Both informed plaintiff that "unusual circumstances" relating to the extraordinary breadth of plaintiff's FOIA request required them to extend the 20-day time limit for determining whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i); id. § 552(a)(6)(B); see Alliance for Responsible CFC Policy v. Costle, 631 F. Supp. 1469, 1470 (D.D.C. 1986) (finding that failure to make prompt disclosure was not due to

bad faith or intentional delay where FOIA request was broad and required searches by several agency departments). And both futilely urged plaintiff to take measures, i.e., the payment of fees or narrowing of its request, which would hasten the processing of its request.[9] From that time forward, the ball was entirely in plaintiff's court to further the processing of its FOIA requests.[10]

The Civil Division could not continue to process plaintiff's request until plaintiff paid at least a portion of the necessary fees. On July 7, the Civil Division notified plaintiff that it had conducted the free, two-hour preliminary search permitted by FOIA and determined that the responsive documents it found were privileged. Complaint Exh. 20. The Civil Division therefore concluded that because the documents could not be publicly released, fees for further processing could not be waived on grounds that their disclosure would enhance the public understanding of government. Id. Exh. 20 at 1-2.

Plaintiff was told to advise the Civil Division if it were willing to incur fees so that processing could proceed, and was also informed that the Civil Division could waive fees with respect to documents that, in the course of further processing, it determined could be released.

---

[9] The failure to limit the scope of a request is a factor that may allow for a stay of judicial proceedings in order to allow an agency additional time to process a request. See 5 U.S.C. § 552(a)(6)(C)(iii) (stating that a requester's "refusal . . . to reasonably modify the scope of a request or arrange for an alternative time frame for processing . . . shall be considered as a factor in determining whether exceptional circumstances exist"); Al-Fayed v. CIA, No. 00-2092, slip op. at 6, 12 (D.D.C. Jan. 16, 2001) (denying discovery and granting additional time to process FOIA request where plaintiffs' ostensible efforts to limit the scope of their requests were "more symbolic than substantive") (attached as Exhibit 6), aff'd on other grounds, 254 F.3d 300 (D.C. Cir. 2001).

[10] Plaintiff filed its administrative appeal of the Civil Division's decision on July 28, 2005. Pl. Motion at 7. Twenty working-days thereafter, CREW could have brought suit in district court to challenge the withholding of records and the denial of a fee waiver. 5 U.S.C. § 552(a)(4)(B). Instead, CREW waited until October to invoke its statutory rights and now uses its own, manufactured delay to argue "bad faith."

Id. Exh. 20 at 2. From this time on, then, plaintiff had the power to initiate the further processing of documents responsive to its FOIA request to the Civil Division if it paid an installment of fees. Plaintiff could have done this with the added assurance that the fees would be reimbursed if a fee waiver were later granted for documents found to be disclosable.[11]

The fact that OIP adjudicated plaintiff's appeal of its denial of a fee waiver in January 2006 is hardly evidence of bad faith, nor did it stall the processing of plaintiff's request.[12] Plaintiff had constructively exhausted its administrative appeal and could have invoked the Court's jurisdiction to resolve the fee issue. Plaintiff also could have restarted the Civil Division's processing of its FOIA request at any time during the pendency of the appeal simply by paying fees. In the absence of an agreement to pay, no further action was allowed beyond the statutory entitlement of two hours of search time. 5 U.S.C. § 552(a)(4)(A)(iv)(II); see Pollack v. Dep't of Justice, 49 F.3d 115, 120 (4th Cir. 1995) (finding that when requester refused to commit to pay fees, agency "had the authority to cease processing [his] request"); Daniel v. U.S. Dep't of Justice, No. 99-2423, slip op. at 2 (D.D.C. March 30, 2001) (dismissing complaint for production of records where plaintiff had failed to pay fee after fee waiver was denied) (attached as Exhibit 7), summary affirmance granted, No. 01-5119, 2001 WL 1029156, at *1 (D.C. Cir. Aug. 28, 2001). Even after plaintiff agreed to narrow its FOIA request on January 9, processing could not proceed without plaintiff's payment of fees because the documents responsive to the narrowed

---

[11] On July 7, 2005, the Civil Division also granted plaintiff's request for expedited processing and urged plaintiff to narrow the scope of its broadly worded FOIA request in order to speed the processing along. Complaint Exh. 20 at 2. Plaintiff failed to take this statutory based step either.

[12] Notably, plaintiff has taken no significant action since January 2006 based upon its receipt of the administrative appeal adjudication.

request were still too voluminous to process within the two hours of free search time allowed under FOIA. Kovakas Dec. ¶ 7; id. Exh. E.

Similarly, the initial request staff of OIP acted promptly on plaintiff's FOIA request, and any alleged delays with respect to its processing were largely due to plaintiff's failure to narrow the broad scope of its request. See Pustay Dec. ¶ 39. OIP quickly notified plaintiff on July 11 that a search for responsive documents would have to be conducted in several different offices, and that plaintiff should narrow its request in order to speed the processing along. Complaint Exh. 14. The exceedingly broad scope of plaintiff's original request made the searches for responsive records daunting and time-consuming. Pustay Dec. ¶ 39. Moreover, the request encompassed hundreds of documents that needed to be referred to other Department of Justice components. Id. If, at any time, plaintiff had narrowed its request, the search for and processing of records would have been significantly faster. Id. Throughout the process, plaintiff's request was being handled in a routine manner, and progress was consistently being made throughout that time. Id.

At any point since July 2005 it was completely within CREW's power to trigger defendant's resumption of the processing of CREW's FOIA request if CREW had simply paid at least some of the costs of processing or narrowed its request – or CREW could have simply challenged the withholding of documents in district court. See Republic of New Afrika v. FBI, 645 F. Supp. 117, 122 (D.D.C. 1986) (finding that government's delay in producing documents did not amount to bad faith, where the plaintiff was equally to blame for any delays because it failed to pay reproduction costs in a timely fashion). Moreover, even if, arguendo, defendant had been slow in responding, mere delay is not evidence of bad faith. In Goland v. CIA, 607 F.2d

339, 355 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980), the plaintiff accused the agency of a "pattern of obfuscation and delay." However, the Court held that where an agency's responses were not always timely, and "in view of the well-publicized problems created by the statute's 10- and 20-day time limits for processing FOIA requests and appeals, the [agency's] delay alone cannot be said to indicate an absence of good faith." Id.; see also Republic of New Afrika, 645 F. Supp. at 122 (ruling that "to prove bad faith a plaintiff must show that the government purposefully withheld FOIA documents, not that it merely delayed in producing them"); see Frydman v. Dep't of Justice, 852 F. Supp. 1497, 1508 (D. Kan. 1994) (finding that eight-month delay in disclosing document after it was discovered demonstrated sluggishness but not bad faith), aff'd, 57 F.3d 1080 (10th Cir. 1995); Shores v. FBI, 185 F. Supp. 2d 77, 86 (D.D.C. 2002) (holding that two-year delay in the processing of document request was not unreasonable); Ellis v. United States, 941 F. Supp. 1068, 1074 (D. Utah 1996) (finding no evidence that agency purposefully delayed its FOIA response when it took ten months to produce documents). Plaintiff's allegations of bad faith based on a short delay that resulted from the ordinary processing of an overbroad and unwieldy request should be soundly rejected. Defendant is prepared to resume processing the documents and produce those which are not exempt from disclosure as soon as the Court decides the fee waiver issue, which it should do now.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment that defendant did not act in bad faith should be granted.

Respectfully submitted,

|  |  |
|---|---|
|  | JEFFREY A. TAYLOR<br>United States Attorney<br><br>**/s/ Lisa A. Olson**<br>ELIZABETH J. SHAPIRO<br>LISA A. OLSON<br>U.S. Department of Justice<br>20 Mass. Ave., N.W., Room 7300<br>Washington, D.C. 20530<br>Telephone: (202) 514-5633<br>Telefacsimile: (202) 616-8470<br>E-mail: lisa.olson@usdoj.gov |
| Dated: Nov. 9, 2006 | Counsel for Defendant |