# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
CITIZENS FOR RESPONSIBILITY AND          :
ETHICS IN WASHINGTON                     :
                                         :
            Plaintiff,                   :
                                         :
      v.                                 :    Civil Action No. 05-2078 (EGS)
                                         :
U.S. DEPARTMENT OF JUSTICE               :
                                         :
            Defendant.                   :
_____:

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
## ON ISSUE OF DEFENDANT'S BAD FAITH

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Court's

Memorandum Opinion and Order of October 5, 2006, plaintiff Citizens for Responsibility and

Ethics in Washington ("CREW") hereby moves for the entry of summary judgment on the issue

of defendant's bad faith.  As grounds for this motion the Court is respectfully referred to the

enclosed Memorandum of Points and Authorities as well as Plaintiff's Statement of Material

Facts Not Genuinely In Dispute.

                              Respectfully submitted,

                              ____/s/_____
                              Anne L. Weismann
                              (D.C. Bar No. 298190)
                              Melanie Sloan
                              (D.C. Bar No. 434584)
                              Citizens for Responsibility and Ethics
                               In Washington
                              1400 Eye Street, N.W., Suite 450
                              Washington, D.C.  20005
                              Phone: (202) 408-5565

Fax: (202) 588-5020

Attorneys for Plaintiff

Dated: November 9, 2006

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
CITIZENS FOR RESPONSIBILITY AND :
ETHICS IN WASHINGTON             :
                                 :
          Plaintiff,             :
                                 :
     v.                          :   Civil Action No. 05-2078 (EGS)
                                 :
U.S. DEPARTMENT OF JUSTICE       :
                                 :
          Defendant.             :
_____:

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR**
**SUMMARY JUDGMENT ON ISSUE OF DEFENDANT'S BAD FAITH**

**STATEMENT**

The Freedom of Information Act ("FOIA") commands an agency to process "as soon as practicable" any FOIA request to which the agency has granted expedited processing.  5 U.S.C. §552(a)(6)(E)(iii). At issue here is whether the seven-month delay of the defendant U.S. Department of Justice ("DOJ") in processing the purportedly expedited FOIA requests of plaintiff Citizens for Responsibility and Ethics in Washington ("CREW"), and then essentially addressing only CREW's request for a fee waiver, is so far afield of this standard as to constitute bad faith.  The record, as supplemented by the depositions of DOJ employees, makes clear that the answer to this question is an unequivocal yes.

At every level in its handling of CREW's request, DOJ refused to take seriously its obligations under the FOIA, demonstrating repeatedly a cavalier disregard for the statute's mandates.  Whether by design or gross negligence, the net effect is the same – CREW and the public were deprived of an opportunity to evaluate DOJ's actions in a timely manner.  By

refusing to comply in any meaningful sense with FOIA's provisions for expedition, DOJ

effectively deprived CREW, and the public, of expedition and ensured that if and when CREW

gains access to any of the documents it has requested, the information will be so stale as to be of

limited value.  Under these circumstances, the most appropriate sanction is to grant CREW

immediate access to all of the requested documents in the hope that DOJ does not escape public

accountability, relief that is within this Court's considerable equitable powers to enforce the

provisions of the FOIA.

## BACKGROUND

### The Civil Division Request

This case arises out of FOIA requests CREW sent to two components of DOJ – the Civil

Division and the Office of Information and Privacy ("OIP") – on June 28, 2005.  CREW's

request to the Civil Division sought all records related to the government's proposed penalty in

U.S. v. Philip Morris, et al., ("the tobacco litigation").  *See* Exhibit 19 to Complaint.  Along with

its request, CREW sought a waiver of all fees associated with processing the request as well as

expedited processing, based on "the particular urgency in informing the public about the

circumstances surrounding" the dramatic reduction in DOJ's proposed penalty.  Id.

The Civil Division acknowledged receipt of CREW's request on July 7, 2005, granted the

request for expedition, and denied the request for a fee waiver based on its claim that the portion

of documents reviewed to date contains internal memoranda and communications that are

therefore exempt from disclosure.  *See* Exhibit 20 to Complaint.  The Civil Division noted

further that it was continuing to search for, collect, and review responsive documents.  Id.

Four days later, on July 11, 2005, CREW filed an appeal with OIP from the Civil

2

Division's fee determination.[1]  Exhibit 21 to Complaint.  OIP acknowledged receipt of CREW's

appeal by letter dated July 28, 2005, in which it promised to notify CREW "of the decision on

your appeal as soon as we can."  Exhibit 22 to Complaint.  That notification was not forthcoming

until almost six months later when, in a letter dated January 23, 2006, OIP advised CREW that it

was denying CREW's appeal.  Letter from Daniel J. Metcalfe to Anne L. Weismann, January 23,

2006 (attached as Exhibit A).  OIP stated that it would not assess whether any of the tens of

thousands of potentially responsive documents could be disclosed unless and until CREW

committed to paying fees.  Id.

### The OIP Request

CREW's request of June 28, 2005 to OIP sought records from the three senior leadership

offices – those of the Attorney General ("AG"), the Deputy Attorney General ("DAG"), and the

Associate Attorney General ("AAG") – relating to the proposed penalty in the tobacco litigation,

any offer to settle that litigation, any contacts between the three offices and the White House

concerning the litigation, and any contacts between the AAG and his former law firm concerning

the tobacco litigation.  *See* Exhibit 13 to Complaint.  CREW also sought a waiver of fees and

expedition.

By letter dated July 11, 2005, OIP acknowledged receipt of CREW's request and,

contrary to the Civil Division, denied the request for expedition based on OIP's claim that there

was no "particular urgency to inform the public about an actual or alleged federal government

activity."  Exhibit 14 to Complaint.  As for fees, OIP stated only that it had yet to make a

---

[1] OIP is the component within DOJ with responsibility over all administrative appeals
arising from FOIA requests to any component of DOJ.

3

decision and would do so "after we determine whether or not fees will be assessed for this

request." Id. Its boilerplate letter suggested that CREW could narrow its request to speed up the

record searches, agree to a different time frame, or choose to "await the completion of our record

searches to discuss either of these options." Id. Finally, OIP claimed that it would be initiating

searches in the three leadership offices. Id.

On July 18, 2005, in response to OIP's denial of expedition, CREW both filed an appeal

with OIP (Exhibit 15 to Complaint) and sent a separate request for expedition to DOJ's Office of

Public Affairs (Exhibit 16 to Complaint). By letter dated August 9, 2005 – well past the 20-

working day time frame within which agencies are required to process non-expedited requests –

OIP advised CREW that the Office of Public Affairs had granted CREW's request for

expedition. *See* Exhibit 17 to Complaint. OIP claimed in this letter that it had searches ongoing

in the offices of the AG, DAG, and AAG. Id. Three days later, on August 12, 2005, OIP

advised CREW that in light of the decision of the Office of Public Affairs to grant expedition,

CREW's appeal on that issue was moot. *See* Exhibit 18 to Complaint.

Purportedly acting on an expedited basis, OIP advised CREW on January 19, 2006 –

seven months after CREW filed its FOIA request with OIP – that OIP was denying CREW's

request for a fee waiver. Letter from Melanie Ann Pustay to Anne Weismann, January 19, 2006

(attached as Exhibit B). OIP justified its decision by its claims that CREW had failed to file any

evidence of improper influence, that CREW's explanation for a fee waiver was "too ephemeral,"

and that, based on a review of "documents we have located, our knowledge of the subject matter,

and our general familiarity with the records that are responsive," the records CREW seeks "are

virtually inherently protected by the attorney work-product, attorney-client and deliberative

process privileges." Id.

OIP also claimed, based on the two hours of free search time per component to which CREW was entitled as a "non-media, non-commercial requester," or a combined search time of six hours, that OIP had located a total of five documents comprising 20 pages. Id. OIP withheld one unidentified document in full as subject to the attorney-client, work-product, and deliberative process privileges, and referred the remaining documents to other DOJ components. Id. OIP also announced that it was unable to complete its search of the AAG's office. Id.

To date, CREW has yet to receive a single document in response to either of its FOIA requests.

### Procedural History

On June 1, 2006, following full briefing and two hearings, the Court issued a Memorandum Opinion and Order granting plaintiff's motion for discovery on the issue of whether DOJ acted in bad faith in delaying its processing of CREW's FOIA requests. The Court based its order on three factors: (1) the length of time it took DOJ to exhaust the free search time the agency accorded CREW and to inform CREW of the results of the searches, with no adequate explanation or justification by the government; (2) the statistical evidence garnered from DOJ's annual submissions to Congress that demonstrates that "the processing of CREW's requests has been anything but ordinary and normal," coupled with "the paucity of evidence proffered by the government to show otherwise," Memorandum Opinion at 16; and (3) the excessive amount of time OIP took to decide and notify CREW of its determination on CREW's request for a fee waiver. Accordingly, the Court authorized CREW to take the depositions of four individuals: AAG Robert McCallum, Director of OIP Daniel Melcalfe; Steve Brody, Acting

Head of the tobacco litigation team; and James Kovakas, attorney in charge of the Civil Division's FOIA processing.

Despite the clear authorization the Court afforded CREW to take these depositions, DOJ continued to resist the discovery, arguing before Magistrate Judge Alan Kay that Mr. McCallum should not be deposed or that he should be deposed only if CREW could adduce from other deponents evidence of his involvement.  DOJ also attempted to dictate when, where, and how Mr. McCallum's deposition should be taken and sought a protective order limiting attendance at his deposition based in large part on its completely false claim that CREW had refused to hold Mr. McCallum's deposition at the Main Justice Building and that this evidenced CREW's intent to admit the media to his deposition.  *See* Plaintiff's Opposition to Defendant's Motion for a Protective Order Regarding Depositions.  Finally, however, with the assistance of Judge Kay, CREW was able to depose Mr. McCallum on July 18, and Messrs. Brody and Metcalfe on July 19, 2006.[2]

Thereafter each party sought additional relief from the Court.  DOJ, for its part, sought to prohibit CREW from disseminating two sets of emails that it claimed were "purloined," to compel CREW to return the documents to DOJ, and to explain how it acquired these emails. CREW sought reconsideration of Judge Kay's protective order limiting the use of Mr. McCallum's deposition videotape, reconsideration of Judge Kay's order limiting the scope of the examination of Mr. McCallum, to serve Mr. Brody with written questions because of the improper speaking objections of his counsel that impeded CREW's fair examination, and to

---

[2] CREW did not depose Mr. Kovakas in view of the time limitation the Court placed on the depositions (a total of five hours) and the fact that it is OIP's conduct that raises the most serious issues regarding the government's bad faith.

strike a portion of Mr. Metcalfe's deposition that appeared to be the product of improper coaching.

After full briefing and a hearing, the Court issued a Memorandum Opinion and Order on October 5, 2006, disposing of all pending motions. The Court lifted the protective order as to the videotape of Mr. McCallum's deposition, vacated Judge Kay's order prohibiting further dissemination of the emails and unsealed the transcripts in which the emails were contained or referenced, and denied all other relief sought by the parties. In addition, the Court set a briefing schedule on cross-motions for summary judgment on the issue of whether the government acted in bad faith in processing plaintiff's FOIA requests.

## ARGUMENT

### I. DOJ Has Not Complied With Its Statutory Mandate To Process CREW'S FOIA Requests As Soon As Practicable.

Once the Civil Division and OIP granted CREW's requests for expedition of its FOIA requests, the agency was under a statutory mandate to process the requests "as soon as practicable." 5 U.S.C. §552(a)(6)(E)(iii). This obligation flows from the underlying justification for expedition, that there exists an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. §5529a)(6)(E)(v)(II). As this Circuit has recognized, "expedited processing of a FOIA request is a statutory right" that reflects "Congress' recognition of the value in hastening release of certain information." Edmonds v. FBI, 417 F.3d 1319, 1324 (D.C. Cir. 2005). Indeed, failure to process even non-expedited requests "in a timely fashion is 'tantamount to denial.'" The Washington Post v. Dep't of Homeland Security, No. 06-1737(RMU), Memorandum Opinion of October 19, 2006 at p. 21 (attached as Exhibit C), *quoting* H.R. Rep. No. 93-876, at 6 (1974).

7

Although the FOIA does not define the term "as soon as practicable," the legislative history to the Electronic Freedom of Information Act Amendments of 1996, which added the expedited processing provision to the FOIA, "makes clear that Congress' 'intent was to 'give the request priority for processing *more quickly than otherwise would occur*.'" Electronic Privacy Information Center v. Dep't of Justice, 416 F. Supp.2d 30, 39 (D.D.C. 2006) ("EPIC"), quoting S. Rep. No. 104-272 at 17 (1996) (emphasis in original).  Relying on this intent, Judge Kennedy reasoned in EPIC that any agency delay in processing an expedited FOIA request beyond the 20-day time limit that applies to non-expedited FOIA requests creates a presumption that the agency has failed to comply with the requirement that the agency process expedited requests "as soon as practicable."  Id.  This presumption can be overcome by "credible evidence that disclosure within such time period is truly not practicable."  Id.

Applying this standard to the case before him, Judge Kennedy concluded that OIP, the component that had responsibility for EPIC's FOIA request to DOJ, had not come forward with credible evidence justifying why it was not practicable for the agency to comply with even the time limits applicable to standard FOIA requests when dealing with an expedited request.  416 F. Supp.2d at 42.[3]  The court specifically rejected DOJ's argument that it had satisfied its obligation to expedite under the FOIA merely by giving priority to EPIC's request over other pending requests:

> Because it has already expedited [plaintiff's] FOIA requests
> by administratively granting them expedited status
> and prioritizing them over other pending requests, DOJ argues
> that [plaintiff] is entitled to 'nothing more.'  This argument

---

[3] Although this decision was made in the context of a motion for a preliminary injunction, it applies here as it reflects the court's view on the merits of the claims before it.

> stretches the limits of plausibility. [Plaintiff's] right to
> expedition is certainly not satisfied by DOJ's decision to
> give priority to [plaintiff's] requests.  What matters to
> [plaintiff] is not how the requests are labeled by the agency,
> but rather when the documents are actually released.  As
> [plaintiff] contends, 'merely paying lip service' to [plaintiff's]
> statutory right does not negate 'the harm that results from
> the agency's failure to *actually* expedite its processing.'
> Unless the requests are processed without delay, [plaintiff's]
> right to expedition will be lost.

EPIC, 416 F. Supp.2d at 41 (emphasis in original; citations omitted).

Here CREW sought information from DOJ on an expedited basis because of the serious

questions that had been raised about whether Mr. McCallum's decision to reduce DOJ's

proposed penalties in the tobacco lawsuit was "the product of improper political influence

brought to bear on the government's trial team of career lawyers" including "improper attempts

to have government witnesses alter their trial testimony."  *See* Exhibit 13 to Complaint.  In

explaining to DOJ the urgency of its request, CREW noted

> the government's proposal implicates the rights and responsibilities
> of millions of Americans and tobacco companies that made up
> some of the most powerful and lucrative businesses in the United
> States and abroad.  This urgency is heightened by the advanced
> stage of the tobacco litigation, wherein the district court is
> currently considering what, if any, penalties should be imposed
> against the defendants.

Letter from Anne Weismann to Co-Director, OIP, July 18, 2005 (footnote omitted) (Exhibit 15

to Complaint).

DOJ agreed, granting CREW's request of the Civil Division for expedition on July 7,

2005, and ultimately granting CREW's request of OIP on or before August 9, 2005 (but only

after CREW filed a subsequent request with DOJ's Office of Public Affairs and an appeal from

OIP's initial denial of expedition).  At that point DOJ was under a statutory obligation to process

the requests "as soon as practicable."  5 U.S.C. §552(a)(6)(E)(iii).

Despite this mandate, OIP waited until January 19, 2006, nearly seven months after CREW filed its FOIA request with OIP, to advise CREW that its fee waiver request was denied. OIP offered no explanation for this extraordinary delay.  *See* Exhibit B.  As a result of its decision on fees, OIP refused to process CREW's request beyond the six hours of free search time OIP claimed to have expended with respect to the three senior leadership offices, which resulted in no disclosures of any information to CREW.  Four days later, OIP denied CREW's appeal of the Civil Division's determination to deny CREW a fee waiver.  *See* Exhibit A.

Under no conceivable interpretation can OIP be deemed to have acted "as soon as practicable" given its seven-month delay in resolving CREW's appeal and fee waiver request of OIP and advising CREW of the results of OIP's limited search.  Indeed, under the approach adopted in EPIC, once DOJ exceeded the 20-day time period for non-expedited requests, a rebuttable presumption that DOJ had not acted "as soon as practicable" was raised that can be overcome only by "credible evidence" to the contrary.  *See* EPIC, 416 F. Supp.2d at 39.  In other words, OIP must establish through credible evidence that acting on CREW's request for a fee waiver and advising CREW of the results of the free search time to which DOJ determined CREW was entitled in less than seven months was "truly not practicable."  Id.

To date, DOJ has justified the seven-month delay as attributable to CREW's failure to narrow the scope of its request, the reallocation of resources from processing to defending this lawsuit, the "atypical" nature of CREW's request, and the "many other duties and responsibilities" of the individual to whom OIP assigned initial responsibility to work on CREW's appeal.  *See generally* Defendant's Opposition to Plaintiff's Motion for Discovery.

These proffered excuses "stretch the limits of plausibility" and none comes close to constituting "credible evidence" that a shorter response time was "truly not practicable." In fact, the only credible evidence of record – DOJ's own statistics – demonstrates the contrary. *See, e.g.*, Memorandum Opinion and Order of June 1, 2006 at 16 ("The government's own statistics indicate that the processing of CREW's requests has been anything but ordinary and normal . . ."). Equally unpersuasive are DOJ's excuses for why it took OIP seven months to advise CREW of the results of the six hours of search time OIP afforded CREW.

This Court has already recognized that DOJ has not justified its delays in processing CREW's FOIA requests. For example, in its Memorandum Opinion of June 1, 2006, the Court found that "the government has not provided any evidence to show that the two hours of free search time were handled in an expedited manner." Id. at 12. Similarly, the Court noted the government's failure to explain in any way "what makes CREW's requests extraordinary compared to the FOIA requests cited in DOJ's reports." Id. at 16. And with respect to the delay in deciding CREW's request for a fee waiver and appeal, the Court concluded that its was attributable to DOJ, not CREW, and noted the absence of specific evidence indicating, for example, the work load of the OIP counsel assigned to CREW's appeal and the number of appeals OIP had involving expedition. Id. at 18.

Although not couched in these precise terms, the Court's findings in its Memorandum Opinion of June 1 clearly reflect a lack of credible evidence by DOJ that processing CREW's request in less than seven months was not practicable. On the basis of the record that DOJ has put before the Court it is clear that DOJ has not complied with FOIA's mandate to process CREW's expedited requests as soon as practicable.

## II.  DOJ Acted In Bad Faith Or, At A Minimum, Was Grossly Negligent, Justifying The Imposition Of Sanctions.

Not only did DOJ fail to comply with FOIA's mandate that it process CREW's requests as soon as practicable, but its conduct during its seven-month delay in processing, as well as the conduct of its counsel in the representations made to the Court, are so egregious as to constitute bad faith or, at a minimum, gross negligence, warranting the imposition of sanctions.

Even before the discovery in this case, the record was one of intransigence and dereliction of duty on the part of DOJ.  OIP's handling of CREW's fee appeal is a prime example.  The Civil Division's denial of CREW's request for a fee waiver effectively precluded CREW from gaining access to any of the thousands of pages of responsive documents DOJ claims to have.  Notwithstanding the importance of this issue, the fact that the Civil Division had granted CREW expedition virtually at the outset, and that CREW filed an appeal from the Civil Division's adverse fee determination on July 11, 2005, four days after that determination was issued, OIP did not even assign the appeal to a staff until August 10, one month after CREW filed its appeal.  Pustay Decl., ¶44 (attached as Exhibit D).  It took that staffer nearly six weeks just to obtain "relevant background information" from the Civil Division, id., and the senior counsel was not actively working on a draft response until mid to late November through late December 2005.  Id.  A final draft was not ready until early January 2006, after which it was under review from January 10 to January 23, 2006, when OIP finally advised CREW that its appeal was denied.  Id.  In all OIP consumed five and one-half months in deciding the appeal.

Daniel Metcalfe, the Director of OIP, admitted during his deposition that expediting a

12

request meant expediting all aspects of the request, including a request for a fee waiver.[4]
Deposition of Daniel Metcalfe ("Metcalfe Depo.") at 44:1-2, 10-12, 17-22. Yet when confronted
with the disturbing record of his office in handling CREW's fee appeal and the significant
concerns that this Court raised in its Memorandum Opinion of June 1, 2006 about that handling,
Mr. Metcalfe stated only that after going back and focusing on the "time interval" he concluded
that "a matter of an inconsistency was not at all accurate . . ." Metcalfe Depo., 49:13-22, 50:1-5.
OIP's conduct here is no mere "inconsistency," but a gross deviation from what FOIA requires.

OIP's handling of CREW's FOIA request of the three senior leadership offices is equally
egregious. While OIP claimed to have initiated searches in the offices of the AG, DAG, and
AAG by memo dated July 22, 2005, Pustay Decl. at ¶10, it did not advise those offices that
expedition had been granted until August 29, 2005, id. at ¶13, and it did not advise CREW of the
results of the six hours of free search time until January 19, 2006. This delay cannot be
reconciled with DOJ's own evidence that the AG's Office advised OIP on September 16, 2005,
that its search was complete, the AAG's Office advised OIP on November 1, 2005, that its
search was complete, id. at ¶25, and the DAG's Office advised OIP on December 22, 2005, that
its search was complete. Id. at ¶32. The delay also extended to Mr. Metcalfe, who admitted
during his deposition that he was not aware that CREW's request was expedited until January of
2006, Metcalfe Depo. at 27:18-22, despite the fact that he was the deciding official on CREW's
fee waiver appeal and the director of the office responsible for processing CREW's request for
records from the senior leadership offices.

In an attempt to justify its delay, DOJ has claimed that the fault lies with CREW and the

---

[4] Attached as Exhibit E are quoted excerpts from Mr. Metcalfe's deposition testimony.

extraordinary breadth of its requests.  Discovery, however, disproves this claim.  For example,

Mr. McCallum, who is at the center of the underlying controversy that is the subject of CREW's

requests, described the entire universe of potentially responsive documents he had as residing in

"three, maybe four" file folders that were "maybe eight inches of paper if you stacked them up."[5]

Deposition of Robert D. McCallum, Jr. ("McCallum Depo."), 121:18-19.  Moreover, his

documents were not under lock and key, but were accessible to "[a]nybody that wants to open

[his] drawer."  Id. at 141:4.  Yet despite the limited quantity and ease of access to Mr.

McCallum's responsive documents, OIP has not accounted for a single record, explained why in

the two hours of search time it afforded CREW it could not review any of Mr. McCallum's files

to determine which, if any, were responsive to CREW's request, or why it would need an

additional 12 hours to complete the search of the AAG's office.  These omissions are

inexcusable.

Discovery in this case has also yielded disturbing inconsistencies between the processing

that OIP has represented to this Court occurred and the processing, or lack thereof, to which

deponents have testified.  For example, in her declaration Melanie Pustay attested that OIP

initiated a search of the AAG Office by memo dated July 22, 2005, and that under OIP's normal

practices this would involve requesting that the AAG's Office search paper and electronic files,

including "hand searches of large paper files."  Pustay Decl. at ¶10.  Yet Mr. McCallum testified

that not only was he not even aware of CREW's FOIA request until this matter was in litigation,

McCallum Depo. at 49:9-16, but that he had no recollection of his files ever being searched.  Id.

at 51:3.

---

[5] Attached as Exhibit F are quoted excerpts from Mr. McCallum's deposition testimony.

Similarly, DOJ counsel has represented repeatedly to this Court that "[t]his is a normal processing of an extraordinary request." April 6, 2006 Hearing Transcript, pp. 29-30. What both counsel and Ms. Pustay have failed to tell the Court, however, is that the AAG's Office initially took an abnormal and legally impermissible approach that slowed down its processing of CREW's request by what may have been months. Mr. Metcalfe revealed during his deposition that sometime in August or September he learned from Ms. Pustay that the AAG's Office was taking a "categorical approach" to CREW's FOIA request. Under this approach the AAG's Office was refusing to search for any of the records individually, but was instead treating them as a single category not subject to disclosure. Metcalfe Depo., 17:13-22, 18:1-3, 19:14-21. Despite the blatant unlawfulness of this approach, Mr. Metcalfe – then co-director of OIP – did not learn until "some number of weeks later""that the matter had been resolved." Id. at 22:2-3. According to Ms. Pustay's declaration (which is silent on the point of the AAG's categorical approach), she did not go to the AAG's Office to conduct a "more targeted search for responsive records" until December 20, 2005. Pustay Decl., ¶31.

Discovery has shed an equally poor light on the Civil Division's handling of CREW's request and the representations of counsel to this Court about that handling. For example, despite the fact that Stephen Brody was the Deputy Director of the tobacco litigation team when CREW's request came in to the Civil Division,[6] he testified that had no role whatsoever within DOJ in processing the request, nor did anyone else on the tobacco litigation team. Deposition of

---

[6] At the time of his deposition, Mr. Brody was Acting Director of the tobacco litigation team. It is CREW's understanding that he has since left the Department of Justice.

Stephen Brody ("Brody Depo."), 75:17-18.[7]  Indeed, Mr. Brody was not even aware of CREW's

FOIA requests, which sought records relating directly to his team, until "probably October or

November of 2005," four or five months after CREW made its  requests.  Id. at 27:4-5.

In addition, Mr. Brody has been identified as the individual responsible for putting

together what DOJ counsel has termed a "meaningful portion of documents from this general

pool of eight to 10 million documents . . ." for counsel's review.  Feb. 9, 2006 Hearing

Transcript, p. 46.  According to DOJ counsel, she requested that Mr. Brody "extract the

documents that are responsive that will be the most informative." Id,   Based on her review of

this purportedly "representative sample," id. at 40, DOJ counsel argued that the Civil Division

properly determined that all of the responsive documents were likely to be exempt from

disclosure, the basis for the denial of CREW's fee waiver request.

Mr. Brody, however, described a very different process.  He did not, as counsel at least

implied, make a selection of representative documents from the larger collection of tobacco

litigation documents.  Rather, Mr. Brody provided to counsel a four-inch stack of documents

from his office that were already assembled for an entirely different purpose.  Brody Depo. at

70:16-17, 71:8-11.  This pre-existing document collection consisted of "internal deliberations

within the Department of Justice as to what would be presented as a remedies request at closing

argument and in post trial briefing," id. at 38:22, 39:1-2, and did not include any notes of

conversations or external email.  Id., 48:13-18.  Mr. Brody was quite adamant (as was his

counsel) that he did not cull this document grouping from anything when responding to the

request of DOJ's counsel for a representative sampling.

---

[7] Attached at Exhibit G are quoted excerpts from Mr. Brody's deposition testimony.

In other words, DOJ justified the Civil Division's characterization of the entire body of responsive documents as privileged based on its review of a narrow, under-inclusive subset of documents assembled for an entirely different purpose and containing internal discussions within DOJ – the most likely documents to be privileged. This collection is anything but representative and certainly cannot provide the justification for the conclusion of the Civil Division that the much larger universe of documents CREW seeks consists entirely of privileged exempt documents.

Equally as troubling is the attitude that DOJ has adopted even in the face of this Court's prior opinion identifying multiple ways in which the government did not act diligently in processing CREW's requests. When asked whether the concerns raised by this Court's opinion and the issues it flagged caused Mr. McCallum or anyone else to undertake an assessment of how the government had processed CREW's requests, Mr. McCallum responded in the negative, explaining that he "never even considered going forward with any sort of assessment." McCallum Depo. at 61:22, 62:1. Likewise Mr. Metcalfe did not undertake any kind of systematic review based on the Court's findings, beyond satisfying himself that, in his words, there was no "inconsistency" in the timing of his fee appeal denial. Metcalfe Depo. at 50:1. Nor has he changed any of the procedures in OIP; even though he is director of that office, he continues to have "no involvement, no knowledge of what is happening at the initial request level." Id. at 51:14-16. As Judge Lamberth commented under similar circumstances of agency inaction in the face of extensive problems with how the agency had processed a FOIA request, "[m]ore troubling, perhaps, than any action taken in this time is the continued lack of action by the [agency] to investigate its own conduct in this FOIA response and litigation." Judicial Watch

v. Dep't of Commerce, 34 F.Supp.2d 28, 35 (D.D.C. 1998).  Those words are equally applicable

here.

Taken together, these examples illustrate a fundamental truth about how DOJ has

mishandled CREW's FOIA requests.  At every level, from the top on down, DOJ has refused to

take seriously its obligations under the FOIA, thereby depriving CREW of its statutory right to

expedition as soon as practicable under the statute.  Robert McCallum and Stephen Brody, two

individuals with the most knowledge about the substance of the requests and who are likely to

have the most responsive documents, were completely unaware that CREW had even filed its

requests until months later and neither could recall that their records were ever searched for

potentially responsive documents.  OIP, the office with FOIA responsibility for the senior

leadership offices and administrative FOIA appeals, had no checks and balances in place, with

the result that its director, Daniel Metcalfe, did not even know CREW's request was expedited

until seven months later, when he was ready to address the fee appeal.  It also appears from Mr.

Metcalfe's testimony that the supervisors at OIP were so out of touch with the day-to-day

operations of the office that critical missteps and inexcusable delays such as happened here went

unchecked.  This is especially egregious given the fact that OIP has held itself out to be the

definitive authority on the FOIA, publishing a biannual FOIA and Privacy Act Overview and

providing government-wide FOIA advice.  If OIP does not take seriously its obligation to

process requests "as soon as practicable" what confidence can CREW or any other requester

have that the rest of the government is not doing likewise?  The Civil Division, for its part,

reached a hasty decision on fees that its counsel subsequently justified on the basis of a narrow

review of a body of documents that cannot reasonably and properly be called "representative."

CREW submits that the degree and amount of this misconduct leads inescapably to the conclusion that DOJ acted in bad faith; at a minimum DOJ was grossly negligent.  The net effect was to deprive CREW of its statutory entitlement to expedition, a harm of no small moment as it ensured that CREW would not get the documents it was requesting in a timely fashion.  Judge Kennedy's words in <u>EPIC</u> equally describe the situation here:  "'merely paying lip service' to [plaintiff's] statutory right does not negate 'the harm that results from the agency's failure to *actually* expedite its processing.'"  416 F. Supp.2d at 41 (emphasis in original; citations omitted).

### III.  The Court Should Exercise its Considerable Discretion And Order DOJ to Immediately Produce To CREW All Responsive Documents And Enter Injunctive Relief To Prevent Future Abuses Of The FOIA.

As the D.C. Circuit has recognized, "[t]he FOIA imposes no limits on courts' equitable powers in enforcing its terms."  <u>Payne Enterprises, Inc. v.  United States</u>, 837 F.2d 486, 494 (D.C. Cir. 1988), *quoting* <u>Renegotiation Bd. v. Bannercraft Clothing Co.</u>, 415 U.S. 1, 19-20 (1974).  It is particularly appropriate for a court to use its equitable powers where, as here, the agency's unreasonable delay in fulfilling the statutory mandates of the FOIA "violate[s] the intent and purpose of the FOIA."  <u>Payne Enterprises, Inc</u>, 837 F.2d at 484.

Indeed, the Court has a "'duty to prevent these abuses.'"  <u>Payne Enterprises</u>, 837 F.2d at 494, *quoting* <u>Long v. IRS</u>, 693 F.2d 907, 910 (9th Cir. 1982).  DOJ's unexplained and unjustified delay in processing CREW's FOIA requests not only deprived CREW of the benefit of expedited treatment – a benefit to which CREW is statutorily entitled – but appears to have been an offensive attempt by DOJ to "'hinder the release of non-exempt documents'."  <u>Id</u>.  As a result, the best CREW can hope to attain at this late date is "stale information," <u>id</u>., 837 F.2d at 494; it can never get the full benefit of what it sought through its expedited FOIA requests

Accordingly, as in <u>Payne Enterprises</u>, the Court should exercise its equitable powers to enter both declaratory and injunctive relief. First, the Court should order DOJ to immediately release to CREW all non-exempt material.[8] The delays here are simply unconscionable and while CREW can never be made fully whole, delayed access to the information it has lawfully requested is better than no access.[9] CREW's FOIA requests are almost one and one-half years old. Simply stated, CREW deserves a response.

Second, the Court should enter injunctive relief to prevent the agency from "return[ing] to its illicit practice of delay in the absence of an injunction." <u>Payne Enterprises</u>, 837 F.2d at 495. As part of this relief the Court should order the agency to conduct a full review of its FOIA processes and, in particular, its processes for handling expedited FOIA requests, to ensure that no other requester faces the kind of inexcusable delay that CREW has faced.

Third, CREW should be awarded its costs and fees in litigating these issues, including its discovery costs, all of which were necessitated by the agency's unlawful delays in processing CREW's requests and litigating the issues before this Court. The government's conduct in litigation approaches bad faith. It hid behind declarations that omitted critical details, and made representations to the Court that are demonstrably false.[10] As a result, the Court had no choice

---

[8] *See* <u>Hill v. Dep't of the Air Force</u>, No. 85-1485, slip op. at 7 (D.N.M. Sept. 4, 1987), *quoted in* <u>Freedom of Information Act Guide & Privacy Act Overview</u>, U.S. Department of Justice, Office of Information and Privacy, May 2004 Edition, p. 848 n.492 (describing <u>Hill</u> as "ordering documents processed at no further cost to plaintiff because of unreasonable delay in processing FOIA request"), *aff'd on other grounds*, 844 F.2d 1407 (10th Cir. 1988).

[9] DOJ will undoubtedly respond that the Court must first address the issue of a fee waiver. The additional delay that would cause coupled with the agency's patently unreasonable, if not illegal, conduct to date undermine any legitimacy in such an approach.

[10] Just as egregiously, DOJ failed to respond to statistical evidence that it characterized as irrelevant, despite multiple opportunities to do so. After the Court relied on the unrebutted

but to order time-consuming discovery that necessarily, but unfortunately, resulted in even greater delay.[11]  This alone is a proper basis for awarding CREW its costs and fees.  *Compare* Judicial Watch v. Dep't of Commerce, 384 F.Supp.2d 163, 169, 170 (agency's past behavior, which demonstrated "its lack of reasonableness and lack of respect for the FOIA process" "tip[ped] the balance in favor of" a fee award under the FOIA, which included costs of discovery); Landmark Legal Foundation v. EPA, 272 F.Supp. 2d 70, 87 (D.D.C. 2003) (awarding attorney fees and costs for "frequency and severity of abuses" by agency in processing FOIA request, including violation of court order).[12]

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Cross-Motion for Summary Judgment on the Issue of Defendant's Bad Faith and order the requested declaratory and injunctive relief.

Respectfully submitted,



Anne L. Weismann

___

evidence in its Memorandum Opinion of June 1, 2006, DOJ counsel, in the final minutes of the final deposition, attempted to get the government witness (Daniel Metcalfe) to explain how the statistics mean something different than the Court found.  In other words, the government sandbagged both the plaintiff and the Court.

[11] Government counsel has suggested in the past that CREW's pursuit of discovery is inconsistent with CREW's stated goal of disclosure.  CREW sought discovery, however, because of the very serious issues raised by the government's delay.

[12] Finally, CREW notes that the FOIA provides a mechanism for disciplinary action against agency officials who have acted inappropriately in withholding records.  Specifically, when requiring the release of improperly withheld records, if the Court makes a written finding that "the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," a disciplinary investigation is triggered.  5 U.S.C. §552(a)(4)(F).

(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
 In Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

Dated: November 9, 2006

22

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
CITIZENS FOR RESPONSIBILITY AND          :
ETHICS IN WASHINGTON                      :
                                          :
            Plaintiff,                    :
                                          :
       v.                                 :   Civil Action No. 05-2078 (EGS)
                                          :
U.S. DEPARTMENT OF JUSTICE                :
                                          :
            Defendant.                    :
_____:

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
NOT GENUINELY IN DISPUTE**

1.  Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-

profit corporation organized under section 501(c)(3) of the Internal Revenue code and is

committed to protecting the right of citizens to be informed about the activities of government

officials and to ensuring the integrity of those officials.  Complaint, ¶4.  CREW relies, in part, on

the Freedom of Information Act ("FOIA") to assist it in providing the public with full, accurate

and current information.  Id. at ¶6.

2.  On June 28, 2005, CREW submitted a FOIA request to the Civil Division of the U.S.

Department of Justice ("DOJ") for records related to the government's proposed penalty in U.S.

v. Philip Morris ("tobacco litigation").  Exhibit 19 to Complaint.  Along with its request, CREW

sought a waiver of all fees associated with processing the request as well as expedited

processing, based on "the particular urgency in informing the public about the circumstances

surrounding" the dramatic reduction in DOJ's proposed penalty in the tobacco litigation.  Id.

3.  The Civil Division acknowledged receipt of CREW's request on July 7, 2005, granted

CREW's request for expedition, and denied CREW's request for a fee waiver based on its claim that the portion of documents reviewed to date contains internal memoranda and communications that are exempt from disclosure. Exhibit 20 to Complaint. The Civil Division claimed that it was continuing to search for, collect, and review responsive documents. Id.

4. On July 11, 2005, CREW filed an appeal with DOJ's Office of Information and Privacy ("OIP") from the Civil Division's fee determination. Exhibit 21 to Complaint.

5. OIP acknowledged receipt of CREW's appeal by letter dated July 28, 2005, in which it promised to notify CREW "of the decision on your appeal as soon as we can." Exhibit 22 to Complaint.

6. On August 10, 2005, one month after CREW filed its appeal, OIP assigned the matter to a staffer. Pustay Decl., ¶44. It took that staffer nearly six weeks to obtain "relevant background information" from the Civil Division. Id. A senior counsel on OIP's staff was not actively working on a draft response until mid to late November through late December 2005. Id.

7. OIP did not have a final draft of the appeal response until early January 2006, after which the draft was under review from January 10 to January 23, 2006. Id.

8. Daniel J. Metcalfe, then Co-Director of OIP and the deciding official on the appeal, was not aware that CREW's request was expedited until January 2006. Metcalfe Depo. at 27:18-22.

9. By letter dated January 23, 2006, OIP advised CREW that it was denying CREW's fee appeal. Letter from Daniel J. Metcalfe to Anne L. Weismann, January 23, 2006. OIP stated that it would not assess whether any of the tens of thousands of potentially responsive documents

could be disclosed unless and until CREW committed to paying fees.  Id.

10.  Stephen Brody, then-Deputy Director of the tobacco litigation team, was not aware of CREW's FOIA requests until probably October or November 2005.  Brody Depo. at 27:4-5.  Mr. Brody had no role whatsoever in processing the request, nor did anyone else on the tobacco litigation team.  Id. at 75:17-18.

11.  On June 28, 2005, CREW submitted a FOIA request to OIP for records from the Offices of the Attorney General ("AG"), Deputy Attorney General ("DAG"), and Associate Attorney General ("AAG") relating to the proposed penalty in the tobacco litigation, any offer to settle that litigation, any contacts between the three offices and the White House concerning the litigation, and any contacts between the AAG and his former law firm concerning the tobacco litigation.  Exhibit 13 to Complaint.  CREW also sought a waiver of fees and expedition.  Id.

12.  By letter dated July 11, 2005, OIP acknowledged receipt of CREW's request and denied CREW's request for expedition based on OIP's claim that there was no "particular urgency to inform the public about an actual or alleged federal government activity."  Exhibit 14 to Complaint.  OIP stated that it had yet to make a decision on the request for a fee waiver and would do so "after we determine whether or not fees will be assessed for this request."  Id.  OIP also claimed that it would be initiating searches in the Offices of the AG, DAG, and AAG.  Id.

13.  On July 18, 2005, CREW filed an appeal with OIP from OIP's denial of expedition.  Exhibit 15 to Complaint.  In explaining to DOJ the urgency of its request, CREW noted:

> the government's proposal implicates the rights and responsibilities of millions of Americans and tobacco companies that made up some of the most powerful and lucrative businesses in the United States and abroad.  This urgency is heightened by the advanced stage of the tobacco litigation, wherein the district court is currently considering what, if any, penalties should be imposed

3

against the defendants.

Id.

14. On that same date, CREW sent a separate request for expedition to DOJ's Office of Public Affairs. Exhibit 16 to Complaint.

15. By letter dated August 9, 2005, OIP advised CREW that DOJ's Office of Public Affairs had granted CREW's request for expedition. Exhibit 17 to Complaint. On August 12, 2005, OIP advised CREW that in light of that decision, CREW's appeal on that issue was moot. Exhibit 18 to Complaint.

16. Expediting a request under the FOIA means expediting all aspects of the request, including a request for a fee waiver. Metcalfe Depo. at 44:1-2, 10-12, 17-22.

17. OIP did not advise the Offices of the AG, DAG, and AAG that CREW's FOIA request was expedited until August 29, 2005. Pustay Decl., ¶10.

18. The Office of the AAG initially took a categorical approach to CREW's FOIA request of OIP. Metcalfe Depo. at 17:13-22, 18:1-3, 19:14-21. Under this approach, the AAG's office refused to search for any responsive records individually, and instead treated all of the potentially responsive documents in its office as not subject to disclosure. Id.

19. Ms. Pustay did not conduct a targeted search for responsive records in the Office of the AAG until December 20, 2005. Pustay Decl., ¶31.

20. On September 16, 2005, the AG's Office advised OIP that its search was complete. Pustay Decl., ¶25.

21. On November 1, 2005, the AAG's Office advised OIP that its search was complete. Id.

4

22. On December 22, 2005, the DAG's Office advised OIP that its search was complete. Pustay Decl., ¶32.

23. By letter dated January 19, 2006, seven months after CREW filed its FOIA request with OIP, OIP advised CREW that it was denying CREW's request of OIP for a fee waiver. Letter from Melanie Ann Pustay to Anne Weismann, January 19, 2006. OIP claimed that CREW had failed to file any evidence of improper influence, that CREW's explanation for a fee waiver was "too ephemeral," and that, based on a review of "documents we have located, our knowledge of the subject matter, and our general familiarity with the records that are responsive," the records CREW seeks "are virtually inherently protected by the attorney work-product, attorney-client and deliberative process privileges." Id.

24. In that same letter, OIP notified CREW that, based on the two hours of search time per component OIP had determined CREW was entitled to, or a combined search time of six hours, OIP had located a total of five documents comprising 20 pages. Id. OIP withheld one unidentified document in full under Exemption 5 and referred the remaining documents to other DOJ components. Id.

25. OIP also announced in that same letter that it was unable to complete its search of the AAG's Office. Id.

26. To date, CREW has yet to receive a single document in response to either of its FOIA requests to DOJ.

27. Robert McCallum, the former AAG and individual responsible for making the decision to reduce the government's proposed penalty in the tobacco litigation, had a total of three to four file folders that, stacked up, were about eight inches high, that contained the entire

universe of his potentially responsive documents to CREW's FOIA request of OIP.  McCallum
Depo. at 121:18-19.

28.  Mr. McCallum's potentially responsive documents were not under lock and key, but
were accessible to "[a]nybody that wants to open [his] drawer."  Id. at 141:4.

29.  OIP has yet to account for a single document from Mr. McCallum's files in
responding to CREW's FOIA requests.

30.  Mr. McCallum was not even aware of CREW's FOIA request until some time after
this suit was commenced.  McCallum Depo. at 49:9-16.  Mr. McCallum has no recollection of
his files ever being searched in response to CREW's FOIA requests.  Id. at 51:3.

31.  According to DOJ's Counsel, Mr. Brody was tasked with putting together a
"meaningful portion of documents" from the more "general pool of eight to 10 million
documents" for DOJ counsel's review.  Feb. 9, 2006 Hearing Transcript at 46.  DOJ used this
sample to justify the conclusion of the Civil Division that all of its responsive documents were
likely to be exempt from disclosure.

32.  In fact, Mr. Brody provided counsel with a four-inch stack of documents that were
already assembled for another purpose, Brody Depo. at 70:16-17, 71:8-11, and that consisted of
"internal deliberations within the Department of Justice as to what would be presented as a
remedies request at closing argument and in post trial briefing."  Id. at 38:22, 39:1-2.  This
collection did not include any notes of conversations or external email.  Id. at 48:13-18.

33.  After the Court issued its Memorandum Opinion of June 1, 2006, neither Mr.
McCallum nor Mr. Metcalfe undertook any kind of systematic review of DOJ's procedures for
handling FOIA requests or of how DOJ processed CREW's two FOIA requests.  McCallum

Depo. at 61:22, 62:1; Metcalfe Depo. at 50:1.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
  In Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

Dated: November 9, 2006

7