UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CITIZENS FOR RESPONSIBILITY AND    :
ETHICS IN WASHINGTON               :
                                   :
        Plaintiff,                 :
                                   :
    v.                             : Civil Action No. 05-2078 (EGS)
                                   :
U.S. DEPARTMENT OF JUSTICE         :
                                   :
        Defendant.                 :
_____:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT ON ISSUE OF DEFENDANT'S BAD FAITH**

**STATEMENT**

In the face of overwhelming evidence of substantial delays caused by multiple failures at multiple levels within the Department of Justice ("DOJ") in processing CREW's two Freedom of Information Act ("FOIA") requests, the government continues to offer the same refrain: any delay is solely the responsibility of CREW. At no point in this litigation has DOJ acknowledged any responsibility for its serious missteps in processing CREW's requests, and its motion for summary judgment is no exception. DOJ's latest effort to blame CREW merely parrots arguments DOJ has made in the past and that the Court has properly rejected. There was nothing "routine" about how DOJ handled the expedited requests and the delay from its mishandling was anything but "short," despite DOJ's claims to the contrary. The extraordinarily long delay here is attributable solely to the government; CREW's exercise of its statutory right to appeal an issue that the agency decided wrongly as a matter of fact and law does not absolve DOJ of its own affirmative misdeeds.

Moreover, DOJ has failed to come to terms with one unassailable fact – there was nothing expedited about how DOJ processed CREW's two FOIA requests, despite the fact that the agency granted CREW's requests for expedition. As a result, CREW was denied that to which it is statutorily entitled: processing of its requests on an expedited basis to ensure that the public gets timely information in a timely fashion.

## FACTUAL BACKGROUND

Because of certain inaccuracies and misleading omissions in the background section of DOJ's Cross-Motion for Summary Judgment ("DOJ's SJM"), CREW submits the following factual supplementation and clarification.[1]

### Civil Division FOIA Request

1. To the extent the Civil Division construed CREW's request as encompassing "virtually every document generated" during the time period January 1, 2001, to June 28, 2005 (the date of the request), DOJ's SJM at 2-3, this interpretation is at odds with the request itself and appears to be a deliberate attempt to inflate its scope. CREW sought records relating to DOJ's proposed penalty in the tobacco litigation and focused specifically on records dealing with "the government's decision to reduce the penalties it is seeking against the tobacco industry from $130 billion to $10 billion." Letter from Anne L. Weismann to James M. Kovakas, June 28, 2005 (Exhibit 19 to Complaint).

2. The Civil Division did not, as DOJ contends, "urge[] plaintiff to 'limit' the scope of

---

[1] In moving for summary judgment on the issue of bad faith DOJ did not comply with LCvR 7 and LCvR 56.1, which require all summary judgment motions to be accompanied by "a statement of material facts as to which the moving party contends there is no genuine issue." Accordingly, there are no facts for CREW to controvert.

the request to accelerate processing," or even make a "recommendation to narrow the scope of its request." DOJ's SJM at 4. Instead, DOJ merely provided CREW with "the opportunity to either limit the scope of your request so that it might be processed within the prescribed time limits *or* arrange an alternative time frame to process these records." Letter from James M. Kovakas to Anne L. Weismann, July 7, 2005 (emphasis added) (Exhibit 20 to Complaint). Moreover, in its response the Civil Division never referred to the volume of responsive documents as "enormous," DOJ's SJM at 4 or consisting of "millions of documents," id. at 3. Instead, the Civil Division referred only to the need to search "a large volume of records." Exhibit 20 to Complaint.

  3. The negotiations between counsel over narrowing the scope of CREW's request concerned CREW's request to the Civil Division, not its FOIA request to OIP. And with respect to those negotiations, when first contacted by DOJ's counsel in early December 2005, CREW made clear that it was not interested in any publicly filed documents. CREW also explained that because the agency had full and unilateral knowledge about its universe of responsive documents, CREW could not meaningfully narrow its request until the Civil Division provided CREW with information about the categories of responsive documents DOJ had. DOJ's repeated refusal to provide this information resulted in a delay in reaching agreement on a narrowed Civil Division request.

  4. Even after CREW agreed to narrow its request to the Civil Division, that Division did not change its position in any way or provide CREW with any responsive documents. Yet, when proposing the limiting language to which CREW ultimately agreed, DOJ's counsel represented that "it would limit our responses *to about 2-3 boxes of material*, as opposed to 8-10 million

3

documents." Email from Lisa Olson to Anne Weismann, December 16, 2005 (emphasis added) (attached as Exhibit H). Notwithstanding this representation, DOJ has continued to insist that the volume of responsive documents is in the millions, not a mere "2-3 boxes."

    5. In denying CREW's request for a fee waiver the Civil Division never said release of the requested documents "would *violate* the deliberative process privilege and work product doctrine," DOJ's SJM at 5 (emphasis added). It said merely that the portions of documents it had reviewed to date – the size of which was not identified – "reflect the deliberative process and work product of agency attorneys and are not subject to disclosure under the FOIA." Exhibit 20 at 2. Indeed, under the policy of former Attorney General Janet Reno, documents subject to the deliberative process privilege and work-product doctrine were presumptively disclosable absent proof of concrete harm from disclosure.

## OIP Request

    1. OIP did not, as DOJ now contends, "explicitly recommend[], as provided for in the statute, that plaintiff 'narrow the scope' of its request in order to 'speed up' OIP's record searches given the large number of potentially responsive records." DOJ's SJM, p. 8. OIP's acknowledgment letter of July 11, 2005 (Exhibit 14 to Complaint) was silent on the number of responsive records, stating only "[b]ecause the records you seek are maintained outside of this Office, we have not been able to complete the searches to determine whether there are records within the scope of your request." As for narrowing, the full text of OIP's remarks is as follows:

> In an effort to speed up our record searches, you may wish to narrow the scope of your request to limit the number of potentially responsive records *or* agree to an alternative time frame for processing, should records be located; *or* you may wish to await the completion of our record searches to discuss either of these options.

Id. (emphasis added).  In short, there was no recommendation whatsoever, just the presentation of three equally viable options.

      2.  OIP claims that it placed its processing on hold while the parties discussed narrowing CREW's FOIA requests.  DOJ's SJM, p. 10.  CREW, however, negotiated a narrowing of only its FOIA request to the Civil Division based on the representations of DOJ's counsel that, as worded, it would encompass 8-10 million documents.  *See* Exhibit H.

      3.  Completely absent from DOJ's description of how OIP processed CREW's FOIA request – either in its brief or the declaration of Melanie Pustay – is any mention of the fact that the Office of the Associate Attorney General ("AAG") initially took a "categorical approach" under which it treated the entirety of its documents as exempt from disclosure, and that this delayed its processing by weeks, if not months.  Yet DOJ characterizes the Pustay Declaration as "detail[ing] every step of the process."  DOJ's SJM at 13.

      4.  Completely absent from DOJ's description of how OIP processed CREW's FOIA request is any indication of the volume of responsive documents in the AAG's Office.  According to OIP, a career attorney in that office initially indicated that the office had "a large number of potentially responsive records," that OIP subsequently retrieved.  DOJ'S SJM at 9.  For unexplained reasons OIP conducted "a more targeted search for relevant documents" in the AAG's Office one month later.  Id. at 10.  And while CREW's request as originally drafted "encompassed over 450 documents" from the offices of the Attorney General, Deputy Attorney General, and Associate Attorney General, id., DOJ has not yet seen fit to tell CREW or the Court how many responsive documents are from the AAG's Office.

**ARGUMENT**

**1. The Recycled Excuses That DOJ Offers To Explain Its Inordinate Delay In Processing CREW's Requests Are No More Valid Now Than They Were When The Court First Rejected Them.**

CREW initially sought discovery in this matter based on DOJ's failure to produce to CREW a single responsive document coupled with the agency's seven-month delay in resolving CREW's fee waiver requests. *See* Plaintiff's Motion for Discovery and Supporting Memorandum of Points and Authorities ("P's Discovery Mem."), p. 14.[2] DOJ resisted the discovery, arguing that its processing of CREW's requests was "routine" and that any delay was attributable solely to CREW. *See generally* Defendant's Opposition to Plaintiff's Motion for Discovery ("DOJ's Discovery Opp."). Specifically, DOJ argued that any delay was due to CREW's failure to pay fees or narrow its "exceedingly broad" request, id at 16, 13-17. DOJ also suggested that CREW delayed invoking its statutory right to sue so that it could "manufacture[] delay" from which to "argue 'bad faith' entitling [CREW] to discovery." Id. at 14 n.5. And DOJ claimed that CREW's filing of its lawsuit caused the agency to delay "an interim response" to CREW's request because "attention was focused on preparing an Answer and coordinating with defense counsel." Id. at 16.

In its Memorandum Opinion and Order of June 1, 2006 ("Mem. and Op."), this Court rejected all of these proffered excuses. With respect to CREW's failure to pay fees, the Court found that "[t]he government can hardly fault CREW for failing to pay and holding up the search

---

[2] DOJ erroneously suggests that CREW sought discovery "based on the hypothesis that high-level officials stalled the processing of their FOIA request," and argues from this that because this hypothesis is false there is no bad faith here. DOJ's SJM at 12. In fact, however, CREW sought discovery because of DOJ's pattern of delay and obfuscation in responding to CREW's FOIA requests. CREW's discovery confirmed the delay and obfuscation and revealed that the problems are agency-wide and within multiple components of DOJ.

process when it actually held up the process by not adjudicating CREW's fee waiver request and appeal in an expeditious manner." Mem. and Op. at 17.  In the Court's words, "[t]he ball was in the government's court with regard to CREW's fee waiver requests and it was the government that took seven months to decide the fee waiver issue." Id. at 18.

With respect to the claimed "extraordinary" nature of the requests the Court noted the government's failure to justify this claim with any evidence or explanation.  Notwithstanding multiple opportunities through briefs, declarations, and two motions hearings, "the government has not presented any comparative evidence at all to demonstrate the extraordinary nature of CREW's requests . . . the paucity of evidence proffered by the government to show otherwise raises a question as to whether the government has been diligent and expeditious in complying with its FOIA obligations." Id. at 16.

Now, in moving for summary judgment on the bad faith issue, DOJ raises the identical excuses for its delay that this Court considered and rejected nearly six months ago.  Now, as then, they are completely unsubstantiated – the government has still not presented any "comparative evidence" or, indeed, any evidence whatsoever.  Instead, DOJ argues now, as it did then, that any delay is due to "the extraordinary breadth of plaintiff's FOIA request," DOJ's SJM at 15,[3] CREW's failure to pay fees, id. at 16-17, CREW's failure to narrow the scope of its

---

[3] DOJ also notes that a requester's failure to limit the scope of its request may justify a stay to allow the agency additional time to process the request.  DOJ's SJM at 16 n.9.  The general availability of an Open America stay merely underscores the unreasonableness of the delay here.  If, despite the agency's due diligence, it could not have responded to CREW's requests as mandated by the FOIA, the agency could have sought a stay and justified it by declarations establishing the existence of exceptional circumstances that prevented the agency from meeting its statutory obligations.  That it did not do so in the face of CREW pressing for an expedited response is a factor this Court should weigh in evaluating the agency's conduct.

request, id. at 18, and CREW's filing of this lawsuit which purportedly interfered with DOJ's preparation of an interim response, id. at 10.  DOJ also insists now, as it did then, that what is at issue is "a short delay that resulted from the ordinary processing of an overboard and unwieldy request," id. at 19, and that throughout DOJ handled the requests "in a routine manner."  Id. at 18.

These recycled excuses have no more validity today than they did six months ago.  It is nothing short of absurd to blame CREW for not pursuing its rights aggressively enough when the record demonstrates that, unlike DOJ, CREW acted promptly in pursuing every available remedy.  Just as significantly, there is still no affirmative evidence in the record to back up DOJ's unsubstantiated claim that this was "routine" processing of an "extraordinary" request.  DOJ relies exclusively on the declarations of James Kovakas and Melanie Pustay which it characterizes as "detailed and nonconclusory, and . . . show[ing] that defendants have acted in good faith."  DOJ's SJM at 15.  The Court has already evaluated these same declarations, however, and concluded that they fail to answer a number of key questions, including why it took the government several months to complete a two-hour search, Mem. and Op. at 10, or why the government waited until mid-January 2006, to advise CREW of the results of the agency's search, id. at 9, 10-11, and that overall they do not demonstrate that CREW's requests were actually handled in an expedited manner or that CREW was "advised of the progress of its requests in a time sensitive matter."  Id. at 12.  DOJ offers no basis for this Court to now conclude otherwise, particularly given that the government's evidence – or lack of evidence – on these key issues remains the same.

Even more disturbing, DOJ ignores altogether the fact that it was supposed to be

processing these requests on an *expedited*, not merely routine basis, and offers nothing to suggest, much less prove conclusively, that it processed CREW's requests "as soon as practicable." 5 U.S.C. §552(a)(6)(E)(iii). Even if DOJ had demonstrated "ordinary processing" – which it most decidedly has not – that would fall woefully short of meeting its obligation to act "as soon as practicable." EPIC v. Dep't of Justice, 416 F.Supp. 30, 39 (D.D.C. 2006). As the district court for the Southern District of New York stated under comparable circumstances,

> [t]he information plaintiffs have requested are matters of significant public interest. Yet, the glacial pace at which defendant agencies have been responding to plaintiffs' requests shows an indifference to the commands of FOIA, and fails to afford accountability of government that the act requires.

American Civil Liberties Union v. Dep't of Defense, 339 F.Supp.2d 501, 505 (S.D.N.Y. 2004). Here, DOJ has also shown an "indifference to the commands of FOIA" with the result that the agency and individuals within the agency, including the AAG, have escaped accountability for their actions.

In sum, the only "extraordinary" thing here was the government's unjustified delay in processing two requests, a delay that deprived CREW of its statutory entitlement to timely information in a timely fashion. The bare facts are that the government consumed seven months to decide fee waiver issues related to expedited requests, has yet to produce a single document, and demonstrably did not act "as soon as practicable," as the FOIA commands.

### 2. CREW Has Come Forward With Affirmative Evidence Of Bad Faith To Which The Government Offers Nothing In Rebuttal.

As set forth more fully in CREW's opening brief, this is not a case of "mere delay." Rather, DOJ made numerous and deeply troubling missteps that, taken as a whole, demonstrate bad faith. First, there is a complete absence of any evidence that DOJ acted "as soon as

practicable" as FOIA commands, and DOJ has never argued otherwise. Instead, DOJ has claimed that its "routine" processing is sufficient.

Second, various individuals within DOJ took affirmative missteps and made critical omissions, all of which added to the extraordinary delay. Mr. Metcalfe, then co-director of OIP and the individual responsible for deciding CREW's fee waiver appeal, was not aware that the matter was expedited until January 2006, six months after CREW filed the appeal. Metcalfe Depo. at 27:18-22. AAG McCallum did not recall his files ever being searched for documents responsive to the requests. McCallum Depo. at 51:3.[4] Likewise Steve Brody, then deputy director of the tobacco litigation team, was never asked to search his records for responsive documents, and neither he nor Mr. McCallum recalled being aware of the requests until the matter was in litigation. Brody Depo. at 27:4-5. The AAG's office initially took a "categorical approach" which meant it conducted no search, but proceeded as if all of its documents were categorically exempt from disclosure. Metcalfe Depo. at 17:13-22, 18:1-2, 19:14-21. This misstep took weeks, if not months, to be corrected. Id.

Discovery revealed an agency run amok, with no checks and balances in place and with the result that processing was delayed by many months. Despite a grant of expedition, OIP never gave the fee appeal the priority it was due, assigning the matter to a senior staffer with

---

[4] In an attempt to justify Mr. McCallum's lack of knowledge or involvement, DOJ suggests it is because the AAG "deliberately recused himself from the process to avoid any implication of interference." DOJ's SJM at 13. This is a blatant mischaracterization of Mr. McCallum's deposition testimony. He recused himself from any involvement in the OPR investigation, including identifying and reviewing documents responsive to OPR's document request. *See, e.g.*, McCallum Depo. at 51:3-7, 52:712. Mr. McCallum did not testify that he recused himself from CREW's FOIA requests and he otherwise had no memory of taking any action whatsoever with respect to processing CREW's FOIA request.

competing responsibilities, all of which appeared to take precedence over the expedited appeal. And with no meaningful review, the agency presumed all responsive documents were subject to exemption and used this as an excuse to deny CREW's requests for fee waivers.

Once this matter was in litigation and subject to the Court's scrutiny the agency fared no better. Counsel offered justifications for the agency's delay that were directly disproved by discovery. For example, DOJ has justified the delay by the purported overbreadth of the requests. Mr. McCallum testified, however, that all of his files on this matter were not only readily accessible but were contained in three or four file folders. McCallum Depo. at 121:18-19. And in negotiations with CREW, DOJ's counsel acknowledged that the Civil Division request, as narrowed, would yield only two or three boxes of documents, not the wildly inflated eight to 10 million documents DOJ initially claimed (and still claims when it serves its purposes). *See* Exhibit H. DOJ justified the merits of its fee waiver denial by the supposedly representative sampling its counsel had reviewed that confirmed the privileged nature of the documents. Discovery revealed, however, that what counsel reviewed was a narrow, under-inclusive subset of documents initially assembled for an entirely different purpose. Brody Depo. at 70:16-17, 71:8-11.

Taken as a whole, these facts reveal a pattern of delay and obfuscation that is properly characterized as bad faith. In arguing to the contrary DOJ relies on cases, none of which involved expedited requests and all of which are readily distinguishable. In <u>Alliance for Responsible CFC Policy v. Costle</u>, 631 F.Supp. 1469 (D.D.C. 1986), cited in DOJ's SJM at 15, the court found that a fee award was not merited on bad faith grounds, because the agency's failure to make a prompt disclosure was justified by "'an unavoidable delay accompanied by due

diligence in the administrative processes.'" Id. at 1470 (citations omitted). The delay here, by contrast, was neither "unavoidable" nor the result of agency "due diligence."

The decision in Republic of New Afrika v. FBI, 645 F.Supp. 117, 122 (D.D.C. 1986), cited at DOJ's SJM at 18, is equally inapposite. There the court found that any agency delay was excused by the plaintiff's own delay in failing to timely pay reproduction costs. Here, as this Court has already found, CREW cannot properly be credited with contributing to the delay. All of the other cases on which DOJ relies[5] are based on the courts' factual findings that what was at issue was mere delay or "sluggishness," unaccompanied by the kind of affirmative evidence of bad faith found here.

While DOJ has yet to offer any affirmative evidence to counter the gaping holes and affirmative evidence of bad faith CREW adduced in discovery, it attempts for the first time to explain away the statistics on which this Court relied and which the government until now has claimed are irrelevant. Relying on Mr. Metcalfe's deposition testimony, DOJ argues that his selective answers to selective questions prove that the time DOJ took to process CREW's requests was, "when calculated properly," "well within the median range noted in those statistics for processing expedited requests." DOJ's SJM at 14.

Mr. Metcalfe's testimony, however, is both unconvincing and misleading. First, DOJ's arguments are based on its assertion that the congressionally-mandated method to calculate response times excludes weekends, holidays, and administrative appeal processing time. Id.

---

[5] They include Goland v. CIA, 607 F.2d 339 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980); Frydman v. Dep't of Justice, 852 F.Supp. 1497, 1508 (D. Kan. 19894); Shores v. FBI, 185 F.Supp. 2d 77 (D.D.C. 2002); and Ellis v. United States, 941 F.Supp. 1068 (D. Utah 1996), and are cited at pp. 18-19 of DOJ's SJM.

DOJ cites to no authority for this proposition, however, beyond the self-serving testimony of Mr. Metcalfe.

Second, DOJ and Mr. Metcalfe in his deposition testimony cherry-pick favorable data, while ignoring the overall trend. Even adopting Mr. Metcalfe's methodology of excluding weekends, holidays, and administrative appeal processing time, the response time of 136 days that it yields is hardly "well within the statistical median" as DOJ now claims. DOJ's SJM at 14. In 2000, the median response time in the Office of the Attorney General ("OAG") was 12 days, in the Office of the Deputy Attorney General ("ODAG") it was nine days, and in the AAG's Office ("OAAG") it was 12 days, for an average median response rate of 11 days. The average median response time for the three offices over the five-year period covered by the report was 93.8 days for the OAG, 66 days for the ODAG, and 59.2 days for the OAAG. Across offices, the median response time averaged 73 days from 2000 to 2004, nearly one-half the time OIP took to process CREW's request, even adopting DOJ's methodology.

With respect to the Civil Division, DOJ now claims that under "the statistical regime established by Congress" the Civil Division responded in a mere six days. DOJ's SJM at 14. Once again there is no citation to support DOJ's methodology which it claims is based on congressional intent. Even more to the point, those six days do not take into account the 200 plus days DOJ consumed in responding to CREW's administrative appeal and DOJ has offered no evidence, statistical or otherwise, that suggests, much less proves, that this time is reasonable by any standards.[6]

---

[6] In deriving these calculations CREW is as hampered as the Court by the lack of evidence as to the nature and volume of individual requests. DOJ has still not come forward with the specific information that is behind the statistics, despite the Court's express frustration

In sum, DOJ's very belated and misleading attempts to explain away its own statistics do not undermine this Court's reliance on those statistics as further evidence of DOJ's unwarranted delay.

## CONCLUSION

For the foregoing reasons and those set forth in CREW's opening brief, the Court should grant CREW's motion for summary judgment on the issue of bad faith and deny DOJ's cross-motion.

Respectfully submitted,

\_\_\_/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Daniel C. Roth
(MA. Bar No. 661021)
Citizens for Responsibility and Ethics
 In Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

Dated: December 1, 2006

---

with the limitations of the unadorned numbers.