UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) ) Plaintiff, ) ) v. ) ) U.S. DEPARTMENT OF JUSTICE, ) ) Defendant. ) ) | Civil Action No. 1:05-cv-02078 |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT[1]**

**INTRODUCTION**

Plaintiff's bloated claims of bad faith boil down to the position that defendant's processing of an enormously broad FOIA request within the median amount of time took too long. Their allegation that there has been a seven-month delay misleadingly conflates numerous steps in a complicated process that took place between July 2005 and January 2006. That process included (1) the completion of the free two-hour searches by the Civil Division and the Office of Information and Privacy ("OIP"), (2) initial decisions by both the Civil Division and OIP as to plaintiff's requests for a fee waiver and expedited processing, (3) plaintiff's appeal to

---

[1] Defendant did not include a statement of material facts not in dispute with its motion for summary judgment because, as indicated in defendant's motion, FOIA does not provide for summary judgment regarding the issue of bad faith or supply any legal standard to apply. However, the undisputed material facts in this case are set forth in the Declarations of James M. Kovakas ("Kovakas Dec.") and Melanie Ann Pustay ("Pustay Dec."), and in the portions of the depositions of Robert D. McCallum ("McCallum Depo."), Daniel Metcalfe ("Metcalfe Depo."), and Stephen Brody ("Brody Depo.") cited in defendant's Memorandum in Support of Defendant's Motion for Summary Judgment Regarding Bad Faith Allegations. Defendant will provide a separate Statement of Material Facts Not In Dispute at the Court's request.

OIP of the Civil Division's initial denial of a fee waiver, (4) OIP's denial of that appeal, (5) plaintiff's appeal of OIP's initial denial of expedited processing, (6) OIP's determination of that appeal as moot, (7) plaintiff's request for expedited processing to the Office of Public Affairs ("OPA"), (8) OPA's decision to grant expedition, (9) OIP's supplemental review of documents in each of the three components based on the January 9, 2006 narrowed FOIA request, (10) OIP's denial of a fee waiver based on that narrowed request, (11) and OIP's decision to withhold one document and make referrals to seven other involved components within the Department of Justice.  Defendant processed plaintiff's FOIA request with timeliness and expedition, and without the slightest hint of bad faith by the two career attorneys handling the request or by anyone else.  To the extent there was any delay, it was due to plaintiff's failure to narrow its excessively broad request when asked, refusal to pay necessary fees for further processing, and pursuit of discovery in lieu of confronting the fee waiver issue so that processing can resume.  Plaintiff's dissatisfaction alone cannot sustain a finding of bad faith, and thus, no such finding should be made here.

Assuming, arguendo, that defendant did act in bad faith (which it did not), the Court could not properly impose any of the sanctions plaintiff seeks.  FOIA waives sovereign immunity for certain sanctions only after a determination that documents have been "improperly withheld."  However, without a resolution of the fee waiver issue, defendant cannot complete its review of responsive documents much less reach a determination about which documents must be withheld under 5 U.S.C. § 552(b).  FOIA does not authorize the imposition of sanctions at this preliminary stage or provide for the types of sanctions plaintiff requests.

For these reasons, as set forth more fully below, plaintiff's motion for summary judgment

should be denied, and defendant's motion should be granted.

## ARGUMENT

**I.     The Processing Of Plaintiff's FOIA Request Was Timely And Expeditious**

Plaintiff argues that defendant's processing of plaintiff's FOIA request was untimely, Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Cross-Motion for Summary Judgment on Issue of Defendant's Bad Faith ("Pl. Brief") at 1, when in fact, it was not untimely, nor was it inordinately delayed given the extreme magnitude of the request. Both the Civil Division and OIP responded promptly to plaintiff's June 28, 2005 FOIA requests, on July 7 and July 11, respectively. Both informed plaintiff that "unusual circumstances" relating to the extraordinary breadth of plaintiff's FOIA request required them to extend the 20-day time limit for determining whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i); id. § 552(a)(6)(B). And both futilely urged plaintiff to take measures, i.e., the payment of fees or narrowing of its request, which would have hastened the processing of its request.

The Civil Division could not continue to process plaintiff's request until plaintiff paid at least a portion of the necessary fees. See 5 U.S.C. § 552(a)(4)(A)(iv)(II). On July 7, the Civil Division notified plaintiff that it had conducted the free, two-hour preliminary search permitted by FOIA and determined that the responsive documents it found were privileged. Complaint Exh. 20. The Civil Division therefore concluded that because the documents could not be publicly released, fees for further processing could not be waived on grounds that their disclosure would enhance the public understanding of government. Id. at 1-2.

Plaintiff was told to advise the Civil Division if it were willing to incur fees so that processing could proceed, and was also informed that the Civil Division could waive fees with

respect to documents that, in the course of further processing, it determined could be released. Id. at 2. In the absence of an agreement to pay, no further action was allowed beyond the statutory entitlement of two hours of search time. 5 U.S.C. § 552(a)(4)(A)(iv)(II); see Pollack v. Dep't of Justice, 49 F.3d 115, 120 (4th Cir. 1995) (finding that when requester refused to commit to pay fees, agency "had the authority to cease processing [his] request"); Daniel v. U.S. Dep't of Justice, No. 99-2423, slip op. at 2 (D.D.C. March 30, 2001) (dismissing complaint for production of records where plaintiff had failed to pay fee after fee waiver was denied) (Exhibit 5), summary affirmance granted, No. 01-5119, 2001 WL 1029156, at *1 (D.C. Cir. Aug. 28, 2001). Even after plaintiff agreed to narrow its FOIA request on January 9, processing could not proceed without plaintiff's payment of fees because the documents responsive to the narrowed request were still too voluminous to process within the two hours of free search time allowed under FOIA. Kovakas Dec. ¶ 7; id. Exh. E. On July 7, 2005, the Civil Division also granted plaintiff's request for expedited processing and urged plaintiff to narrow the scope of its broadly worded FOIA request in order to speed the processing along. Complaint Exh. 20 at 2.

      Similarly, OIP's initial response staff acted promptly on plaintiff's FOIA request, and any alleged delays with respect to OIP's processing were largely due to plaintiff's failure to narrow the broad scope of its request. See Pustay Dec. ¶ 39. The initial request staff quickly notified plaintiff on July 11 that a search for responsive documents would have to be conducted in several different offices, and that plaintiff should narrow its request in order to speed the processing along. Complaint Exh. 14. The exceedingly broad scope of plaintiff's original request made the searches for responsive records daunting and time-consuming. Pustay Dec. ¶ 39. Moreover, the request encompassed hundreds of documents that needed to be referred to other Department of

Justice components.  Id.  If, at any time, plaintiff had narrowed its request, the search for and processing of records would have been significantly faster.  Id.  Ironically, the filing of this lawsuit itself delayed the preparation of an interim response because attention was focused on preparing an Answer and coordinating with defense counsel.  Id.  Throughout the process, plaintiff's request was being handled in a normal manner for expedited requests, and progress was consistently being made throughout that time.  Id.

Defendant handled plaintiff's request with remarkable expedition given the extreme breadth of plaintiff's request.  Plaintiff's own attorney, Sharon Eubanks, the former Tobacco Litigation Team director, warned James Kovakas, who processed the request for the Civil Division, that plaintiff's FOIA request encompassed millions of documents.[2]  Kovakas Dec. ¶ 9.  Ms. Eubanks herself proclaimed that to collect the responsive documents would be time-consuming and yield hundreds of thousands of pages of attorney work product alone.  Kovakas Dec. ¶ 9.  Intermingled with substantive discussions of what remedies the government would propose were many documents that "related" to the proposed penalty but which were non-substantive or procedural in nature.  Id.  If the search were to include all documents "relating in any way" to the government's proposed penalty such as pleadings, draft pleadings, and non-substantive documents mentioning the word "penalty" or "remedy," as plaintiff requested, the result would likely be millions of pages.  Id.

Similarly, for OIP's initial response staff, the request encompassed thousands of

---

[2] Plaintiff sought "all records relating in any way to the government's proposed penalty in United States of America v. Philip Morris, Inc., et al., Civil Action No. 99-2496 (GK) (D.D.C.)," including "records discussing, mentioning, or referring in any way to the government's decision to reduce the penalties it is seeking against the tobacco industry."  Its request therefore spanned litigation that had been pending since September 1999.

documents in the Offices of the Attorney General and the Associate Attorney General, including approximately 62,000 email communications, 300 pages of hand-written notes, 50 pages of electronic files, 100 pages of paper files, and an indeterminate number of calendar entries. Pustay Dec. ¶ 33. It also encompassed materials involving seven other Department of Justice components, for which consultation and referral packages were prepared. Id.

      Despite the enormous volume of documents implicated by plaintiff's request, defendant's processing was well within the median range for processing expedited requests according to the very statistics plaintiff erroneously introduced as proof that it took an excessive amount of time. Metcalfe Depo. at 74:6-21. Defendant did not "sandbag" regarding these statistics, as plaintiff contends. Pl. Brief at 21 n.10. Defendant opposed their introduction on grounds that they are blatantly invalid as a basis for comparison: in accordance with Congress's specifications, they do not take into the account the number of documents being processed in connection with the respective processing times recorded. 5 U.S.C. § 552(e)(1)(E); April 6, 2006 Hearing Transcript at 28-29, 33-36. Therefore, it was potentially unfair to compare an excessively large request like this one, which involves millions of documents, with a median based on the bulk of requests which are much smaller. (Despite the comparative magnitude of plaintiff's request, however, defendant's processing time fell well within the median).

      Ignoring this overriding defect, plaintiff urged these statistics on the Court over defendant's objection, and compounding its error, miscounted the number of days the processing actually took. Once the Court relied on plaintiff's miscalculations, defendant pointed out

plaintiff's error at its first opportunity, during the deposition of Mr. Metcalfe.[3] Plaintiff vigorously objected to the introduction of this evidence -- yet now contradictorily accuses defendant of failing to introduce it sooner, and now perpetuates the error by continuing to rely on its own flawed calculations. Pl. Brief at 11.

Moreover, if plaintiff truly deemed the alleged delay to be unacceptable, it should not have sat on its rights. First, it had the option to sue defendant if it believed records were improperly being withheld. 5 U.S.C. § 552(a)(4)(B). Plaintiff filed its administrative appeal of the Civil Division's decision on July 28, 2005. Pl. Motion at 7. Twenty working-days thereafter, it could have brought suit in district court to challenge the withholding of records and the denial of a fee waiver. 5 U.S.C. § 552(a)(6)(A)(ii). Instead, plaintiff waited until October to invoke its statutory rights and now uses its own delay to argue "bad faith."

Second, plaintiff could have paid fees so that processing could continue beyond the two hours of free search time. 5 U.S.C. § 552(a)(4)(A)(iv)(II). The notion that plaintiff's alleged lack of resources absolves it of the obligation to pay is not only unsupported in FOIA, but is also undercut by the fact that the fees could be reimbursed if a fee waiver were later granted for documents found to be disclosable, or upon the Court's reversal of defendant's denial of a fee waiver. 5 U.S.C. § 552(a)(4)(A)(vii).

Third, plaintiff could have narrowed its FOIA request as defendant repeatedly asked and

---

[3] As indicated at the April 6, 2006 hearing, defendant's primary objection was that the statistics are irrelevant because they do not account for variations in the number of responsive documents. When preparing for Mr. Metcalfe's deposition, it came to the attention of defendant's counsel for the first time that the statistical time periods also did not include weekends or holidays or processing time at the administrative appeal level.

thereby facilitated the processing.  See 5 U.S.C. § 552(a)(6)(B)(ii).[4]  Instead, it filed suit and agreed to narrow the request only afterward, at the insistence of defendant's counsel.  These discussions between counsel in late November and December 2005 put the processing of plaintiff's FOIA request largely on hold until the new parameters of that request were defined.

Contrary to plaintiff's assertions, the information plaintiff seeks under FOIA is not "stale" in any sense of the word.  Pl. Brief at 19.  If that information uncovers a wrongdoing, there is nothing to prevent any alleged wrongdoer from being held accountable in any way that is appropriate.  Moreover, while the information at issue is apparently no longer as newsworthy as plaintiff might like, plaintiff's dissatisfaction does not justify a finding of bad faith.  The purpose of FOIA is not to supply the requester with headline news.  If time were truly of the essence to plaintiff, it would have paid fees so that processing could continue, or at least have sought immediate adjudication of the fee issue, as defendant repeatedly urged, and then litigated the issue of bad faith while the processing of documents proceeded to completion.  Instead, plaintiff backed defendant into a corner where it could not legally proceed with processing, but then was accused of bad faith delay.

Finally, the information sought by plaintiff was not "urgen[tly]" needed by the District Court to fashion a remedy in the tobacco litigation.  Pl. Brief at 9.  That Court had the authority

---

[4] The failure to limit the scope of a request is a factor that may allow for a stay of judicial proceedings in order to allow an agency additional time to process a request.  See 5 U.S.C. § 552(a)(6)(C)(iii) (stating that a requester's "refusal . . . to reasonably modify the scope of a request or arrange for an alternative time frame for processing . . . shall be considered as a factor in determining whether exceptional circumstances exist"); Al-Fayed v. CIA, No. 00-2092, slip op. at 6, 12 (D.D.C. Jan. 16, 2001) (denying discovery and granting additional time to process FOIA request where plaintiffs' ostensible efforts to limit the scope of their requests were "more symbolic than substantive"), aff'd on other grounds, 254 F.3d 300 (D.C. Cir. 2001).

to obtain all the information it needed to make a decision in that case and did not need CREW's assistance. Furthermore, the suggestion that information unearthed by plaintiff's FOIA request might have opened the Court's eyes to the government's alleged political motivations for reducing the remedies the government requested in the tobacco litigation, and might thereby have discouraged the Court from agreeing to those lesser remedies, is misguided. The very reason the government sought reduced remedies was because of the decision by the U.S. Court of Appeals, D.C. Circuit, that prevented the government from seeking higher remedies under RICO for alleged violations by the tobacco companies. McCallum Depo. 15:20 - 17:17; id. 24:5-15; see United States v. Philip Morris USA, Inc., No. 99-2496(GK) (D.D.C.), Aug. 17, 2006 Final Opinion, slip op. at 3 ("Unfortunately, a number of significant remedies proposed by the Government could not be considered by the Court because of a ruling by the Court of Appeals in United States v. Philip Morris, USA, Inc., et al., 396 F.3d 1196 (D.C. Cir. 2005)."); see also U.S. v. Philip Morris USA, Inc., slip op. at 1623 ("Although the Government initially sought $289 billion in disgorgement in this case, Judge Sentelle's majority opinion explained that disgorgement is not an available remedy under [18 U.S.C.] § 1964(a) because it is not forward looking and does not separate the RICO criminal from the enterprise."). In sum, the facts show that defendant processed plaintiff's FOIA request as soon as practicable, and without undue delay.[5]

---

[5] Plaintiff's reliance on EPIC v. Dep't of Justice, 416 F. Supp. 2d 30 (D.D.C. 2006), for the proposition that defendant failed to act "as soon as practicable" and therefore acted in bad faith, Pl. Brief at 8, is misplaced. First, despite allegations of delay, EPIC did not involve any finding of bad faith. Second, the plaintiff in EPIC filed suit just a month after submitting its FOIA request. Here, by contrast, plaintiff waited for months to file suit and now demands the relief afforded by a preliminary injunction without proving it meets the standards for such "extraordinary" relief, see EPIC, 416 F. Supp. 2d at 36. Third, what is preventing the production

**II.     There Was No Bad Faith**

The two career Department of Justice attorneys from the Civil Division and the Office of Information and Privacy who are responsible for processing plaintiff's request have provided declarations explaining their general search methodology and the search for records conducted in this case. See Voinche, 2006 WL 177399, at *9. Those declarations are detailed and nonconclusory, and they show that defendants have acted in good faith. See Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (stating that agency affidavits must be "'relatively detailed and non-conclusory, and submitted in good faith'"). Defendant's declarations are entitled to a presumption of good faith that cannot be rebutted by mere speculation, Safecard, 926 F.2d at 1200; Voinche, 2006 WL 177399, at *9 (indicating that the plaintiff must present "actual evidence" refuting agency statements rather than "mere assertions"); Physicians' Comm. for Responsible Medicine v. Glickman, 117 F. Supp. 2d 1, 4 (D.D.C. 2000) (indicating that reliance on affidavits is appropriate if they "'are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith'") (quoting Military Audit Project v. Casey, 656 F.2d at 738

---

of non-exempt documents in the present case is not the alleged failure to specify a time line for processing, as in EPIC, but rather, plaintiff's failure to pay fees. Defendant is ready and willing to move forward with further expeditious processing of plaintiff's FOIA request but cannot do so at the taxpayers' expense unless ordered by the Court. Fourth, plaintiff has omitted to point out that EPIC was modified by a subsequent Order (attached) which extended the defendant's deadlines to respond by many months. Thus, the defendant in EPIC was allowed approximately seven months (from December 16, 2005, until approximately July 8, 2006) to respond to a FOIA request which there is no indication involved the number of documents that are responsive to CREW's request.

The one way in which EPIC is relevant to this case is that it demonstrates that, contrary to plaintiff's suggestion, its FOIA request is not necessarily of greater importance than any other expedited request and should not necessarily be given a higher priority. See Pl. Brief at 8; see also id. at 20 (requesting immediate release of all non-exempt material).

(D.C. Cir. 1981)); Kay v. FCC, 976 F. Supp. 23, 34 (D.D.C. 1997) (holding that plaintiff's "so-called 'evidence'" of bad faith was too speculative and conclusory to offer a "concrete basis" for a finding of bad faith).

Moreover, even if a delay did occur in the processing of plaintiff's FOIA request, delay by itself is not evidence of bad faith. Goland v. CIA, 607 F.2d 339, 355 (D.C. Cir. 1978) ("[T]he [agency's] delay alone cannot be said to indicate an absence of good faith."), cert. denied, 445 U.S. 927 (1980); see also Republic of New Afrika, 645 F. Supp. at 122 (ruling that "to prove bad faith a plaintiff must show that the government purposefully withheld FOIA documents, not that it merely delayed in producing them"); see Frydman v. Dep't of Justice, 852 F. Supp. 1497, 1508 (D. Kan. 1994) (finding that eight-month delay in disclosing document after it was discovered demonstrated sluggishness but not bad faith), aff'd, 57 F.3d 1080 (10th Cir. 1995); Shores v. FBI, 185 F. Supp. 2d 77, 86 (D.D.C. 2002) (holding that two-year delay in the processing of document request was not unreasonable); Ellis v. United States, 941 F. Supp. 1068, 1074 (D. Utah 1996) (finding no evidence that agency purposefully delayed its FOIA response when it took ten months to produce documents).

Yet speculation and bare assertions of delay are all plaintiff offers here. While defendant may not have processed plaintiff's FOIA request as expeditiously as plaintiff desired, there is not a shred of evidence that Ms. Pustay, Mr. Kovakas, or anyone else acted in bad faith. Indeed, plaintiff did not depose either of the declarants even though they are the only individuals with first-hand knowledge of how the request was processed. Furthermore, there is no evidence whatsoever that either Mr. Kovakas or Ms. Pustay was influenced by anyone or anything to delay the processing in bad faith.

Plaintiff makes four meritless arguments in support of its claim that defendant acted in bad faith.  First, plaintiff perversely suggests that bad faith can be inferred from the fact that Mr. McCallum was <u>not</u> involved in processing plaintiff's FOIA request.  Pl. Brief at 14.  It is only according to plaintiff's own imaginings, however, that Mr. McCallum is "at the center" of this controversy.  Pl. Brief at 14.  Processing FOIA requests involving the Office of the Associate Attorney General was not Mr. McCallum's job, but rather, was the responsibility of Melanie Pustay, Deputy Director of OIP at the Department of Justice.  Pustay Dec. ¶ 1.  Mr. McCallum properly and deliberately recused himself from the matter to avoid any implication of interference.  McCallum Depo. at 51:3-7; 52:7-12; 56:11-16; 81:17 - 82:4; 83:13-84:3.  He delegated responsibility for interfacing with OIP to two staff attorneys in his office.  <u>Id.</u> at 51:3-7; 52:7-20; 56:11-16; 81:17 - 82:4; ; <u>see</u> Pustay Dec. ¶¶ 14, 21, 25-26.  Plaintiff's suggestion that Mr. McCallum's recusal somehow prevented his files from being searched, Pl. Brief at 14, is simply false.  Mr. McCallum gave the staff attorneys (and Ms. Pustay, <u>see</u> Pustay Dec. ¶ 31) complete access to everything in his files as well as his computer system.  McCallum Depo. at 53:6-14.[6]

Second, plaintiff erroneously argues that in responding to the FOIA request, the Associate

---

[6] Because Mr. McCallum was not involved in the processing of plaintiff's FOIA request, it is irrelevant whether he recalls his files being searched, <u>see</u> Pl. Brief at 14, and his lack of recollection certainly does not prove that the files were not searched or will not be searched once the fee waiver issue is adjudicated.

In addition, there is no requirement that particular files be searched during the two hours of free search time, 5 U.S.C. § 552(a)(4)(A), as plaintiff suggests.  Pl. Brief at14.  Therefore, the fact that Mr. McCallum's files may not yet have been searched does not warrant an inference of bad faith.  If plaintiff wanted Mr. McCallum's files reviewed, it should have paid the fees for defendant to complete the processing (for which, again, plaintiff could later be reimbursed if a fee waiver is ultimately deemed warranted).

Attorney General's Office initially took an allegedly "illegal" categorical approach by which it treated the documents in Mr. McCallum's litigation file as generally exempt from disclosure rather than potentially reviewing each document individually. Pl. Brief. at 15. There was no illegality or impropriety whatsoever in that Office's response to plaintiff's request. Ms. Pustay was responsible for processing the request, and the staff attorneys followed her instructions regarding how to proceed. Metcalfe Depo. at 22:8-12. Moreover, a "categorical" approach, even if followed, would have been reasonable, since it can reasonably be assumed that documents gathered by Mr. McCallum for purposes of assisting with the tobacco litigation would be exempt from disclosure as work product or deliberative process information. Indeed, plaintiff's attorney Sharon Eubanks, as the former Director of the Tobacco Litigation Team, took exactly the same type of "categorical" approach when she advised Mr. Kovakas at the outset that the non-public documents responsive to plaintiff's FOIA request consisted of attorney work product, Kovakas Dec. ¶ 9, and internal, deliberative communications, id. ¶ 13.

  Third, plaintiff suggests that bad faith can be inferred from the fact that Stephen Brody and the Tobacco Litigation Team played no role in processing the FOIA request. As with Mr. McCallum, however, it was not Mr. Brody's responsibility or that of the tobacco team members to process FOIA requests. Rather, their responsibility was to conduct the tobacco litigation. Kovakas Dec. ¶ 8. It was, however, James Kovakas' official duty as the Attorney-In-Charge of the Freedom of Information and Privacy Acts Office of the Civil Division to process the request for the Civil Division, of which the tobacco litigation team is part. Kovakas Dec. ¶ 1; Brody Depo. at 75:15-16; 76:9-11.

  In carrying out his duties, Mr. Kovakas did consult with the then-Director of the Tobacco

Litigation Team, Sharon Eubanks (who is now plaintiff's attorney) for advice regarding the scope of documents responsive to plaintiff's request.  Kovakas Dec. ¶ 9.  Ms. Eubanks identified a smaller pool of documents for Mr. Kovakas to review dating from May 2005 relating to remedies sought by the government, and/or to alleged changes in the government's position on remedies. Kovakas Dec.¶ 11.  Mr. Kovakas reviewed some of these documents and reached the same conclusion as Ms. Eubanks, i.e., that these, and most likely the remaining responsive documents, reflected deliberative process and work product of agency attorneys and were exempt pursuant to 5 U.S.C. 552(b)(5).  Kovakas Dec. ¶¶ 13-15.[7]

Fourth, plaintiff erroneously argues that the Court's order allowing discovery on the basis of alleged delay should have prompted a review by the Department of Justice of its FOIA processing procedures.  As defendant has already shown, the Court's order was based on statistics that plaintiff misleadingly and mistakenly portrayed as showing that the processing time for plaintiff's request exceeded the median.  In fact, the processing time was well within the median and was not excessive, especially when the enormous volume of responsive documents is taken into account.  Metcalfe Depo. at 71:11-22; 72:7-19, 73:19020; 74:6-21.  Therefore, there would have been no reason for defendant to examine its FOIA processing procedures for unwarranted delay.

---

[7] Mr. Brody's contact with defense counsel in this litigation regarding a representative sample of documents is a red herring.  See Pl. Brief at 16.  That attorney-client interaction in the instant litigation is completely unrelated to the processing of plaintiff's FOIA request by the Civil Division and OIP, nor was undersigned defense counsel "affirming" the conclusion of the Civil Division (and plaintiff's own attorney Eubanks) that the documents in question are largely exempt.  Pl. Brief at 17.  Undersigned counsel obtained documents from Mr. Brody solely for the discretionary purpose of familiarizing herself with the types of documents at issue in this litigation.

**III.     The Sanctions Plaintiff Seeks Are Not Available Under FOIA**

Plaintiff seeks sanctions in the form of an order requiring the immediate release of all non-exempt material, an injunction preventing defendant from "practice[s] of delay," and an award of costs and fees. As an initial matter, the Court could not order an immediate release of non-exempt material absent an adjudication of the fee waiver decisions. Nor should the Court enter an injunction instructing the agency to, in essence, follow the law, as such injunctions are routinely disallowed by the courts. See, e.g., Glover Const. Co., Inc. v. Babbitt, 172 F.3d 878 (Table), 1999 WL 51784, *2 (10th Cir.1999) (stating that where "injunctive relief is nothing more than an artfully phrased prayer for the court to require [defendant] to obey the law in the future[,][s]uch injunctions are not appropriately issued"); Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 51 (2d Cir.1996) (stating that "an injunction must be more specific than a simple command that the defendant obey the law"); Hughey v. JMS Dev. Corp., 78 F.3d 1523, 1531 (11th Cir.1996) (noting that "appellate courts will not countenance injunctions that merely require someone to 'obey the law'") (quoting Payne v. Travenol Labs., Inc., 565 F.2d 895, 897-98 (5th Cir.), cert. denied, 439 U.S. 835 (1978)); Louis W. Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 771 (3d Cir.1994) (stating that an injunction "that merely enjoins a party to obey the law . . . does not give the restrained party fair notice of what conduct will risk contempt" and is therefore improper); Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd., 824 F.2d 665, 669 (8th Cir.1987) (stating that "an injunction that essentially requires a party to obey the law in the future is not encouraged"). See generally Fed. R. Civ. P. 65(d) (requiring that an injunction "be specific in terms" and "describe in reasonable detail . . . the act or acts sought to be

restrained").[8]

Finally, monetary sanctions cannot be imposed against the government absent an applicable waiver of sovereign immunity, and even then, FOIA does not provide such a waiver for the particular sanctions plaintiff seeks. It is axiomatic that the United States is immune from suit absent a statutory waiver of sovereign immunity. Lane v. Pena, 518 U.S. 187, 192 (1996). Such waivers must be "unequivocally expressed" in statutory text and "not enlarged beyond what the language requires." United States v. Nordic Village, Inc., 503 U.S. 30, 33–34 (1992). "[W]hen Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." Block v. North Dakota, 461 U.S. 273, 287 (1983).

In keeping with these principles, the Supreme Court has also recognized that sovereign immunity bars awards of attorney fees and costs against the government, except insofar as that immunity has been waived. Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983). Moreover, because "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text," Lane, 518 U.S. at 192, provisions authorizing sanctions generally "do[ ] not automatically waive sovereign immunity, and thus do[ ] not apply, without more, to fee awards against the government," In re Graham, 981 F.2d 1135, 1139 (10th Cir. 1992).

---

[8] Payne Enters., Inc. v. United States, 837 F.2d 486, 493 (D.C. Cir. 1988), on which plaintiff relies Pl. Brief at 19, is easily distinguishable from the present case and does not support the imposition of sanctions here. Payne involved a pattern or practice of repeated, specific misconduct by Air Force officers who continued to withhold information despite the repeated orders of the Secretary on appeal that it be released, thereby also presenting the prospect of recurring violations in the future. By contrast, in the present case plaintiff heard from each of defendant's components in a matter of days, and defendant is ready and willing to proceed with the processing of plaintiff's FOIA request, to make determinations as to exempt material, and to release all non-exempt documents.

The reason that a court cannot order a payment of moneys by the government without an act of Congress is as straightforward as it is fundamental: by the Constitution's explicit command, "[n]o money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ." U.S. Const., art. 1, § 9, cl. 7; see In Re North, 62 F.3d 1434, 1435 (D.C. Cir. 1994). As a result, the constitutional text itself forbids "a court [to] authorize payment from the Treasury [absent] congressional authorization." In Re North, 62 F.3d at 1436.[9]

FOIA does not waive the government's sovereign immunity for an injunction requiring the immediate release of all non-exempt documents and a general injunction against "inexcusable delay," as plaintiff asks  While FOIA does contain a waiver of sovereign immunity for certain violations of its provisions, that waiver is carefully cabined and is inapplicable to plaintiff's request. Specifically, FOIA provides that upon the filing of a complaint, a district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). In making this determination, the court may examine the records to determine whether they shall be withheld under any of the exemptions of 5 U.S.C. § 552(b). 5 U.S.C. § 552(a)(4)(B). In addition, where the district court determines that agency records have been improperly withheld, it may assess attorney fees and costs against the United States. 5 U.S.C. § 552(a)(4)(E). When

---

[9] While a court's inherent authority includes the power to assess attorneys' fees or other monetary fines against either parties or their attorneys, Chambers v. Nasco, Inc., 501 U.S. 32, 49 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-67 (1980), this power is limited by the doctrine of sovereign immunity, United States v. Horn, 29 F.3d 754, 764-67 (1st Cir. 1994); United States v. Waksberg, 881 F. Supp. 36, 41 (D.D.C. 1995), vacated on other grounds, 112 F.3d 1225 (D.C. Cir. 1997). Put simply, "the doctrine of sovereign immunity prevails over inherent judicial power." Waksberg, 881 F. Supp. at 41. This is because "[s]overeign immunity can only be curtailed pursuant to the exercise of legislative, not judicial power." Id. at 5.

the court does so, and additionally issues a written finding that the "agency personnel acted arbitrarily and capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding." 5 U.S.C. § 552(A)(4)(F).

By its plain terms, therefore, the waiver of sovereign immunity contained in FOIA is applicable only where it is determined that an agency has not properly <u>withheld</u> records. Since defendant has been prevented from completing the processing of plaintiff's FOIA request, it has not yet answered the question of which documents must be withheld pursuant to any of FOIA's exemptions. The Civil Division has performed the initial free two-hour search and determined that plaintiff must pay fees before any further processing can continue. OIP has withheld one document so far and can proceed no further until the question of the fee waiver is adjudicated. assuming plaintiff wishes to challenge defendant's denial of a fee waiver. Once that issue is resolved, defendant can resume its review of the documents and determine which are exempt from disclosure pursuant to 5 U.S.C. § 552(b). Only at that point can injunctive relief in the form of an order to release particular documents, and attorney fees and costs, properly be considered if the Court concludes that defendant has improperly withheld records. At this preliminary stage of the case, however, no sanctions can properly be imposed for the improper withholding of records.

## CONCLUSION

For these reasons, in addition to those stated in defendant's motion for summary judgment and supporting memorandum, defendant's motion should be granted, and plaintiff's motion for summary judgment should be denied.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | JEFFREY A. TAYLOR<br>United States Attorney |
|  | **/s/ Lisa A. Olson**<br>ELIZABETH J. SHAPIRO<br>LISA A. OLSON (D.C. Bar #38266)<br>U.S. Department of Justice<br>20 Mass. Ave., N.W., Room 7300<br>Washington, D.C. 20530<br>Telephone: (202) 514-5633<br>Telefacsimile: (202) 616-8470<br>E-mail: lisa.olson@usdoj.gov |
| Dated: Dec. 1, 2006 | Counsel for Defendant |