# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
CITIZENS FOR RESPONSIBILITY AND    :
ETHICS IN WASHINGTON              :
                                     :
        Plaintiff,              :
                                     :
      v.                      :   Civil Action No. 05-2078 (EGS)
                                     :
U.S. DEPARTMENT OF JUSTICE      :
                                     :
        Defendant.          :
_____:

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON
## PLAINTIFF'S ENTITLEMENT TO A FEE WAIVER

### STATEMENT

As a scandal was unfolding about how and why the government reduced by more than

90% the penalty it was proposing for the many years of misconduct by the tobacco industry,

plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed two Freedom of

Information Act ("FOIA") requests with defendant U.S. Department of Justice ("DOJ") seeking

the truth behind the government's actions.  The controversy generated by DOJ's announcement

that rather than $130 billion in damages it was seeking $10 billion in damages cannot be

overstated.  Senator Richard Durbin of Illinois, for example, accused DOJ of "selling out the

American people."[1]  By all appearances, the government's proposal was the product of political

pressure applied to career DOJ attorneys to protect the financial interests of tobacco companies

that had provided generous campaign contributions.  See id.

_____

[1] See Myron Levin and Richard Simon, Lawmakers Demand Investigation in Tobacco
Case, _Los Angeles Times_, June 9, 2005 (Exhibit 1 to Complaint).

Accordingly, CREW's FOIA requests sought documents related to the government's proposed penalty, documents reflecting contacts between DOJ's senior leadership offices and the White House and documents reflecting contacts between then Associate Attorney General Robert McCallum and his former law firm, which represents tobacco company interests.  CREW also sought a waiver of fees based on the fact that its requests unquestionably pertain to and will reveal meaningful information about the operations and activities of the federal government.

After months of delay and obfuscation, DOJ finally denied the fee requests based on its preliminary assessment that the requested records are "virtually inherently protected" by privilege and therefore properly exempt from disclosure.  Accordingly, DOJ refused to process CREW's requests further unless and until CREW committed to paying thousands of dollars.

In the interim, plaintiff moved for summary judgment on the issue of the government's bad faith, demonstrating that all of DOJ's actions in processing CREW's requests are so highly suspect as to rise to the level of bad faith.  DOJ's denial of CREW's fee waiver requests was just one more obstacle the government put in CREW's way to prevent the public from learning the true rationale behind the government's radical change in position on the appropriate penalty for the tobacco companies' years of illegal and harmful conduct.  While this issue has now taken a back seat to the countless scandals that have followed -- both within and outside of the Department of Justice -- CREW is still entitled to a fee waiver for the processing of its two FOIA requests.

## STATUTORY AND REGULATORY BACKGROUND

The FOIA requires each agency to promulgate regulations specifying a fee schedule for the processing of FOIA requests and establishing procedures and guidelines for the waiver or

reduction of fees.  5 U.S.C. §552(a)(4)(A).  The FOIA further provides that responsive

documents

> *shall be furnished* without any charge or at a charge reduced
> below the fees established under [agency regulations] . . . if
> disclosure of the information is in the public interest because
> it is likely to contribute significantly to public understanding
> of the operations or activities of the government and is not
> primarily in the commercial interest of the requester.

Id. at § 552(a)(4)(A)(iii) (emphasis added).

DOJ regulations mirror the FOIA and provide that responsive records "*will be furnished*

without charge" "based on all available information" where the requester demonstrates that

disclosure "is likely to contribute significantly to public understanding of the operations or

activities of the government" and is not "primarily in the commercial interest of the requester."

28 C.F.R. § 16.11(k) (emphasis added).  Specifically, DOJ components  must consider four

factors in granting or denying requests for fee waivers:

> (I) Whether the subject of the requested records concerns
> 'the operations or activities of the government.' . . . ii) The
> informative value of the information to be disclosed:  Whether
> the disclosure is 'likely to contribute' to an understanding of
> government operations or activities . . . (iii) The contribution
> to an understanding of the subject by the public likely to result
> from disclosure:  Whether disclosure of the requested information
> will contribute to 'public understanding.' . . . (iv) The significance
> of the contribution to public understanding:  Whether the disclosure
> is likely to contribute 'significantly' to public understanding of
> government operations or activities . . .

Id. at (I)-(iv).  Courts review agency fee waiver denials under a *de novo* standard of review.  5

U.S.C. § 552(a)(4)(A)(vii).

**FACTUAL BACKGROUND**

This case arises out of FOIA requests CREW sent to two components of DOJ -- the Civil Division and the Office of Information and Privacy ("OIP") -- on June 28, 2005.  CREW's request to the Civil Division sought all records "discussing or mentioning in any way any penalty that the U.S. Department of Justice, on behalf of the plaintiff United States of America, can, may, should or will propose" in the then-pending tobacco litigation, U.S. v. Philip Morris, 99cv2496 (D.D.C.).  See Exhibit 19 to Complaint.  CREW also sought all records relating to any offers of settlement from tobacco companies, among others.  Id.

CREW's request to OIP sought records from DOJ's senior leadership offices -- the attorney general, the deputy attorney general and the associate attorney general -- "discussing, mentioning, or referring in any way to the government's decision to reduce the penalties it is seeking against the tobacco industry . . ."  See Exhibit 13 to Complaint.  CREW's request of OIP also sought "all records relating in any way to any offer of settlement" in the tobacco litigation. Id.  Finally, CREW sought "records of any contacts between Associate Attorney General Robert D. McCallum and the law firm Alston & Bird concerning in any way the tobacco lawsuit."  Id.

For both requests CREW sought a waiver of all fees as well as expedited processing.  See Exhibits 13 and 19 to Complaint.  CREW explained its ability and intention to disseminate to the public its analyses of the records sought through its FOIA requests.  See id.  CREW also explained that the requested documents are "likely to contribute to the public's understanding of the individuals and organizations that influence or attempt to influence the litigating position of the United States of America in a lawsuit of major and far-reaching consequences."  Id.

4

**DOJ's Handling of CREW's Request of OIP**

In a boilerplate letter dated July 11, 2005, OIP stated that it had not yet made a decision on CREW's request for a fee waiver and would do so "after we determine whether or not fees will be assessed for this request." Exhibit 14 to Complaint. While claiming that it would be initiating searches in the three senior leadership offices, OIP suggested that CREW could narrow its request to speed up the record searches, agree to a different time frame, or choose to "await the completion of our record searches to discuss either of these options." Id.

OIP did not act on CREW's fee waiver request until seven months later, on January 19, 2006. See Letter from Melanie Ann Pustay to Anne Weismann, January 19, 2006 ("OIP Letter of Jan. 19, 2006") (attached as Exhibit 1). At that point, despite the fact that CREW had narrowed its request of OIP significantly, excluding Court filings and other correspondence and narrowing the parameters of the request, OIP denied the fee waiver request on two grounds. First, OIP claimed that CREW's justification for its request for a fee waiver was "too ephemeral" and not backed by evidence that any individual or organization had attempted to influence the government's litigating position -- the very evidence CREW is seeking through its FOIA request. Id. Second, OIP asserted that, based on its review of some unidentified number of documents, the records CREW seeks are "virtually inherently protected" by privilege and therefore exempt from disclosure. Id.

OIP also claimed, based on the two hours of free search time per component to which CREW was deemed entitled as a "non-media, non-commercial requester" (or a combined search time of six hours), that OIP had located a total of five documents comprising 20 pages. Id. OIP withheld one unidentified document in full as subject to the attorney-client, work-product, and

deliberative process privileges, and referred the remaining documents to other DOJ components. OIP Letter of Jan. 19, 2006. OIP also announced that it was unable to complete its search of the AAG's office. Id.

### DOJ's Handling of CREW's Request of the Civil Division

The Civil Division acknowledged receipt of CREW's FOIA request on July 7, 2005, granted CREW's request for expedition, but denied CREW's request for a fee waiver on the ground that the documents were exempt from disclosure under FOIA Exemption 5. See Exhibit 20 to Complaint. According to the Civil Division, "[t]he government activity at issue in this instance is the government's prosecution of the tobacco litigation. *We have reviewed a portion of the documents responsive to your request* and . . . the documents . . . reflect deliberative process and work product of agency attorneys . . . Accordingly, a waiver of fees is therefore not appropriate." Id. (emphasis added). The Civil Division noted further that it was continuing to search for, collect and review responsive documents. Id.

Four days later, on July 11, 2005, CREW filed an appeal with OIP from the Civil Division's fee determination.[2] Exhibit 21 to Complaint. OIP acknowledged receipt of CREW's appeal by letter dated July 28, 2005, and promised to notify CREW "of the decision on your appeal as soon as we can." Exhibit 22 to Complaint.

This promise was not fulfilled until over six months later when, by letter dated January 23, 2006, OIP advised CREW that it was denying CREW's July 11, 2005 appeal of the Civil Division's July 7, 2005 fee determination. Letter from Daniel J. Metcalfe to Anne L. Weismann,

---

[2] OIP is the component within DOJ with responsibility over all administrative appeals arising from FOIA requests to any component of DOJ.

January 23, 2006 ("OIP Letter of Jan. 23, 2006") (attached as Exhibit 2). First, OIP

characterized the Civil Division's denial as "a partial fee waiver determination" based on the

Civil Division's three-hour "preliminary search." Id. OIP upheld the fee waiver denial as to the

limited volume of records that the Civil Division had already located and reviewed, concluding

that because the releasable portions are already part of the public court record they do not qualify

for a fee waiver. Id. At the same time OIP acknowledged that CREW is not seeking "publicly

available information." Id. OIP specifically refused to assess CREW's fee waiver "on the basis

of the face of the request," reasoning that to do so would leave DOJ "without recourse to demand

payment" should it subsequently determine "that the requested records are properly exempt from

disclosure." OIP Letter of Jan. 23, 2006. Finally, OIP stated that it would not assess whether

any of the tens of thousands of potentially responsive documents could be disclosed unless and

until CREW committed to paying fees. Id.

### Recent Procedural History Of This Litigation

On June 1, 2006, following full briefing and two hearings, the Court issued a

Memorandum Opinion and Order granting plaintiff's motion for discovery on the issue of

whether DOJ acted in bad faith in delaying its processing of CREW's FOIA requests. Once

discovery was completed the parties cross-moved for summary judgment on the question of

whether DOJ acted in bad faith in failing to comply with its obligations under FOIA. Briefing

on these motions has been complete since late December 2006.

On March 31, 2008, the Court issued a minute order directing the parties to brief the

issue of plaintiff's entitlement to a fee waiver. The Court concurrently denied the pending

motions for summary judgment without prejudice to refiling pending resolution of the fee waiver

issue.

## ARGUMENT

**PLAINTIFF HAS DEMONSTRATED AS A MATTER OF FACT
AND LAW THAT IT IS ENTITLED TO A WAIVER OF FEES
FOR THE PROCESSING OF ITS FOIA REQUESTS.**

There is no serious dispute that the FOIA requests at issue are not in CREW's

commercial interests and pertain to the operations and activities of the federal government.

Instead, the gravamen of DOJ's fee waiver denials is its speculation that because many of the

requested documents are likely to be exempt from disclosure, CREW is not entitled to a fee

waiver initially.  According to DOJ, CREW must pay thousands of dollars up front before DOJ

even makes a decision regarding possible exemptions and if CREW does not concur with DOJ's

unilateral decision on exemptions it must then incur the additional expenses of litigation.  This

conclusion has no basis in fact or law and, if accepted, would have adverse consequences for all

FOIA requesters and the general public not contemplated by the FOIA itself.  The danger is

particularly acute in cases like this one, where the evidence points to a bad-faith effort by the

agency to delay in hopes of avoiding the accountability that comes with public disclosure.

### A.  The Records CREW Seeks Pertain To The Operations And Activities Of The Government.

CREW seeks records related directly to DOJ's litigation of a high-profile civil lawsuit,

the outcome of which will directly impact the public and public health issues, and that will

reveal the conduct of senior DOJ officials and the extent to which they were subject to political

pressures in the litigation decisions they made.  Accordingly, CREW's requests plainly concern

the operations or activities of the federal government and satisfy fully DOJ regulations, 28

C.F.R. § 16.11(k)(2)(I).[3]  See, e.g., Physician's Comm. v. Dep't of Health and Human Services, 480 F.Supp.2d 119, 123 (D.D.C. 2007) (FOIA request for records relating to federal interagency committee's examination of alternative methods of medical testing "plainly pertain[s] to federal government operations or activities").

### B.  Disclosure Of The Records Plaintiff Seeks Is "Likely To Contribute" To An Understanding Of Government Operations Or Activities.

CREW also fully satisfies 28 C.F.R. § 16.11(k)(2)(ii).[4]  The records CREW requests are "likely to contribute" to an  understanding of government operations or activities, specifically why DOJ decided to reduce the penalties it was seeking in its tobacco litigation from $130 billion to $10 billion.  This conclusion is underscored by the delaying tactics DOJ has used in this matter, tactics that rise to the level of bad faith and were seemingly designed to prevent CREW and the public from learning the truth behind the sudden and unexplained change in the government's litigating position.  Under these circumstances, there can be no serious dispute that the records CREW seeks are likely to contribute to an  understanding of government operations or activities.

---

[3]  28 C.F.R. § 16.11(k)(2)(I) provides in pertinent part that to be eligible for a fee waiver, "[t]he subject of the requested records must concern identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated."

[4] 28 C.F.R. § 16.11(k)(2)(ii) provides in pertinent part that "[t]he disclosable portions of the requested records must be meaningfully informative about government operations or activities in order to be 'likely to contribute' to an increased public understanding of those operations or activities.  The disclosure of information that already is in the public domain, in either a duplicative or a substantially identical form, would not be as likely to contribute to such understanding where nothing new would be added to the public's understanding."

**C.  The Records Plaintiff Seeks Will Contribute To The Understanding Of A "Reasonably Broad" Audience Of Persons Interested In The Defendant's Conduct Of The Tobacco Litigation.**

The documents CREW has requested will contribute to the understanding of a "reasonably broad" audience of persons interested in the defendant's conduct of the tobacco litigation, and accordingly CREW satisfies of 28 C.F.R. § 16.11(k)(2)(iii).  That regulation provides, in pertinent part, that "a requester's expertise in the subject area and ability and intention to effectively convey information to the public shall be considered."

As noted in CREW's original FOIA requests, and not disputed by DOJ, CREW has an established record of disseminating to the pubic the records it seeks through the FOIA as well as its analyses of those records.  See Exhibits 13 and 19 to Complaint.  CREW uses the internet for these purposes and, as necessary corollary, the requested information will be accessible to a "broad" audience of people.  Id.

**D.  The Records Plaintiff Seeks Will Contribute Significantly To Public Understanding Of The Individuals And Organizations That Influenced Or Attempted To Influence The Government's Litigating Position In The Tobacco Litigation.**

The fourth factor -- the extent to which the requested records will contribute "significantly to public understanding of government operations or activities," 28 C.F.R. § 16.11(k)(2)(iv) --  is satisfied here.  It cannot seriously be debated that the public understanding of the degree to which DOJ's litigating decisions in the tobacco litigation were influenced by outside entities and political considerations will be enhanced significantly by the records CREW seeks.  The tobacco litigation represents a watershed action by the government and DOJ's abrupt and unexplained change in the penalty it was seeking will ultimately have a direct and detrimental effect on the public.  For example, DOJ's litigation change translated into vastly

10

reduced amounts of money for smoking cessation programs and public education about the dangers of smoking.  The government's shift was so sudden and so unexpected that it led to widespread speculation that it was the product of undue influence by an administration that was captive to the tobacco industry.  Unquestionably, the public understanding will be enhanced significantly by learning the true basis for the government's decision and that is all that the FOIA and DOJ regulations require.

DOJ, in denying CREW's fee waiver requests administratively, concluded that this standard was not met based on the agency's prediction of what "the substantive content of the disclosable portions of the records." would reveal.  OIP Letter of Jan. 19, 2006, p. 2 (emphasis in original).  According to DOJ, it must make its fee waiver determination not on the face of CREW's FOIA requests, but rather on what records DOJ predicts -- without having processed the request or reviewed specific documents -- will not be subject to exemption.  Id.; see also OIP Letter of Jan. 23, 2006, pp. 2-3.  OIP's complete inversion of the fee waiver process, however, has no support in law and cannot be reconciled with a commonsense reading of the FOIA.

In a line of decisions dating back nearly 30 years, the courts in this district have held that potential claims of exemption do not dictate the outcome of an agency's fee waiver determination under the FOIA.  For example, in S. Utah Wilderness Alliance v. U.S. Bureau of Land Mgmt., 402 F.Supp.2d 82 (D.D.C. 2005), the court found that the agency had improperly denied a fee waiver request on the ground that the records sought were "patently exempt."  As the court reasoned, "[t]he term 'patently exempt' appears nowhere in the statutory text of FOIA." Id. at 89.  Denial of a fee waiver on these grounds was particularly inappropriate given FOIA's "strong presumption in favor of disclosure."  Id. (citations omitted).  Here, as was argued in S.

11

Utah Wilderness Alliance, accepting DOJ's approach would "invert[] the burden of proof" and allow the agency to "us[e] a fee waiver denial as a guise for preventing [plaintiff] from challenging the agency's contemplated withholdings." Id. (citation omitted). See also Judicial Watch, Inc. v. U.S. Dep't of Energy, 310 F.Supp.2d 271, 295 (D.D.C. 2004) (requiring a FOIA requester to demonstrate both that it satisfies the public interest exception for a fee waiver and that the agency's anticipated withholdings are not proper would "invert the burden of proof" (citation omitted)). Moreover, the likelihood that DOJ used a fee waiver denial here "as a guise for preventing [CREW] from challenging the agency's contemplated withholdings"[5] is particularly high given the record before the Court of DOJ's across-the-board actions of delay and obfuscation in processing CREW's requests.

Similarly, in Judicial Watch, Inc. v. U.S. Dep't of Transp., 2005 U.S. Dist. LEXIS 14025 (D.D.C. 2005), the court affirmed that agencies should evaluate fee waiver requests "'based on the fact of the request and the reasons given by the requester in support of the waiver, not on the possibility that the records may ultimately be determined to be exempt from disclosure.'" Id. at *14, quoting Judicial Watch, Inc. v. U.S. Dep't of Energy, 310 F.Supp.2d 271, 295 (D.D.C. 2004); Carney v. U.S. Dep't of Justice, 19 F.3d 807, 815 (2d Cir. 1994); citing Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1314 (D.C. Cir. 2003).[6]

These cases build on the precedent established in Project Military Procurement v. Dep't

---

[5] S. Utah Wilderness Alliance, 402 F.Spp.2d at 89.

[6] While the court in Judicial Watch, Inc. v. U.S. Dep't of Energy recognized that "*in some rare cases* it may be reasonable for an agency to deny a fee waiver because the FOIA request is for 'patently exempt documents,'" 310 F.Supp.2d at 295 (emphasis added), reliance on the "patently exempt" approach was specifically rejected in S. Utah Wildness Alliance because it added a gloss that the FOIA does not support. See 402 F.Supp.2d at 89.

of the Navy, 710 F.Supp. 362, 366-367 (D.D.C. 1989), that an agency may not deny a fee waiver on the basis of likely redactions or exemptions. There the court reasoned that such an approach is inconsistent with the FOIA given that it is the agency, not the requester, that bears the burden of justifying any non-disclosure. Id. at 367. Where, however, an agency has yet to even make a decision on particular withholdings, denying a fee waiver on contemplated withholdings would "foist upon plaintiff a burden that is not provided under the FOIA," id., specifically to demonstrate why exemptions that have yet to be claimed are not applicable. Such an approach denies a FOIA plaintiff "an opportunity to challenge, before the agency and in court, an actual decision to withhold specific information" and "clearly places the cart before the horse requiring the Court to pass upon the validity of withholding documents before the agency decides the documents are to be withheld." Id. Here, as in Project on Military Procurement, accepting DOJ's approach would mean that in any case "all an agency needs to do to defeat a fee waiver is proffer that the requested documents fall within various FOIA exemptions." 710 F.Supp. at 367. Here too, however, "[t]his cannot be so." Id.[7]

DOJ's approach also ignores the possibility, if not likelihood, that even a small handful of documents "may, in the present context, substantially enrich the public domain." Eudey v.

_____

[7] In denying CREW's fee waiver administratively, DOJ cited Van Fripp v. Parks, 2000 U.S. Dist. LEXIS 20158 (D.D.C. 2000), as support for the proposition that agencies should consider "whether the disclosable portions of requested information are meaningfully informative in relation to the subject matter requested" in deciding a fee waiver request. OIP Letter of Jan. 19, 2006 at p. 2; OIP Letter of Jan. 23, 2006 at p. 2. There was no argument made in Van Fripp, however, that fee waiver eligibility must be assessed by reference only to those documents that are likely to be disclosed. Instead, the issue was whether the plaintiff was entitled to a fee waiver for 1200 pages of responsive documents that had already been identified, with no suggestion that any particular document was exempt. Accordingly, Van Fripp does not justify the approach DOJ took here.

13

CIA, 478 F.Supp. 1175, 1177 (D.D.C. 1979).[8]  For example, a single email between a senior

DOJ official and the White House could be enormously revealing about the extent to which

DOJ's litigating position and reversal of position on penalties was the result of political pressure.

Such a document in the context of this entire matter would unquestionably "enrich the public

domain" and amply justify a fee waiver.

**D.  The Records CREW Seeks Are Not In CREW's Commercial Interest.**

OIP has conceded that the disclosure of the records CREW seeks would not be primarily

in CREW's commercial interest,[9] while the Civil Division has been silent on this point.[10]  In any

case, the record is crystal clear that CREW seeks the records for public dissemination and has no

commercial interest whatsoever in making those disclosures.  Accordingly, CREW satisfies the

requirements for a fee waiver.

**E.  CREW's Stated Justification For A Fee Waiver Is Concrete and Sufficiently Specific.**

OIP reached well beyond the statutory and regulatory criteria for a fee waiver in

concluding that CREW's justification was "too ephemeral" and on that basis should be denied.

OIP Letter of Jan. 19, 2006, p. 2.  Indeed, it is OIP's rationale that suffers from being "too

---

[8] The court in Eudey v. CIA took the approach that the agency's denial of a fee waiver where very few documents would actually be disclosed was "arbitrary and capricious because it was based on a factor that is not controlling under the terms of the statute."  478 F.Supp. at 1177.

[9] See OIP Letter of Jan. 19, 2006, pp. 1-2 ("you do not appear to have an overriding commercial interest in the records . . .").

[10] Having failed to dispute this issue below DOJ should not be permitted here to challenge CREW's status as a non-commercial requester.  See CREW v. Dep't of Health and Human Services, 481 F.Supp.2d 99, 104 (D.D.C. 2006) (noting agency's failure to "dispute CREW's status as a non-profit organization" as well as "CREW's purpose in seeking the [requested] documents [under FOIA] was non-commercial").

ephemeral" in that it is untethered to any rational basis in law or fact and is instead seemingly designed to obscure DOJ's true motivation of delay.

OIP relied on three cases, each of which is readily distinguishable from the instant case. First, in Am. Fed'n of Gov't Employees v. U.S. Dep't of Commerce, 632 F.Supp. 1272 (D.D.C. 1986), the court found that a union was not entitled to a fee waiver for its request seeking every memo recommending a promotion of any employee during a two-year period at a level of branch chief of higher. Id. at 1278. The requester was acting on "suspicions of pervasive 'preselection,'" id. at 1274, which the court found were "too ephemeral at the moment to warrant . . . a search at public expense without further reason to suppose that the corruption suspected will be found." Id. at 1278.

CREW's requests, by contrast, are grounded in very concrete evidence that the government's change in position was not based on the facts of the case and was politically motivated. See, e.g., Eric Lichtblau, Lawyers Fought U.S. Move to Curb Tobacco Penalty, The New York Times, June 16, 2005 (Exhibit 2 to Complaint) (describing internal DOJ memorandum expressing concerns of the government's trial team of career lawyers). See also Complaint, ¶¶ 18-27 (outlining similar concerns of government experts, members of Congress, a consortium of associations that include the American Cancer Society, the American Lung Association and the American Heart Association, and former Secretary of Health and Human Services Joseph A. Califano, Jr.).

For these same reasons the other two decisions on which OIP relied, Conklin v. U.S., 654 F.Supp. 1104 (D.D.C. 1987) and Fazzini v. U.S. Dep't of Justice, 1991 U.S. Dist. LEXIS 4861 (N.D. Ill. May 2, 1991), are also unavailing. See OIP Letter of Jan. 19, 2006 at p. 2. The

plaintiff in <u>Conklin</u> claimed an entitlement to a public interest fee waiver based on "an alleged general public interest in knowing how unfairly the IRS has treated him." 654 F.Supp. at 1105. Similarly, the <u>Fazzini</u> plaintiff based his fee waiver request on "wild allegations of government conspiracy and cover-up, totally unsupported by any objective evidence . . ." 1991 U.S. Dist. LEXIS 5861, *14.

Unlike <u>Conklin</u> and <u>Fazzini</u>, however, CREW's fee waiver requests are not grounded on broad sweeping allegations that DOJ is "oppressive," <u>Conklin</u>, 654 F.Supp. at 1105, or "wild allegations of government conspiracy . . ." Rather, CREW is relying on the considerable public evidence that political motivations lay behind the government's change in litigation position, evidence that is sufficiently concrete and non-speculative to justify a fee waiver here.

In short, there is nothing "ephemeral" about CREW's request, grounded as it is in a record that includes the statements of the government's own trial team as well as the statements of the government's own expert witness. Under these circumstances, the label of "ephemeral" represents yet another way in which DOJ improperly imposed roadblocks to keep CREW and the public from learning the truth behind the government's decision to so drastically slash the penalties it sought in the tobacco litigation.[11]

## CONCLUSION

For the foregoing reasons, the Court should grant plaintiff summary judgment on the issue of plaintiff's entitlement to a fee waiver and order DOJ to process CREW's requests immediately at no cost to plaintiff.

---

[11] Moreover, DOJ's approach puts CREW in the catch 22 position of being denied a fee waiver for its FOIA requests seeking confirming evidence because it does not yet have that evidence in hand to justify its fee waiver request.

16

Respectfully submitted,

_____/s/_____

Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and
 Ethics in Washington
1400 Eye St. NW., Suite 450
Washington, D.C.  20036
Phone: (202) 588-5565
Fax: (202) 588-5020
Attorneys for Plaintiff

May 15, 2008