# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:05-cv-02078 |
| U.S. DEPARTMENT OF JUSTICE, | ) ) | Judge: Emmet G. Sullivan |
| Defendant. | ) ) ) | |

## DECLARATION OF MELANIE ANN PUSTAY

I, Melanie Ann Pustay, declare the following to be true and correct:

1) I am the Deputy Director of the Office of Information and Privacy (OIP), United States Department of Justice. In this capacity, I am the final decision-making authority for the Initial Request (IR) Staff. The IR Staff is responsible for searching for and reviewing records within OIP and the senior leadership offices of the Department of Justice in response to requests made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. II 2002). The IR Staff determines whether records responsive to access requests exist and, if so, whether they can be released in accordance with the FOIA. In processing such requests, the IR Staff consults with personnel in the senior leadership offices and, when appropriate, with other components within the Department of Justice as well as with other Executive Branch agencies.

2) I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties.

-1-

## Initial Processing of Plaintiff's Request

3) By letter dated June 28, 2005, Anne L. Weismann, on behalf of plaintiff Citizens for

Responsibility and Ethics in Washington (CREW), submitted a FOIA request to OIP for records

from the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney

General "discussing or mentioning in any way any penalty that the U.S. Department of Justice . . .

can, may, should or will propose" in the litigation of United States v. Philip Morris, Inc. since

January 1, 2001. The request also sought records of any contacts "between any and all individuals

in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney and the

White House . . . . [and] between Associate Attorney General Robert D. McCallum and the law firm

Alston & Bird concerning in any way the tobacco lawsuit." OIP received the request on July 1,

2005. (A copy of plaintiff's initial request letter is attached hereto as Exhibit A.)

4) In its initial FOIA request letter, plaintiff requested a fee waiver pursuant to 5 U.S.C.

§ 552(a)(4)(A)(iii), which provides that a fee waiver is appropriate when disclosure of requested

information is in the public interest because it is likely to contribute significantly to public

understanding of the operations or activities of the government, and is not primarily in the

commercial interest of the requester. Plaintiff based its fee waiver request on the assertion that the

records sought "are likely to contribute to the public's understanding of the individuals and

organizations that influence or attempt to influence the litigating position of the United States of

America in a lawsuit of major and far-reaching consequences."

5) In its initial FOIA request letter to OIP, plaintiff also requested expedited processing

based on assertions that it is a "non-profit corporation engaged primarily in disseminating

information," and that "[t]here is a particular urgency in informing the public about the

circumstances surrounding the Department of Justice's proposed penalties in the tobacco lawsuit."

The Department of Justice permits expedition of FOIA requests pursuant to four different standards.

See 28 C.F.R. § 16.5(d)(1)(i)-(iv) (2005). Because plaintiff did not specify a particular standard

under which expedition was sought, we applied the standard that comported most closely with the

phrasing of its request. Accordingly, we interpreted the request as seeking expedited processing

pursuant to the Department's second standard permitting expedition for requests involving "[a]n

urgency to inform the public about an actual or alleged federal government activity, if made by a

person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii).

6) By letter dated July 11, 2005, OIP acknowledged receipt of plaintiff's FOIA request and

denied plaintiff's request for expedited processing pursuant to 28 C.F.R. § 16.5(d)(1)(ii), because

we could not identify a particular urgency to inform the public about an actual or alleged federal

government activity beyond the public's right to know about government activities in general, and

because plaintiff's primary activity did not appear to be information dissemination. OIP's letter also

advised plaintiff that we would be unable to respond to its FOIA request within the statutory time

limit because the records sought were maintained in other Offices, and suggested that plaintiff

might wish to narrow the scope of its request in order to speed up the search process. Finally, as is

customary, we advised plaintiff that we were deferring a decision on its fee waiver request until we

determined whether any fees would be incurred in the processing of plaintiff's request. This is

OIP's standard practice and is done because non-commercial requesters are entitled to two hours of

free search time per component. In the event the searches for plaintiff's request were completed

within that two hour period, there would be no fees charged to plaintiff. In the absence of fees to

charge there would be no need to adjudicate plaintiff's request for a fee waiver. Accordingly, we

-3-

deferred our decision on plaintiff's fee waiver request until the time when we determined that our search in the Office of the Associate Attorney General would exceed two hours. (A copy of OIP's July 11, 2005 letter is attached hereto as Exhibit B.)

7) By letter dated July 18, 2005, plaintiff submitted a new request for expedited processing to the Director of the Office of Public Affairs (PAO). This time, plaintiff specifically sought expedition pursuant to the Department's fourth standard permitting such processing for requests involving "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). Plaintiff submitted its new expedition request under standard iv directly to the Director of PAO, who makes the decision whether to grant or deny expedited processing under this standard. Id. § 16.5(d)(2). (A copy of plaintiff's July 18, 2005 letter to the Director of PAO is attached hereto as Exhibit C.)

8) On August 5, 2005, OIP was informed by PAO that the Director of PAO had granted plaintiff's request for expedited processing under standard iv. By letter dated August 9, 2005, OIP then advised plaintiff of the decision by the Director of PAO. We also advised plaintiff that we had already initiated searches in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General for records responsive to its request. Finally, we reiterated that plaintiff could contact the analyst handling its request if there were any questions. (A copy of OIP's August 9, 2005 letter to plaintiff is attached hereto as Exhibit D.)

<u>Records Searches</u>

9) In its request letter, plaintiff specifically sought records from the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General. Therefore, OIP conducted

-4-

searches for records responsive to plaintiff's request in those Offices, as well as in the Departmental

Executive Secretariat, which serves as the official repository for Attorney General, Deputy Attorney

General, and Associate Attorney General records.

10)  By memoranda dated July 22, 2005, records searches were initiated in the Offices of the

Attorney General, Deputy Attorney General, and Associate Attorney General.  The practice for

these three Offices is to notify each individual staff member in that Office of the receipt of OIP's

memoranda requesting that a search be conducted, and each staff member's files, both paper and

electronic, are then searched as necessary for records responsive to the request.  A search of this

nature typically involves hand searches of large paper files, as well as a vast number of electronic

mail (e-mail) files.

11)  In July and August, 2005, records searches were commenced in the Offices of the

Attorney General, Deputy Attorney General, and Associate Attorney General.

12)  On August 23, 2005, plaintiff's request was reassigned to a new analyst because the

FOIA Specialist originally handling the case departed OIP.

13)  By memoranda dated August 29, 2005, OIP advised the Offices of the Attorney

General, Deputy Attorney General, and Associate Attorney General that plaintiff's request had been

granted expedited processing under 28 C.F.R. § 16.5 (d)(1)(iv) and that, accordingly, records

searches should be completed as soon as possible.

14)  On September 6, 2005, a career attorney in the Office of the Associate Attorney General

contacted me by telephone to discuss plaintiff's request.  He advised me that the Office of the

Associate Attorney General had a large volume of records potentially responsive to plaintiff's

request, including electronic records, handwritten notes, and calendar entries.

Case 1:05-cv-020.5-EGS    Document 45    Filed 11/0..2006    Page 7 of 50

15) On September 8, 2005, a staff member in Office of the Attorney General contacted me to discuss plaintiff's request. She informed me that the Office of the Attorney General had identified records that were potentially responsive to plaintiff's request.

16) Between September 8, 2005 and September 15, 2005, the analyst handling the case consulted with FOIA personnel in the Civil Division.

17) On September 14, 2005, the FOIA Specialist assigned to plaintiff's request went to the Office of the Attorney General to review the files that had been identified thus far. Those documents that appeared responsive to plaintiff's request were copied for further processing and review by OIP's IR Staff.

18) On September 16, 2005, plaintiff's counsel, Anne Weismann, called and left a message with OIP regarding the status of plaintiff's request. The FOIA Specialist assigned to plaintiff's request returned Ms. Weismann's call and advised her that records searches had been initiated and were still pending in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General on an expedited basis, and that OIP would provide an interim response to plaintiff's FOIA request when possible.

19) On September 16, 2005, subsequent to the OIP FOIA Specialist's conversation with plaintiff's counsel on that same day, the Office of the Attorney General advised OIP that it had completed its records search and had not located any additional records that appeared responsive to the request beyond those which had already been obtained by OIP.

20) On September 26, 2005, plaintiff's counsel, Anne Weismann, again called the FOIA Specialist assigned to plaintiff's request. The FOIA Specialist informed Ms. Weismann that OIP had completed its records search in the Office of the Attorney General, but that the records located

-6-

in that Office required further review, including consultations with other Department components,
before an interim response could be provided. Such consultations are required by Department of
Justice regulation 28 C.F.R. § 16.4(c)(1) (2005), and are appropriate in determining whether to
disclose records when other components within the Department have an interest in the documents.
The consultations envisioned at that time were with FOIA personnel in the Offices of the Inspector
General, Solicitor General, Professional Responsibility, and Legislative Affairs, and in the Justice
Management, Civil, and Criminal Divisions. The FOIA Specialist also advised Ms. Weismann that
records searches were continuing in the Offices of the Deputy Attorney General and Associate
Attorney General.

21) On October 3, 2005, a career attorney in the Office of the Associate Attorney General
contacted the Senior Counsel for the IR Staff to discuss plaintiff's request. He advised OIP that he
was conducting a search for records in the Office of the Associate Attorney General.

22) During October, 2005, the FOIA Specialist assigned to plaintiff's request continued to
review the documents located in the Office of the Attorney General.

23) On October 14, 2005, the career attorney in the Office of the Associate Attorney
General gave me an update on the status of his search.

24) On October 26, 2006, the FOIA Specialist assigned to plaintiff's request contacted the
Office of the Deputy Attorney General to check on the status of the search.

25) On November 1, 2005, the career attorney in the Office of the Associate Attorney
General called and advised that his search was complete.

26) On November 2, 2005, the FOIA Specialist assigned to plaintiff's request and the IR
Staff Senior Counsel retrieved copies of potentially responsive records from the Office of the
Associate Attorney General.

27)  On November 4, 2005, the FOIA Specialist assigned to plaintiff's request had additional discussions with the search contact in the Office of the Deputy Attorney General.

28)  On November 16, 2005, the FOIA Specialist assigned to plaintiff's request, the IR Staff Senior Counsel and I conferred on the status of the request and made plans for providing plaintiff with an interim response that would have addressed the status of plaintiff's request in the three offices, and made a determination on plaintiff's fee waiver request.

29)  One day later, on November 17, 2005, OIP was advised that plaintiff had filed suit. During the next few weeks, discussions ensued with plaintiff's counsel concerning the possible narrowing of her request to reduce the number of responsive documents.  The interim response letter was put on hold while the parties discussed a possible narrowing of plaintiff's request.

30)  On December 9 and 13, 2005, OIP searched the electronic database of the Departmental Executive Secretariat, which uses a central database to control and track certain incoming and outgoing correspondence for the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.  Those documents that appeared responsive to plaintiff's request were retrieved for further processing and review by OIP's IR Staff.

31)  On December 20, 2005, the IR Staff Senior Counsel and I went to the Office of the Associate Attorney General to conduct a more targeted search for responsive records.  The FOIA Specialist assigned to plaintiff's request continued her review and processing of the records that had been located thus far.

32)  By memorandum dated December 22, 2005, the Office of the Deputy Attorney General advised OIP that it had completed its records search and did not locate any records responsive to plaintiff's request.

## Review of Records Prior to Narrowing of Request

33) As originally worded, plaintiff's request was exceptionally broad, spanning a four-year period and encompassing documents that mentioned in "any way any penalty" that the government "can, may, should or will propose" in the tobacco litigation. Once OIP completed the records searches in the Offices of the Attorney General and Deputy Attorney General, and expended plaintiff's two free hours of search time in the Office of the Associate Attorney General, over four hundred and fifty documents had been located, and consultation and referral packages were thereafter prepared for no less than seven Department components -- with the Offices of the Inspector General, Solicitor General, Professional Responsibility, and Legislative Affairs, and in the Justice Management, Civil, and Criminal Divisions. Also, the records as yet to be searched in the Office of the Associate Attorney General consisted of an estimated 62,000 e-mail communications, three hundred pages of hand written notes, fifty pages of electronic files, one hundred pages of paper files, and an indeterminate number of calendar entries.

34) As records were located and compiled throughout the pendency of OIP's records searches, IR Staff conducted a continual analysis and review of the documents located. This process included the identification and excision of duplicative and non-responsive material, creation of "working" document sets and corresponding document indexes, identification of the various Department components' equities in the records, and the assessment and assembly of necessary consultations and/or referrals with those components maintaining such equity, and the application of any FOIA exemptions to the material. The possibility of providing an interim response to plaintiff was repeatedly assessed; however, just one day after a decision was made to provide an interim response, plaintiff filed suit and so the interim response was delayed while the parties worked to narrow the scope of the request.

-9-

### Narrowing of Plaintiff's Request

35) On January 9, 2006, defendant's principal counsel advised OIP that pursuant to communications with plaintiff's counsel, Anne Wiesmann, plaintiff had agreed to narrow the scope of its request to "documents dealing with the identification and selection of remedies sought by the Department and any changes to particular remedies sought by the Department from January 2005 onward, including records discussing, mentioning or referring in any way to the government's decision to reduce the penalties it is seeking against the tobacco industry from $130 billion to $10 billion or the government's decision to offer testimony from any witness during the remedies phase of trial in United States v. Philip Morris." Additionally, plaintiff agreed to narrow its request to exclude court filings and correspondence.

36) Based on plaintiff's January 9, 2006 reformulation of its request and the narrowing, OIP's IR staff re-reviewed the universe of potentially responsive documents, which had been assembled for processing in preparation for an interim response. Based on the narrowed scope of plaintiff's request, OIP was able to hone in on and more readily process those records – a task that had initially proven difficult given the breadth of the original request. Further, as a result of plaintiff's narrowed request, OIP was able to drastically reduce the amount of responsive material to a total of twenty pages of documents and, consequently, the need for all but one consultation was completely eliminated, as was the need for all but two referrals.

### OIP's Interim Response to Plaintiff

37) By letter dated January 19, 2006, OIP provided an interim response to plaintiff. OIP notified plaintiff that its request for a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) had been denied based upon the applicable statutory standards, Department of Justice regulations, and case law. We also advised plaintiff that we were categorizing it as a "non-media, non-commercial"

-10-

requester under 5 U.S.C. § 552(a)(4)(A)(ii)(III), and as such it was entitled to two free hours of

search time and 100 free pages of records per component.  Moreover, we informed plaintiff that

while our records searches in the Offices of the Attorney General and Deputy Attorney General had

been completed, we were unable to complete our records search in the Office of the Associate

Attorney General within the two hours of free search time allotted to plaintiff.  We advised plaintiff

that we estimated it would take an additional twelve hours to complete our search in the Office of

the Associate Attorney General and that the search fees would total $336.00.  Pursuant to

Department of Justice regulations, we required an advance payment of that fee.  To date plaintiff

has not remitted payment.  (A copy of this letter is attached hereto as Exhibit E.)

38)  In OIP's interim response, we also informed plaintiff that pursuant to our records

searches, and based upon the narrowed scope of its request, we located five responsive documents,

totaling twenty pages.  Of these, one document, totaling one page, was withheld in full pursuant to

the attorney-client, attorney work-product, and deliberative process privileges of Exemption 5 of the

FOIA, 5 U.S.C. § 552(b)(5).  Regarding the remaining responsive documents, we notified plaintiff

that we had referred two documents, totaling thirteen pages, to the Civil Division, and two

documents, totaling six pages, to the Criminal Division.[1]

39)  The broad scope of the initial wording of plaintiff's request made the searches for

responsive records daunting and time-consuming.  Moreover, the broad wording initially

encompassed hundreds of documents that needed to be referred to other Department of Justice

components.  If, at any time plaintiff had narrowed its request, the search for and processing of

---

[1] Upon consultation with the Office of Professional Responsibility, it was subsequently
determined that all twenty pages of the documents responsive to plaintiff's request are also
protected in their entirety by FOIA Exemption 7(A).

records would have been significantly faster.  Ironically, the filing of this lawsuit itself resulted in a delay of preparation of an interim response because attention was focused on preparing the Answer and coordinating with the litigator.  Throughout the process, plaintiff's request was being handled in a routine manner, and progress was being made consistently throughout that time.

## Plaintiff's Administrative Appeals

40)  By letter dated July 18, 2005, plaintiff administratively appealed OIP's denial of its request for expedited processing to the Co-Director of OIP.  (A copy of plaintiff's July 18, 2005 administrative appeal is attached hereto as Exhibit F.)

41)  By letter dated August 12, 2005, the Co-Director of OIP advised plaintiff that because the Director of the Office of Public Affairs had afforded its request expedited treatment, its administrative appeal of OIP's denial of expedition was moot.  (A copy of OIP's August 12, 2005 response to plaintiff's administrative appeal is attached hereto as Exhibit G.)

42)  By letter dated July 11, 2005, plaintiff administratively appealed the Civil Division's denial of its fee waiver request to the Co-Director of OIP.  (A copy of plaintiff's July 11, 2005 administrative appeal is attached hereto as Exhibit H.)

43)  By letter dated July 28, 2005, OIP acknowledged receipt of plaintiff's July 11, 2005 administrative appeal. (A copy of OIP's July 28, 2005 letter is attached hereto as Exhibit I.)

44) This appeal was assigned to an OIP career senior counsel on August 10, 2005, and the relevant background information was received from the Civil Division on September 20, 2005.  Upon review of the background material, and in order to draft a response, the senior counsel assigned to plaintiff's appeal had multiple substantive conversations with personnel in the Civil Division seeking clarification and additional information.  The senior counsel assigned to plaintiff's appeal was actively working on drafting a response by mid to late November through

-12-

late December, and had a final draft prepared by early January.  The response letter was in for
review from January 10 to January 23, 2006.  OIP's response to plaintiff's administrative appeal
was completed and an advance copy faxed to plaintiff on January 23, 2006.

45)  During the time period in which OIP was preparing its response to plaintiff's
administrative appeal, the senior counsel assigned to the appeal had many other duties and
responsibilities including supervising litigation, reviewing fee waiver appeals of other OIP staff
members, working on approximately forty other pending administrative appeals, performing
designated FOIA ombudsperson work, drafting letters and appeal recommendations, and
instructing in FOIA training programs.

46)  By letter dated January 23, 2006, the Director of OIP advised plaintiff that he was
affirming the determination of the Civil Division.[2]  (A copy of OIP's January 23, 2006 response to
plaintiff's administrative appeal is attached hereto as Exhibit J.)

I declare under penalty of perjury that the foregoing is true and correct.

_____
MELANIE ANN PUSTAY

Executed this 10 day of March, 2006.

_____

[2] This appeal letter adjudicated plaintiff's administrative appeal based upon information
identified as disclosable by the Civil Division.  This letter also advised plaintiff that, going
forward, it would be well advised to clarify whether publicly available records were intended to
be within the scope of its request given that it was unclear.

# EXHIBIT A

# CREW | citizens for responsibility and ethics in washington

*OAG/05-RO788*
*ODAG/05-RO789*
*OASG/05-RO790*

*VRB*

June 28, 2005

**FOIA REQUEST**

Melanie Ann Pustay
Deputy Director
Office of Information and Privacy
Department of Justice
Suite 570, Flag Building
Washington, D.C.

**RECEIVED**

**JUL 0 1 2005**

Office of Information and Privacy

### BY FAX: 202-514-1009

Dear Ms. Pustay:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, et seq, and U.S. Department of Justice regulations, 28 CFR Part 16.

This request is for any all records in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General relating in any way to the government's proposed penalty in United States of America v. Philip Morris, Inc., et al., Civil Action No. 99-2496 (GK) (D.D.C.) (hereinafter "tobacco lawsuit."). Specifically, CREW seeks all memoranda, communications and records of any kind and from any source, regardless of format, medium, or physical characteristics, from January 1, 2001, to the present, discussing or mentioning in any way any penalty that the U.S. Department of Justice, on behalf of the plaintiff United States of America, can, may, should or will propose in the above-referenced litigation. This request includes, but is not limited to, records discussing, mentioning, or referring in any way to the government's decision to reduce the penalties it is seeking against the tobacco industry from $130 billion to $10 billion. CREW also seeks all records relating in any way to any offer of settlement in the tobacco lawsuit from any source whatsoever, including, but not limited to, Philip Morris, Inc., R.J. Reynolds Tobacco Co., Brown & Williamson Tobacco Corp., Lorillard Tobacco Co., Inc., Liggett Group, Inc., American Tobacco Co., Philip Morris Companies, N.C., British American Tobacco, P.L.C., British American Tobacco, Ltd., Philip Morris Companies, BAT P.C.C. & BAT Investments, the Council for Tobacco Research – U.S.A., Inc., and The Tobacco Institute, Inc.

In addition, CREW seeks any and all records of any contacts between any and all individuals in the Offices of the Attorney General, Deputy Attorney General, and

11 DuPont Circle, N.W., 2nd Floor • Washington, D.C. 20036
(o) 202.588.5565 (c) 202.841.5096

Associate Attorney General and the White House concerning in any way the tobacco lawsuit. CREW also seeks records of any contacts between Associate Attorney General Robert D. McCallum and the law firm Alston & Bird concerning in any way the tobacco lawsuit.

We seek records of any and all kind, including electronic records, audiotapes, videotapes, and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. §552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**Request for Expedition**

2

Pursuant to 5 U.S.C. §552(a)(6)(E)(I) and Department of Justice regulations, 28 CFR Part 16, CREW requests that the Department of Justice expedite the processing of this request in light of the compelling need for the requested information. CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the Freedom of Information Act, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. CREW's website, www.citizensforethics.org, contains numerous examples of its efforts, including a link to a site, prepared by CREW, that details the many activities of Jack Abramoff, a Washington lawyer and lobbyist currently under criminal investigation, and the many powerful individuals linked to Abramoff through such things as campaign contributions. CREW recently published a report, *Addicted to Porn: How Members of Congress Benefit from Pornography*, that details the campaign contributions that members of Congress had received from corporations involved in pornography. It is CREW's hope that by disseminating this type of information, the public will be better able to evaluate the actions of our public officials and will have a more effective voice, including in the voting booth.

There is a particular urgency in informing the public about the circumstances surrounding the Department of Justice's proposed penalties in the tobacco lawsuit. News reports have suggested that the proposed penalty was the product of improper political influence brought to bear on the government's trial team of career lawyers and that these influences included improper attempts to have government witnesses alter their trial testimony. The public, as well as the court that is considering this matter, has a need to know the true facts underlying the government's proposed penalties. Accordingly, CREW requests that this request be expedited.

**Fee Waiver Request**

In accordance with 5 U.S.C. §552(a)(4)(A)(iii), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). *See, e.g.*, McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding of the individuals and organizations that influence or attempt to influence the litigating position of the United States of America in a lawsuit of major and far-reaching consequences.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in

government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memorandums, reports or press releases.

Under these circumstances, CREW fully satisfied the criteria for a fee waiver.

If you have any questions about this request or foresee any problems in releasing fully the requested records on an expedited basis, please call either Anne Weismann or Melanie Sloan at (202) 588-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Anne Weismann, Citizens for Responsibility and Ethics in Washington, 11 Dupont Circle, N.W., 2nd Floor, Washington, D.C. 20036.

Sincerely,

ANNE L. WEISMANN

4

# EXHIBIT B



U.S. Department of Justice

Office of Information and Privacy

_Telephone: (202) 514-3642_                          _Washington, D.C. 20530_

**JUL 1 1 2005**                          **FILE COPY**

Ms. Anne Weismann
Citizens for Responsibility and Ethics
   in Washington
11 Dupont Circle, N.W.                          Re:   AG/05-R0788
2nd Floor                                             DAG/05-R0789
Washington, DC 20036                                  ASG/05-R0790
                                                      MAP:CLM:NT

Dear Ms. Weismann:

     This is to acknowledge receipt of your letter dated June 28, 2005, which was received in this Office on July 1, 2005, in which you requested records concerning the government's proposed penalty in _United States v. Philip Morris, Inc._ This response is being made on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.

     We have interpreted your letter as requesting expedited processing of your request pursuant to the Department's standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii) (2003). Based on the information you have provided, I have determined that your request for expedited processing under this standard should be denied. This Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally. In addition, the primary activity of your organization does not appear to be information dissemination, which is required for a requester to qualify for expedited processing under this standard. Nevertheless, please be advised that your request has been assigned to a FOIA Specialist in this Office and searches will be initiated in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.

     Because the records you seek are maintained outside of this Office, we have not been able to complete the searches to determine whether there are records within the scope of your request. Accordingly, we will be unable to comply with the twenty-working-day time limit in this case, as well as the ten additional days provided by the statute. In an effort to speed up our record searches, you may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our record searches to discuss either of these options.

     We have not yet made a decision on your request for a fee waiver. We will do so after we determine whether or not fees will be assessed for this request.

-2-

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact Nicole Trudeau, the analyst processing your request, at (202) 514-3642.

If you are not satisfied with the denial of your request for expedited processing, you may administratively appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, DC 20530-0001, within sixty days from the date of this letter. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Melanie Ann Pustay
Deputy Director

# EXHIBIT C

# CREW | citizens for responsibility and ethics in washington

July 18, 2005

**FOIA REQUEST**

Tasio Scalinos
Director
Office of Public Affairs
U.S. Department of Justice
Room 1128
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Dear Ms. Scalinos:

By letter dated June 28, 2005, Citizens for Responsibility and Ethics in Washington ("CREW") submitted to the Office of Information and Privacy, U.S. Department of Justice, a request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, et seq, and U.S. Department of Justice regulations, 28 CFR Part 16. The request sought all records in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General relating in any way to the government's proposed penalty in United States of America v. Philip Morris, Inc., et al., Civil Action No. 99-2496 (GK) (D.D.C.) (hereinafter "tobacco lawsuit."). CREW also sought all records relating in any way to any offer of settlement in the tobacco lawsuit from any source whatsoever, and all records of any contacts between any and all individuals in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General and the White House concerning in any way the tobacco lawsuit. In addition, CREW sought records of any contacts between Associate Attorney General Robert D. McCallum and the law firm Alston & Bird concerning in any way the tobacco lawsuit. A copy of this request is attached.

CREW requested that OIP expedite CREW's FOIA request in light of the compelling need for the requested information. As explained in our request of June 28, 2005, CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the Freedom of Information Act, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. CREW's website, www.citizensforethics.org, contains numerous examples of its efforts, including a link to a site, prepared by CREW, that details the many activities of Jack Abramoff, a Washington lawyer and lobbyist currently under criminal investigation, and the many powerful individuals linked to Abramoff through such things as campaign contributions. CREW recently published a report, *Addicted to Porn: How Members of Congress Benefit from Pornography*, that details the campaign

contributions that members of Congress had received from corporations involved in pornography.

Moreover, there is a particular urgency in informing the public about the circumstances surrounding the Department of Justice's proposed penalties in the tobacco lawsuit. News reports have suggested that the proposed penalty was the product of improper political influence brought to bear on the government's trial team of career lawyers and that these influences included improper attempts to have government witnesses alter their trial testimony. The public, as well as the court that is considering this matter, has a need to know the true facts underlying the government's proposed penalties.

By letter dated July 11, 2005, Melanie Ann Pustay, Deputy Director of the Office of Information and Privacy, advised CREW that our request for expedition had been denied. A copy of that letter is also attached. CREW has now appealed that determination; a copy of CREW's appeal together with attachments is enclosed herewith.

CREW also requests, pursuant to 28 CFR 16.5(d)(1)(iv), that its request be expedited because the underlying subject of the request is a matter of widespread and exceptional media interest, as documented in the numerous news articles submitted with CREW's appeal of July 18, 2005. Moreover, there exist possible questions about the government's integrity which affect public confidence. As we explained in our initial request for expedition and in our appeal, press articles, members of Congress, and numerous other public health organizations have raised serious questions about whether the government's proposed penalty in the tobacco litigation is the result of improper political influence. Indeed, DOJ's own Office of Professional Responsibility has initiated an investigation into these allegations. Thus, CREW satisfies fully the requirements for expedition set out in 28 CFR 16.5(d).

For the foregoing reasons, as well as those set forth in CREW's FOIA request of June 28, 2005, and its appeal of July 18, 2005, CREW requests its June 28 FOIA request be expedited.

Sincerely,

ANNE L. WEISMANN

cc: Melanie Ann Pustay

# EXHIBIT D



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                        *Washington, D.C. 20530*

AUG  9 2005

Ms. Anne Weismann
Citizens for Responsibility and Ethics
   in Washington                    Re:  AG/05-R0788
11 Dupont Circle, N.W.                              DAG/05-R0789
2nd Floor                                           ASG/05-R0790
Washington, DC  20036                               MAP:CLM:NT

Dear Ms. Weismann:

     This is in response to your letter dated July 18, 2005, to the Director of the Office of Public Affairs seeking expedited processing of your Freedom of Information Act request for records concerning the government's proposed penalty in *United States v. Philip Morris, Inc.*

     In your letter to the Office of Public Affairs, you requested expedited processing on the basis that the material requested is "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5 (d)(1)(iv).  Pursuant to Department policy, the Director of the Office of Public Affairs makes the decision whether to grant or deny expedited processing under this standard.  Id. § 16.5 (d)(2).  Please be advised that the Director has granted your request for expedited processing.

     As we advised you in our letter dated July 11, 2005, we have already initiated searches in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.  If you have any questions regarding this matter, you may contact Nicole Trudeau, the analyst handling your request, by telephone at the above number or you may write to her at the above address.

     Sincerely,

     *Melanie Ann Pustay*

     Melanie Ann Pustay
     Deputy Director

# EXHIBIT E



U.S. Department of Justice

Office of Information and Privacy

Telephone: (202) 514-3642          Washington, D.C. 20530

Ms. Anne Weismann                      JAN 19 2006
Citizens for Responsibility and Ethics
      in Washington              Re:    AG/05-R0788
11 Dupont Circle, N.W.                  DAG/05-R0789
2nd Floor                               ASG/05-R0790
Washington, DC 20036                    MAP:VRB

Dear Ms. Weismann:

    This is in response to your Freedom of Information Act (FOIA) request dated June 28,
2005, and received in this Office on July 1, 2005, in which you requested certain records
concerning the government's litigation of United States v. Philip Morris, Inc. This response is
made on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate
Attorney General.

    By letter dated July 11, 2005, we acknowledged receipt of your request and, in an effort
to speed up our searches for responsive records, suggested that you narrow the scope of your
request. However, because we did not receive any response or indication from you that you were
willing to narrow the scope of your request, we initiated records searches based on the phrasing
of your initial letter to this Office, which sought records "discussing or mentioning in any way
any penalty that the U.S. Department of Justice . . . can, may, should or will propose" in the
litigation of United States v. Philip Morris, Inc. since January 2001, as well as records of a
number of contacts "concerning in any way the tobacco lawsuit." Subsequently, on January 9,
2006, after the commencement of litigation in this case, you agreed to narrow the scope of your
request to "documents dealing with the identification and selection of remedies sought by the
Department and any changes to particular remedies sought by the Department from January 2005
onward, including records discussing, mentioning or referring in any way to the government's
decision to reduce the penalties it is seeking against the tobacco industry from $130 billion to
$10 billion or the government's decision to offer testimony from any witness during the remedies
phase of trial in United States v. Philip Morris." On other occasions, you also advised that you
are not interested in receiving Court filings or correspondence. Accordingly, we were able to
significantly narrow the scope of our records searches based on this new formulation of your
request.

    You have requested a "public interest" fee waiver for this request. A fee waiver is
appropriate only when "disclosure of the [requested] information is in the public interest because
it is likely to contribute significantly to public understanding of the operations or activities of the
government and is not primarily in the commercial interest of the requester." 5 U.S.C.
§ 552(a)(4)(A)(iii); see also 28 C.F.R. § 16.11(k) (2005) (six fee waiver factors to be
considered). While the records you seek do concern the operations or activities of the
Department of Justice and you do not appear to have an overriding commercial interest in the

-2-

records, other relevant factors have not been met. Your blanket assertion that "these records are likely to contribute to the public's understanding of the individuals and organizations that influence or attempt to influence the litigating position of the United States of America in a lawsuit of major and far-reaching consequences" is not a sufficient basis for me to grant a fee waiver. First, you provide no evidence that, in fact, any individual or organization attempted to influence or did influence the government's litigating position. Moreover your statement is too ephemeral a basis on which to grant a fee waiver. See American Fed'n of Gov't Employees v. United States Dep't of Commerce, 632 F. Supp. 1272, 1278 (D.D.C. 1986) (finding allegations of malfeasance too ephemeral to warrant waiver of search fees without further evidence that informative material will be found), aff'd on other grounds, 907 F.2d 203 (D.C. Cir. 1990); Fazzini v. United States Dep't of Justice, No. 90 C 3303, slip op. at 11 (N.D. Ill. May 2, 1991) (holding that allegations of government coverup, unsupported by objective evidence, do not create legitimate public interest for purposes of fee waiver); Conklin v. United States, 654 F. Supp. 1104, 1105 (D. Colo. 1987) (finding mere allegations of wrongdoing do not justify fee waiver).

Further, a fee waiver is granted when it is determined that the substantive content of the disclosable portions of the records requested is likely to contribute significantly to public understanding of government operations or activities. See 28 C.F.R. § 16.11(k)(2)(ii). Based upon our review of the documents we have located, our knowledge of the subject matter, and our general familiarity with the records that are responsive to this request, I have determined that a fee waiver is not appropriate. The records you seek are virtually inherently protected by the attorney work-product, attorney-client, and deliberative process privileges. To warrant a waiver or reduction of fees, the public's understanding of the subject matter in question, as compared to the level of public understanding existing prior to the disclosure, must be likely to be enhanced by the disclosure to a significant extent. For the records that are being withheld, there can be no increase in public understanding of the government's operations, and so a fee waiver is not warranted. See Van Fripp v. Parks, No. 97-0159, slip op. at 10 (D.D.C. Mar. 16, 2000) (stating that "reviewing agencies and courts should consider . . . whether the disclosable portions of requested information are meaningfully informative in relation to the subject matter requested" (citing agency's fee waiver regulation)). Thus, we have denied your request for a fee waiver at this time. If in the course of processing your request further we determine that a fee waiver is appropriate for a particular document, we will provide it without cost.

We have determined that you are a non-media, non-commercial requester pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(III). Therefore, you are entitled to two free hours of search time and 100 pages of records per component without incurring search or duplication charges. See 28 C.F.R. § 16.11(d). Beyond the two hours of free search time per component to which you are entitled, you will be required to pay for additional search time incurred at the cost of $28.00 for each hour spent by professional personnel in obtaining these records. See 28 C.F.R. § 16.11(c)(1)(ii). Duplication fees beyond one hundred pages will be assessed at ten cents per page. See 28 C.F.R. § 16.11(c)(2). Because you have not been granted a fee waiver and have not indicated an amount that you are willing to pay, by this letter we are providing you with the results of the two free hours of search time per component that we have provided you.

-3-

We conducted records searches in the Departmental Executive Secretariat, which is the official records repository for the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General, and in the Offices of the Attorney General and Deputy Attorney General. We also initiated a records search in the Office of the Associate Attorney General; however, we were unable to complete our search in that Office within your two hours of free search time. At this time, five documents, totaling twenty pages, responsive to your request have been located. One document, totaling one page, is being withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), which pertains to certain inter- and intra-agency communications protected by the attorney-client, attorney work-product, and deliberative process privileges. This document is not appropriate for discretionary disclosure.

We have referred two documents, totaling thirteen pages, to the Civil Division, and two documents, totaling six pages, to the Criminal Division.

As mentioned above, we have not yet completed our records search in the Office of the Associate Attorney General. We estimate that it will take an additional twelve hours to complete our search in that Office. If you wish for us to continue searching for responsive documents in the Office of the Associate Attorney General, you must pay for the additional search time at a rate of $28.00 per hour, for a total of $336.00. Because this estimate exceeds $250.00, we require an advance payment of $250.00. See 28 C.F.R. § 16.11(i)(2). You may also choose to specify a particular amount you are willing to pay and forward a check for that amount.

Please forward your check or money order, made payable to the United States Treasury, to the Office of Information and Privacy, Flag Building, Suite 570, Washington, D.C. 20530-0001. Both your check or money order and the envelope should be marked with the reference numbers AG/05-R0788; DAG/05-R0789; ASG/05-R0790. If we do not receive your payment within thirty calendar days from the date of this letter, we will assume that you are not interested in any further records search and we will consider your request closed in this Office.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that you have the right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay

Melanie Ann Pustay
Deputy Director

# EXHIBIT F

*[handwritten annotations: NSG/05-R0788, DAG/05-R0789 05-2360, ASG/05-R0790, FOIA (A)(B), AG, DAG, AAG, → wants expedite processing]*

# CREW | citizens for responsibility and ethics in washington

July 18, 2005

Co-Director
Office of Information and Privacy
United States Department of Justice
Flag Building
Suite 570
Washington, D.C. 20530-0001

**RECEIVED**

JUL 2 0 2005

Re: Freedom of Information Act Appeal

Office of Information and Privacy

Dear Sir:

By letter dated July 11, 2005, Melanie Ann Pustay, Deputy Director, Office of Information and Privacy, U.S. Department of Justice ("DOJ"), advised me that the request of Citizens for Responsibility and Ethics in Washington ("CREW") for expedition of its Freedom of Information Act "(FOIA") request dated June 28, 2005, was denied. CREW hereby appeals that determination and requests that you reverse it for the reasons set forth below.

CREW's FOIA request of June 28, 2005, sought all records in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General relating to the government's proposed penalty in United States v. Philip Morris, Inc., et al., Civil Action No. 99-2496 (GK). CREW also sought all records relating to any offer of settlement in that lawsuit, records of all contacts between any individuals in the Offices of the Attorney General, Deputy Attorney General and Associate Attorney General and the White House concerning the tobacco lawsuit, and records of any contacts between Associate Attorney General Robert D. McCallum and the law firm Alston & Bird concerning the tobacco lawsuit. In accordance with 5 U.S.C. §552(a)(6)(E)(ii) and DOJ regulations, 28 CFR Part 16, CREW requested that DOJ expedite its processing of CREW's FOIA request. *[handwritten: sub]*

In her letter of July 11, 2005, Ms. Pustay characterized CREW's request for expedition as based only on "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," pursuant to 28 CFR 16.5(d)(1)(iii)(2003). She denied that request based on the inability of her office to "identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally." She also found that "the primary activity" of CREW "does not appear to be information dissemination."

11 DuPont Circle, N.W., 2nd Floor • Washington, D.C. 20036
(o) 202.588.5565 (c) 202.841.5096

This determination is wrong as a matter of law and fact. As CREW explained in its request for expedition, there is a particular urgency in informing the public about the circumstances surrounding DOJ's proposed penalty in the tobacco lawsuit. A legion of news reports have suggested that the proposed penalty was the product of improper political influence brought to bear on the government's trial team of career lawyers and that these influences included improper attempts to have government witnesses alter their trial testimony. I have attached copies of these news articles to this letter (Attachment A). In addition, numerous members of Congress have called for an investigation into these very serious matters, and written letters to the Attorney General expressing their concerns about the possibility that the government's proposed penalty was the product of improper influence and raising questions about the integrity of the Department of Justice. *See* Attachment B. And DOJ's own Office of Professional Responsibility has initiated an investigation into these charges. *See* Attachment C.

Moreover, the government's proposed penalty, the subject matter of CREW's FOIA request, was made in litigation that will have a significant and far-reaching effect, as demonstrated by the magnitude of the monetary penalties that have been under consideration in this matter, and the degree of public attention given to DOJ's most recent proposal. The urgency for this information to be made public could not be clearer, as the government's proposal implicates the rights and responsibilities of millions of Americans and tobacco companies that make up some of the most powerful and lucrative businesses in the United States and abroad.[1] This urgency is heightened by the advanced stage of the tobacco litigation, wherein the district court is currently considering what, if any, penalties should be imposed against the defendants. *See* Attachment E (letter from Joseph A. Califano, Jr., former Secretary of Health, Education and Welfare, to the Honorable Gladys Kessler).

Second, CREW has demonstrated that it is "engaged primarily in disseminating information," as required by 28 CFR 16.5(d)(1)(ii). As we explained in our request for expedition, CREW is a non-profit corporation engaged primarily in disseminating information it gathers from a variety of sources, including the Freedom of Information Act, and seeks the information requested in this FOIA request for the express purpose of disseminating it to the public. CREW's website, www.citizensforethics.org, contains numerous examples of its efforts, including a link to a site, prepared by CREW, that details the many activities of Jack Abramoff, a Washington lawyer and lobbyist currently under criminal investigation, and the many powerful individuals linked to Abramoff through such things as campaign contributions. CREW recently published a report, *Addicted to Porn: How Members of Congress Benefit from Pornography*, that details the campaign contributions that members of Congress had received from corporations involved in pornography. As with the Electronic Privacy Information Center and the

---

[1] *See* Attachment D (letter from 18 health organizations to the Attorney General).

2

ACLU, two organizations that the courts have found satisfy this criteria,[2] CREW "'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'" ACLU, 321 F.Supp.2d. at 30 n.5, quoting EPIC, 241 F.Supp.2d at 11.

We also note that DOJ's Civil Division, by letter dated July 7, 2005, granted CREW's request for expedition pursuant to 28 CFR 16.5(d)(1)(ii) for a comparable FOIA request relating to the tobacco litigation. The Civil Division's determination that CREW has demonstrated a "compelling need" and is therefore entitled to expedition of its FOIA request based on the same record presented here compels a reversal of the Office of Information and Privacy's initial determination to the contrary.[3]

Finally, CREW's request for expedition also satisfies the separate criteria set forth in 28 CFR 16.5(d)(2)(iv), in that it involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." As an initial matter, we note that DOJ failed to even consider the applicability of this regulation, notwithstanding DOJ regulations that require "[a] component that receives a request that must be handled by the Office of Public Affairs" to "forward it immediately to that office by hand-delivery or fax." 28 CFR 16.5(d)(2).[4]

On the merits of this independent basis for expedition, the degree of media attention paid to the subject matter of CREW's FOIA request and the questions that have been raised about the integrity of the government's proposal unquestionably demonstrate that CREW is entitled to expedition of its request.

---

    [2] See ACLU v. U.S. Dep't of Justice, 321 F.Supp.2d 24, 30 (D.D.C. 2004); EPIC v. Dep't of Defense, 241 F.Supp.2d 5, 11 (D.D.C. 2003).

    [3] If, as the D.C. Circuit has found, the "compelling need" set forth in the statutory criteria for expedition sets "a government-wide rather than an agency-specific standard," it necessarily follows that within an agency there cannot be differing conclusions by two different agency components as to what constitutes "compelling need." See Al-Fayed v. CIA, 254 F.3d 300, 306 (D.C. Cir. 2001).

    [4] CREW is herewith submitting to DOJ's Office of Public Affairs a copy of its original request for expedition made to the Office of Information and Privacy, along with a copy of this appeal.

3

Under these circumstances, CREW satisfies fully the criteria for expedition of its FOIA request and, accordingly, the initial determination by the Office of Information and Privacy denying CREW's request must be reversed.

Sincerely,

ANNE L. WEISMANN

cc: Director of Public Affairs
    U.S. Department of Justice

4

# EXHIBIT G



U.S. Department of Justice

Office of Information and Privacy

Telephone: (202) 514-3642

_____

Washington, D.C. 20530

AUG 1 2 2005

Anne L. Weismann, Esq.
Citizens for Responsibility
   and Ethics in Washington
Second Floor                                    Re:  Appeal No. 05-2360
11 Dupont Circle, NW                                 Request Nos. 05-R0788
Washington, D.C.  20036                              through R0790
                                                     RLH:ADW
Dear Ms. Weismann:

     This responds to your letter dated July 18, 2005, in
which you appealed from the action of the Office of
Information and Privacy's Deputy Director, Melanie Ann Pustay,
acting on behalf of the Offices of the Attorney General,
Deputy Attorney General, and Associate Attorney General,
denying your request for expedited processing of your request
for access to records concerning certain matters relating to
the government's proposed penalty in *United States v. Philip
Morris, Inc.*

     I have been advised that the Office of Public Affairs has
determined that your request should be afforded expedited
treatment.  Accordingly, your appeal is moot.

                              Sincerely,


                              Richard L. Huff
                              Co-Director

# EXHIBIT H

# CREW | citizens for responsibility and ethics in washington

July 11, 2005

Co-Director
Office of Information and Privacy
Suite 570, FLAG Building
United States Department of Justice
Washington, D.C. 20530

**OFFICE OF INFORMATION
AND PRIVACY**

**JUL 2 2 2005**

**RECEIVED**

### Re: Freedom of Information Act Appeal

Dear Sir/Madam:

By letter dated July 7, 2005, James M. Kovakas, Attorney-In Charge, FOI/PA Unit, Civil Division, U.S. Department of Justice ("DOJ"), advised Citizens for Responsibility and Ethics in Washington ("CREW") that our request for a fee waiver for our Freedom of Information Act ("FOIA") request of June 28, 2005, was denied. CREW hereby appeals that initial determination and requests that you reverse it for the reasons set forth below.

Our June 28, 2005 FOIA request sought copies of all records relating to the government's proposed penalty in United States v. Philip Morris USA, et al., No. 99-CV-2496 (GK). In accordance with the six factors set forth in 5 U.S.C. §552(a)(4)(A)(iii), CREW requested a waiver of fees associated with processing this request for records.

CREW satisfies fully the requirements for a fee waiver. There has been wide public attention given to the government's proposed penalty and whether it was the product of improper political influence brought to bear on the government's trial team of career lawyers and government witnesses. As explained in our request, the subject of this request concerns the operations of the federal government and the disclosure will likely contribute significantly to a better understanding of the individuals and organizations that influenced, or attempted to influence, the litigating position of the United States in a lawsuit of major and far-reaching consequences.

DOJ's initial assessment expressed in the July 7, 2005 letter, is that, based on a review of "a portion of the documents responsive" to our request, the documents CREW has requested cannot be released, with the exception of documents filed as part of the public court record or ones that are already in the public domain. DOJ therefore concluded that because these documents cannot be released, "the public's understanding will not be enhanced either quantitatively or qualitatively," and that CREW's request for fees was therefore denied.

11 DuPont Circle, N.W., 2nd Floor | Washington, D.C. 20036
(o) 202.588.5565 (o) 202.841.5096

DOJ's initial fee determination is wrong as a matter of law. As at least one court has found, DOJ's approach here would "invert the burden of proof and foist upon [the requester] a burden that is not provided under the FOIA." Project on Military Procurement v. Dep't of the Navy, 710 F.Supp. 362, 367 (D.D.C. 1989). The law, however, is clear – it is the government, not the requester, that bears the burden of demonstrating the propriety of its withholdings. Id. To require the requester to instead bear that burden, before the agency has even completed its review of the responsive documents, much less withheld material under a claim of exemption, would be contrary to the statutory scheme and common sense. At this point, with no knowledge about what the universe of responsive documents is, CREW is simply not in a position, legally or factually, to refute DOJ's speculative claim that all of the documents CREW requests would be exempt from disclosure, save those already in the public domain.

This conclusion is reinforced by DOJ's concession that its initial determination on CREW's request for a fee waiver is based on a review of only a "portion" of responsive documents. Letter of July 7, 2005, to CREW from James K. Kovakas. That DOJ contemplates asserting exemptions over all of the non-public material based on a "nonexistent" record of review and decision, Project on Military Procurement, 711 F.Supp. at 367, underlines the premature and faulty conclusion DOJ has reached to date on CREW's fee waiver request.

From its initial fee determination, DOJ appears to concede that CREW has met the other criteria for a fee waiver. As a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code, CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the governmental decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will share its analysis with the public, either through memoranda or reports. As a review of CREW's website – www. citizensforethics.org – illustrates, CREW has an established history of using the Freedom of Information Act for these purposes.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver and, accordingly, DOJ's initial determination to deny CREW a fee waiver must be reversed.

Sincerely,

ANNE L. WEISMANN

2

HAPPY BIRTHDAY

JUNE 14, 1775

Department of Justice
Mailroom
JUL 2 2 2005

WAS... DC 200
PM
14 JUL 2005

Citizens for Responsibility and Ethics in Washington

11 DuPont Circle, N.W., 2nd Floor,
Washington, D.C. 20036

Co-Director
Office of Information and Privacy
Suite 570, FLAG Building
United States Department of Justice
Washington, D.C. 20530

**Freedom of Information Act Appeal**

# EXHIBIT I

U.S. Departmen...of Justice

Office of Information and Privacy

Telephone: (202) 514-3642

*Washington, D.C. 20530*

JUL 2 8 2005

Ms. Anne L. Weismann
Citizens for Responsibility and Ethics in Washington
11 DuPont Circle NW., 2nd Floor
Washington, DC 20036

Re: Your letter of July 11, 2005

Dear Ms. Weismann:

This is to advise you that your administrative appeal from the action of the Civil Division on your request for information from the files of the Department of Justice was received by this Office on July 22, 2005.

The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **05-2367**. Please mention this number in any future correspondence to this Office regarding this matter.

We will notify you of the decision on your appeal as soon as we can. The necessity of this delay is regretted and your continuing courtesy is appreciated.

Sincerely,

Priscilla Jones
Chief, Administrative Staff

file

# EXHIBIT J

U.S. Department of Justice

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                          *Washington, D.C. 20530*

ADVANCE COPY BY FAX                          JAN 2 3 2006

Anne L. Weismann, Esq.
Citizens for Responsibility
   and Ethics in Washington
Second Floor
11 Dupont Circle, NW.                          Re:    Appeal No. 05-2367
Washington, DC  20036                                   Request No. 0145-FOIA-8394
                                             MAP:JGM

Dear Ms. Weismann:

      You appealed on behalf of Citizens for Responsibility and Ethics in Washington (CREW) from the fee waiver determination made by the Civil Division with regard to your organization's request for access to records concerning the government's proposed penalty in <u>United States v. Philip Morris USA, et al.</u>, No. 99-2496 (D.D.C.), "of any kind and from any source, regardless of format," and including records related "in any way to any offer of settlement" from thirteen enumerated companies and institutions.  (CREW request dated June 28, 2005, ¶ 2 at 1.)

      As you know, the statutory standard for evaluating fee waiver requests provides that fees shall be waived or reduced "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii) (2000).  In determining whether you have satisfied this statutory standard, we considered the six factors set out in the Department of Justice regulation that puts this statutory standard into effect.  <u>See</u> 28 C.F.R. § 16.11(k) (2005).

      In support of your appeal you state that there has been wide public attention to the government's proposed penalty and seemingly question whether the penalty was a result of improper political influence.  You also state that your request concerns the operations of the federal government and that "disclosure will likely contribute significantly to a better understanding of the individuals and organizations that influenced, or attempted to influence, the litigating position of the United States."  (CREW appeal dated July 11, 2005, ¶ 3 at 1.)  You further state that CREW is a nonprofit corporation organized under section 501(c)(3) of the Internal Revenue Code and that CREW is committed to "protection of citizen rights to be aware of the activities of government officials," to "ensuring the integrity of those officials," and to "empowering citizens to have an influential voice in government decisions." (CREW appeal dated July 11, 2005, ¶ 3 at 2.)  Your letter of appeal also describes the methods by which CREW advances its mission and advises that this request is not in its financial interest.  And your letter asserts that CREW will analyze the information that it receives and will share that analysis with the public.

JGM

-2-

With regard to the Civil Division's response to CREW of July 7, 2005, advising you of its fee waiver determination, you appear to have misconstrued that response inasmuch as you concluded that the Civil Division had "speculative[ly] claim[ed]" that all records responsive to CREW's request were exempt from disclosure (with the exception of those already in the public domain), thus resulting in a "premature and faulty" fee waiver determination. (CREW appeal dated July 11, 2005, ¶¶ 1-2, at 2.) This Office regards that letter as a partial fee waiver determination limited to the records found as a result of the Civil Division's preliminary search (of approximately three hours). (See Civil Division response dated June 7, 2005, ¶ 1 at 2.)

Your conclusion that the Civil Division's fee waiver determination encompasses all responsive records is at odds with the Civil Division's explanation to you that "if, as we proceed with the processing we determine that records can be released" it would evaluate those records for fee waiver purposes. (Id. ¶ 2 at 2.) Likewise, your reading of the Civil Division's letter gives no effect to Civil Division's statement that it "reviewed a portion of the documents responsive to your request." ( Id. ¶ 1 at 2.) While the Civil Division's letter ultimately finds that a "waiver of fees is therefore not appropriate," a reading of that sentence, in conjunction with the entire paragraph in which it is located, makes it clear that all references to "these records" in that paragraph are made with regard to only a portion of the records responsive to your request. It is "these records," therefore, that are the subject of this response.

While I understand that there is some likelihood that records similar to those already located will be found among the records that have yet to be reviewed, until that review is completed, and a fee waiver determination is made by the Civil Division for that portion of records, this Office cannot (nor can the Civil Division) predict what that result might be.

It also appears that you have misconstrued the meaning of at least a portion of the statutory fee waiver standard. The language of the fee waiver standard speaks to whether "disclosure" of the requested information would likely contribute to the public's understanding of government operations. If the Civil Division were to simply award a fee waiver to CREW based upon the existence of responsive records, without taking into account which of those records would likely be "disclosed," its action would not comport with the directive of the fee waiver provision that the public interest requirement be met through "disclosure of the information." 5 U.S.C. § 552(a)(4)(A)(iii); see also, e.g., Van Fripp v. Parks, No. 97-0159, slip op. at 10 (D.D.C. Mar. 16, 2000) (stating that "reviewing agencies and court should consider . . . whether the disclosable portions of requested information are meaningfully informative in relation to the subject matter requested" (citing agency's fee waiver regulation)).

You seemingly would have had the Civil Division, and now this Office, find (or, to use your own words, "speculatively claim") that all of the records responsive to your request "satisf[y] fully the criteria for a fee waiver" as you have stated in your appeal. Such a position not only is inconsistent with the wording of the statute as explained above, as it would have been made without an assessment of the nature of the information likely to be disclosed, but it also would place the agency in the untenable position of potentially being unable to recoup fees to

-3-

which it might otherwise be entitled.[1]  The majority of courts that have addressed this issue have concluded that until a fee waiver determination has been made and (if a full fee waiver is not granted) the requester has agreed to pay all the assessable fees, the request is not yet ripe for processing because that has been no compliance with the fee requirements of the FOIA.

With regard to those records that already have been located and reviewed, this Office has concluded that the fee waiver determination made by the Civil Division was correct.  In reaching this decision on your appeal, the six factors referenced above were analyzed as they apply to CREW's request.  It is apparent that many of these records concern the operations or activities of the federal government (fee waiver factor one) and that CREW's interest in the records do not appear to be primarily commercial (fee waiver factors five and six).  Further, you have provided some support for CREW's intention to analyze the records that it receives and that that analysis will be shared with the public through various methods (factor three).  Your request, however, fails to satisfy the remaining factors.  As you are aware, the requester bears the initial burden of demonstrating that it is entitled to a fee waiver.

The releasable records that have been identified thus far consist of records that are part of the public court record in the tobacco litigation.  A fee waiver is not appropriate for such records as the public understanding will not be significantly enhanced by release of information that is already available to the public (fee waiver factors two and four).  See, e.g., Judicial Watch, Inc. v. Dep't of Justice, No. 03-5093, 2004 WL 980826, at *18 (D.C. Cir. May 7, 2004) (finding "no basis to conclude that [plaintiff] is entitled to a blanket fee waiver" where plaintiff did not take issue with the reasonableness of the district court's finding of the public availability of the documents already released; upholding the government's refusal to process additional documents without payment of fees); Carney v. United States Dep't of Justice, 19 F.3d 807, 815 (2d Cir. 1994) (noting that "where records are readily from other sources . . . further disclosure by the agency will not significantly contribute to public understanding"); McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1286 (9th Cir. 1987) (recognizing that new information has more potential to contribute to public understanding).

---

[1] If fee waivers were granted simply on the basis of the face of the request without an assessment of the records likely to be disclosed, and thereafter during the actual processing of the records it were determined that the requested records are properly exempt from disclosure, the agency (having already granted a fee waiver) would be without recourse to demand payment. This is further so because Department of Justice regulations require -- in accordance with the fee guidelines issued by the Office of Management and Budget -- that when assessable fees exceed $25.00, the requester must commit to pay them in writing before the agency is obligated to process that request; in other words -- no commitment, no obligation to process.  While this procedure was created in part to give the requester some protection against fees without first receiving notification from the agency and then agreeing to them, it could have an extraordinary impact on an agency's ability to collect fees if fee waivers, as you appear to suggest, were determined merely on the basis of the nature of the request alone.

-4-

You emphasize in both your initial request and appeal, presumably to enhance CREW's claim that it is entitled to a fee waiver, that CREW is a nonprofit corporation organized under section 501(c)(3) of the Internal Revenue Service Code. While this statement is not disputed, it is irrelevant with regard to CREW's entitlement to a fee waiver. It is well settled that there is no automatic waiver of fees for nonprofit institutions. Further, you describe CREW's commitment to the "protection of the citizen rights to be aware of the activities of government officials and to ensuring the integrity of those officials," and that "CREW is dedicated to empowering citizens." (CREW request dated June 28, 2005, ¶ 3 at 3.) Again, such characterizations address CREW's mission statement and not its qualifications under the statutory standard, and so they are not helpful to this Office in its evaluation of CREW's entitlement to a fee waiver. Accordingly, with regard to the records thus far located and reviewed by the Civil Division, your appeal is denied.

While you have been provided with your full measure of statutory entitlement with regard to search time, your entitlement to one hundred pages of releasable records without cost has not yet been exhausted. Given the wording of your request, however, it would appear that CREW is not interested in receiving the publicly available information that has been located to date. If this is incorrect please inform the Civil Division directly. You should understand, however, that because you have not been granted a fee waiver at this time and because you have not indicated an amount that CREW is willing to pay in the absence of a fee waiver, no further action is required by the Civil Division beyond your statutory entitlements. See 5 U.S.C. § 552(a)(3); see also, e.g., Vennes v. IRS, No. 89-5136, slip op. at 2-3 (8th Cir. Oct. 13, 1989) (explaining that agency is under no obligation to produce material until either requester agrees to pay fee or fee waiver is approved); Casad v. HHS, No. 01-1911, 2003 U.S. Dist. LEXIS 13007, at *18 (D.D.C. June 20, 2003) (recognizing that where fee waiver is denied, no action by agency is required until requester agrees to pay fee associated with request); Daniel v. United States Dep't of Justice, No. 99-2423, slip op. at 2 (D.D.C. Mar. 30, 2001) (dismissing complaint for production of records where plaintiff had failed to pay fee after fee waiver was denied), summary affirmance granted, No. 01-5119, 2001 WL 1029156, at *1 (D.C. Cir. Aug. 28, 2001). The Civil Division previously had asked that you specify an amount of fees that you are willing to expend for this request. To date you have not done so. Please be advised that should you do so and if upon further processing by the Civil Division records are identified that are releasable and qualify for a fee waiver, any money owed by CREW would be reduced commensurate with the amount of the fee waiver granted.

With reference to the breadth of your request, I note that your request, as originally submitted, sought records related to any penalty with regard to the tobacco litigation, as well as records related to any offer of settlement over a multi-year period. There was an enormous volume of potentially responsive records responsive to that request. I now have been informed that as a result of recent discussions between the parties, the volume of records to be reviewed has been substantially reduced.

While I would still suggest that you give consideration to agreeing to pay a particular amount of fees and informing the Civil Division's FOIA Office of that amount in a letter, you might also consider contacting that office, assuming such communications are viable, and asking that it provide you with an estimate of the fees needed to process your request as now modified.

-5-

If you choose the former, it would allow the Civil Division to move forward with your request upon receipt of your commitment letter. By choosing the latter and after receiving the fee estimate, you may then give consideration to agreeing to pay the full amount estimated or a portion of it. As previously mentioned, upon further processing of your request, if it is determined that records reviewed do qualify for a fee waiver, any money owed by CREW would be reduced commensurate with the amount of the fee waiver granted.

Even though this Office is aware that you already have proceeded to litigation, agency regulations require that you be informed of your right to judicial review of this action in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Daniel J. Metcalfe
Director