# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY AND    :
ETHICS IN WASHINGTON               :
                                   :
            Plaintiff,             :
                                   :
      v.                           :    Civil Action No. 05-2078 (EGS)
                                   :
U.S. DEPARTMENT OF JUSTICE         :
                                   :
            Defendant.             :
_____:


## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S ENTITLEMENT TO A FEE WAIVER

Defendant U.S. Department of Justice's ("DOJ") opposition to plaintiff's motion for summary judgment rests almost entirely on mischaracterizations and distortions of governing case law and the record in this case.[1]  CREW, in its opening brief, explained how a wealth of case law dating back nearly 30 years establishes that an agency's potential claims of exemption do not dictate the outcome of a fee waiver request.  In arguing to the contrary, DOJ offers out-of-context and seriously misleading passages from that case law, ignoring entirely both the courts' reasoning and holdings.  In the same vein, DOJ attempts to rewrite the history of this case, suggesting falsely that it has made credible and adequately justified decisions on specific exemption claims that negate entirely CREW's request for a fee waiver.  DOJ also ignores the significant categories of records CREW is requesting that would not be legitimately subject to

_____

[1] Of note, while DOJ has opposed CREW's motion for summary judgment, it has not filed its own motion for summary judgment.  Nor has DOJ opposed CREW's statement of material facts submitted in support of its motion or provided its own statement as the Local Rules require, meaning that CREW's submitted facts are admitted.  See LCvR 56.1.

any exemption claim to bolster the agency's false premise that CREW is likely to receive nothing in response to its two Freedom of Information Act ("FOIA") requests.

Perhaps the most strained of DOJ's arguments is its claim that the requested documents are not likely to contribute to the public's understanding because, despite the accusations of DOJ's own trial team leaders that the government's change in position was attributable, at least in part, to a consideration of improper factors, CREW has been unable to produce any additional confirming evidence. Of course, the requested documents are the very confirming evidence CREW seeks -- documents that confirm either that DOJ was, or was not, improperly influenced in its decision to reduce the penalties it was proposing in the tobacco litigation. In either event, the requested documents will contribute to public understanding on this issue and that is all the FOIA's fee waiver requirements demand. DOJ's approach, by contrast, would make it virtually impossible for any FOIA requester to ever satisfy the fee waiver requirements unless that requester already has the documents in hand that it is seeking from the agency.

CREW filed its two FOIA requests to shed light on why a top DOJ official, with connections to the tobacco industry, made the eleventh-hour decision to dramatically reduce the penalties sought in the tobacco litigation. The public deserves to know the full story, and the documents CREW seeks will go a long way in telling that story. Accordingly, CREW is entitled to fee waivers for its two FOIA requests.

1. **DOJ's Arguments Rest On Patently False Characterizations Of The Record In This Case.**

DOJ's opposition to CREW's requests for fee waivers rests on several patently false characterizations of the record in this case. First, one of the central premises of DOJ's position on fees is that by definition, CREW's two FOIA requests in their entirety seek documents that

are "virtually inherently protected" and therefore exempt from compelled disclosure.  See Letter from Melanie Ann Pustay to Anne Weismann, Jan. 19, 2006 (Exhibit 1 to Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment on Plaintiff's Entitlement to a Fee Waiver) ("P's Mem."); Defendant's Opposition to Plaintiff's Motion for Summary Judgment Regarding a Fee Waiver ("D's Oppos.") at pp. 12-14.  The express language of those requests, however, proves the falsity of DOJ's position.

Among the categories of documents CREW seeks are contacts between the White House and top DOJ officials regarding the tobacco lawsuit.  See Exhibits 1 and 2 to D's Oppos.  Given former Associate Attorney General Robert McCallum's insistence that he made the final decision about what the government's proposed remedy should be[2] and his public proclamation about why he made that decision,[3] it is strained at best to suggest that documents responsive to this portion of CREW's requests would be exempt.  At a minimum, DOJ would be required to disclose the existence of such documents, information that in and of itself would be revealing and of value to the public understanding.

CREW is also requesting records of contacts between Mr. McCallum and his former law firm as well as offers of settlement from any source whatsoever, including the tobacco companies that are the named defendants in the tobacco litigation.  These categories of documents similarly are subject to no privilege.  Yet DOJ ignores each in its argument that all of the documents CREW seeks are likely to be exempt.  As for the remaining categories, as

---

[2] See, e.g., Deposition Transcript of Robert McCallum, Jr., July 18, 2006, pp. 17-18 (Attached as Exhibit 1).

[3] Robert McCallum, Remedy is 'Forward-Looking,' *USA Today*, June 9, 2005.

discussed _infra_, DOJ has not come close to meeting its burden of establishing that the requested records are exempt.

Second, DOJ mischaracterizes its two responses as "*partial* fee waiver denials," rather than the blanket fee waiver denials they are. That DOJ offered to waive fees in the future for any non-exempt documents it might locate does not change the essential nature and effect of its decisions: unless and until CREW pays up front for all processing, DOJ will not conduct any further search or analysis. Without question the practical effect of DOJ's decisions -- no matter how it characterizes them -- is the same as a blanket fee waiver denial.

Third, here as in the past, DOJ has vastly inflated the nature of CREW's FOIA requests. As CREW made clear early on in its dealings with DOJ at the administrative stage, CREW is not seeking "virtually every document generated" from January 1, 2001, to June 28, 2005 (the date of its requests). D's Oppos. at 2. Indeed, DOJ used this patently ridiculous interpretation of CREW's request to derive its bloated estimate that responsive documents in the possession of the Civil Division numbered in the 8-10 million range. Id. This characterization of what CREW is seeking remains as false today as it was the day DOJ first articulated it.

### 2. DOJ Relies On A Patently False Misreading Of Applicable Case Law To Advocate For An Erroneous Legal Standard.

The degree of factual misrepresentations on which DOJ relies in arguing CREW is not entitled to a fee waiver raise troubling questions, but even more troubling is DOJ's mischaracterizations of the governing case law. The law, according to DOJ, is that the "public interest exemption" to fees is available only where the non-exempt portions the agency initially deems disclosable would contribute significantly to public understanding. See D's Oppos. at pp. 8-11.

Contrary to DOJ's representations, however, neither the FOIA nor interpretative case law prevents an agency from waiving fees "absent a determination that the responsive records, when <u>disclosed</u>, are likely to enhance the public understanding of government."  D's Oppos. at 8 (emphasis in original).  The FOIA speaks only in terms of when "disclosure *of the information* is in the public interest," 5 U.S.C. § 552(a)(4)(A)(iii) (emphasis added), but does not specify what it means by "the information" or when that assessment is to be made.

Courts, however, have filled in these gaps,  making clear that "[f]ees are to be reduced or waived if disclosure of the *requested information* is 'in the public interest . . ." <u>Judicial Watch, Inc. v. Dep't of Justice</u>, 365 F.3d 1108, 1126 (D.C. Cir. 2004) (emphasis added).  In other words, if the information as requested is in the public interest, the requester is entitled to a fee waiver whether or not specific documents are ultimately found to be exempt.  <u>See also</u> <u>Judicial Watch, Inc. v. Rossotti</u>, 326 F.3d 1309, 1314-15 (D.C. Cir. 2003) (rejecting government's argument that fee waiver should be denied because plaintiff had failed to show whether "information contained in the releasable records [is] available" to rule that plaintiff is entitled to fee waiver where plaintiff had demonstrated "that disclosure of *the information sought* will serve the public interest . . ." (emphasis added)); <u>Klein v. Toupin</u>, 2006 U.S. Dist. LEXIS 32478, *12-13 (D.D.C. 2006) (fee waiver denied where plaintiff had failed to show "how disclosure of the *requested information* would contribute significantly to public understanding of government operations or activities" (citation omitted) (emphasis added));<u>Votehemp, Inc. v. Drug Enforcement Admin.</u>, 237 F.Supp.2d 55, 60 (D.D.C. 2002) (entitlement to fee waiver based on evaluation of "the informative value of *the information sought to be disclosed* . . ." (emphasis added)); <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, 185 F.Supp.2d 54, 60 (D.D.C. 2002) ("party seeking a fee

waiver . . . must show that the disclosure of *the requested information* will 'contribute to the public understanding' . . ."(emphasis added));  <u>Judicial, Inc. v. U.S. Dep't of Justice</u>, 122 F.Supp.2d 5, 10-11 (D.D.C. 2000) (fee waiver denied where plaintiff failed to show "how *the requested information* will enhance the public's understanding . . ." (emphasis added)).

Of note, all of the above cited cases were also cited by DOJ, but for the contradictory proposition that courts must evaluate the public interest in the records that are actually disclosed, and not simply by reference to those records that a FOIA requester is seeking.  <u>See</u> D's Oppos. at 9-10.  DOJ's interpretation, however, which is at odds with the express language and holdings of these cases, must be rejected.

Not only has DOJ seriously mischaracterized the very cases on which it relies, but it has also mischaracterized the nearly 30 years of cases rejecting its advocated approach.  For example, DOJ argues that <u>Project on Military Procurement v. Dep't of the Navy</u>, 710 F.Supp. 362 (D.D.C. 1989), is inapplicable because it involved a fee waiver denial where the agency failed to justify and explain why the requested records were exempt, whereas here DOJ claims it has "denied a fee waiver on the basis of documents actually reviewed."  D's Oppos. at 11-12. This claim distorts both the holding in <u>Project on Military Procurement</u> and the basis for DOJ's fee waiver denial.

First, the court in <u>Project on Military Procurement</u> rejected the very argument proffered here -- that entitlement to a fee waiver should be determined by evaluating an agency's contemplated withholdings.  This approach, the court reasoned, would deny a requester "an opportunity to challenge, before the agency and in court, an actual decision to withhold specific

information." Id. at 367.  Essentially putting "the cart before the horse,"[4] this approach "is unfair

and contrary to the spirit of the FOIA . . . [and] would undermine the very rationale of the fee

waiver provisions and this Court's ability to review FOIA determinations made by the

defendant." Id. at 368.

　　　　Yes the cart-before-the-horse approach is precisely that which DOJ has taken here.  By

its own admission, DOJ has not reviewed all of the documents CREW seeks.  See D's Oppos. at

4 (fee waiver denied by Civil Division based on "partial review of responsive documents"), 6-7

(fee waiver denied by Office of Information and Privacy "based upon its review of documents

located so far" after two hours of search time).  Instead, DOJ denied CREW's fee waiver

requests based on speculative assumptions of "*contemplated* withholdings" of documents it has

yet to review.[5]  Having failed to actually make exemption claims on a document-by-document

basis, DOJ stands in no different shoes than the agency in Project on Military Procurement.

　　　　Equally unavailing is DOJ's attempt to distinguish Judicial Watch, Inc. v. U.S. Dep't of

Transportation, 2005 U.S. Dist. LEXIS 14025 (D.D.C. 2005), cited by CREW in its opening

brief.  According to DOJ, this case simply concerns a situation where the agency did not meet its

burden of proof, but has no applicability to the case at hand.  See D's Oppos. at 11.  Exactly the

opposite is true.  The court in Judicial Watch made clear that fee waiver requests are evaluated

not on "the possibility that the records may ultimately be determined to be exempt from

disclosure," but rather "*on the face of the request* and the reasons given by the requestor in

support of the waiver . . ."  2005 U.S. Dist. LEXIS 14025, *14 (quotation omitted) (emphasis

---

[4] Id.

[5] Project on Military Procurement, 710 F.Supp. at 367 (emphasis in original).

added).  See also Judicial Watch v. U.S. Dep't of Energy, 310 F.Supp.2d 271, 295 (D.D.C. 2004)
(rejecting agency's claim that plaintiff not entitled to fee waiver because the deliberative
portions of requested documents would be withheld and confirming that "[a] fee waiver request
should be evaluated based on the face of the request and the reasons given by the requester . .
.").[6]

In any event here, as in those cases, DOJ has failed to substantiate the limited
withholdings it has made.  For example, James Kovakas has justified the Civil Division's
withholding of a May 30, 2005 memorandum "and related documents" solely on the ground that
they "reflect[] the deliberative process and work product of agency attorneys . . ."  Declaration of
James M. Kovakas, March 10, 2006, ¶ 14 (Exhibit 1 to D's Oppos.).  From this limited
description, Mr. Kovakas goes on to speculate that "the remaining documents responsive to the
request . . . would also likely be exempt for the same reasons."  Id. at ¶ 15.

Completely missing from this record, however, are the detailed declarations laying out all
of the specific documents at issue and explaining precisely why each falls within a claimed
exemption.  See, e.g., Summers v. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  As
noted above, the vast majority of documents at issue have yet to be reviewed; at this point any
exemption is a matter of pure speculation.  But even as to those limited number of documents for
which DOJ has claimed an exemption, the record does not contain the kind of clear, specific and
reasonably detailed supporting documentation that would justify the entry of summary

---

[6] As for the other cases cited by CREW, DOJ either ignores them (e.g., Carney v. U.S.
Dep't of Justice, 19 F.3d 807 (2d Cir. 1994)), or similarly misstates their holdings (e.g., S. Utah
Wilderness Alliance v. U.S. Bureau of Land Mgmt., 402 F.Supp.2d 82 (D.D.C. 2005)).

judgment.[7]  Likewise, it is not a sufficient basis on which to deny CREW a fee waiver.

DOJ also argues that its anticipated withholdings are justified merely by reference to the face of CREW's two FOIA requests, because CREW is seeking records that, "[a]lmost by definition . . . are protected by the deliberative process and attorney client privileges and the work product doctrine."  D's Oppos. at 13.  Not only does this severely truncated analysis ignore critical components of CREW's requests that seek obviously non-exempt documents, see supra, but it suffers from such a level of abstraction and generality that, if accepted, would make a mockery of the processes and burdens of proof FOIA and the courts have established for resolving legitimate claims of exemption.

At bottom, as in Project on Military Procurement, DOJ seeks to deprive CREW of an opportunity to challenge its contemplated withholdings by inverting the burden FOIA places on the government.  According to DOJ, only when CREW pays all anticipated fees will DOJ be obligated to complete its processing of CREW's requests and make particular fee determinations as to particular documents.  And, according to DOJ, it is only then that CREW should be afforded an opportunity, if it "wishes to challenge defendant's exemption claims . . . [[to] petition the Court for attorney's fees in cases where it substantially prevails."  D's Oppos. at 16.  The FOIA simply does not work this way.

### 3.  CREW Has Met Its Burden Of Demonstrating Why The Requested Records Are Likely To Contribute To Public Understanding Of Government.

DOJ's argument that CREW has not justified why the documents it seeks -- documents

---

[7] Again it is noteworthy that even on the more limited issue of CREW's entitlement to a fee waiver DOJ has not moved for summary judgment, an almost implicit concession that the record would not support such a motion.

that would shed light on whether or not the government's proposed penalty in the tobacco litigation was the product of improper influences -- strains credibility and ignores the wealth of information already in the public domain.  As outlined in CREW's complaint, it is not a matter of speculation by CREW, but rather a concern shared by members of Congress, associations and even the former Secretary of Health and Human Services.

First, a May 30, 2005 internal DOJ memorandum outlines the arguments by leaders of DOJ's own trial team as to why the reduced penalty was not based on the facts of the case and appears to be politically motivated.  Complaint, ¶ 17.  One of the government's own trial experts was pressured by DOJ to change his testimony to better conform with the proposed reduction in penalties.  Id. at ¶ 18.  In June 2005, 50 members of Congress wrote to then-Attorney General Alberto Gonzales to express their concern over the direction of the tobacco litigation.  Id. at 22.  A consortium of mainstream associations, including the American Cancer Society, the American Lung Association and the American Heart Association, also wrote to Attorney General Gonzales urging him to accept the recommendations of career DOJ attorneys and reject DOJ's proposal, which "would fail to hold the tobacco industry accountable for decades of wrong-doing that has resulted in millions of premature deaths [and] addicted smokers . . ."  Id.  And former Secretary of Health and Human Services Joseph A. Califano, Jr. wrote to the judge presiding over the tobacco trial to express his concerns.  In particular, Mr. Califano noted:

> When witnesses are asked to tone down the truth; when attorneys are ordered by their superiors to counter their own expert witnesses; when those superiors are political appointees with close ties to defendants who have contributed millions of dollars to the political party and administration which appointed them, serious questions arise as to whether parties to this case are thwarting the ability of this Court to render justice on the present record.

Complaint, ¶ 26.

Given the number of serious concerns that have been raised about DOJ's decision to drastically reduce the penalties it was seeking, any information that would substantiate or disprove these concerns would unquestionably be in the public interest. Accordingly, CREW has more than met its burden of justifying its requested fee waiver.[8] As a necessary consequence, DOJ cannot properly require CREW to pay anticipated fees in advance.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in CREW's opening brief, the Court should grant CREW's motion for summary judgment on the issue of its entitlement to a waiver of fees. Respectfully submitted,

                                      ___/s/_____

                                      Anne L. Weismann
                                      (D.C. Bar No. 298190)
                                      Melanie Sloan
                                        (D.C. Bar No. 434584)
                                        Citizens for Responsibility and Ethics
                                         In Washington
                                        1400 Eye Street, N.W., Suite 450
                                        Washington, D.C.  20005
                                        Phone: (202) 408-5565
                                        Fax: (202) 588-5020

                                        Attorneys for Plaintiff

Dated: June 30, 2008

---

[8] DOJ cites to the D.C. Circuit's opinion in <u>Judicial Watch, Inc. v. Dep't of Justice</u>, 365 F.3d at 1127, as support for its claim that without additional confirming evidence, CREW is not entitled to a blanket waiver of fees. D's Oppos. at 15. This citation is in error as the Court was considering whether Judicial Watch was entitled to a fee waiver for documents that were already publicly available, a completely different issue than that raised here.