**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____ )
CITIZENS FOR RESPONSIBILITY     )
AND ETHICS IN WASHINGTON,       )
                                )
            Plaintiff,          )
                                )
                                )   Civ. No. 05-2078 (EGS)
        v.                      )
                                )
U.S. DEPARTMENT OF JUSTICE,     )
            Defendant.          )
_____ )
```

**MEMORANDUM OPINION**

Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW"), commenced this action against the United States Department of Justice ("the DOJ") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. CREW seeks information concerning the government's decision to reduce its monetary penalty request in its ongoing litigation against the tobacco industry.

Pending before the Court is Plaintiff's Motion for Summary Judgment on its entitlement to a fee waiver under FOIA. Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, Plaintiff's Motion for Summary Judgment on its entitlement to a fee waiver under FOIA is **GRANTED**. Accordingly, the fees incurred by Defendant in response to Plaintiff's request for documents regarding the reduction in penalties at issue in this case shall be waived.

I.  **Background**

A.  **Statutory and Regulatory Framework**

FOIA provides a "statutory right of public access to documents and records" held by federal government agencies. *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982).  In that way, FOIA "embodies a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Id.* (internal quotation marks omitted).  FOIA also requires each agency to promulgate regulations specifying a fee schedule for FOIA requests and establishing guidelines for the waiver or reduction of fees.  5 U.S.C. § 552(a)(4)(A)(I).  Furthermore, FOIA mandates that responsive documents "*shall be furnished without any charge or at a charge reduced* . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii) (emphasis added).

The DOJ has promulgated its own regulations regarding the processing of fee waivers.  *See* 28 C.F.R. § 16.11(k)(1-2).  Under DOJ regulations, the public-interest requirement implicates consideration of four factors: 1) whether the subject concerns the operations or activities of the government; 2) the informative value of the information, or whether it will

contribute to an understanding of the subject; 3) the
information's contribution to greater understanding by the
public; and 4) the significance of that contribution to public
understanding.  *Id.* § 16.11(k)(2)(i-iv).

**B.  Factual and Procedural Background**

CREW is a non-profit organization that strives to inform the
public about the activities of government officials.  Compl. ¶ 4.
The FOIA request at issue came out of the litigation surrounding
*United States v. Philip Morris, Inc.*, a racketeering case brought
on behalf of the United States against the tobacco industry.[1]  On
June 7, 2005, DOJ attorneys requested that as a penalty for the
tobacco industry's violations, the court order the industry to
fund a $10 billion smoking cessation program, at a rate of $2
billion per year for five years. Compl. ¶ 16.  As reported by the
newspapers closely following the tobacco litigation, this
proposed penalty represented a significant departure from the
government's position in the case up to that point, which was a
$130 billion smoking cessation program, at a rate of $5.2 billion
per year for twenty-five years.  *Id.* at ¶¶ 16-18; Pl.'s Mem. P. &
A. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 1.  That reduction in
penalties led CREW to believe there had been "political pressure

---

[1]  Defendants included Philip Morris, R.J. Reynolds, Brown &
Williamson Tobacco Co., and British American Tobacco.  Compl. ¶
15; *see also United States v. Philip Morris, Inc.*, No. 99-2496
(D.D.C.).

applied to career DOJ attorneys to protect the financial interest of tobacco companies that had provided generous campaign contributions."[2]  Pl.'s Mem. at 1.

In line with its belief that gaining access to documents concerning the reduction in penalties would "reveal meaningful information about the operations and activities of the federal government," *id.* at 2, CREW made a FOIA request, by letter on June 28, 2005, for "all records relating in any way to the government's proposed penalty in *United States of America v. Philip Morris, Inc. et. al.*"  Letter from Anne Weismann to James Kovackas (June 28, 2005), attached as Ex. 1(A) to Def.'s Opp'n to Pl.'s Mot. Summ. J. ("Def.'s Opp'n"). Specifically, CREW requested

> all memoranda, communications and records of any kind
> and from any source, regardless of format, medium, or
> physical characteristics, from January 1, 2001, to the
> present, discussing or mentioning in any way any
> penalty that the U.S. Department of Justice, on behalf
> of the United States of America, can, may, should or
> will propose in the above-referenced litigation . . . .
> This request includes, but is not limited to, records
> discussing, mentioning, or referring in any way to the
> government's decision to reduce the penalties it is
> seeking against the tobacco industry from $130 billion
> to $10 billion . . . [and] records relating in any way
> to any offer of settlement in the tobacco lawsuit from
> any source whatsoever.

---

[2] This change in penalty also sparked concerns from several congressmen, which prompted a request of DOJ's Inspector General to investigate whether improper political interference led to the government's change in the penalty it was seeking from the court. Compl. ¶¶ 19, 20.

*Id.*  In its letter, CREW also sought expedited processing of its request under 5 U.S.C. § 552(a)(6)(E)(i) and a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii).  *Id.*

The DOJ granted CREW's request for expedited processing, but denied the fee waiver on the grounds that responsive documents would be protected from disclosure under the deliberative-process and work-product privileges.  Letter from James Kovackas to Anne Weismann (July 7, 2005), attached as Ex. 1(B) to Def.'s Opp'n. The DOJ then advised CREW of the likely costs associated with its request, asked if the organization would be willing to pay those fees, and suggested a narrowing of the scope of the request.[3] *Id.*  CREW's appeal from that determination was denied on the grounds that CREW's allegations were too ephemeral to support a fee-waiver request and that, therefore, the request was not likely to contribute to the public's understanding. Letter from Melanie Ann Pustay to Ann Weismann (Jan. 19, 2006), attached as Ex. 2(E) to Def.'s Opp'n.  In addition, the DOJ notified CREW of its position that the fee-waiver provision of FOIA refers only to

---

[3]  CREW did later narrow its request to "documents dealing with the identification and selection of remedies sought by the Department and any changes to particular remedies sought by the Department from January 2005 onward, including records discussing, mentioning or referring in any way to the government's decision to reduce the penalties it is seeking against the tobacco industry from $130 billion to $10 billion or the government's decision to offer testimony from any witness during the remedies phase of trial in *United States v. Philip Morris*." Letter from James Kovakas to Anne Weismann (March 8, 2006), at 1, attached as Ex. 1(E) to Def.'s Opp'n.

disclosable portions of the record. *Id.* As such, because the
DOJ claimed that information requested by CREW was "virtually
inherently protected" from disclosure by the attorney-client,
deliberative-process, or work-product privileges, it deemed much
of CREW's request ineligible for a fee waiver. *Id.* The DOJ
agreed to waive fees for releasable documents that otherwise
satisfied the public-interest standard. *Id.* CREW's waiver
ineligibility was confirmed on appeal. Letter from Daniel
Metcalfe to Ann Weismann (Jan. 23, 2006), attached as Ex. 1(D) to
Def.'s Opp'n.

Following a full initial briefing and two hearings, the
Court granted discovery on the issue of whether the DOJ acted in
bad faith in delaying its processing of CREW's FOIA requests.
After discovery was completed, the parties then filed cross-
motions for summary judgment on that issue. The briefing on
those motions was completed in late December 2006. The Court
issued a minute order on March 31, 2008, directing the parties to
brief the issue of entitlement to a fee waiver. The cross-
motions for summary judgment on bad faith were denied without
prejudice to refiling pending resolution of the fee-waiver issue
now before the Court.

## II.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary
judgment should be granted if the moving party has shown that

6

there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Waterhouse v. District of Columbia*, 298 F.3d 989, 991-92 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Agency fee-waiver determinations are subject to *de novo* review by this Court, limited to the record before the agency at the time of its decision.  5 U.S.C. § 552(a)(4)(A)(vii); *see also, e.g.*, *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1311 (D.C. Cir. 2003).  Parties requesting a fee waiver under FOIA bear the burden of proving their entitlement to such a fee waiver. *See Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1126 (D.C. Cir. 2004).  However, "Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." *Rossotti*, 326 F.3d at 1312 (internal quotation marks omitted).

## III.  Discussion

With the aforementioned principles surrounding FOIA in mind, the Court turns to the fee-waiver request at issue, and determines that CREW's FOIA request meets the fee-waiver requirements under both FOIA and the DOJ's internal regulations.

Fee-waiver requests are evaluated based on the face of the request, not on the possibility of eventual exemption from disclosure. *Ctr. for Medicare Advocacy, Inc. v. Dep't of Health & Human Servs.*, 577 F. Supp. 2d 221, 241 (D.D.C. 2008); *see also Carney v. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994); *Judicial Watch, Inc. v. Dep't of Energy*, 310 F. Supp. 2d 271, 295 (D.D.C. 2004), *rev'd in part on other grounds*, 412 F.3d 125 (D.C. Cir. 2005). Exceptions to this standard of review are made only where information is "patently exempt" on the face of the request. *S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 402 F. Supp. 2d 82, 89-90 (D.D.C. 2005). Because the requested information was not patently exempt from disclosure, CREW's request should have been evaluated on its face. The DOJ's failure to do so was improper, as it based its rejection of CREW's request on the likelihood of later exemptions, a factor not controlling under the terms of FOIA. *See Eudey v. CIA*, 478 F. Supp. 1175, 1177 (D.D.C. 1979) (concluding that the agency's refusal to waive fees was arbitrary and capricious because it was based on an improper consideration of how many documents would ultimately be released).

Had CREW's request been properly evaluated on its face, it would have fallen within the statutory requirements of FOIA and DOJ regulations. The DOJ contends that the claim was too "ephemeral" to be likely to contribute to public understanding.

Letter from Melanie Ann Pustay to Ann Weismann (Jan. 19, 2006),
attached as Ex. 2(E) to Def.'s Opp'n.  However, given the well-
publicized nature of and interest in the reduction of fees in the
tobacco litigation, an interest that formed the basis of CREW's
request, the contention that information on this issue would
inform the public understanding is not such a bare allegation as
to warrant rejection by this Court.  Moreover, the information
was not already publicly available, as made clear by the DOJ's
claims of eligibility for exemption.  Therefore, the request was
in the public interest; and because the information is not in
CREW's commercial interest, the request falls within FOIA's fee-
waiver provision.

> **A.  Though some information requested by CREW may
> eventually be exempt from actual disclosure, CREW is
> not ineligible for a fee waiver on that basis because
> the records requested were not patently exempt on their
> face.**

The DOJ contends that availability of fee waivers for
information requested in the public interest applies only to
information actually released to the public.  *See* Def.'s Opp'n at
8-13.  As such, it argues that satisfaction of the public-
interest requirement is ultimately irrelevant for purposes of
fee-waiver determinations if that information meets any available
exemption from disclosure.  *Id.*  This interpretation of the fee-
waiver provision is contrary to previous readings of the statute,
which have consistently held that a request for a fee waiver

9

"should be evaluated based on the face of the request and the reasons given by the requester in support of the waiver, 'not on the possibility that the records may ultimately be determined to be exempt from disclosure.'" *Ctr. for Medicare Advocacy*, 577 F. Supp. 2d at 241 (quoting *Judicial Watch, Inc. v. Dep't of Transp.*, 2005 WL 1606915, at *4 (D.D.C. July 7, 2005)); *Dep't of Energy*, 310 F. Supp. 2d at 295 (D.D.C. 2004), *rev'd in part on other grounds*, 412 F.3d 125 (D.C. Cir. 2005); *see also Eudey*, 478 F. Supp. at 1177 (explaining that FOIA's fee-waiver provision "does not permit a consideration of how many documents will ultimately be released").

The DOJ contests the above interpretation, relying on the presence of the term "disclosure" in FOIA's fee-waiver provision for its argument that only materials actually disclosed are relevant for purposes of fee-waiver eligibility. *See* Def.'s Opp'n at 8-13. However, the Court finds this interpretation to be incompatible with prior case law at best and disingenuous at worst. The DOJ's contention that "[t]his Circuit has held that a request for a fee waiver should be judged on the basis of the records actually disclosed, and not merely on the basis of what was requested," *id.*, creates a rule never before articulated and ignores the previously cited case law standing for the opposite proposition.

The cases upon which the DOJ relies for support are

distinguishable on their facts and, in any event, do not stand
for the proposition that only actual disclosure should be
contemplated.  *See Dep't of Justice*, 365 F.3d at 1126 (discussing
statutory language that "disclosure" must benefit the public,
considering whether the *request* met that factor, and affirming
the denial of a blanket fee waiver based on an evaluation of
documents that *had already been released*); *VoteHemp, Inc. v. Drug
Enforcement Admin.*, 237 F. Supp. 2d 55, 62 (D.D.C. 2002) (same);
*see also Klein v. Toupin*, 2006 WL 1442611, at *4 (D.D.C. May 24,
2006) (upholding denial of a fee waiver where requestor failed to
show that "disclosure of the documents he sought would serve the
public interest" (emphasis added)).  From these cases, the DOJ
extrapolates a new "actual disclosure" requirement.  *See* Def.'s
Opp'n at 8-13.  The Court, however, is not persuaded that
"disclosure" in the statute speaks to anything other than a
necessary assessment of whether or not the request seeks
documents that, *if* disclosed, would be in the public interest.[4]

In light of prior case law, the Court finds no serious room
for doubt that fee-waiver requests are reviewed based on the face
of the requested documents, not in terms of actual disclosable

---

[4]  As discussed further below, this case is also distinguishable
from cases where the request for a fee waiver could be evaluated
based on documents that have already made clear.  To the
contrary, the DOJ has claimed that most of the documents
requested are exempted from disclosure.  The DOJ's reliance on
cases addressing documents that have already been produced is
therefore misplaced.

content.  A potential exception to that rule of general waiver eligibility applies where requested documents are "patently exempt" on the face of the request.  *See Carney*, 19 F.3d at 815 ("[I]t would be proper to deny a fee waiver on [the basis that the records may have been exempt from disclosure] only if the request was for patently exempt documents); *Ctr. for Biological Diversity*, 546 F. Supp. 2d at 729-30 (rejecting argument that documents were patently exempt); *S. Utah Wilderness Alliance*, 402 F. Supp. 2d at 89-90 (same)[5]; *Dep't of Energy*, 310 F. Supp. 2d at 295 (same), *rev'd in part on other grounds*, 412 F.3d 125 (D.C. Cir. 2005).  However, the above cases demonstrate that the patently exempt standard sets a high bar for denial of a fee waiver, and the DOJ has not advanced any arguments that CREW's request ought to be excluded as patently exempt under any of the three privileges that it deems applicable.  As such, the exception is not at issue, and the DOJ erred in failing to evaluate CREW's request on its face without regard to whether the information would be eventually exempt from disclosure.

The Court's rejection of a governmental ability to base rejections of fee waivers on potential susceptibility to

---

[5]  CREW incorrectly claims that *Southern Utah* rejected the "patently exempt" approach.  *See* Pl.'s Mem. at 16 n.6.  CREW's reliance on the court's statement that "the term 'patently exempt' appears nowhere in the statutory text of FOIA" ignores subsequent paragraphs incorporating the "patently exempt" test into reasoning that a fee waiver was improperly denied.  *See S. Utah Wilderness Alliance*, 402 F. Supp. 2d at 90.

exemption is justified by the statutory allocation of responsibility under FOIA.  As noted, judicial review in a fee-waiver challenge is "limited to the record before the agency" at the time of that determination.  *Project on Military Procurement v. Dep't of Navy*, 710 F. Supp. 362, 367 (D.D.C. 1989) (quoting 5 U.S.C. § 552(a)(4)(A)(vii)).  Here, the DOJ admits that it has not reviewed all of the documents requested by CREW, noting the large number likely to be responsive.  *See* Letter from James Kovakas to Anne Weismann (March 8, 2006), at 2, attached as Ex. 1(E) to Def.'s Opp'n.  Therefore, those records cannot be reviewed, as they have not yet been before the agency.  Allowing those documents to form the basis for denial of a fee waiver would deprive CREW of the opportunity to challenge an actual decision by the DOJ to withhold specific information.  *See Project on Military Procurement*, 710 F. Supp. at 367.

If the actual withholding of documents under FOIA were challenged, the burden would be on the defendant to justify nondisclosure.  *Id.*  As such, basing eligibility for a fee waiver on likely exemption from disclosure would improperly invert the burden of proof, putting the burden on the plaintiff to prove the validity of its request for documents when that burden should rest with the agency.  *See S. Utah Wilderness Alliance*, 402 F. Supp. 2d at 90.  Moreover, refusing a fee waiver on grounds of potential ineligibility for disclosure would force CREW to make a

payment before the claimed exemptions were ever tested in court. The Court is troubled by the potential deterrent effect that result could have with regard to requesters like CREW "testing the bounds of the FOIA exemptions," and by the consequent ability of the agency to obtain results based on assertions of privilege that have not yet been tried.  *See id.* (quoting *Carney*, 19 F.3d at 815); *see also Project on Military Procurement*, 710 F. Supp. at 367 (noting that allowing potential exemptions to play a role in fee-waiver determinations would put "the cart before the horse[,] requiring the Court to pass upon the validity of withholding documents before the agency decides the documents are to be withheld").  While some records may be withheld lawfully under FOIA, the determination of what will actually be disclosed is not properly part of the initial inquiry into whether a fee waiver is applicable.[6]

**B.  Because CREW is requesting information in the public interest that is not in the commercial interest of the requester, it meets the public-interest requirement of FOIA and is eligible for a fee waiver.**

FOIA requires each agency to waive or reduce fees for information requested in the public interest that is not primarily in the commercial interest of the requester.  5 U.S.C. § 552(a)(4)(A)(iii).  DOJ regulations specify the following

---

[6] Where an agency claims that requested documents are exempt from disclosure, the proper course is for it to provide an index of those documents under the process laid out in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

criteria for determining whether a particular request is in the public interest: 1) whether the subject concerns the operations and activities of the government; 2) the informative value of the requested information; 3) the contribution to a greater understanding by the public; and 4) the significance of that contribution.  *See* 28 C.F.R. § 16.11(k)(2)(i-iv).  The DOJ has not contested that CREW's request concerns the operations and activities of the government, nor that CREW is capable of contributing to a greater understanding by the public.  At issue, then, are the informative value of the requested information and its significance to the public.

Requests based on nothing more than "[b]are allegations of malfeasance, unsupported by the evidence," do not have enough informative value to merit a fee waiver.  *Klein*, 2006 WL 1442611, at *4; *see also Van Fripp v. Parks*, 2000 U.S. Dist. LEXIS 20158, at *17 (D.D.C. Mar. 15, 2000) (finding that "[i]n the absence of independent evidence of misappropriation, the plaintiff's request [was] too ephemeral to compel the public to pay for his request").  Moreover, requests for documents that are not limited to a particular agency action or matter may be overly broad.  *See generally Judicial Watch, Inc. v. Dep't of Justice*, 122 F. Supp. 2d 13 (D.D.C. 2000) (finding that a request for documents relating in any way to Senator Orrin Hatch and the Bank of Credit and Commerce International without any further narrowing of the

15

request lacked necessary specificity).  However, these rejections
of unsupported or overbroad requests impose only a minimal bar on
plaintiffs.  Where statements of the public value of requested
information are contained in the plaintiff's correspondence with
the agency and are stated with "reasonable specificity," they
meet at least the threshold test for informative value.  *See
Rossotti*, 326 F.3d at 1312-13; *In Defense of Animals v. Nat'l
Instits. of Health*, 543 F. Supp. 2d 83, 109 (D.D.C. 2008).

Calling CREW's request too "ephemeral," the DOJ says that
CREW failed to make a proper showing that the requested
information would contribute to an understanding of the penalty
reduction in the tobacco litigation.  As argument, it notes that
CREW failed to cite to *United States v. Philip Morris, USA, Inc.,*
a case limiting the DOJ's ability to seek certain remedies. 396
F.3d 1190 (D.C. Cir. 2005); *see* Def.'s Opp'n at 14-15.  The DOJ
contends that this case was the reason for the reduction in
penalties, as stated by then-Associate Attorney General Robert
McCallum, and that CREW's allegations of malfeasance derived from
newspapers and individuals are insufficient.  Def.'s Opp'n at 14-
15.  As such, it alleges, CREW failed this prong of the public-
interest analysis.

Contrary to the government's assertions, however, the Court
finds that the public value of the information sought by CREW was
stated with enough specificity to qualify for a fee waiver.

16

First, unlike the plaintiffs in *Judicial Watch, Inc. v. Department of Justice*, CREW limited its request to documents surrounding the tobacco litigation, a particular agency action. *See* 122 F. Supp. 2d at 14-15.  Moreover, CREW supported its specific request for information by reference to news reports casting doubts on the propriety of the reduction in penalties.[7] *See* Letter to James Kovakas from Anne Weismann (June 28, 2005), at 3, attached as Ex. 1(A) to Def.'s Opp'n.  By justifying its desire to know about the penalty reduction in that way, CREW did more than make "bare allegations of malfeasance."  *Klein*, 2006 WL 1442611, at *4.  Finally, CREW framed the purpose of its request as "informing the public about the circumstances surrounding the . . . penalties."  Because CREW is seeking explanatory information of any kind, not merely digging for inculpatory materials, it is unlikely that its request will "exceed the purpose for which it is to be used."  *See Van Fripp*, 2000 U.S. Dist. LEXIS 20158, at *17.  There is no bright-line test for a sufficient showing of informative value.  However, given CREW's specific motives and goals, the Court is satisfied that it has made its request with enough specificity to show informative

---

[7]  This reference to news reports was initially contained in the section of the letter referring to the "expedited processing" request rather than that for the "fee waiver."  However, because the entire document was before all those within the agency who reviewed it, there seems to be little reason to disregard this reference.  *See* Letter to James Kovakas from Anne Weismann (June 28, 2005), at 3, attached as Ex. 2(E) to Def.'s Opp'n.

value to the public.

The fourth factor, the significance of the information to the public, is influenced by whether the information is already available. *See, e.g.*, *Rossotti*, 326 F.3d at 1314-15.  Given that much of the government's case rests on the privileged nature of the requested documents, it is clear to the Court that this information is not publicly available.  Moreover, given the scale and public nature of the tobacco litigation, the Court is persuaded that the significance of any additional information is likely to be high, regardless of whether the documents uncover any wrongdoing.  *See id.* at 1314 (noting that "the American people have as much interest in knowing that key IRS decisions are free from the taint of conflict of interest as they have in discovering that they are not").

Because CREW has made a valid showing of both informative value and public significance, the Court is persuaded that it has met the public-interest requirements necessary for a fee waiver. The DOJ does not contest that the information requested is not in the commercial interest of CREW.  As such, CREW met both elements of the FOIA fee-waiver provision, and is entitled to a waiver of its fees in the instant case.

**C.   The DOJ's argument that it properly imposed an up-front fee requirement under 28 C.F.R. § 16.11(i) is invalid given CREW's fee-waiver eligibility.**

The DOJ also argues that it properly required CREW to make

an advance payment pursuant to an internal regulation that allows it to do so where a request is likely to exceed $250. *See* 28 C.F.R. § 16.11(i); Def.'s Opp'n at 15-16. However, that requirement is one to which a fee waiver logically applies. *See* Dep't of Justice, 365 F.3d at 1127 (concluding that because the requester was not entitled to a fee waiver, the agency properly refused to process further document requests without payment of the $250 fee); *Pollack v. Dep't of Justice*, 49 F.3d 115, 119-20 (4th Cir. 1995) (describing the $250 fee, noting that the agency must provide for a procedure by which fees can be waived, and explaining that requesting a fee waiver would have been one way for plaintiff to avoid paying the $250 fee). Therefore, the up-front fee must be waived upon meeting other requirements for a fee waiver.

## IV.  Conclusion

The foregoing discussion demonstrates that there is no issue of material fact with regard to CREW's entitlement to a fee waiver. Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment on entitlement to a fee waiver under FOIA. An appropriate Order accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**March 16, 2009**